

February 7, 2014

Mr. Kent Walker
Senior Vice President and General Counsel
Google, Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043

Dear Mr. Walker,

    We appreciate your having met with us in Denver on January 21st. The composition of the team you brought to our meeting demonstrated that Google takes the concerns expressed by the nation's Attorneys General seriously. Though we believe, as you do, the Denver meeting was a valuable first step in establishing a constructive dialogue on the serious issues before us, much work remains to be done.

    Toward that end, we intend this letter to serve as a follow-up to the Denver meeting, specifying particular questions outstanding and seeking your continued cooperation.

    First, we have the following requests as a result of the Denver meeting:

1. It is apparent that Google's content screening systems can and should be enhanced to prevent certain content which violates Google's own content policies from reaching the open internet. This increased scrutiny should ideally consist of a combination of enhanced automated screening of content uploaded to Google's hosted services (such as YouTube or Google Drive) and a significant increase in human inspection of content "flagged" by automated methods.

    **Will Google agree to substantially increase both automated and human scrutiny of content uploaded to its services? If so, how?**

Mr. Walker
Page 2
February 7, 2014

2. It is apparent that rogue sites are commonly included as top (i.e., page 1 or 2) results in Google searches. These sites range from posing significant a public health threat through the distribution of illegal drugs to being central conduits for pirated intellectual property. It is further apparent that such rogue sites are readily identifiable, as are their successors or affiliates. Indeed, we would venture to conclude that perhaps no organization on earth is better equipped to identify such sites than Google itself.

   **Will Google agree to substantially increase the demotion and delisting in its search results of sites whose contents and services violate Google's own content policies? If so, how?**

3. Through the sale of advertising to entities engaged in illegal or objectionable (i.e., in violation of Google's own content policies) and, in some cases, through direct financial partnerships with publishers of such content, Google has profited from the proliferation of dangerous and/or illegal material through its services. This "monetization" of such content not only benefits Google, it creates significant financial incentives for further proliferation. It is apparent that this issue is borne not only of insufficient scrutiny of Google's advertising partners but also of a corporate culture which fails to place sufficient emphasis on ensuring Google's products are not abused as channels for dangerous and/or illegal content.

   **Will Google agree to address its problem monetizing dangerous and/or illegal content through advertising sales and direct revenue-sharing agreements with producers of content which violates Google's own policies? If so, how?**

   **Additionally, what can Google do to encourage a culture worthy of its "Don't be evil" motto by ensuring that preventing the spread of dangerous and/or illegal content is a priority during the product development process? What specific additional steps will Google take to accomplish this?**

4. During our Denver meeting, Google indicated it valued the input of law enforcement in the process of identifying content on its systems requiring action. We agree and believe it would be beneficial to develop a mechanism by which Attorneys General and other law enforcement authorities can communicate compliance issues to Google with the expectation of swift responses.

   **What are Google's specific proposals for such a mechanism?**

Google's responses should specifically address the foregoing questions and should include any compliance plans Google has already made stemming directly from our Denver meeting. Additionally, we recognize that your team intends to share with us more of the compliance presentation you made in Denver. We firmly believe that will enhance our understanding of Google's efforts on these important issues and look forward to obtaining as much of that material as possible.

Mr. Walker
Page 3
February 7, 2014

      An in-person meeting to discuss your responses to this letter and discuss additional steps is important. We request that you come to the Winter Meeting of the National Association of Attorneys General on February 24th in Washington. We will schedule a time that day for the Attorneys General involved with this effort to meet with Google privately to discuss your responses. We request that you provide these responses by February 19, 2014.

      We thank you for your cooperation thus far and look forward to working with you further toward a resolution of these important consumer protection issues.

                              Sincerely,

Jon Bruning
*Attorney General of Nebraska*

Jim Hood
*Attorney General of Mississippi*

David Louie
*Attorney General of Hawaii*

Dustin McDaniel
*Attorney General of Arkansas*

Sean Reyes
*Attorney General of Utah*