

**STATE OF MISSISSIPPI**

## ADMINISTRATIVE SUBPOENA and SUBPOENA DUCES TECUM

**STATE OF MISSISSIPPI**
**OFFICE OF THE ATTORNEY GENERAL**

**IN THE MATTER OF:**
**GOOGLE INC.**

To:                     Google Inc.

By Service Upon:   The Corporation Trust Company
                    Corporation Trust Center
                    1209 Orange Street
                    Wilmington, Delaware 19801

The **Attorney General of the State of Mississippi** has information providing reasonable

grounds to believe that Google Inc. may have violated one or more of the provisions of Section

75-24-1, *et seq.*, Mississippi Code of 1972, as amended, commonly referred to as the Mississippi

Consumer Protection Act, as follows: Miss. Code Ann. §§ 75-24-5(1). Specifically, the

**EXHIBIT**

**A**

Attorney General has reasonable grounds to believe that Google Inc. has used trade practices that are unfair, deceptive, and misleading.

Pursuant to Miss. Code Ann. § 75-24-27 and by the authority vested in the Attorney General, you are hereby required to answer in writing the Interrogatories set forth below and to deliver copies of the documents specified in the Demand for Production of Documents. The Interrogatory answers must be sworn upon oath and returned by mail to the undersigned at P. O. Box 22947, Jackson, MS 39225-2947, within thirty (30) days of service of this subpoena. The specified documents must be returned by mail to the above address within thirty (30) days of service of this subpoena.

If you do not comply with this subpoena, the Attorney General may apply to the Chancery Court of Hinds County Mississippi, First Judicial District, for an order compelling compliance in accordance with Miss. Code Ann. § 75-24-17.

All documents and information produced in response to this subpoena shall be governed by the provisions of the Miss. Code Ann. § 75-24-27.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 3

DEFINITIONS ............................................................................................................... 4

INSTRUCTIONS ........................................................................................................... 10

INTERROGATORIES AND DEMANDS FOR PRODUCTION OF DOCUMENTS ................... 12

    GENERAL ................................................................................................................ 12
    NPA-RELATED ....................................................................................................... 12
    ADVERTISING ......................................................................................................... 16
    KNOWLEDGE ......................................................................................................... 26
    ACTIONS TAKEN CONCERNING DANGEROUS OR ILLEGAL CONTENT/CONDUCT ......... 32
    COMPLAINTS ......................................................................................................... 35
    SEARCH .................................................................................................................. 36
    "WHISTLEBLOWERS" AND GOV'T INVESTIGATIONS ................................................ 41
    QUANTIFYING DANGEROUS AND ILLEGAL CONTENT ............................................. 43
    PROMISES AND ASSURANCES ................................................................................. 45
    WILMER HALE LETTER .......................................................................................... 48
    "LOCALLY UNLAWFUL" CONTENT IN GENERAL ..................................................... 50
    SPECIFIC EXAMPLES OF LOCALLY UNLAWFUL CONTENT ....................................... 51
        A. PRESCRIPTION DRUG SALES ........................................................................ 51
        B. STEROIDS .................................................................................................... 54
        C. BATH SALTS ................................................................................................ 57
        E. DRUG ABUSE .............................................................................................. 58
        F. CREDIT CARDS ............................................................................................ 61
        G. FRAUDULENT DOCUMENTS .......................................................................... 66
        H. HUMAN TRAFFICKING ................................................................................. 69
        I. STOLEN INTELLECTUAL PROPERTY ................................................................ 71
    AUTO COMPLETE .................................................................................................... 76

## DEFINITIONS

Unless otherwise defined in this subpoena, the following terms shall have these meanings:

1.    "AID", "ABET", "ASSIST", "FACILITATE," "ENCOURAGE" or "PROMOTE" mean the doing of any act, including the act of hosting or displaying search results, content or advertisements, that could possibly directly, indirectly or tangentially further or advance a course of action by any actor or actors, regardless of whether or not the act or acts would be protected or immunized under the Communications Decency Act, 47 United States Code ("U.S.C."), § 230. These terms should be construed broadly, in the disjunctive and with their plain meanings, and not the legal definitions that may be conveyed by these terms.  For example, and by no means an exclusive list, hosting content that depicts the sale of stolen credit card data shall be interpreted as possibly "aiding, abetting, assisting, facilitating, encouraging or promoting" such sales.

2.    "COMMUNICATION DECENCY ACT" and "CDA" refer to 47 United States Code ("U.S.C."), § 230.

3.    "DANGEROUS CONTENT or CONDUCT" means content, conduct or information that in itself is dangerous or has indicia that it could, in any way, either directly, indirectly or tangentially, aid, abet, assist, facilitate, encourage or promote activity that could lead to physical harm or injury and takes into account all facts and circumstances, including the age of the intended audience.  For example, and by no means as an exclusive list, a "how to" video depicting children making a homemade bomb from household products would qualify as dangerous content or conduct.

4

4.   DANGEROUS OR ILLEGAL CONTENT/CONDUCT means any content or conduct that is either DANGEROUS CONTENT OR CONDUCT or ILLEGAL OR UNLAWFUL CONTENT OR CONDUCT (or both).

5.   "DOCUMENT,""DOCUMENTS," "RECORD," or "RECORDS" means the original and copies, identical or non-identical, of any handwritten, typewritten, printed, recorded or graphic matter of any kind, in the possession and/or control of you or your officers, agents, employees, or known to you to exist, however produced or reproduced, including specifically, but not exclusively, letters or other correspondence, telegraphs, telexes, memoranda, reports, summaries, handwritten notes, corporate resolutions, minutes of meetings, transcriptions of conversations, meetings or conferences or the like, tabulations, work papers, cost sheets, promissory notes, financial statements, sales records, contracts, agreements, orders, calendars, diaries, telephone call slips, or other telephone records, photographs, diagrams, schematic drawings, prints, slides, movies or any other pictorial representations, tape recordings, databases, computer inputs or outputs, e-mail messages, text messages, instant messaging, computer memory, computer disks, laser disks, CD-ROM disks, microfiche, microfilm, magnetic tapes, video tapes, recordings, motion pictures and photographs.  When any database or other information on computer is requested, you should produce also any documents needed to test, analyze and operate the system.  DOCUMENTS shall also mean all copies or drafts of documents by whatever means made, including specifically, but not exclusively, those copies or drafts bearing commentary or notations not appearing on the original or final version.

6.   "EMPLOYEE" means any current or former employee of Google, Inc., whether full or less than full-time, regardless of compensation.

7.   "GOOGLE ADVERTISING SERVICES" refers to any service owned, controlled, or operated by Google that is involved in the sale of advertisements, whether the advertisements are hosted on servers owned, controlled or operated by Google, are provided or served to Google services or websites by third parties, or are hosted, provided, or served on third-party websites who partner with Google through various services.  GOOGLE ADVERTISING SERVICES includes, but is not limited to, AdWords, AdWords Express, AdSense, DoubleClick, the Google Display Network, and advertising served or hosted in conjunction with YouTube videos.

8.   "IDENTIFY" or "IDENTITY" means the following:

a.   When used in reference to a *natural person* means to state (1) the person's full name and title; (2) the person's present or last known address; and (3) the person's present last known telephone number;

b.   When used in reference to an *artificial person* or entity such as a corporation or partnership means to state (1) the organization's full name and trade name, if any; (2) the address and telephone number of its principal place of business; and (3) the names and titles of those officers, directors, managing agents or employees who have knowledge of and under Miss. R. Civ. P. 30(b)(6) and would be designated to testify with respect to the matters involved in the Interrogatory;

c.   When used in reference to a *document* means to (1) state the type of document (e.g., letter, memorandum, print-out, report, newspaper, etc.); (2) state the title and date, if any, of the document; (3) state the author's name and address; (4) state the addressee's name and address; (5) provide a brief description of its contents; (6) indicate the present location of the document; and (7) provide the name and address of the person or persons having custody over the

document.  If any such document was, but is no longer, in your possession, custody or subject to

your control, state what disposition was made of it.  In all cases where you are requested to

identify particular documents, in lieu of such identification you may supply a fully legible copy

of the document in question.  This permission, however, shall in no way prejudice the State's

right to require production and allow inspection of all records in your possession;

        d.      With respect to *oral communications* means to set forth the following information:

(1) the substance of the communication; (2) the date and time of the communication; (3) the

place of origin of the communication; and if different, as in the case of telephone

communications, the place at which the communication was received; (4) identification of each

originator and recipient of the communication; and (5) identification of all persons present at the

place of origin, and if different, the place of receipt of the communication at the time the

communication took place; and

        e.      When used in reference to a *factual situation* or *allegation* means to state with

particularity and specificity all facts known which bear upon or are related to the matter which is

the subject of the inquiry, using the simplest and most factual statements of which you are

capable.

        9.      "ILLEGAL CONTENT or CONDUCT"/"UNLAWFUL CONTENT or

CONTENT," used interchangeably, means content, conduct, materials  or any information that is

itself in violation of any criminal or civil law of the United States or that of any state or territory

or has indicia that it could, either directly, indirectly or tangentially, promote, facilitate,

encourage, aid, or abet activity that could be in violation of any criminal or civil law of the

United States or that of any state or territory.   For example, such content or conduct includes

7

content or conduct that violates state or federal law related to the sale of controlled substances or illegal pharmaceuticals (including, but not limited to, prescription drugs, street drugs, steroids, and bath salts), state or federal law prohibiting human trafficking, state or federal law governing sale of tobacco, alcohol or other products to minors, state or federal laws governing intellectual property, state or federal law governing the sale, use or dissemination of fraudulent documents, credit cards, and identity theft, and/or state or federal law governing the sale or dissemination of counterfeit goods.

10.   "ILLEGAL/ILLICIT DRUGS," "PHARMACEUTICALS" or "SUBSTANCES " means drugs, pharmaceuticals or any substance, the possession, use distribution or importation of which is unlawful under any state or federal law, including the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., and the Federal Controlled Substances Act, 21 U.S.C. § 801 et seq.  For example, and by no means as an exclusive list, many types of "bath salts" would be considered an illicit drug, pharmaceutical or substance since some bath salts are controlled by state statute.

11.   "MANAGEMENT TEAM" means the Executive Officers and Senior Leadership personnel identified on the following webpage, as well as any other individuals who hold or have held the same or similar positions at Google and/or YouTube. http://www.google.com/about/company/facts/management/.

12.   "MISSISSIPPI CONSUMER" means a natural person who resides in or has an address in the State of Mississippi.  If an Interrogatory or Document Request seeks information relating to Mississippi consumers and Google Inc. only has responsive information for all

8

consumers without regard to location, then "Mississippi consumer" shall mean consumer without regard to state of residence for that Interrogatory or Request for Document Production, and Google Inc. shall designate so in its answer.

13. "MONETIZED" or "MONETIZATION" refers to deriving revenue, consideration of any type or other benefit from any content, advertisement or other information appearing on Google's websites, including YouTube, or third party sites, including, but not limited to, revenue or consideration derived through Google Advertising Services, to include, but not limited to, Google DoubleClick Ad Exchange, Google Display Network, partner videos, streaming ads, InVideo ads, AdSense ads, AdWords, preferential ad or product placement, masthead ads, banner ads, etc.

14. "NON-PROSECUTION AGREEMENT," "NPA" or "AGREEMENT" means the agreement entered into to resolve the Google online pharmaceuticals investigation, memorialized in a document signed on August 19, 2011 by the United States Attorney for the District of Rhode Island, Peter Neronha, and August 17, 2011 by Google Senior V.P. and General Counsel Kent Walker.

15. "PERSON" means any natural person, any corporation, partnership, or association of persons.

16. "TARGET DATA BREACH" refers to the breach of credit and debit card information of tens of millions of Target customers in late 2013 as referenced in http://www.nytimes.com/2014/01/11/business/target-breach-affected-70-million-customers.html?_r=0.

9

17.   "United States Department of Justice" or "USDOJ" includes all agencies of USDOJ and the United States Attorney's Offices in each of the states and territories as well as all investigative arms of USDOJ (i.e., the Federal Bureau of Investigation, U.S. Postal Service, etc.) or other branch of the federal government.

18.   "YOU" or, "YOUR", and "Google" means Google Inc., YouTube and any of Google or YouTube's employees and any merged or acquired predecessors, successors, divisions, parents, subsidiaries, affiliates, and any other organization in which you have a management or controlling interest.

## INSTRUCTIONS

1.   The Interrogatories and Document Requests should always be interpreted to be inclusive rather than exclusive, including interpreting the following as appropriate: the singular form of a word as plural, and vice versa; "and" to include "or", and vice versa; the past tense to include the present tense, and vice versa.

2.   Copies of documents requested may be submitted in lieu of originals, provided that all originals are preserved until written notice from this Office of the completion of this investigation.

3.   In responding to this subpoena, preface each answer or document by the Interrogatory or Document Request to which it is addressed. If you are unable to answer an Interrogatory fully, submit as much information as is available, explain why your answer is incomplete, and state the source or sources from which a complete answer may be obtained. If

an accurate answer cannot be obtained, from books and records, your best estimate, so identified, should be submitted indicating the source of the estimate.

4.    If you object to any information demanded in whole or in part on the basis of any claimed privilege or protection, identify the privilege or protection you claim, as well as each statement or communication for which you claim the privilege or protection, and provide the following information:

      a.    Date of the communication;

      b.    The author and all addressees and recipients of the communication;

      c.    The names of all persons present during the communication or to whom the communication was made available;

      d.    The subject matter of the communication;

      e.    The location of any documents concerning the communication; and

      f.    The factual basis on which you claim privilege or protection.

5.    Whenever this subpoena seeks information on Mississippi consumers or activities and you do not possess and produce such information, you should produce the information requested for all consumers or all your activities without regard to geographic limitation.

6.    These Document Requests impose a continuing duty to produce promptly any responsive information or item that is not objected to, which comes into your knowledge, possession, custody or control after your initial production of responses to the requests.

7.    Do not destroy any documents relating to any of these interrogatories or requests for production.

8.    Documents produced shall be provided in an electronic and searchable format.

# INTERROGATORIES AND DEMANDS FOR PRODUCTION OF DOCUMENTS

## GENERAL

**INTERROGATORY NO. 1**

Identify each person who assisted in answering these Interrogatories and Document Requests.

**INTERROGATORY NO. 2**

Identify all abbreviations and codes used in documents produced in response to any Document Request.

## NPA-RELATED

**INTERROGATORY NO. 3**

Identify all employees who were disciplined or terminated from employment for conduct relating, in any way, to online pharmaceutical advertisements and sales that gave rise to the NPA, either before or after the Agreement was entered into by you. For each, describe the employee's name, title, job description, social security number, location of employment, date of discipline or termination and the reasons given for the discipline or termination.

**INTERROGATORY NO. 4**

Identify all employees who testified before the grand jury or were interviewed by USDOJ personnel or any other investigative arm of the United States government about the online pharmacy conduct giving rise to the NPA.

**INTERROGATORY NO. 5**

Identify the total number of online pharmacies to which you sold advertisements prior to entering into the NPA.  Identify the total number of online pharmacies that were the subject of the NPA.  If you do not have this information, explain why not and include any statements or estimates from USDOJ, or any other federal agency, that estimates this number.  Where possible, identify sales made by the pharmacies addressed by the NPA by state.

**INTERROGATORY NO. 6**

Describe any performance metrics, standards and expenditures required by USDOJ under the NPA and describe any changes to your advertising practices, compensation structure, training or any other practice or procedure that was or is being made as a direct, indirect or tangential result of the NPA.

**DOCUMENT REQUEST NO. 1**

Provide all records from you to USDOJ, or from USDOJ to you, that reference or relate to your compliance under the terms of the NPA.

**DOCUMENT REQUEST NO. 2**

Provide all documents that relate to your acceptance of responsibility in NPA ¶3, including all documents showing that Google (1) "was on notice that most Canadian online pharmacy advertisers, advertising through the Company's AdWords program, geo-targeted their advertisements to consumers in the United States and imported into the United States both controlled prescription drugs, in violation of Title 21, United States Code, Section 331(a) and (d)," and (2) improperly assisted Canadian online pharmacy advertisers to run these advertisements that geo-targeted the United States through AdWords."

**DOCUMENT REQUEST NO. 3**

Provide all documents related to any review, report, analysis or discussion of the revenue, consideration or other benefits received by Google from facilitating, providing assistance or customer support to, or otherwise aiding Canadian online pharmacies, including but not limited to the revenue derived from the activities discussed in the NPA.

**DOCUMENT REQUEST NO. 4**

Provide all documents concerning any breach by you of the NPA alleged by the USDOJ, including, but not limited to, the NPA ¶¶ 12, 13, 14 and 15.

**DOCUMENT REQUEST NO. 5**

Identify your employees who provided "customer support to some of these Canadian online pharmacy advertisers to assist them in placing and optimizing their AdWords advertisements and in improving the effectiveness of their websites," as described in NPA ¶ 2(k).

**DOCUMENT REQUEST NO. 6**

Provide all documents related to any investigation, analysis, report, review, or other discussion concerning provision of assistance, customer support, or collaboration by Google or its employees to any individual, company, entity, or website that is, has or has been suspected of promoting, offering for sale, facilitating, or engaging in Dangerous or Illegal Content/Conduct, including but not limited to activities such as providing customer support or geotargeting assistance to such individual, company, entity or website.

**DOCUMENT REQUEST NO. 7**

Provide all records that address any of your business practices, procedures or policies that were amended, deleted, changed or added as a result of the NPA, directly, indirectly or tangentially.  For each, identify to whom the records and other materials were addressed and all records that address or discuss the reasons or need for the revisions to practices, procedures or policies.

**DOCUMENT REQUEST NO. 8**

Provide all records that identify or address online pharmacy sales, addressed in

the NPA, to persons located in Mississippi and other states, broken down by state.

**DOCUMENT REQUEST NO. 9**

Provide all records, including pleadings, that relate to injuries or claims of injury

sustained by persons located in Mississippi, and all other states, as a result of the

online pharmacy sales addressed in the NPA.

## ADVERTISING

**INTERROGATORY NO. 7**

Describe if, and if so, how, advertisers are apprised of the placement of their advertisements in

relation to search queries and search results.

**INTERROGATORY NO. 8**

Describe the role and use of behaviorally targeted advertising in Google Advertising Services

and how it works.

16

**INTERROGATORY NO. 9**

Provide the name, title, job description and work location of the persons who are most

knowledgeable about Google Advertising Services and implementation of these practices and

policies from January 1, 2003 up to the present.

**INTERROGATORY NO. 10**

Describe actions you have taken or considered taking to prevent Google Advertising

Services from being used to serve ads on websites, alongside search results, or in

connection with YouTube videos, that promote, facilitate, disseminate, offer for sale or

engage in Dangerous or Illegal Content/Conduct.  For actions you considered taking but

decided not to take, describe the reasons for your decision.  Describe any policies

concerning the use of Google Advertising Services in connection with websites or videos

that promote, facilitate, disseminate, offer for sale, or engage in Dangerous or Illegal

Content/Conduct.

**INTERROGATORY NO. 11**

Provide a list of all employees working on Google Advertising Services who have been

terminated for reasons related to your advertising policies or practices and identify each by

name, title, date of termination, reason for termination, last work location, social security number

and date of birth.

**INTERROGATORY NO. 12**

Identify all employees, or other personnel, who serve as advertising "account representatives," or an equivalent position for any Google Advertising Services, and have offered personal assistance to your advertisers.  For each, provide their title, describe how they are compensated and identify the advertiser.

**INTERROGATORY NO. 13**

Describe how Google reviews and determines whether content on YouTube or on websites is dangerous, offensive, illegal, in violation of Google's policies, or otherwise inappropriate for hosting on YouTube and/or participating in Google Advertising Services, including both human and automated review processes.

**INTERROGATORY NO. 14**

Identify all state and federal laws Google references when it evaluates videos on YouTube or website for dangerous, offensive, illegal or otherwise inappropriate conduct or for violation of any Google policy related to Google Advertising Services.

**DOCUMENT REQUEST NO. 10**

For the time period of January 1, 2012, through the current date, provide a searchable database of YouTube "partner" videos, by title or other description, that have been accepted for monetization.

**DOCUMENT REQUEST NO. 11**

For the time period of January 1, 2012, through the current date, provide a searchable database of prospective YouTube "partner" videos, by title or description, that have been rejected for monetization *before* being hosted. For this same time period, provide a searchable database of YouTube "partner" videos, by title or other description, that have been rejected for monetization *after* they have been hosted.

**DOCUMENT REQUEST NO. 12**

For the time period of January 1, 2010, to the current date, provide organizational charts ("org charts") for each service, product or feature offered as part of Google Advertising Services.

**DOCUMENT REQUEST NO. 13**

Identify the ten (10) largest Google business advertisers for each Google Advertising Service, including advertising on YouTube,  by revenue received by you from them.  For each such business, list the amount of revenue or other consideration received by you from each in descending order, from most to least, and provide all documents relating to your advertising agreements with these businesses.

**DOCUMENT REQUEST NO. 14**

Identify the ten (10) largest government institution advertisers for each Google
Advertising Service, including advertising on YouTube, by revenue received by
you from them. For each such government institution, list the amount of revenue
or other consideration received by you from each in descending order, from most
to least, and provide all documents relating to your advertising agreements with
these businesses.

**DOCUMENT REQUEST NO. 15**

Identify the ten (10) largest charitable organization advertisers for each Google
Advertising Service, including advertising on YouTube, by revenue received by
you from them. For each such charitable organization, list the amount of revenue
or other consideration received by you from each in descending order, from most
to least, and provide all documents relating to your advertising agreements with
these charitable organizations.

**DOCUMENT REQUEST NO. 16**

Provide all documents concerning the use of Google Advertising Services to
promote or serve ads on websites or in conjunction with videos on YouTube that
are or appear to be promoting, facilitating, offering for sale, disseminating, or
engaging in Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 17**

Provide all documents relating to contracts or agreements to provide Google Advertising Services to websites or posters of videos on YouTube that are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 18**

Provide all documents concerning any customer support, including geotargeting assistance, that Google has provided to websites or posters of videos on YouTube that are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 19**

Provide all documents about or reflecting statements or representations by Google about the review it conducts of websites or YouTube videos before allowing Google Advertising Services to serve ads on those websites or in connection with those videos.

**DOCUMENT REQUEST NO. 20**

Provide all documents about any review conducted by Google of websites or of YouTube videos before allowing Google Advertising Services to serve ads on those websites or in connection with those videos.

**DOCUMENT REQUEST NO. 21**

Provide all documents regarding actions considered or taken when Google learns that a website using Google Advertising Services or a video posted on YouTube is or appears to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 22**

Provide all documents regarding actions considered or taken by Google to prevent the use of Advertising Services by websites or videos posted on YouTube that are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 23**

Provide documents reflecting all communications between Google and websites or posters of videos on YouTube that are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct, including communications with reference to Google Advertising Services.

**DOCUMENT REQUEST NO. 24**

Provide all documents concerning websites or videos posted to YouTube that have been rejected for receipt of advertising for Google Advertising Services, as

well as documents concerning websites or videos posted to YouTube that were considered for rejection, but permitted to receive advertising.

## DOCUMENT REQUEST NO. 25

Provide all communications from Google seeking information from websites or posters of YouTube videos that sought to be part of Google Advertising Services about whether the content on the websites or YouTube videos was lawful or unlawful.

## DOCUMENT REQUEST NO. 26

Provide all documents reflecting Google's review of or knowledge that advertisements placed by Google Advertising Services appear next to videos that violate YouTube's Community Guidelines, appear on websites that violate Google's policies with respect to advertising or appear in conjunction with videos or on websites that are or appear to be promoting, facilitating, disseminating, offering for sale or engaging in Dangerous or Illegal Content/Conduct.

## DOCUMENT REQUEST NO. 27

Provide all documents related to complaints or reports made to Google about offensive, objectionable, dangerous or unlawful content on YouTube, including but not limited to complaints made by advertisers and reports by any internal, user or third-party "flagging" process implemented by Google.

**DOCUMENT REQUEST NO. 28**

Provide all documents sent or received by one or more members of Google's Management Team concerning the use of Google services, including but not limited to Google Advertising Services, Google Search, and YouTube, to promote, offer for sale, disseminate, facilitate, or otherwise engage in Dangerous or Unlawful Content/Conduct.

**DOCUMENT REQUEST NO. 29**

Provide all documents relating to Google's policies for sites on which AdSense advertisements are served, including "Content Policies: Prohibited Content," and Google's enforcement of those policies.   (See Content Policies: Prohibited Content)

**DOCUMENT REQUEST NO. 30**

Provide documents sufficient to demonstrate in detail how complaints or concerns about Dangerous or Unlawful Content/Conduct on YouTube or on third-party websites using Google Advertising Services may be reported, and the procedures for responding to those complaints.

**DOCUMENT REQUEST NO. 31**

Provide all communications with advertisers regarding the types of websites or YouTube videos, in connection with which their ads will, are likely to, or may appear.

**DOCUMENT REQUEST NO. 32**

Provide all communications with advertisers regarding Google's review of websites or YouTube videos in connection with which ads may appear, including the possible removal or termination of any such websites or videos.

**DOCUMENT REQUEST NO. 33**

Provide all communications with advertisers regarding the content of sites or YouTube videos in connection with which ads actually appear, including complaints that advertisements were placed on sites or in connection with YouTube videos that violate Google's policies or that otherwise are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 34**

Provide all documents concerning training provided to all persons involved in any way in the review of videos on YouTube or on websites on how to identify videos or websites that are promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct, are inappropriate for hosting

25

on YouTube, are in violation of Google's policies concerning advertising, and/or are ineligible for participation in Google Advertising Services.

## DOCUMENT REQUEST NO. 35

Provide all documents concerning advertisements placed by Google's advertising services on websites, alongside search results, or in connection with YouTube videos that violate Google's policies or that otherwise are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous or Illegal Content/Conduct.

## DOCUMENT REQUEST NO. 36

Provide all documents relating to any actions considered, taken, or not taken in response to complaints from advertisers regarding the content of websites, search results, or YouTube videos in connection with which advertisements appear.

## KNOWLEDGE

## INTERROGATORY NO. 15

Describe your Management Team members' knowledge about the hosting, display (through search results or otherwise), monetization, promotion and/or relationship with Google through Google Advertising Services of Dangerous or Unlawful Content/Conduct, including, but not limited to, online pharmaceutical sales, before and since you signed the NPA.

**INTERROGATORY NO. 16**

Describe your Management Team members' knowledge about violations, or suspected

violations, by websites or content providers, such as posters of YouTube videos, of the policies

contained in YouTube's "Community Standards, YouTube's Terms of Service, Google's

Platform Programs Policy, AdSense Content Policies: Prohibited Content, or any other policy

that relates to, directly or indirectly, the promotion, facilitation, offer for sale, dissemination of,

or engagement in Dangerous or Illegal Content/Conduct in connection with Google's service,

including, but not limited to Google Search, Google Advertising Services, and YouTube.

**INTERROGATORY NO. 17**

Describe what the "User Safety Initiative," referenced in the matter of *In re Google Inc.*

*Shareholder Derivative Litigation,* United States District Court, Northern District of California,

Oakland Division, Master File CV-11-04248-PJH and Case No. CV-13-02038-PJH, does that

goes beyond or that is different from the obligations agreed to by you in the NPA.   Describe

why the User Safety Initiative is limited to only addressing online pharmacy and drug-related

matters.

**INTERROGATORY NO. 18**

Describe why one focus of the settlement document in *In re Google Inc. Shareholder Derivative*

*Litigation,* United States District Court, Northern District of California, Oakland Division,

Master File CV-11-04248-PJH and Case No. CV-13-02038-PJH addresses "Criminal Activity

Reporting" and is designed to obligate you to review all matters where a Google employee is

convicted of a felony.  Describe if the employment of felons has been a concern in the context of online pharmacy sales and other matters.

**INTERROGATORY NO. 19**

Describe why one focus of the settlement document in *In re Google Inc. Shareholder Derivative Litigation,* United States District Court, Northern District of California, Oakland Division, Master File CV-11-04248-PJH and Case No. CV-13-02038-PJH addresses "corporate governance reforms (that are) designed to enhance the Google Board of Directors' monitoring of and response to legal compliance issues and shareholder concerns relating to online pharmacies who potentially poses a threat to users of Google's services." Describe why these proposed corporate governance reforms, or similar reforms, were not undertaken immediately after agreeing to the obligations in the NPA.

**DOCUMENT REQUEST NO. 37**

Provide all board meeting minutes, notes or other communications that address or discuss, either directly, indirectly or tangentially, the promotion, facilitation, offer for sale, dissemination of, and/or engagement in Dangerous or Illegal Content/Conduct in connection with any of Google's services, including but not limited to Google Search, Google Advertising Services, and YouTube.

**DOCUMENT REQUEST NO. 38**

Provide all communications by current and former Google Management Team members discussing, either directly, indirectly or tangentially, the hosting, display (through search

results or otherwise), monetization, promotion of, or engagement in Dangerous or Illegal Content/Conduct.

## DOCUMENT REQUEST NO. 39

Provide all communications from, to or including former Management Team Member Sheryl Sandberg that address, either directly, indirectly or tangentially, the hosting, monetization, display (in search results or otherwise), dissemination of or engagement in Dangerous or Illegal Content/Conduct.

## DOCUMENT REQUEST NO. 40

Provide all records that relate to your decisions about how to comply with state civil and criminal laws. Include records that relate to complying with state civil and criminal laws when there are differences in those laws between states.

## DOCUMENT REQUEST NO. 41

Provide all communications sent or received by one or more members of Google's Management Team concerning the use of Google services, including but not limited to Google Search, Google Advertising Services, and YouTube, to promote, offer for sale, or facilitate the sale of illicit drugs and pharmaceuticals.

## DOCUMENT REQUEST NO. 42

Provide all documents that relate to an investigation, or a request for an investigation, by any of your shareholders or your Board of Directors or

Management Team members that directly, indirectly or tangentially address the hosting, display, monetization, promotion of, dissemination of, offer for sale of, or engagement in Dangerous or Illegal Content/Conduct in connection with any Google service, including, but not limited to, Google Search, Google Advertising Services, and YouTube. Your response should include, but not be limited to, all documents that relate to this request, the formation of a Special Committee, and all correspondence and findings of the Special Committee, that is referenced in that matter of *In re Google Inc. Shareholder Derivative Litigation,* United State District Court, Northern District of California, Oakland Division, Master File CV-11-04248-PJH and Case No. CV-13-02038-PJH.

**DOCUMENT REQUEST NO. 43**

Provide all documents that relate to the formation, purpose and allocation of resources of the User Safety Initiative that is referenced in that matter of *In re Google Inc. Shareholder Derivative Litigation,* United State District Court, Northern District of California, Oakland Division, Master File CV-11-04248-PJH and Case No. CV-13-02038-PJH.

**DOCUMENT REQUEST NO. 44**

Provide all records that relate to the employment of felons in connection with online pharmacy and drug matters, as referenced in *In re Google Inc. Shareholder Derivative Litigation,* United States District Court, Northern District of

California, Oakland Division, Master File CV-11-04248-PJH and Case No. CV-13-02038-PJH.

**DOCUMENT REQUEST NO. 45**

Provide all documents reflecting or relating to Google's knowledge or awareness that YouTube videos promote, disseminate, offer for sale, engage in or facilitate Dangerous or Illegal Content/Conduct, including, but not limited to, the sale of illicit drugs and pharmaceuticals.

**DOCUMENT REQUEST NO. 46**

Provide all communications with users who post, have posted, or attempted to post videos on YouTube that promote, disseminate, offer for sale, engage in or facilitate Dangerous or Unlawful Content/Conduct, including but not limited to, the sale of illicit drugs and pharmaceuticals.

**DOCUMENT REQUEST NO. 47**

Provide all documents reflecting or relating to Google's knowledge or awareness of websites that use Google Advertising Services and that are or appear to be promoting, disseminating, offering for sale, engaging in or facilitating Dangerous or Illegal Content/Conduct, including, but not limited to, the sale of illicit drugs and pharmaceuticals.

**DOCUMENT REQUEST NO. 48**

Provide all communications with individuals, companies or other entities that operate or control websites using Google Advertising Services and that are or appear to be promoting, disseminating, offering for sale, engaging in or facilitating Dangerous or Unlawful Content/Conduct, including but not limited to, the sale of illicit drugs and pharmaceuticals.

**DOCUMENT REQUEST NO. 49**

Provide documents sufficient to demonstrate in detail the automated or manual content screening procedures used to prevent violations of Google's YouTube Community Guidelines, Terms of Use, and similar content policies, as well as any procedures used to review YouTube videos for eligibility to be monetized.

## ACTIONS TAKEN CONCERNING DANGEROUS OR ILLEGAL CONTENT/CONDUCT

**INTERROGATORY NO. 20**

Describe how you review and deem content to be sufficiently dangerous, offensive, illegal or unlawful, such that it is deemed inappropriate for hosting on YouTube. Describe the role of both human and automated review processes in your answer.

**INTERROGATORY NO. 21**

Describe if you maintain a list of current state and federal civil and criminal laws and do anything to ensure that content appearing on your websites, or third party websites using Google Advertising Services do not aid, abet, assist, facilitate, encourage or promote the violation of state civil and criminal laws. If this is not done, explain why. If it is done, identify the state and federal civil and criminal laws that Google reviews.

**INTERROGATORY NO. 22**

Describe the training about complying with state civil and criminal laws given to your employees who serve in any type of content or advertising "reviewer" capacity. If there is no such training, explain why.

**DOCUMENT REQUEST NO. 50**

Identify the total number of employees who are employed in positions assigned to review content (including YouTube videos and websites) and advertisements for Dangerous or Illegal Content/Conduct, or that violate your policies. Using an organizational chart, identify these employees.

**DOCUMENT REQUEST NO. 51**

Provide all records relating to the staffing needs required in positions relating to content and advertising review.

**DOCUMENT REQUEST NO. 52**

Provide all records that relate to or address your interpretation, analysis or application of state consumer protection laws as they relate to content or other information appearing on your websites, or on third party websites that use Google Advertising Services.

**DOCUMENT REQUEST NO. 53**

Provide all records that relate to or address your interpretation, analysis or application of state criminal laws as they relate to content or other information appearing on your websites, or on third party websites that use Google Advertising Services.

**DOCUMENT REQUEST NO. 54**

Provide all documents reflecting the removal of videos from YouTube that are or appear to promote, offer for sale, disseminate, engage in or facilitate Dangerous or Illegal Content/Conduct, including but not limited to, the sale of illicit drugs and pharmaceuticals.

**DOCUMENT REQUEST NO. 55**

Provide all documents concerning any actions considered, taken, or not taken to remove videos from YouTube that are or appear to be promoting, offering for sale, disseminating, engaging in or facilitating Dangerous or Illegal Content/Conduct, including but not limited to, the sale of illicit drugs and pharmaceuticals.

34

## COMPLAINTS

**INTERROGATORY NO. 23**

Describe how complaints or concerns about offensive, dangerous, illegal or unlawful content that you host or display may be reported. Quantify, in general terms, the number of such complaints received by you between January 1, 2012 and the present date.

### DOCUMENT REQUEST NO. 56

Provide all records relating to complaints by your advertisers, in any form, about the placement of their advertisements in relation to content appearing on your websites or content appearing on third party webpages where you serve ads.

### DOCUMENT REQUEST NO. 57

Provide a searchable database of those instances where offensive, objectionable, dangerous or unlawful content has been identified by you or by users, through a user-generated "flagging" process or any other system or manner since January 1, 2012, where a decision was made not to remove the content. For each, provide a copy of the user, or "flagged," complaint and indicate if the content was monetized in any way.

**DOCUMENT REQUEST NO. 58**

Provide documents sufficient to demonstrate in detail how complaints or concerns about videos that is or appears to be promoting, offering for sale, engaging in, disseminating or facilitating Dangerous or Illegal Content/Conduct, including but not limited to, the sale of illicit drugs and pharmaceuticals, on YouTube may be reported, and the procedures for responding to those complaints.

**DOCUMENT REQUEST NO. 59**

Provide all documents reflecting reports or complaints to Google about any entity that is or appears to be promoting, offering for sale, engaging in, disseminating or facilitating Dangerous or Illegal Content/Conduct, including, but not limited to, documents created by Google employees about the use of Google services by any entity that is or appears to be promoting, offering for sale, engaging in, disseminating or facilitating Dangerous or Illegal Content/Conduct.

**SEARCH**

**INTERROGATORY NO. 24**

Describe how search results, including search result rankings, relate to or are affected by any advertisements you serve on third party webpages, including those webpages that appear in search results. Include all information about how monetized content versus non-monetized content is treated in relation to search queries. For example, please describe whether YouTube

partner content receives preferential treatment or "greater relevance" in comparison to non-monetized, non-partner content in YouTube searches.

## INTERROGATORY NO. 25

Describe how your search services use a user's web history or use of Google services to generate and tailor search results for that particular user. Describe how your search algorithms use information about a particular user to provide personalized or tailored search results, including by promoting some websites in search results over other websites.

### DOCUMENT REQUEST NO. 60

Provide documents sufficient to demonstrate in detail Google's definition, determination, and use of "quality" in Search, including search algorithms. This request includes documents demonstrating all factors that positively or negatively impact the "quality" of a website and factors that Google considered and rejected as having an impact on "quality."

### DOCUMENT REQUEST NO. 61

Provide all versions of Google's Search Quality Rating Guidelines, including all guidelines concerning flags that raters can assign to webpages.

### DOCUMENT REQUEST NO. 62

Provide all documents concerning all instances in which websites are flagged by reviewers or others for potentially Dangerous or Unlawful Content/Conduct.

**DOCUMENT REQUEST NO. 63**

Provide technical and other documents sufficient to show how Google Search uses personal information about a user, including a user's web history or use of Google services, to generate and tailor search results for a particular user.

**DOCUMENT REQUEST NO. 64**

Provide all records relating to differences in how monetized and non-monetized content are placed or "linked" or associated with search queries on your websites.

**DOCUMENT REQUEST NO. 65**

Provide all documents relating to complaints or communications regarding the inclusion of websites are or appear to be promoting, facilitating, disseminating, offering for sale, and/or engaging in Dangerous or Illegal Content/Conduct in Google's search results. This request includes any responses from Google and any actions considered or taken in response.

**DOCUMENT REQUEST NO. 66**

Provide all documents relating to changes to Google's search algorithms considered, taken, or not taken to limit the appearance of, delist or demote the rankings of websites are or appear to be promoting, facilitating, disseminating, offering for sale, and/or engaging in Dangerous or Illegal Content/Conduct in Google search results.

**DOCUMENT REQUEST NO. 67**

Provide all documents regarding competitive, business, or other advantages to Google from tailoring search results to specific users.

**DOCUMENT REQUEST NO. 68**

Provide all documents reflecting how search activities by users affect Google's revenues, profits or ability to monetize other activities.

**DOCUMENT REQUEST NO. 69**

Provide all documents reflecting how tailored search results affect Google's revenues, profits or ability to monetize other activities.

**INTERROGATORY NO. 26**

Describe how the introduction and implementation of AdWords Enhanced Campaigns has impacted advertisers' cost-per-click ("CPC") for search advertising purchased on smartphones, tablets, and desktops.

**DOCUMENT REQUEST NO. 70**

Provide all documents that address, discuss or relate to this Interrogatory.

**INTERROGATORY NO. 27**

Describe how the introduction and implementation of AdWords Enhanced Campaigns has

impacted advertisers' choice for search advertising purchased on smartphones, tablets, and

desktops.

**DOCUMENT REQUEST NO. 71**

Provide all documents that address, discuss or relate to this Interrogatory.

**INTERROGATORY NO. 28**

Describe how Google anticipates the introduction and implementation of AdWords close variant

matching [in late September 2014] will impact [and/or has impacted] advertisers' cost-per-click

("CPC") for AdWords search advertising.

**DOCUMENT REQUEST NO. 72**

Provide all documents that address, discuss or relate to this Interrogatory.

**INTERROGATORY NO. 29**

Describe how the introduction and implementation of AdWords's close variant matching has

impacted advertiser choice in bids for AdWords search advertising keyword auctions.

**DOCUMENT REQUEST NO. 73**

Provide all documents that address, discuss or relate to this Interrogatory.

**DOCUMENT REQUEST NO. 74**

Provide a summary of how "key words" are marketed and sold to advertisers and quantify the revenue earned from these sales between January 1, 2012 and December 31, 2013.


**"WHISTLEBLOWERS" and GOV'T INVESTIGATIONS**

**INTERROGATORY NO. 30**

Describe any "whistleblower" complaints, or similar complaints, by any of your employees that relate to Dangerous or Illegal Content/Conduct appearing on, promoted or facilitated by your websites.


**INTERROGATORY NO. 31**

Identify all investigations of you and your employees by any local, state, federal or foreign government agency initiated since January 1, 2012, that directly, indirectly or tangentially address content hosted on your websites.


**DOCUMENT REQUEST NO. 75**

Provide all records of any "whistleblower" complaints, made by any employee, that relate to Dangerous or Illegal Content/Conduct appearing on, promoted or facilitated by your websites.

**DOCUMENT REQUEST NO. 76**

Provide all pleadings, records and communications of investigations of you or any

employee by any local, state, federal or foreign government agency initiated since

January 1, 2012, that directly, indirectly or tangentially relate to content appearing

on, promoted or facilitated by your websites.


**INTERROGATORY NO. 32**

In a letter dated February 21, 2014, Google's Kent Walker replied to several questions posed by

Attorneys General Hood (MS), Bruning (NE), Louie (HI), McDaniel (AR) and Reyes (UT).  The

following Interrogatories relate to this letter:

 *a.  Page 2: Policy enforcement teams and personnel.*

 1.  Describe how these teams perform their essential job functions.

 2.  Provide job descriptions, training materials, compensation structure, all
policies and procedures and other records that relate to how these individuals and
teams are to perform their jobs.  Provide an organizational chart that includes all
personnel on these teams.  Provide any data, studies or reports that address the
past, present and future staffing needs for these teams.

 *b.  Page 3:  Removal of 359 million ads from AdWords.*

 1.  Describe the criteria and process for removing ads that were Google-
generated and not "flagged" or otherwise identified by a third party.

 2.  Describe how these ads were identified and processed for removal.

 *c.  Page 3:  First Amendment concerns.*

 1.  Describe and provide Google's policies and procedures related to
protecting speech under the First Amendment in Google search terms when
that search term is designed to identify websites promoting, facilitating,
disseminating, offering for sake, and/or engaging in Dangerous or Illegal
Content/Conduct.

42

## QUANTIFYING DANGEROUS AND ILLEGAL CONTENT

**INTERROGATORY NO. 33**

Describe if there are any estimates made by you, USDOJ or any other federal agency that relate to the volume of suspected or known Dangerous or Illegal Content/Conduct appearing on or promoted or facilitated by Google services.

**INTERROGATORY NO. 34**

Describe how you estimate the search advertising revenue you earn from suspected or known Dangerous or Illegal Content/Conduct that is suspected of being hosted on your websites and/or on websites that use Google Advertising Services.

**INTERROGATORY NO. 35**

Describe how you estimate any type of advertising revenue other than search advertising revenue you earn from suspected or known dangerous, illegal or unlawful content that is suspected of being hosted on your websites and/or on websites that use Google Advertising Services.

**INTERROGATORY NO. 36**

Describe how you estimate any type of revenue other advertising revenue you earn from suspected or known dangerous, illegal or unlawful content that is suspected of being hosted on your websites and/or on websites that use Google Advertising Services.

**DOCUMENT REQUEST NO. 77**

Provide all records relating to any estimates made by you, USDOJ or any other

federal agency of the volume of Dangerous or Illegal Content/Conduct appearing

on or promoted or facilitated by Google services.


**DOCUMENT REQUEST NO. 78**

Summarize any estimates of revenue or other consideration derived, directly, indirectly or

tangentially, by you from monetized Dangerous or Illegal Content/Conduct appearing on

or promoted or facilitated by Google services.


**DOCUMENT REQUEST NO. 79**

Provide all records that relate to the amount of revenue, consideration or benefit of any

kind received by you from content or advertising that is related to content that is or

appears to be promoting, facilitating, offering for sale, disseminating, or engaging in

Dangerous or Illegal Content/Conduct.


**DOCUMENT REQUEST NO. 80**

Provide documents reflecting the revenues received through advertisements

placed on websites or in connection with YouTube videos that were later

determined to violate Google's policies, such as YouTube Community

Guidelines.

**DOCUMENT REQUEST NO. 81**

Provide all records relating to any estimates made by you about the costs,

including lost opportunity costs, impact on revenues and impact on growth rates,

by more aggressively removing content or rejecting participation in Google

Advertising Services for content that is or appears to be promoting, facilitating,

disseminating, offering for sale, and/or engaging in Dangerous or Illegal

Content/Conduct.

## PROMISES AND ASSURANCES

**INTERROGATORY NO. 37**

You make the following assurances to users of your websites:

(a) YouTube "...draw[s] the line at content that's intended to incite violence or encourage

dangerous, *illegal activities* that have an inherent risk of serious physical harm or death . . . ."

(b) YouTube "is a *safe and reliable home for your brand*... For an extra level of safety and

quality, *ads run only on approved YouTube partner videos.*"

Describe how you implement these assurances and protect users and advertisers in a manner that

is consistent with these assurances.

**DOCUMENT REQUEST NO. 82**

Provide all records relating to advertiser complaints or concerns about their

brands.

**DOCUMENT REQUEST NO. 83**

Provide all documents concerning YouTube's Terms of Service and Community Guidelines, including how those Terms of Service and Community Guidelines are enforced.

**DOCUMENT REQUEST NO. 84**

Provide all representations and statements by Google regarding the extent to which the content on YouTube complies with and enforces YouTube's Community Guidelines.

**DOCUMENT REQUEST NO. 85**

Provide all records that relate to your ability and limits on your ability to detect and to remove YouTube "content that's intended to incite violence or ***encourage dangerous, illegal activities*** that have an inherent risk of serious physical harm or death . . . ."

**DOCUMENT REQUEST NO. 86**

Provide all current, prior and draft versions of YouTube's Community Guidelines page.  In addition, provide all current, prior and draft versions of any statement made by you on your websites that directly, indirectly or tangentially addresses expectations, assurances, guarantees or promises made by you about the use of your websites and about preventing Dangerous and or Illegal Content/Conduct from appearing on your websites.

46

**DOCUMENT REQUEST NO. 87**

Provide all current, prior and draft versions of any statements made by you on your websites to advertisers about keeping their brands safe or any other statement that directly, indirectly or tangentially addresses an advertiser's expectations, assurances, guarantees or promises made by you about the placement of their advertisements on your website.

**INTERROGATORY NO. 38**

Describe your procedure for determining that a YouTube video will be "age-restricted" as described in the YouTube Community Guidelines.

## WILMER HALE LETTER

## INTERROGATORY NO. 39

In your June 26, 2013, letter from Wilmer Hale, addressed to Mississippi Attorney General Jim Hood, the following appears at p. 2: "...Google *locally removes content* that violates local censorship rules, such as Nazi-related content from its German service (google.de), allegedly defamatory content from its United Kingdom service (google.co.uk), or insults to religion in its India service (google.co.in).  Google does remove child pornography, which is illegal virtually everywhere in the world."  Describe why you do not remove all content that would be "locally unlawful" in Mississippi (e.g., violates Mississippi civil or criminal laws).  Describe all reasons for a distinction between these foreign countries, where locally unlawful content is removed if required by that country's laws, and the United States, where it may not be removed.  In your answer, include all reasons for such a distinction, to include differences in prioritization, staffing levels, the role of criminal or civil enforcement actions and lack thereof, the role of the CDA, financial or business reasons, or any other reason for a distinction.

## INTERROGATORY NO. 40

Describe your total budget allocation and staffing for removing locally unlawful content in the four examples cited in the June 26, 2013, Wilmer Hale letter.

## INTERROGATORY NO. 41

Describe your total budget allocation and staffing for removing locally unlawful content in the United States.

## INTERROGATORY NO. 42

Describe your total budget allocation and staffing for removing locally unlawful content in Mississippi.

### DOCUMENT REQUEST NO. 88

Provide copies of all practices, procedures or policies that explain how you are able to remove locally unlawful content in the four examples referenced in the June 26, 2013, Wilmer Hale letter.

### DOCUMENT REQUEST NO. 89

Provide any communication with the governments, or any government agency, in the four examples referenced in the June 26, 2013, Wilmer Hale letter, that addresses content removal and compliance with the relevant laws of these four countries.

### DOCUMENT REQUEST NO. 90

Provide documents that relate to the role of automated content "filtering" in monitoring content and removing it in the four examples referenced in the June 26, 2013, Wilmer Hale letter.  Provide documents that relate to these same filtering systems, or the rigor in applying these systems, to remove content that is locally unlawful in Mississippi.

**DOCUMENT REQUEST NO. 91**

Provide any records that relate to purging your websites of "child pornography, which is illegal virtually everywhere in the world" but not the online sale of controlled substances, false identification or stolen credit card data which is illegal in all states.

## "LOCALLY UNLAWFUL" CONTENT IN GENERAL

**INTERROGATORY NO. 43**

Describe if you have a "zero tolerance" policy for content that is locally unlawful or illegal under Mississippi law. If you do not, describe why.

**DOCUMENT REQUEST NO. 92**

Provide all documents that address, discuss or relate to the issues that are the subject of this Interrogatory.

**INTERROGATORY NO. 44**

Describe if you have a "zero tolerance" policy for content that is dangerous and carries with it a substantial risk of harm? If not, describe why not.

**DOCUMENT REQUEST NO. 93**

Provide all documents that address, discuss or relate to the issues that are the subject of this Interrogatory.

50

**INTERROGATORY NO. 45**

Describe what standards you apply to determine how much and what kinds of Dangerous or Illegal Content/Conduct you will allow on your websites or on the websites of partners through Google Advertising Services.

**DOCUMENT REQUEST NO. 94**

Provide all documents that address, discuss or relate to the issues that are the subject of this Interrogatory.

**SPECIFIC EXAMPLES OF LOCALLY UNLAWFUL CONTENT**

**A. PRESCRIPTION DRUG SALES**

**INTERROGATORY NO. 46**

In addition to your obligations under the NPA, you have stated to the Attorneys General that you have done an improved job of taking down content related to the sale of online prescription drugs. Recently, the following monetized YouTube video, and numerous others like it, were readily located. Describe how, under the NPA and your assurances to the state Attorneys General you do a better job of locating and removing such videos, if a monetized video of the type depicted below could still appear on YouTube using the search query "Buy percocet without

a prescription." Describe the standards that Google and YouTube apply for determining the types and amounts of dangerous or illegal content that may appear on your websites or on the websites that partner with Google Advertising Services.



**DOCUMENT REQUEST NO. 95**

Provide all documents related to the migration of illegal drug sales from Google to YouTube following the NPA.

**DOCUMENT REQUEST NO. 96**

Provide all documents related to varying levels of tolerance of Dangerous or Illegal Content/Conduct between Google's other services and YouTube.

**INTERROGATORY NO. 47**

Describe all steps taken by you to detect and prevent the use of your services to promote, facilitate or accomplish the unlawful sale of controlled substances and pharmaceuticals.

**DOCUMENT REQUEST NO. 97**

Provide all documents concerning Google's indexing, de-indexing or ranking in search results websites or webpages that promote the sale of, offer for sale, disseminate, or facilitate the sale or dissemination of controlled substances and pharmaceuticals.

**DOCUMENT REQUEST NO. 98**

Provide all documents concerning Google's display of advertisements in connection with YouTube videos that promote, facilitate the distribution of, or offer for sale controlled substances and pharmaceuticals.

53

**DOCUMENT REQUEST NO. 99**

Provide all documents concerning the use of Google services, including, but not limited to, Google Advertising Services, Google search, and YouTube, by any entity that is or appears to be promoting, offering for sale, or facilitating the distribution of controlled substances and pharmaceuticals, including all communications between Google and any entity that is or appears to be promoting, offering for sale, or facilitating the distribution of controlled substances and pharmaceuticals.

**DOCUMENT REQUEST NO. 100**

Provide all documents reflecting the monies earned by Google from advertisements that Google serves in connection with third party websites or videos on YouTube promoting, offering for sale, or facilitating the distribution of controlled substances in violation of any state or federal law.

## B. STEROIDS

**INTERROGATORY NO. 48**

On October 3, 2013, ABC News reported on the sale of illegal steroids using the YouTube website. *See: The Lure of Speed and Strength: Illegal Steroids Available Overseas* (Oct. 03, 2013). *See also:*

http://abcnews.go.com/WNT/video/lure-speed-strength-illegal-steroids-overseas-20465512.

Following this report, you reported that you had removed numerous videos related to the illegal

sale of steroids.  Describe whether you were unaware of the objectionable videos before the

airing of the above report, and if so, why you were not aware of and had failed to detect them.

Describe the heightened steps you took to identify and remove these videos after the story aired.

Describe any policy, personnel, technology or other steps you took as a result of the above news

report to identify and remove such videos.  For all such steps, describe if they have been utilized

to identify and remove other Dangerous or Illegal Content/Conduct in addition to steroids.  If

not, explain why.


## INTERROGATORY NO. 49

Describe how videos, like the following that was located using the search query "buy steroids

online without prescription," are still available after you became aware of the ABC report.



**DOCUMENT REQUEST NO. 101**

Provide all communications involving a Management Team member that discuss or address, directly, indirectly or tangentially, the October 3, 2103, ABC News report *The Lure of Speed and Strength: Illegal Steroids Available Overseas,* (Oct. 03, 2013, aired).

**DOCUMENT REQUEST NO. 102**

Provide a searchable database of all videos removed after the October 3, 2013 ABC News report *The Lure of Speed and Strength: Illegal Steroids Available Overseas,* (Oct. 03, 2013, aired). Describe for each the nature of the video, the title, how it was detected or located for removal, the process for deciding to remove it and how long they had been hosted on YouTube prior to removal.

**DOCUMENT REQUEST NO. 103**

For videos removed after the October 3, 2013, ABC News report on steroids aired, describe for each if it was monetized, and if so, how. Quantify the amount of revenue generated from each video and the total amount or revenue lost from all removed videos.

## C.  BATH SALTS

## INTERROGATORY NO. 50

Describe if you are aware that synthetic or cathinone-based "bath salts" are controlled substances

in a number of states and may pose a serious risk of harm or even death.  *See generally:*

http://www.drugabuse.gov/sites/default/files/drugfacts_bath_salts_final_0_1.pdf

## INTERROGATORY NO. 51

The following recently appeared on your website:

Go gle    buy bath salts online usa

Web    Images    Videos    News    Shopping    Maps    Books

About 174,000 results

| | |
|---|---|
| Any time | **buy bath salts & research chemicals online: BUY LEGAL BATH ...** |
| Past hour | newenergybathsalts.info/ ▾ |
| Past 24 hours | BUY LEGAL BATH SALTS & RESEARCH CHEMICALS ONLINE IN USA ... New Energy Bath |
| Past week | Salts Online Shop | BATH SALTS | |RESEARCH CHEMICALS | |50 ... |
| Past month | |
| Past year | **buy bath salts online securely in US-Concentrated legal bath salts** |
| | www.megabathsalts.com/ ▾ |
| All results | buy bath salts online securely in USA Canada & Australia with discrete packaging and |
| Verbatim | overnight shipment at low rates.Concentrated legal bath salts, purchase ... |

**BATH SALTS IN USA**
bath-salts-direct.com/ ▾
Come pay a visit to our online head shop and find the legal high that is perfect for you. We
guarantee that you will be more than satisfied with your purchase and ...
Stimulating Bath Salts Powder ... - Search - Check Law - Wholesale

**Buy Bath Salts - What to Consider When Ordering Bath Salts Online**
v2shoponline.com/ ▾
Order now on phone buy bath salts online, bath salts for sale , legal bath salts, ... bath
salts for sale online in usa.online shops for bath salts retails online buy ...

**Buy Bath Salts Online- Discrete shipping world wide**
www.bathsaltsforsale.com/ ▾
Buy bath salts online and get 24 hours discrete delivery securely in USA Canada & Australia
with discreet packaging and overnight shipment at low rates.get ...

Ads ⓘ

**Ivory Wave Bath Salts**
www.legitbathsaltsonline.com/ ▾
Buy Ivory Wave Bath Salts Online.
Guaranteed Low Prices. Order Now!

**Get Bath Salts Online**
www.bundesbathsalts.com/ ▾
Quality bath salts online & best
Free shipping For Bulk orders

**Bulk Bath Salt at Amazon**
www.amazon.com/beauty ▾
Find Thousands of Beauty Products
Discover Amazon's Beauty Store

**How to get bath salts**
www.inhalant.org/ ▾
Sniffing Common Household Products
What are the Dangers for your Kids?

**Blue Ridge Naturally**
www.blueridgenaturally.org/ ▾
Western North Carolina's official
seal for local, natural products

57

Google's Privacy and Terms state, under the "Google Safety Center" section, that "Keeping the web safe for everyone is a shared responsibility." Describe how Google discharges its portion of this "shared responsibility" by continuing to display in search results or otherwise and monetize such content.

### DOCUMENT REQUEST NO. 104

Provide all records of use of Google Advertising Services relating to the sale of bath salts that are controlled substances in some states. Provide all records relating to your compliance with these states' laws.

### DOCUMENT REQUEST NO. 105

Provide all records related to how you track state laws which prohibit the sale of some synthetic or cathinone-based "bath salts" so that you are not facilitating the sale of "locally unlawful" conduct in those states.

### E. DRUG ABUSE

### INTERROGATORY NO. 52

Describe how the following content, and content like it, complies with YouTube's "Community Standards."







## F. CREDIT CARDS

**INTERROGATORY NO. 53**

Since the Target Data Breach, there has been heightened public attention paid to the problems created by breaches of this type and magnitude.  Describe your efforts to stem the sale of stolen credit card data on your websites once the Target Data Breach became known to you.


**INTERROGATORY NO. 54**

Describe how the following hosted and monetized content was available on your website after the Target Data Breach.  Describe the steps you took to remove the following videos, and others like them, after the Target Data Breach became known by you.  Describe whether Target would be aware that their brand was associated with stolen credit card data. If so, describe how Target would be aware.  For example, describe if you provide reports on ad placements to advertisers.







**DOCUMENT REQUEST NO. 106**

Provide all documents relating to your advertising arrangements with Target.



**INTERROGATORY NO. 55**

YouTube has assured its advertisers that the YouTube platform will garner the "Perfect Audience, Picked By [Them]" and that "YouTube is a *safe and reliable home* for your brand... For an extra level of safety and quality, ads run only *on approved YouTube partner videos*." *YouTube Community Guidelines.* Describe how, in the example above, the Honda brand has been provided a "safe and reliable" home by running its advertisement against the search term "buy stolen cc numbers."

**INTERROGATORY NO. 56**

Describe any technical, or other capabilities, you have to ensure that advertisers' advertisements do not "run" in tandem with content these advertisers might deem to be harmful or inappropriate and/or that are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in Dangerous Or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 107**

Provide a searchable database, by title or other description, of all videos that contained credit or debit card information that were removed from YouTube after you became aware of the Target Data Breach. In addition, provide all videos that contained credit or debit card information that were reviewed by you after you became aware of the Target Data Breach but not removed. Describe for both categories if they were monetized or non-monetized. For monetized and removed

videos, provide the amount of revenue generated from each and the total amount or revenue derived from all monetized and removed videos.

## DOCUMENT REQUEST NO. 108

Provide your policies and procedures designed to prevent the use of your services to sell or promote or facilitate the sale of stolen credit or debit card data.

## G. FRAUDULENT DOCUMENTS

## INTERROGATORY NO. 57

Describe your efforts to prevent your services from being used to sell or to promote or facilitate the sale of false and fraudulent identification documents, as illustrated in the examples below. Describe why these efforts have failed to prevent these videos from appearing on YouTube and being monetized by you. Describe your level of awareness of the potential dangers of facilitating the sale of false and fraudulent identification documents.





**DOCUMENT REQUEST NO. 109**

Provide all documents concerning any actions considered or taken by Google to prevent Google services from being used to locate, promote, offer for sale, or obtain false and fraudulent identification documents.

**DOCUMENT REQUEST NO. 110**

Provide all documents concerning Google's indexing, de-indexing, or ranking in search results sites that offer for sale or that inform users how to obtain or create false and fraudulent identification documents.

**DOCUMENT REQUEST NO. 111**

Provide all documents concerning the use of Google services, including, but not limited to, Google Advertising Services, Google search, and YouTube, by any entity that is or appears to be offering for sale false and fraudulent identification documents.

**DOCUMENT REQUEST NO. 112**

Provide all communications between Google and any entity that is or appears to be offering for sale false and fraudulent identification documents.

**DOCUMENT REQUEST NO. 113**

Provide all documents reflecting the monies earned by Google from advertisements that Google serves on third party websites or in connection with videos on YouTube that promote, offer for sale, or facilitate the sale of false and fraudulent identification documents.

**DOCUMENT REQUEST NO. 114**

Provide all documents reflecting the monies earned by Google from advertisements that Google serves on third party websites or in connection with videos on YouTube that promote, offer for sale, or facilitate the sale of false and fraudulent identification documents.

**DOCUMENT REQUEST NO. 115**

Provide all communications between Google and any entity that is or appears to be offering for sale false and fraudulent identification documents.

## H. HUMAN TRAFFICKING

**INTERROGATORY NO. 58**

Describe how the marketing of sexual acts with underage children abroad, as the below content appears to facilitate, if viewed in those states where such acts are unlawful, does not violate state laws. Describe your level of awareness of the amount of similar content that remains on your websites and why these types of videos continue to appear and be monetized by you.

69

These search results linked to monetized YouTube videos like this:



Sex with underage Vietnamese girls can be easily bought in HCMC

**DOCUMENT REQUEST NO. 116**

Provide all documents concerning any actions considered or taken by Google to prevent Google Services from being used to engage in, facilitate, or promote human trafficking.

**DOCUMENT REQUEST NO. 117**

Provide all documents concerning Google's indexing, de-indexing, or ranking in search results sites that engage in, facilitate, or promote human trafficking.

**DOCUMENT REQUEST NO. 118**

Provide all documents concerning the use of Google services, including, but not limited to, Google Advertising Services, Google search, and YouTube, by any entity that is or appears to be engaging in, facilitating, or promoting human trafficking.

## I. STOLEN INTELLECTUAL PROPERTY

**INTERROGATORY NO. 59**

You claim that your search engine provides "high-quality" search results and that you seek to ensure that the top search results are the most relevant and trusted and legitimate sites. Please describe whether and how you take copyright infringement, or potential copyright infringement, into account in determining the "quality" websites and their ranking in search results.

**INTERROGATORY NO. 60**

You claim that you made changes to your search algorithm to demote websites for which you have received a large number of copyright notices. Describe the changes you made to your algorithm and how those changes have affected actual search results. Describe why infringing sites identified in Google's Transparency Report, including "Specified Domains" that have received hundreds of thousands or millions of takedown notices, still regularly appear on the top of search results.

**DOCUMENT REQUEST NO. 119**

Provide all documents, including communications, concerning the use of Google Services to locate, obtain, or view material that infringes copyright, or to commit, promote, or facilitate copyright infringement.

**DOCUMENT REQUEST NO. 120**

Provide all documents concerning how Google Search, including search algorithms, rank, weigh, promote, demote, or delist sites that offer infringing or allegedly infringing content, including but not limited to any evaluations of websites by reviewers.

**DOCUMENT REQUEST NO. 121**

Provide all documents concerning communications with owners or operators of websites using the "Specified domains" identified in the Google Transparency Report that have received copyright removal requests for more than 5,000 URLs,

as identified at

http://www.google.com/transparencyreport/removals/copyright/domains/?r=all-time.

## DOCUMENT REQUEST NO. 122

Provide all documents reflecting the quality rankings assigned to the "Specified Domains" identified in the Google Transparency Report that have received copyright removal requests for more than 5,000 URLs, as identified at http://www.google.com/transparencyreport/removals/copyright/domains/?r=all-time.

## DOCUMENT REQUEST NO. 123

Provide all documents relating to the frequency with which the Specified Domains or other pirate websites appear on the first page of search results, including, but not limited to, any analysis, report, review or discussion of the placement in search results of pirate websites that are or appear to be distributing copyrighted material without authorization and/or legitimate websites distributing copyrighted material lawfully.

## DOCUMENT REQUEST NO. 124

Provide all documents, including any review, analysis, report, or discussion, concerning consumers' perception of the websites presented at the top of Google search results, including but not limited to their perception of the legitimacy,

quality and/or lawfulness of the content on or available from or conduct depicted on such websites.

## DOCUMENT REQUEST NO. 125

Provide all documents reflecting analyses or evaluations of how users interact with Google search results pages, including, but not limited to, how the ranking of sites affects which search results are visited by users and the frequency with which users view and access search results beyond the first page and/or first position.

## DOCUMENT REQUEST NO. 126

Provide all documents concerning determinations or evaluations of the "quality" of the Specified Domains.

## DOCUMENT REQUEST NO. 127

Provide all documents, including communications, concerning the existence of spyware, malware, viruses, or other malicious code on piracy sites including the Specified Domains.

**DOCUMENT REQUEST NO. 128**

Provide all documents concerning any actions considered, taken, or not taken, to promote, demote, or remove from search results webpages engaged in piracy of copyrighted materials.

**DOCUMENT REQUEST NO. 129**

Provide all documents concerning Google's change to its search algorithms to take into account the number of valid copyright removal notices Google receives for any given site, as described in http://insidesearch.blogspot.com/2012/08/an-update-to-our-search-algorithms.html.

**DOCUMENT REQUEST NO. 130**

Provide documents sufficient to explain, qualitatively and quantitatively, how Google's search algorithm demotes webpages in response to the number of valid copyright removal notices Google receives for a given site, including, but not limited to information showing the degree (e.g., how far down the search results a website will be demoted) that a website is affected.

**DOCUMENT REQUEST NO. 131**

Provide all documents concerning any analyses of the Google search rankings of piracy sites, including the Specified Domains. This request includes all documents concerning the effectiveness of Google's change to its search algorithms to take into account the number of valid copyright removal notices

Google receives for any given site, as described in

http://insidesearch.blogspot.com/2012/08/an-update-to-our-search-

algorithms.html.

## AUTO-COMPLETE

**INTERROGATORY NO. 61**

Describe the creation and operation of the "auto complete" function, including specifically, the

manner in which phrases are generated.

**INTERROGATORY NO. 62**

Describe each and every circumstances in which your auto complete feature has been altered to

reduce or eliminate search terms that are potentially shocking or offensive or that if used could

return in search results websites that are or appear to be promoting, offering for sale,

disseminating, engaging in, or facilitating Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 132**

Provide documents sufficient to identify each term that has been removed or excluded

from Autocomplete because it violates Google's "Autocomplete policies," as referenced

in https://support.google.com/websearch/answer/106230?hl=en, and the date each term

was added as a violation of Google's Autocomplete policies.

**DOCUMENT REQUEST NO. 133**

Provide all documents concerning Google's Autocomplete policies for the removal or exclusion of "things like pornography, violence, hate speech, and terms that are frequently used to find content that violates copyrights," as referenced in https://support.google.com/websearch/answer/106230?hl=en.  This request includes all documents concerning Google's enforcement of these policies, as well as actions considered, take, or not taken to remove or exclude words or phrases.

**DOCUMENT REQUEST NO. 134**

Provide all documents relating to Google's procedures and processes for identifying and removing search terms from Autocomplete.

**DOCUMENT REQUEST NO. 135**

Provide all documents concerning representations made by Google regarding its efforts to exclude or remove "search terms for things like pornography, hate speech, illegal and dangerous things, and terms that are frequently used to find content that violates copyrights," including but not limited to Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 136**

Provide all documents concerning actions taken or considered by Google to prevent Autocomplete from predicting or presenting search terms related to Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 137**

Provide technical and other documents sufficient to show in detail how Autocomplete uses a person's web history or interaction with any Google services in generating predicted searches for that person.

**DOCUMENT REQUEST NO. 138**

Provide all documents relating to how search behavior is affected by Autocomplete suggestions, including whether suggested queries are more likely to be searched than queries not suggested by Autocomplete.

**DOCUMENT REQUEST NO. 139**

Provide all documents relating to how Autocomplete affects the tendency of users to use search queries associated with Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 140**

Provide all documents relating to how Autocomplete affects the websites users ultimately visit from search results, and the tendency of users to visit websites that are or appear to be promoting, facilitating, disseminating, offering for sale or engaging in Dangerous or Illegal Content/Conduct.

**DOCUMENT REQUEST NO. 141**

All communications sent to or received by one or more members of Google's

Management Team concerning Autocomplete's prediction and presentation to users of

search terms related to Dangerous or Illegal Content/Conduct.

ISSUED THIS  21st DAY OF OCTOBER, 2014.

STATE OF MISSISSIPPI

JIM HOOD, ATTORNEY GENERAL, MSB No.  8637