IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| Google, Inc. | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:14-cv-981-HTW-LRA |
| | ) | |
| | ) | |
| Jim Hood, Attorney General of the | ) | |
| State of Mississippi, in his official | ) | |
| capacity | ) | |
| *Defendant* | ) | |
| | ) | |

---

## ATTORNEY GENERAL JIM HOOD'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT BASED ON JURISDICTION AND OTHER GROUNDS

---

Jim Hood, Attorney General for the State of Mississippi in his official capacity (hereafter the "Attorney General" or "General Hood"), files this memorandum in support of his motion to dismiss Google, Inc.'s ("Google") Complaint for Declaratory and Injunctive Relief pursuant to FRCP 12(b)(1) and 12(b)(6).

## I.  Introduction

Google filed suit against the Attorney General seeking declaratory and injunctive relief stemming from General Hood's investigation of Google under the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.* ("MCPA"), Complaint, Docket No. 1.  The Attorney General, as a constitutional state officer, has the duty and authority to enforce the MCPA which authorizes him to investigate and prosecute violations of the consumer protection laws by, among other acts, issuing subpoenas requesting the production of documents.  Under the MPCA, the Attorney General performs, *inter alia*, investigative functions and has the weight



of the state's courts behind such subpoenas.  Google asks this Court to impermissibly interfere with the Attorney General's investigation including two matters committed to state law and state courts:  (1) the legality of a subpoena issued under state law and enforceable only in state courts, and (2) the state's enforcement of state consumer protection laws.  Under any circumstances, to permit subjects of state civil and/or criminal investigations to challenge state subpoenas in federal court threatens to do great harm to principles of equity, comity, and federalism and to make federal courts the first stop for parties wishing to challenge state-issued subpoenas. Google's suit is especially improper given that it was instituted before the Attorney General has completed his investigation or filed an actual complaint against Google in state court and before Google sought to quash or narrow the Subpoena in state court.

This lawsuit is nothing more than a brazen strategic maneuver on Google's part to hinder the Attorney General's investigation into its possible violations of Mississippi law.  And for this, Google does not enjoy constitutional immunity from compliance with Mississippi's consumer protection laws.  In furtherance of this effort, Google seeks a declaration that the Attorney General's on-going state-law investigation:  (1) violates 47 U.S.C. § 230 of the Communications Decency Act ("CDA"); (2) violates Google's First and Fourteenth Amendment rights under the United States Constitution and 42 U.S.C. § 1983; (3) violates Google's Fourth and Fourteenth Amendment rights and Section 1983; and (4) is preempted under the Copyright Act, 17 U.S.C. § § 301, 512, and the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 337 ("FDCA". Complaint, pp. 28-32.

Google claims this case presents a federal question under Article III and 28 U.S.C. §§ 1331 and 1343(a)(3) and seeks remedies under 28 U.S.C. § 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988.  Complaint, ¶ 6.  While Google alleges the Attorney General's investigation

[2]

violates the enumerated statutory and constitutional provisions, Google does not challenge the constitutional validity of any state statute, either facially or as applied, under which the Attorney General is conducting his investigation.

At present, and because of the on-going investigation, the Attorney General has not instituted criminal prosecution and/or civil litigation against Google. On October 21, 2014, and as part of the investigation, the Attorney General served on Google an Administrative Subpoena and Subpoena Duces Tecum ("Subponea"), *see* Ex. A, seeking documents and information. Instead of challenging the scope of the Subpoena in state court as it should have done, Google seeks to prematurely litigate its defenses in this Court to possible state-court claims that the Attorney General *may* file at some later date. Obviously the Attorney General cannot yet know the information the Subpoena will elicit. If the Subpoena reveals that Google's conduct is not immunized under the CDA and violates the MCPA, then the Attorney General could proceed under the MCPA. Thus, among other jurisdictional deficiencies, Google's challenge to the Subpoena is premature because it requires this Court to assume: (1) what the nature of the potential claims against Google may be and, (2) that the Attorney General would bring an action that runs afoul of federal law. There is no basis for such an assumption.

According to the theory of Google's lawsuit, any claims the Attorney General could possibly file would *violate* the CDA, the First, Fourth and Fourteenth Amendments or be preempted by the Copyright Act, the FDCA, and 42 U.S.C. § 1983. In making these arguments, Google incorrectly presumes that these claims "arise under" federal law for purposes of conferring federal subject matter jurisdiction. Google's claims do not arise under federal law but constitute defenses to possible future state law claims. For purposes of the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 and 2202, the assertion of defenses to threatened or

impending state law claims do not confer federal subject matter jurisdiction and thus, subject matter jurisdiction is lacking in this case.

Even more troubling than a declaratory action which is filed in the face of an existing state law claim where the issues are clearly identified in the states court lawsuit, Google's complaint is predicated on its unilateral interpretation of claims the Attorney General might bring as a result of the documents sought in the Subpoena. Not only is this speculative, but the issue of whether Google may have defenses to assert in the event of state-court litigation is not the relevant issue for federal jurisdictional purposes. Instead, the relevant inquiry is whether Google's declaratory claims "arise under" federal law. The answer to that question is no. Likely recognizing its declaratory claims do not arise under federal law under 28 U.S.C. § 1331, Google alternatively alleges that jurisdiction is proper under 28 U.S.C. § 1343(a)(3). Complaint, ¶ 6.

Google fairs no better, jurisdictionally speaking, under Section 1343(a)(3) because the statute does not create a cause of action in and of itself. Courts have referred to Section 1343(a)(3) as the "jurisdictional counterpart to Section 1983 which requires that an official's action deprive the plaintiff of some right, privilege or immunity secured by the Constitution or federal law. The mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999). Here, Google has not asserted a federal claim, but has raised defenses in anticipation of a state-court litigation. Thus, subject matter jurisdiction is lacking under Section 1343(a)(3).

More troubling is that Google's requested relief would not only impermissibly interfere with the Attorney General's on-going investigation, but would essentially award Google a victory over a hypothetical set of facts before that a case has been fully investigated and filed. Google asks this Court to enjoin the Attorney General from enforcing the outstanding Subpoena

[4]

and from instituting criminal prosecution and/or civil litigation against it. *See* Complaint, ¶ 107(c).[1]  Such relief would conflict with the strong federal policy against federal-court interference with pending state proceedings recognized by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971).  Moreover, Google's requested relief would effectively quash a validly issued Subpoena under state law and one that is enforceable only under state law and where Google never sought relief in a state tribunal.

Google could have and may still challenge the Subpoena in state court and assert the same defenses it has raised in this declaratory action should the Attorney General move to enforce the Subpoena at a later date should an injunction not issue.[2]  According to the Fifth Circuit, the relevant question is whether Google will be able to present its constitutional defenses in the state forum, "not whether [Google] will have an opportunity to do so without exposing itself to the negative consequences should it lose." *Empower Texans, Inc v. Texas Ethics Comm'n*, 2014 WL 1666389 at * 5 (S.D.Tex  April 25, 2014) (citing *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515 (5th Cir. 2004).  The fact that Google would rather challenge the Subpoena in federal, as opposed to state court, is irrelevant from a constitutional and jurisdictional perspective.

Most egregious is the fact that if injunctive relief is granted, it would preemptively bar the Attorney General from enforcing Mississippi's consumer protection statutes against Google before the investigation has been completed.  The Fifth Circuit in in *Okpalobi v. Foster* held that the exception to suits against state officials in federal court under the *Ex Parte Young* exception

---

[1]     Google tries to narrowly define potential claims as all falling under Section 230. *See, e.g.,* Complaint, ¶ 107(c).  However, potential claims against Google are much broader than Google describes. *See, e.g.,* Miss. Code Ann. 75-24-5 which prohibits "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce."

[2]     The Subpoena is not self-executing and if Google does not comply, the Attorney General would have to file an enforcement action in the Chancery Court for the First Judicial District of Hinds County, Mississippi.

[5]

is "properly understood to create a ***precise* exception** to the general bar against suing states in federal fora . . . [and] this exception only applies when the named defendant state officials have some connection with the enforcement of the act and 'threat and are about to commence proceedings' ***to enforce the unconstitutional act.***" 244 F.3d 405, 416 (5th Cir. 2001) (citing *Young*, 209 U.S. at 155-56) (emphasis supplied). Google does not allege the Attorney General is trying to enforce an unconstitutional act. Instead, Google seeks an incredibly expansive prospective declaration and injunction from this Court prohibiting the Attorney General from carrying out his duties under a valid, and unchallenged, state law.

The Supreme Court when considering the federal-state relationship has held the appropriate inquiry is not whether Google should prevail on its objection to the Subpoena, but whether the State of Mississippi has a substantial, legitimate interest in enforcing its consumer protection laws. *See New Orleans Pub. Servs. Comm'n. v. Council of City of New Orleans,* 491 U.S. 350, 365 (1989) ("NOPSI"). The Supreme Court has said in the strongest terms that "[a]nticipatory judgment by a federal court to frustrate action by a state . . . is even less tolerable to our federalism." *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). In pointing to the danger of this type of interference, the Court stated:

> Is the declaration contemplated here to be res judicata, so that [the state] cannot hear evidence and decide the matter for itself? If so, the federal court has virtually lifted the case from the State [ ] before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights.

*Wycoff,* 344 U.S. at 247. Google asks just that; to remove the Attorney General's investigation and possible state court litigation, out of the hands of the state before any suit, or challenge to the Subpoena, can be properly adjudicated in state court. Google is not entitled to be preemptively insulated from violations of state law. If at the completion of his investigation the Attorney

General institutes criminal prosecution and/or civil litigation under the MCPA, Google may have its day in state court to raise the defenses it has asserted in this declaratory action.

The significance cannot be overstated that Google does not challenge the authority of the Attorney General to issue the Subpoena in the first instance, nor does Google contest the constitutional validity of the Subpoena, either facially or as applied.  Instead, Google challenges the scope of the Subpoena by asserting defenses to state law claims disguised as federal claims. Complaint, ¶ 78 ("Google asked that the Subpoena be withdrawn or at least *limited to activity not immunized by Section 230 of the CDA*").  Therefore, Google has not alleged claims that arise under federal law for purposes of satisfying subject matter jurisdiction under the DJA, but are matters committed to the jurisdiction of the Hinds County Chancery Court for resolution should the Attorney General move to enforce the Subpoena in that venue as required by state statute.

Accordingly, the Attorney General moves to dismiss the complaint for lack of federal subject matter jurisdiction, or alternatively, that the Court abstain under the *Younger* abstention doctrine.  Finally, the case should be dismissed because Google's claims are not ripe.

## II.     Background

On October 21, 2014, the Attorney General issued the Subpoena at issue pursuant to Miss. Code Ann. § 75-24-27. *See* Ex. A (Subpoena). Google's response to the Subpoena was due on November 20, 2014, but by agreement of the parties that deadline was extended to January 5, 2015.  Complaint, ¶ 78.  Instead of requesting additional time to respond or challenge the Subpoena in state court where it should have, Google filed this suit on December 19, 2014. Google took this action despite the fact that the Attorney General had previously agreed to move Google's response deadline from November 20, 2014 to January 5, 2015.  The current deadline for Google's response, by agreement, is now March 6, 2015.  The Court conducted a hearing on

December 22, 2014 on Google's motion for a temporary restraining order and subsequently

entered an Order on Agreed Stay, Briefing Schedule and Preliminary Injunction Hearing Date

dated December 23, 2014. Docket No. 25. In accordance with the deadlines established in the

Order, the Attorney General moves to dismiss the complaint for the reasons set forth below.

## III.   Standard of Review

### A.   12(b)(1) Standard

A case is properly dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1)

when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders*

*Ass'n of Miss., Inc. v. Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party seeking to

invoke jurisdiction of the federal court bears the burden of demonstrating its existence.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). There is a presumption against

subject matter jurisdiction that must be rebutted by the party bringing an action to federal court.

*Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). "Conclusory allegations in a complaint . . . do

not establish [federal] jurisdiction." *Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996). A court

may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on the

complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ynclan*

*v. Department of the Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991) (citation omitted).

### B.   12(b)(6) Standard

To survive a motion to dismiss, a complaint must allege sufficient factual matter,

accepted as true, to state a claim that is plausible on its face. *Hershey v. Energy Transfer*

*Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129

S.Ct. 1937, 1949 (2009)). Although a court must take the factual allegations in the complaint as

[8]

true and construe them in the light most favorable to the plaintiff, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Dismissal is warranted when the complaint on its face shows a bar to relief. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). The Court may also consider documents referenced in, and/or attached to, the plaintiff's complaint in ruling on a motion to dismiss. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## IV.    Google's Defenses to State Law Claims do not Confer Subject Matter Jurisdiction.

### A.    28 U.S.C. § 1331

Google alleges this case "arises under the United States Constitution and the laws of the United States, and presents a federal question under Article III of the Constitution, 28 U.S.C. § 1331 and 1343(a)(3). Complaint, ¶ 6. Careful examination demonstrates subject matter jurisdiction is lacking. "[F]federal courts are courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" *Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594 (5th Cir. 1982) (citation omitted). In fact,"[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 515 U.S. 375, 377 (1994).

Federal question jurisdiction "is not satisfied merely because the dispute is in some way connected with a federal matter." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984) (citation and internal quotation marks omitted). Section 1331 requires "that the suit be one 'arising under' the Constitution or the laws of the United States, and for this purpose '[a] suit arises under the law that *creates* the cause of action. *Id.* at 1178 (emphasis supplied) (citation omitted); *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 605 (5th Cir. 1983). Google has not alleged claims arising under federal law but instead has

[9]

asserted defenses to what it perceives as threatened or impending state law claims that the Attorney General may file in the future.  The Supreme Court in *Wycoff Public Serv. Comm'n v. Wycoff* flatly stated that "[f]ederal courts will not seize litigation from state court merely because one, normally a defendant, goes to federal court to begin his federal law defense before the state court begins the case under state law." 344 U.S. at 248 (citation omitted).  This is precisely what Google has done by instituting this declaratory action and attempting to prospectively insulate itself from any possible litigation under the MCPA.

**B.      The DJA is Procedural and does not Confer Subject Matter Jurisdiction.**

While Google filed suit using the DJA as the procedural vehicle, the DJA does not separately confer federal jurisdiction on federal courts but only authorizes federal courts to provide declaratory relief. *Jolly v. United States of America*, 488 F.2d 35 (5th Cir. 1974) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671-72 (1950)).  "The federal [DJA] . . . is procedural only, not substantive, and hence the relevant cause of action must arise under some other federal law . . . to afford jurisdiction of a declaratory judgment suit." *Lowe*, 723 F.2d at 1179.  Justice Frankfurter, writing in *Skelly Oil Co. v. Phillips Petroleum Co.*, said that "'the operation of the [DJA] is procedural only.'  Congress enlarged the range of remedies available in federal courts but did not extend their jurisdiction. . . .  '[J]urisdiction' means the kinds of issues which *give right of entrance to federal courts.*  Jurisdiction in this sense was not altered by the Declaratory Judgment Act.'" *Lowe*, 723 F.2d at 1179 (quoting *Skelly Oil,* 339 U.S. at 671) (emphasis supplied).  Here, Google has not stated a claim giving it such right of entrance in federal court.

The Fifth Circuit adheres to the principle that a party's interest is an adverse legal interest within the meaning of the DJA when it relates to a "case of actual controversy within [the

court's] jurisdiction." *Collin Cnty. Texas v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990). Accordingly, "[t]his language merely recognizes that the case or controversy requirement of Art[icle] III . . . applies in the declaratory judgment context." *Id.* (citing *Foster v. Center Tp. of LaPorte County*, 798 F.2d 237, 249 (7th Cir. 1986). In order to confer subject matter jurisdiction "[a] party's legal interest must relate to an actual 'claim arising under federal law *that another asserts against him. . . .*'" *Id.* (quoting *Lowe*, 723 F.2d 1173, 1179 (5th Cir. 1984) (emphasis supplied). "'[T]he mere presence of a federal issue, *specifically the anticipation of a federal defense*, would not permit invocation of federal question jurisdiction.'" *Id.* at 1178 (emphasis supplied) (citing *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 605 (5th Cir. 1983)). A suit "does not involve federal question jurisdiction being predicated under the [DJA] solely upon a federal defense to a cause of action which does not itself arise under federal law." *Id.* at 1179. In fact, the DJA was declared "constitutional only by interpreting it to confine the declaratory remedy with conventional 'case or controversy' limits." *Wycoff*, 344 U.S. at 239 (citing *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688 (1935). Google's declaratory action fails woefully under this standard.

## C. Google's Claims do not "Arise Under" Federal Law.

In 1952, the Supreme Court in *Public Serv. Comm'n v. Wycoff*, articulated the principle that "the declaratory judgment procedure will not be used to preempt and prejudice issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review." *Wycoff*, 344 U.S. at 246. The Court rejected the federal declaratory plaintiff's effort to establish a defense against future

litigation it perceived the Utah Public Service Commission might bring against it in state court regarding transportation of goods within the state. *Id.* at 248.

Like Google who requests a declaration that its products and activities could *never* violate the MCPA, the *Wycoff* plaintiff sought similar relief arguing that transportation of goods through Utah constituted interstate commerce and the Public Service Commission of Utah should be *forever* enjoined from interfering with routes authorized by the Interstate Commerce Commission. *Id.* at 239. The Supreme Court rejected this argument stating that "[plaintiff's] idea seems to be that it can now establish the major premise of an exemption, not as an incident of any present declaration of any specific right or immunity, ***but to hold in readiness for use*** should the commission at any future time attempt to apply any part of a complicated regulatory statute to it. . . . We think this for several reasons exceeds any permissible discretionary use of the Federal [DJA]." *Wycoff,* 344 U.S. at 245 (emphasis supplied).

This is no different than what Google requests; to have an order from this Court it can forever hold in readiness should the Attorney General ever institute litigation against it in state court against claims that have not yet been ascertained in full. The Supreme Court cautioned that "when the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief requested should be granted. *Id.* at 245, 246. Furthermore, the Court said, "[w]e may conjecture that [plaintiff] fears some form of administrative or *judicial action* to prohibit its service. . . . *What respondent ask is that it win any such case before it is even commenced.* Even if [plaintiff] is engaged solely in interstate commerce, *we cannot say that there is nothing whatever that the State may require. Id.* at 245 (emphasis supplied). The same logic holds true in this case. Google cannot credibly argue that there is nothing the State of Mississippi may

[12]

require of it under its consumer protection laws, *i.e.* the same type of blanket exemption sought and rejected in *Wycoff*. Google does not nor could it credibly argue the Attorney General lacks legal authority to enforce the MCPA. Instead, Google argues it should not be subject to regulation by the State under the MCAP. Just as the Court in *Wycoff* rejected such immunity from regulation, the Attorney General submits this Court too should refuse such a request.

*Wycoff* is also poignant in analyzing the complaint because it set out the analytical framework for examining federal jurisdiction in the context of action filed under the DJA.

> Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. ***Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.*** If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.

*Wycoff*, 344 U.S. at 245, 248-49 (citation omitted) (emphasis supplied). Again, this is precisely what Google seeks here – to ward off possible action by the Attorney General asserting that it will have a good defense to any claims that might be filed. While the *Wycoff* Court used terms such as "dubious" or doubtful," later cases, including the Fifth Circuit in *Lowe,* quoting approvingly from Wright, Miller & Kane's commentary on *Wycoff*, and eliminated any question about the effect on jurisdiction where a party asserts a defense to threatened state law claims in a declaratory action:

> Despite the [*Wycoff*] Court's use of such words as 'doubtful' and 'dubious,' it seems clear that this is the law today, that the narrow view is the correct one, and

[13]

> that a historical test must be used to measure federal jurisdiction in declaratory
> actions.  Therefore, *if, but for the availability of the declaratory judgment*
> *procedure, the federal claim would arise only as a defense to a state created*
> *action, jurisdiction is lacking.*

*Lowe,* 723 F.2d at 1180 (quoting Federal Practice and Procedure:  Civil 2d § 2767, at 744-45)

(italics in original).  Moreover, the *Lowe* Court said "[w]hile we are in agreement with these

views, what is more important is that the Supreme Court has most recently reaffirmed the

conclusion stated by Wright, Miller and Kane, quoting with approval the italicized portion of the

language set out above." *Id.* (citing *Franchise Tax Board v. Construction Laborers Vacation*

*Trust,* 463 U.S. 1, 103 S.Ct. 2841, 2846-2847, 77 L.Ed.2d 420, 431 (1983).

Following *Wycoff,* a number of courts, including the Fifth Circuit in *Gaar v. Quirk,* 86

F.3d. 451, 453 (5th Cir. 1996), have applied this jurisdictional principle in the context of

declaratory actions.  See *E.I. DuPont de Nemours & Co. v. Sawyer,* 517 F.3d 785, 801 (5th Cir.

2008) (citing *Wycoff*) (holding that "[w]here the complaint in an action for declaratory judgment

seeks in essence to assert a defense to an impending or threatened state court action, it is the

*character of the threatened action,* and not of the defense, which will determine whether there is

federal-question jurisdiction in the District Court."); *Armstrong v. Kennedy Krieger Inst., Inc.,*

2012 WL 1554643, at * 5 (D. Md., 2012 (an affirmative defense does not create a substantial

federal question); *Pinney v. Nokia, Inc.,* 402 F.3d 430, 448 (4th Cir. 2005) (affirmative defense

of preemption cannot serve as a basis for removal under the substantial federal question

doctrine); *Shad v. Z-Tel Comm., Inc.,* 2005 WL 83337, at *4 (N.D. Ill. 2005) (federal jurisdiction

cannot be based on a federal defense, including a preemption defense, with the limited exception

of the conversion of a state law claim to a federal claim via the complete preemption doctrine).[3]

---

[3]     *Cf. Lipscomb v. Columbus Mun. Separate Sch. Dist.,* 269 F.3d 494 (5th Cir. 2001) (explaining the
distinction between redress for an existing injury through the Declaratory Judgment Act and the anticipation of a
state judicial action) ("Since the state legislative action giving rise to [federal plaintiff's] claim is the Mississippi

[14]

In *Gaar*, the Fifth Circuit held that a "petition for declaratory judgment concerning federal law is not sufficient to create federal jurisdiction; 'hence the relevant cause of action must arise under some other federal law.'" *Id.* at 453 (citing *Lowe*, 723 F.2d at 1179).  In that case, the Court addressed federal declaratory judgment asserting immunity under the federal Longshore and Harbor Workers' Compensation Act ("LHWA") against a pending malpractice case in state court.  *Id.*  Neither party raised a jurisdictional defect, but the Court reviewed its subject matter jurisdiction *sua sponte*.  The Court concluded that federal jurisdiction was premised on the LHWCA and general maritime law in providing an immunity defense to the state law claim.  *Id.* at 454.  In finding jurisdiction lacking, the Court stated:

> When a declaratory judgment complaint essentially invokes a federal-law defense to a state-based claim, it is the character of the threatened action that determines whether federal courts have jurisdiction.  Under this rule, the character of [state plaintiff's] state court action controls our determination.  Because [state plaintiff's] malpractice complaint is founded solely in state law, the district court was without jurisdiction to entertain [federal plaintiff's] petition, which is merely a defense to [state plaintiff's] claim.

*Garr*, 86 F.3d at 451 (citing *Lowe*, 723 F.2d at 1180).  Here, Google did the same thing as the *Garr* plaintiff asserting an immunity-based defense under Section 230 of the CDA.  Just as the LHWA provided an immunity defense to the state action, and not a claim arising under federal law, so too is Google's invocation of the CDA's immunity.  If the Attorney General files suit in state court against Google for claims Google contends are covered by Section 230's immunity, then it can raise is defense at that time. Thus, the existence of Section 230 does not turn this case into one "arising under federal law."

---

Constitution of 1890, [the] complaint does not anticipate a state judicial action, it seeks redress for an existing harm. *To the point, the threatened action is legislative impairment of contract.). Id.* at 500 (emphasis supplied).

**D.     The Character of the Threatened Action under the MCPA**

Applying *Wycoff* and *Garr* to the complaint, it becomes evident that the nature and character of the threatened action would not arise under federal law.  While Google has attempted to unilaterally re-characterize claims which have yet to fully come into existence as being federal in nature, the undeniable fact is that the MPCA provides causes of action which are not prohibited by any law relied on by Google.  The only law cited by Google as a basis for federal jurisdiction is Section 230 of the CDA, and preemption under the Copyright Act, and the FDCA.  Alternatively, Google alleges the Attorney General's investigation violates the First, Fourth Amendment through the Fourteenth Amendment and also § 1983.  Complaint, pp. 28-32.  Google's defenses to future claims do not define the jurisdictional inquiry and a number of potential claims exist which, if filed by the Attorney General, would arise not under federal law but under the MCPA.  The fact that the Attorney General may bring claims which are connected with federal law does not transform the case into one arising under federal law for purposes of Section 1331.  *Lowe,* 723 F.3d at 1178.

**(1)     Potential Claims against Google under the MCPA**

Section 230 of the CDA does provides a defense for websites such as Google arising from its passive display as a publisher of content created by third parties.  However, this type of passive conduct is not what the Attorney General is investigating via the Subpoena and the conduct at issue may fall within the three (3) exceptions to the CDA.

**(a)     Exceptions under the CDA**

First, the CDA provides that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property."  Section 230(e)(2).  Numerous courts have interpreted this provision as a carve-out from CDA immunity for both federal and state law

[16]

intellectual property claims. *See e.g., Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (S.D.N.Y. 2009); *Universal Comm. Sys. C. Lycos, Inc.*, 478 F.3d 413, 422-23 (1st Cir. 2007) ("Claims based on intellectual property laws are not subject to Section 230 immunity."); *Chicago Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craig's List, Inc.*, 519 F.3d 666, 670 (7th Cir. 2008) (holding that content providers' may be liable for contributory infringement if their system is designed to help people steal music or other material in copyright). The Attorney General's investigation seeks to determine whether Google has misled Mississippi consumers about steps Google takes to protect consumers from infringing and other illegal material in the way it sorts content in its services. This would not be preempted by the CDA.

Second, the CDA does not immunize Google from prosecution for its *own* acts of fraud or misconduct. For example, the Subpoena requests "documents concerning the use of Google Advertising Services to promote or serve ads on websites or in conjunction with videos on YouTube that are or appear to be promoting, facilities, offering for sale, disseminating, or engaging in dangerous or Illegal Content/Conduct. *See* Ex. A, (Doc. Request No. 16). This and similar requests in the Subpoena may illicit evidence that Google knowingly allows sites engaged in unlawful activities to use its advertising services, despite Google's express policies and representations to consumers forbidding such activities. Such evidence could demonstrate Google's affirmative and fraudulent misrepresentations that would be outside the scope of the CDA. *See CYBERSitter, LLC v. Google, Inc.*, 905 F. Supp. 2d 1080, 1086 (C.D. Cal. 2012) (denying Google's motion to dismiss on CDA immunity); *Mazur v. ebay, Inc.*, 2008 WL 618988, at *9 (N.D. Cal. 2008) ("The CDA does not immunize" an interactive computer service provider "for its own fraudulent misconduct."); *Anthony v. Yahoo! Inc.*, 421 F. Supp.2d 1257, 1263 (N.D.

[17]

Cal. 2006 ("[The CDA] does not absolve Yahoo! From liability for any [of its own]

accompanying misrepresentations.").

Third, the CDA does not immunize Google from prosecution for its own participation in

developing illegal content. Section 230 of the CDA provides immunity to interactive computer

services from liability only if the provider is not also an 'information content provider . . .

responsible, in whole or in part, for the creation or development of' the offending content.

Section 230(f)(3). For example, the Ninth Circuit held that a "website helps develop unlawful

content, and thus falls within this exception to Section 230, *if it contributes materially to the*

*alleged illegal conduct." Fair Housing Council of San Fernanndo Valley v. Roommates.Com,*

*LLC.*, 521 F.3d 1157, 1168 (9th Cir. 2008) (emphasis supplied). The Subpoena seeks documents

and information related to Google's Autocomplete function. *See* Ex. A, (Request Nos. 76-79).

Such requests could reveal evidence that Google engaged in unfair trade practices by

programming Autocomplete to direct users who are searching for lawful content and activities to

search instead for sites engaged in unlawful activities. An MCPA claim based on this type of

conduct would not be barred by the CDA because Google created, designed, and wholly controls

Autocomplete.

At best, the CDA offers Google a potential defense depending on the nature of a claim

asserted against it. The CDA does not, however, provide a pathway into federal court.

Obviously, factual development is still necessary to determine the applicability of Section 230,

which is the reason the Attorney General issued the Subpoena in the first instance. The Attorney

General is entitled to know whether Google is, in fact, acting as merely a "publisher" if third-

party material (*i.e.* a passive activity under Section 230 of the CDA), or whether it does more

than passively publish third-party content. Without the investigation and the pertinent

[18]

documents, the Attorney General cannot know that answer to the question.  Furthermore, to the
extent that claims against Google arise from possible tortious conduct related to actions other
than posting third-party content, the CDA does not provide a defense.  Section 75-24-25(g) of
the MCPA would be applicable to this type of claim because it prohibits the practice of
"representing that goods or services are of a particular standard, quality, or grade, or that goods
are of a particular style or model, if they are another." *Id.*

      In summary Google cannot, on the one hand, argue the Attorney General is prohibited, *ab
initio*, from conducting an investigation while at the same time unilaterally concluding that no
claims could exist against it, except under federal law.  This position begs the question:  What if
documents responsive to the Subpoena do exist and would provide a basis for claims not
excluded by the CDA?   Without enforcement of the Subpoena, only Google would know the
answer to this question.  The Subpoena clearly seeks information that may form the basis for
claims under the MCPA that are not otherwise precluded by the CDA.  As the Court said in *J &
W. Seligman v. Spitzer*, 2007 WL 2822208 (S.D.N.Y 2007) without such subpoenas, the
Attorney General "seldom could amass the evidence necessary" to commence fraud actions.
2007 WL 2822208 at *5.

     **E.**    **Exceptions to Rule against Asserting Defenses to Pending or Threatened
         State Law Claims to Establish Subject Matter Jurisdiction.**

      According to *Garr*, there are only two (2) exceptions to the rule concerning defenses
asserted state law claims:  (1) the artful pleading doctrine (in which the state-court plaintiff's
pleading is designed to conceal the fact that the claim was actually federal in nature; and (2)
when federal law completely preempts state law in that area.  *Gaar*, 86 F.3d at 454 n.11 (citing
*Aaron v. Nat. Union Fire Ins. Co.*, 876 F.2d 1157, 1161 (5th Cir. 1989).  As in *Garr*, neither
exception applies to this case.

[19]

### (1)    The Artful Pleading Doctrine is not Applicable

The artful pleading doctrine does not apply in this case because there is not a presently-filed state court complaint that would be "designed to conceal the fact that the claim was actually federal in nature." *Id.* That leaves only complete preemption, which is not present.

### (2)    Complete Preemption does not Exist.

As set forth by the Fifth Circuit in *Garr*, the only other means to federal jurisdiction in the absence of the artful pleading doctrine is complete preemption. *Gaar*, 86 F.3d at 454 n.11. The Supreme Court has held that complete preemption is a basis for the invocation of federal subject matter jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Under the complete preemption doctrine, the Court has "concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-plead complaint rule.'" *Id.* (citing *Metropolitan Life Ins. Co., v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). The *Caterpillar* Court held that "[o]nce an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (citing *Franchise Tax Board of Cal. v. Constr. Labors Vacation Trust for Southern Cal.*, 461 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 Led.2d 420 (1983).

The Supreme Court has found only three (3) statutes having the type of preemptive force to support complete preemption for jurisdictional purposes: (1) Section 301 of the Labor-Management Relations Act (LMRA), (2) Section 502 of the Employee Retirement Income Security Act (ERISA), and (3) Sections 85 and 86 of the National Bank Act. *See Cuomo v. Dreamland Amusements, Inc.*, 2008 WL 4369270 at *3 (S.D.N.Y September 22, 2008). *Id.*

[20]

(citing *Sullivan v American Airlines, Inc.*, 424 F.3d 267, 271 (2nd Cir. 2005). "These statutes are distinctive because they 'provide the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Cantrell v. Briggs & Veselka Co.*, 2014 WL 6900846 at *2. (S.D. Tex December 5, 2014).

In *Caterpillar*, the Court offered an example, citing *Avco Corp. v. Machinists*, where the Court said complete preemption exists where "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts." *Caterpillar*, 482 U.S. at 394. However, "[a]side from complete preemption, a defense of preemption does not support removal to federal court 'even if the defense is anticipated in the plaintiff's complaint and even if both parties concede that the federal defense is the only question truly at issue." *Id.* (emphasis supplied). Here, state law claims may exist independently from the federal law relied by Google. Furthermore, Google does argue the existence complete preemption or that any statute that the Supreme Court has determined completely preempts state law for purposes of subject matter jurisdiction.

Google does allege certain claims may be preempted under the Copyright Act and the FDCA. Again, this requires speculation on Google's part as no state law causes of action have been filed. Further, neither the Copyrights Act nor the FDCA are complete preemption statutes. Google, of its own accord, recognizes that the Subpoena is not completely preempted. ("The Attorney General's Inquiry, *in so far as* it pertains to possible copyright infringement or the importation of prescription drugs is preempted by the Copyright Act, including the DMCA, and by the FDCA. *Id.* at ¶ 105 (emphasis supplied). At best, what Google has articulated is a preemption defense but not complete preemption.

[21]

(a)     Neither the Copyright Act nor the FDCA Preempt the Subpoena.

In looking a preemption under the Copyright Act, the Fifth Circuit applies the "extra element" test and where a right under state law is not "equivalent" to any of the rights in the scope of federal copyright law, there is no preemption if "one or more qualitatively different elements are required to constitute the state-created cause of action. *Computer Mgmt. Asst. Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000).  As previously set forth, the elements of the Attorney General's potential state law causes of action do not overlap with federal copyright law.  The Attorney General's investigation seeks evidence to determine whether Google has misled consumers about the steps it takes to protect consumers from infringing and other illegal material in the way it sorts content in its services.  Proving unfair or deceptive trade practices based on this theory would not involve the same elements as a copyright infringement claim.[4]

Depending on what the evidence shows, the Attorney General could pursue a number of claims based on misrepresentation, none of which would be preempted by the Copyright Act, including: (1) misrepresentations about the quality of search results; (2) misrepresentations; about Google's advertising services with partner websites; (3) misrepresentations to advertisers on YouTube or on websites that partner with Google; (4) deceptive trade practices by directing consumers to dangerous or illegal conduct through Autocomplete; and (5) Unfair and deceptive

---

[4]     To establish copyright infringement, only two elements must be proven:  (1) ownership of a valid copyright, and (2) copying of the work or otherwise invading one of the exclusive rights of copyright holders (publicly performing, displaying, etc.).  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 341, 361 (1991); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991).  In contrast, a deceptive trade practices claim would require proof of misrepresentation, thus satisfying the "extra element" test.  In *Computer Mgmt. Asst. Co.,* the Fifth Circuit held that Louisiana's unfair trade practices claims were not preempted by the Copyright Act because they required proof of the "extra element" of fraud or misrepresentation.  *Id.*

practices by using user information to direct users to websites containing illegal or dangerous conduct.

## V.    Google failed to State a Justiciable Claim under the First and Fourteenth Amendment and Section 1983.

Whether analyzed in terms of subject matter jurisdiction or under Article III's justiciability doctrine, Google failed to state a justiciable First and Fourteenth Amendment claim based "chilling" or "retaliation."  Google claims the Attorney General's investigation "chill[s] the operation of Google's search engine, Autocomplete feature, YouTube video-sharing site and advertising thereby threatening to silence vast amounts of protected speech" in violation of the First Amendment.  Complaint, ¶ 97.  Notably absent from this contention is any specific instance in which constitutionally protected speech has actually been silenced or that Google has been forced to take any steps to remove otherwise protected speech as a result of the Attorney General's investigation.  Google further claims that "[t]he Attorney General's Inquiry against Google constitutes the exercise of prosecutorial and/or civil regulatory authority under color of state law."  *Id.* at ¶ 98.  Google also alleges "[t]he Attorney General's Inquiry has violated, is violating, and any further steps . . . would further violate the rights of Google under the First and Fourteenth Amendments.  *Id.* at ¶ 100.  Notably absent is a constitutional challenge, either facial or as applied, to any state statute.  Google does not allege that the Attorney General is trying to enforce an unconstitutional statute against it, either facially or as applied but confines its complaint to what it terms the "Attorney General's Inquiry."  Complaint ¶¶ 94-100.

In *Laird v. Tatum*, 404 U.S. 1, 11 (1972) the Supreme Court said "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights.  *Id.* at 11. (citing *Baird v. State Bar of Ariz.*, 401 U.S. 1 (1971); *Keyishian v. Board of Regents*, 385 U.S. 589

(1967); *Lamont v. Postmaster General*, 381 U.S. 301 (1965); and *Baggett v. Bullitt*, 377 U.S. 360

(1964)).  However, the Court said that "[i]n none of these cases, . . . did the chilling effect arise

merely from the individual's knowledge that a governmental agency was engaged in certain

activities or from the individual's concomitant fear that, armed with the fruits of those activities,

the agency might in the future take some other and additional action detrimental to that

individual." *Laird*, 408 U.S. at 11.

In reversing the lower court, the *Laird* Court held that federal court jurisdiction cannot be

invoked by a party who alleges his First Amendment right is being "chilled *by the mere existence*

*without more, of a governmental investigative and data gathering activity* that is alleged to be

broader in scope than is reasonably necessary for the accomplishment of a valid governmental

purpose." *Laird*, 408 U.S. at 11. This is precisely what Google has alleged.  *See* Complaint, ¶

99 ("The Attorney General's Inquiry is not the least restrictive means of accomplishing any

compelling governmental purpose and is not narrowly tailored to accomplish any compelling

purpose.").  Clearly because there is no existing lawsuit against it, Google fears litigation that

may result in the future.  Such "subjective chilling" of speech does not confer federal

jurisdiction.

> [t]hat the alleged 'chilling' effect may perhaps be seen as arising from [plaintiff's] perception of the system as inappropriate to the [defendant's] role under our form of government, . . . or as arising from [plaintiff's] *less generalized yet speculative apprehensiveness that the [defendant] may at some future date misuse the information in some way that would cause direct harm to [plaintiff].  Allegations of subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of a specific future harm;* 'the federal courts establishment pursuant to Article III of the Constitution do not render advisory opinions.

*Id.* (emphasis supplied).[5]  Because Google has not challenged the Attorney General's enforcement of an allegedly unconstitutional statute, a generalized claim about the alleged chilling effect of the Attorney General's investigation is insufficient to establish federal jurisdiction under *Laird.*  The infirmity of Google's First Amendment claim is further highlighted by the Sixth Circuit's holding in *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).  There, the Court said "[d]eclaratory judgments are typically sought before a completed 'injury-in-fact' has occurred,. . . but must be limited to the resolution of an 'actual controversy.'"  *Magaw*, 132 F.3d at 279 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937)).  Furthermore, "pre-enforcement review is usually granted under the [DJA] when a *statute* 'imposes costly, self-executing compliance burdens or if it *chills protected First Amendment activity." Id.* at 279 (citations omitted).  *See also Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974) (petitioner's challenge is to those *specific provisions of state law* which have provided the basis for threats of criminal prosecution against him.  Google does not allege that a state statutory scheme imposes costly, self-executing compliance burdens or chills protected First Amendment activity.  The Subpoena at issue is not self-executing and would require the Attorney General to file an enforcement action in state court in the event of non-compliance by Google.  In the event of non-compliance, Google will have the opportunity to litigate its defenses to the Subpoena in a state forum.

---

[5]      *Cf. Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298-99 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, *but proscribed by statute* and there exists a credible threat of prosecution, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.") (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *See also Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974) ("When fear of criminal prosecution under *an allegedly unconstitutional statute* is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge *the statute*.").

The second exception to the "chilling effect" has traditionally been called "overbreadth." This exception has been consistently applied only to claims that a statute, though constitutional in its present application, tends to "chill" the constitutional free speech rights of others in different contexts. In *Wallace v. Brewer*, 315 F. Supp. 431, 455 (D.C. Ala. 1970), the Court stated:

> After *Dombrowski* [*v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22*], it is clear that state criminal prosecution can be enjoined under 42 U.S.C. § 1983 ***where a challenged statute*** which infringes upon first amendment rights ***is unconstitutional on its face or where the statute is applied for purposes of discouraging protected activities.*** (citation). It is also clear that *Dombrowski* relief is not limited to state criminal prosecutions, but also is applicable to state civil actions. In *Machesky v. Bizzell*, 414 F.2d 283 (5th Cir. 1969), the Fifth Circuit found *Dombrowski* applicable to plaintiffs' challenge of a state court injunction which enjoined their picketing activities. The *Dombrowski* relief, however, was premised on the *vagueness* and *overbreadth* of the state court injunction which infringed upon plaintiffs' first amendment rights.
>
> [T]the *Dombrowski* elements must be present: *a statute, or as in Machesky an injunction, challenged on its face as an unconstitutional abridgement of first amendment rights.* In this case these elements are not present; only the action itself is challenged as infringing upon plaintiffs' first amendment rights. Plaintiffs' defenses to the action, constitutional or otherwise, must be raised in the state courts with right to appeal through the state courts and to the United States Supreme Court.

*Wallace*, 315 F. Supp. at 455 (emphasis supplied).[6] Google does not challenge any state statute as being unconstitutional, either facially or as applied, nor has it challenged any statutory scheme on grounds of "vagueness" or "overbreadth."

---

[6]    In *Virginia v. Hicks*, 539 U.S. 113 (2003), the Supreme Court again addressed the "overbreadth" doctrine. *Id.* Where the defendant convicted under state law for trespass did not challenge the validity of the statute itself, but claimed the policy was "over-broad under the First Amendment and [could not] be applied to him – or anyone else." *Hicks*, 539 U.S. at 118. The Court stated that the "First Amendment doctrine of overbreadth is an exception to our normal rule regarding standards for facial challenges." *Id.* (citation omitted).

> The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the law's plainly legitimate sweep,' (citation) suffices to invalidate *all* enforcement of the law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression (citations).

Even if Google could make out a *prima facie* case of First Amendment retaliation – which it cannot – Google showed in its brief why that claim has no likelihood of success on the merits. Specifically, as Google acknowledges, the Attorney General can defeat a retaliation claim by showing that the "[s]tate prosecution [or action] was undertaken with no hope of a valid conviction [or success]." Supp. Mem. at 25 (quoting *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979)). In this regard, the Fifth Circuit has adopted the "bad faith" standard applicable in *Younger* abstention cases to evaluate retaliation claims. *See Thompson*, 593 F.2d at 1387, n.22.

The Fifth Circuit actually clarified the standard there explaining that the Attorney General's burden is to show [ ] by a preponderance of the evidence that it would have reached the same decision to prosecute even had the impermissible purpose not been considered." *Id.* As discussed, the Attorney General has demonstrated, as a matter of law, that the Subpoena was likely to produce information directly relevant to whether Google is in violation of the MCPA, leaving no doubt that the Attorney General would have issued the Subpoena under any circumstances to ensure that Google is not injuring the citizens of Mississippi. *See Smith v. Hightower*, 693 F.2d 359, 369 (5th Cir. 1982) ("[t]he strength and seriousness of the charges remains relevant in determining if the prosecution would have been brought anyway under the third prong of *Thompson*.").

---

*Id.* at 118-19. Similarly the Supreme Court in *U.S. v. Lemons*, 697 F.2d 832 (8th Cir. 1983), stated that "[w]e limit our inquiry to the constitutionality of the statute as applied in this case pursuant to the prudential rule of self-restraint established by the Supreme Court. . . ." *Id.* at 834. In describing the chilling effect exception to the overbreadth doctrine, Court found that it has been applied "only to claims that a statute, though constitutional in its present application, tends to 'chill' the constitutional free speech rights of others in different contexts, in violation of the first amendment." *Id.* at 835. (citations omitted). In *Forsyth Cnty. Ga. v. Nationalists Movement*, 505 U.S. 123, 129 (1992), the Court held that the "exception to the general standing rules is based on the appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Id.*

[27]

**B.      Jurisdiction does not exist under 28 U.S.C. § 1443(a)(3).**

Alternatively, Google asserts jurisdiction is proper under 28 U.S.C. § 1343(a)(3).  This argument fairs no better than did Section 1331.  In *Smith v. West Indian Company Limited* the Court noted that "pursuant to 28 U.S.C. § 1343(a)(3), federal courts have jurisdiction over civil rights claims; however, the statute does not "create a cause of action in and of itself."  2014 WL 65366 (D.V.I. January 7, 2014) (citing *Eddy v. V.I. Water & Power Auth.*, 961 F. Supp. 113, 115 (D.V.I. 1997).  "Instead, "section 1343(a)(3) 'is the jurisdictional counterpart' of the substantive law contained in section 1983."  *Id.* (quoting *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 613 (1979)).

For a Section 1983 action, a plaintiff must demonstrate that an official (1) acted under color of law, and (2) the official's actions deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal law.  *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).  Thus, the Court will only have jurisdiction under § 1343(a)(3) if plaintiff's complaint states a valid § 1983 claim.  *Id.* (citation omitted).  The Supreme Court has held that a plaintiff can only sue under § 1983 for violations of federal rights, including federal laws, not just mere violation of federal statute.  *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

The mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).  *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999) (citing *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) (dismissing § 1983 claims for lack of subject matter jurisdiction because the federal claims were insubstantial and were pre-textual state claims).

Google has not alleged the violation of any federal law or federal right that would state a claim under Section 1983. This is due to the fact that Google has only alleged defenses to potential state law claims and not constitutional violations.

Analysis of Google's First and Fourth Amendment and thus § 1983 claims yield the same result. In *Anne Arundel Cnty. Maryland v. West Street, Inc.*, 1991 WL 263559 (D.M.D December 3, 1991) the Court found that subject matter jurisdiction was lacking under Section 1343(a)(3) where a party sought to use the First Amendment as a defense to the enforcement of the county ordinance. The Court held that the defendant in a state law case cannot transform the case into a federal question and thereby remove the case to federal court asserting a defense based on federal constitutional grounds. *Id* at *1 (citing *Korb v. Raytheon Co.*, 707 F. Supp. 63, 66 n.1 (D. Mass. 1989). Likewise, Google fails to state a Fourth Amendment claim under § 1983. *See Tapia v. City of Albuquerque*, 10 F. Supp.3d 1207, 1317 (D.N.M. 2014) (plaintiff cited no authority for the proposition that when a government attorney issues a defective subpoena, the state-action doctrine and the Fourth Amendment elevate the subpoena's defects from a discovery dispute *to a problem of constitutional dimension*).

Google does not allege the Attorney General has no authority to issue the Subpoena, or that the statute under which he issued the Subpoena is constitutionally defective. Instead, Google objects to the content and scope of the Subpoena which is not a constitutional violation for purposes of *Younger*. *Tapia*, 10 F. Supp. 3d at 1317 ("If the opposing party objects to a subpoena's breadth or to the manner in which it issued, there is an easy solution: ask the tribunal – which after all, formally issued the subpoena – to narrow the subpoena's reach or to correct the defect."). *Id.* Thus, Section 1343(a)(3) does not confer subject matter jurisdiction on Google's claims.

[29]

## VI.    *Younger* Abstention Warrants Dismissal.

While the Court should dismiss the case for lack of subject matter jurisdiction, alternatively, the case should be dismissed under the Younger abstention doctrine.  Under the rule set out in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted. While there is no currently filed lawsuit pending in state court, the Fifth Circuit has recognized that "*Younger's* applicability has been expanded to include certain kinds of civil and even administrative proceedings that are 'judicial' in nature." *Texas Assoc. of Business v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004); *see also Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (applying *Younger* to matter before a state agency).

*Younger's* three-prong test is well-established:  (1) the dispute should involve 'ongoing state judicial proceedings (2) the state must have an important interest in regulating the subject matter of the claim; and (3) there should be an 'adequate opportunity in the state proceedings to raise constitutional challenges. *Wighman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996) (quoting *Middlesex,* 457 U.S. at 432.  Here, Google seeks an injunction against the Attorney General, a state constitutional officer, from acting on two matters that are expressly committed to state officials, state law, and state courts:  (1) the legality of subpoena issued under state law and enforceable only in state courts and (2) the enforcement of Mississippi's consumer protection laws.

Based on *Younger* and its progeny, all three prongs are satisfied and abstention is warranted.  First enjoining and quashing the Attorney General's state-law subpoena will interfere with the on-going state consumer protection investigatory proceedings. *See* Ex. A (Subpoena).

Second, the ongoing proceedings involve multiple important state interests, namely the enforcement of state subpoenas issued under state statutory authority and the enforcement of state consumer protection laws. Third, state law and the pending state consumer protection investigatory proceeding through the issuance the Subpoena, provides Google with the opportunity to raise its constitutional arguments in state court, if necessary.[7]  A refusal to abstain will create substantial federal-state friction over the enforceability of state issued subpoenas and frustrate the state's ability to enforce its consumer protection laws.  By contrast, Google cannot demonstrate irreparable harm in the face of abstention.  It will be able to raise its defenses before a state court eliminating federal intervention and avoiding duplicative litigation.

A.    **The Subpoena Constitutes an "On-Going" State Proceeding.**

*Younger's* first prong is met when the state action, whether civil or administrative, is "judicial in nature." *Texas Ass'n of Bus. v. Earl*, 388 F.3d 515, 520 (5th Cir. 2004); *Ohio Civil Rights Comm'n*, 477 U.S. 619 (1986).  In the context of *Younger,* the Supreme Court has explained that "judicial in nature" means a state process that "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed to already exist." *NOPSI*, 491 U.S. at 371.  The Subpoena issued by the Attorney General as part of an ongoing state law investigation into whether Google's activities violate the MCPA is "judicial in nature."

Google may contend that *Younger* is to be applied only to judicial proceedings (*i.e.,* filed cases) and does not apply to subpoenas issued by a state officer prior to the filing of a civil case or prior to a criminal indictment.  However, it has repeatedly been held that a subpoena issued by an attorney general "commences an adversary process during which the person served with the subpoena may challenge it in court before complying with its demands.  As judicial process is afforded before any intrusion occurs, the proposed intrusion is regulated by, and its

---

[7]    The Subpoena must be enforced in Chancery Court.  Miss. Code Ann. § 75-24-17.

justification derives from, that process." *In re: Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000) (internal citations omitted).

A number of courts confirm that investigatory proceedings occurring pre-indictment are an integral part of a state criminal prosecution and constitute 'ongoing state proceedings' for *Younger* purposes. *See Empower Texans, Inc. v. Texas Ethics Comm'n*, 2014 WL 1666389 (W.D. Tex. 2014); *Geir v. Miss. Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013) (federal court, *sua sponte*, abstained under Younger); *Mir v. Shah*, 2012 WL 6097770 (S.D.N.Y. 2012); *Cuomo v. Dreamland Amusements*, 2008 WL 4369270 (S.D. N.Y 2008); *J & W. Seligman v. Spitzer*, 2007 WL 2822208 (S.D.N.Y 2007); *Mirka United, Inc., v. Cuomo*, 2007 WL 4225487 (S.D.N.Y November 27, 2007); *Kaylor v. Fields*, 661 F.2d 12177, 1182 (8th Cir. 1981) ("The issuance [by the Arkansas Attorney General] of the subpoenas . . . is part of a state proceeding in which the plaintiffs have an opportunity to present their claims" and therefore requires Younger abstention.).

> Although the contested subpoenas are not part of a criminal proceeding, they were issued by the Attorney General pursuant to an investigation of Plaintiffs' allegedly illegal activities, and the information sought may be used to initiate civil or criminal proceedings against Plaintiffs. Moreover, the contested subpoenas serve a similar purpose to subpoenas in criminal matters. They are an "integral part" of a potential proceeding against Plaintiffs, and without such subpoenas, the Attorney General "seldom could amass the evidence necessary" to commence fraud actions.

*In J & W Seligman & Co*, 2007 WL 2822208 at *5. The *Seligman* decision was buttressed by an earlier decision in *Hip-Hop Summit Action Newwork v. New York Temp. State Comm'n on Lobbying*, 2003 WL 22832569 at * 3 (S.D.N.Y Nov. 25, 2003) ("[T]he Attorney General is a state official charged with investigating illegal activities, who issued the contested subpoenas pursuant to that power. The issuance of subpoenas by a state official under these circumstances

constitutes and on-going proceeding for purposes of *Younger*."). *Younger's* first requirement is met.

**B.      The Subpoena Implicates Multiple Compelling State Interests.**

The second *Younger* prong is met because the Attorney General's investigation and the Subpoena in furtherance of that investigation, involve compelling state interests. Moreover, the enforcement of a state subpoena enforceable only in state court is an important state interest to the judicial branch of government. *See Judice v. Vail*, 430 U.S. 327, 335-36 (1977). The Attorney General maintains a strong interest in maintaining the effectiveness of the consumer protection subpoenas as a prosecutorial tool. *See J & W Seligman & Co.*, 2007 WL 2822208, at * 6 ("The Attorney General's investigation also involves an '*important state interest:*" *investigating and preventing fraudulent conduct and enforcing subpoenas issue pursuant to that law*."). If a party, when served with a subpoena can proceed directly to federal court and eliminate the state from which it was issued, the interests of federalism and comity are severely damaged.

As the Court in *J & W Seligman* said, these subpoenas are an "'integral part' of a potential proceeding against Plaintiffs, and without such subpoenas, the Attorney General 'seldom could amass the evidence necessary' to commence fraud actions." 2007 WL 2822208 at *5. State courts similarly have a strong interest in supervising the issuance of subpoenas issued under state law, in reviewing their legality, and enforcing their terms consistent with law. Federal intervention to vet the appropriateness of a state subpoena would interfere with these important state interests. Thus, prong two of *Younger* is met.

[33]

**C.**    **Google has an Opportunity to Challenge the Subpoena in State Court.**

The third *Younger* prong looks to whether the party has an adequate opportunity for judicial review in state court. This aspect of *Younger* is "fueled by the notion that courts of equity should not intervene where a party has an adequate remedy at law. *Cescos Int'l, Inc. v. Jortling*, 895 F.2d 66, 70 (2nd Cir. 1990). Where a compelling or "vital" state interest is involved, "a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Middleesex County Ethics Comm'n v. Garden State bar Ass'n*, 457 U.S. 423, 431 (1982); *NOPSI*, 491 U.S. at 365. However, even without the heightened burden, Google has the burden of proving, at a minimum, that the state procedure for appeal does not afford it an opportunity to present constitutional challenges and have those challenges addressed. *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1978). Google cannot satisfy its burden here for two (2) reasons. First, after the Attorney General issued the Subpoena, Google could have brought a state court action to quash the subpoenas in state circuit court. The ability to a party to raise in Mississippi state courts a Fourth Amendment challenge to state subpoenas has been recognized for nearly one hundred years. *See Knox v. L.N. Dantzler Lumber Co.*, 114 So. 873, 878 (Miss. 1927).

Second, even if Google failed to comply with the Subpoena, the Attorney General still must file an enforcement action in state court under Section 75-24-17 of the Mississippi Code. If the Attorney General did not move to enforce the Subpoena, Google would suffer no adverse consequences from its failure to comply. If on the other hand, the Attorney General files an enforcement action Google would be afforded the full opportunity to present its defenses, constitutional and otherwise, before that state court tribunal. In *Empower Texans, Inc. v. Texas*

[34]

*Ethics Commission*, the Court was unpersuaded by the plaintiff's concern regarding non-compliance with a subpoena issued by the Attorney General:

> Plaintiffs seem particularly disturbed by the thought they might face legal consequences for failing to comply with a subpoena. Setting aside the fact that Plaintiffs could have moved to quash the subpoena rather than file a federal lawsuit, Plaintiff's argument is irrelevant. Nothing in *Younger* and its progeny requires Plaintiffs to be immunized from the consequences of their actions while pursuing their legal arguments.

2014 WL 1666389 at *4. For purposes of *Younger,* it is not relevant that the state court action to enforce the Subpoena is filed after a party has filed in federal court. *See Attorney General Abramms*, 761 F. Supp. at 241-42. In *Middleesex*, the Court addressed the importance underlying the policy of allowing state tribunals to act:

> *Younger v. Harris*, [ ] and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.*

*Middlesex*, 457 U.S. at 430 (emphasis supplied). With the available state court action in the event an enforcement action is filed, *Younger* "precludes any presumption that the state courts will not safeguard federal constitutional rights." *Id.* When it is abundantly clear that the party has an opportunity to present their federal issues in the state proceeding, no more is required to invoke *Younger* abstention. *Judidice*, 430 U.S. at 337. More importantly, under *Younger,* any uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention." *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 78 (2nd Cir. 2003). Thus, the third *Younger* prong is satisfied.

[35]

**D.    Google's Fourth Amendment Claim does not Defeat *Younger* Abstention.**

Rather than move in state court to quash the subpoena, Google asks the Court to enjoin the Attorney General's investigation (thereby quashing the Subpoena) because it claims the subpoena's breadth violates Fourth Amendment standards. Complaint, ¶ 102-103. This argument rests on the proposition that the Fourth Amendment prohibits the issuance of a subpoena that may capture protected speech and that the subpoena "demands information about lawful conduct that is immunized from state regulation under federal statutory and constitutional law, including Section 230 of the CDA, the First and Fourteenth Amendments, the Copyright Act, including the DMCA, and the FDCA. Complaint, ¶ 103.

First, Google does not allege that the Attorney General is without legal authority to issuance the Subpoena in the first instance. In fact, the Attorney General issued the Subpoena pursuant to Miss. Code Ann. § 75-24-27. Instead, Google attacks the breadth of the Subpoena and that it may implicate protected speech under the First Amendment. Furthermore, while the Fourth Amendment's prohibition against unreasonable searches applies to administrative subpoenas, the Supreme Court has held that such subpoenas are, at best, "constructive searches." *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 202-08, 66 S.Ct. 494, 502-05, 90 L.Ed. 614 (1946). "An administrative subpoena is not self-executing and is therefore technically not a 'search.' It is at most a constructive search, amounting to no more than a simple direction to produce documents, subject to judicial review and enforcement. Thus, unlike the subject of an actual search, the subject of an administrative subpoena has an opportunity to challenge the subpoena before yielding the information. In the course of that resistance, the Fourth Amendment is available to the challenger as a defense against enforcement of the subpoena. *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3 (1st Cir. 1996).

[36]

As described by the Supreme Court in *Walling*, the Subpoena issued by the Attorney General is not self-executing. If Google does not comply with the Subpoena, the Attorney General must apply to the Chancery Court of Hinds County, Mississippi, First Judicial District, for an order compelling compliance in accordance with Miss. Code Ann. § 75-24-17. As such, administrative subpoenas do not require full probable cause for enforcement. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). The *Morton Salt* Court held that as long as subpoenaed information was "reasonably relevant to the agency investigation," "not too indefinite" and "within the authority of the agency," the Fourth Amendment was not offended. *Id.* at 652, 70 S.Ct. at 368-69. In rejecting a Fourth Amendment claim regarding administrative subpoenas, the Court in *Tapia v. City of Albuquerque*, 10 F. Supp.3d 1207, 1317 (D.N.M. 2014), stated that:

> [p]laintiffs cited no authority for the proposition that when a government attorney issues a defective subpoena, the state-action doctrine and the Fourth Amendment elevate the subpoena's defects from a discovery dispute *to a problem of constitutional dimension*. If the opposing party objects to a subpoena's breadth or to the manner in which it issued, there is an easy solution: ask the tribunal – which after all, formally issued the subpoena – to narrow the subpoena's reach or to correct the defect."

*Id.* After the Attorney General issued the Subpoena, Google could have moved to quash the subpoenas in state circuit court. The ability to a party to raise in Mississippi state courts a Fourth Amendment challenge to state subpoenas has been recognized for nearly one hundred years. *See Knox v. L.N. Dantzler Lumber Co.*, 114 So. 873, 878 (Miss. 1927). While Google has tried to link its Fourth Amendment assertion to the First Amendment, courts have made clear that the potential for a subpoena or search warrant to capture material protected by the First Amendment adds no new element to the traditional Fourth Amendment inquiry. *United States v. Mayer*, 490 F.3d 1129 (9th Cir. 2007).

[37]

E.     **Google's Preemption Claim does not Defeat *Younger*.**

Google raised preemption under both the Copyright Act and the FDCA arguing

hypothetical claims the Attorney General may file in the future would be preempted.  Complaint,

¶¶ 104-105.  Presumably this preemption claim is an attempt to avoid *Younger* but the argument

fails for two (2) reasons:  (1) Google is incorrect that federal law preempts the Subpoena  and (2)

the Supreme Court has confirmed that a federal court must abstain under *Younger* even when the

plaintiff raises a "substantial claim" of preemption.  *See New Orleans Pub. Serv. Comm'n.*

*(NOPSI) v. Council of City of New Orleans*, 491 U.S. 350 (1989).

In that case, a public utility argued "*Younger* does not require abstention in the face of a

*substantial claim* that the challenged state action is completely preempted by federal law." 491

U.S. at 364.  The Court summarized the utility's argument as "call[ing] into question the

prerequisite of *Younger* abstention that the State have a legitimate, substantial interest in its

pending proceeding." *Id.*  The utility also argued "a district court presented with a pre-emption

based request for equitable relief should take a *quick look* at the merits; and if upon that look the

claim appears to be substantial, the court should endeavor to resolve it." *Id.*  (emphasis

supplied).  The Court rejected this argument holding "it is clear that the mere assertion of a

substantial constitutional challenge to state action will not alone compel the exercise of federal

jurisdiction." *Id.* at 365.[8]

The utility also argued abstention was improper under *Younger* because the "federal

plaintiff will 'suffer irreparable injury' absent equitable relief." *NOPSI*, 491 U.S. at 365.

According to the utility, "[i]rreparable injury may possibly be established, *Younger* suggested, by

a showing that a ***challenged state statute*** is 'flagrantly and patently violative of express

---

[8]          The Court further clarified that when it conducts "inquiries into the substantiality of the State's interest in
its proceedings we do not look narrowly to its interest in the outcome of the particular case. *NOPSI*, 491 U.S. at 365.

constitutional prohibitions. . . ." *Id.* at 366 (emphasis supplied). The utility further claimed "*Younger's* posited exception for state statutes 'flagrantly and patently violative of express constitutional prohibitions' ought to apply equally to state proceedings and orders that are flagrantly and patently violative of federal preemption (which is unlawful only because it violates the express constitutional proscription of the Supremacy Clause)." *Id.*

Lastly, the utility argued that "even if a *substantial claim* of federal preemption is not sufficient to render abstention inappropriate, at least a *facially conclusive* claim is." *Id.* at 367. The Supreme Court did not have to reach this question because it could not "conclusively say it [the Council] [was] wrong without further factual inquiry – and what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." *Id. See also Attorney General Spitzer*, 2007 WL 282208, at *4 (applying *NOPSI*, and abstaining from considering preemption of state attorney general issued subpoenas. In *Cuomo*, the Second Circuit, in applying *NOPSI* and not abstaining based on pre-emption, summarized as follows:

> The Supreme Court noted that such an exception would be illogical, because the federal interest in enforcing constitutional guarantees is just as strong as the federal interest in enforcing federal statutes that may preempt state laws, and 'the mere assertion of a substantial constitutional challenge to a state action will not alone compel the exercise of federal jurisdiction.

*Cuomo*, 2008 WL 4369270 at *11. Here, Google has not alleged, much less demonstrated the existence of a facially conclusive constitutional infirmity of any state statute or regulation or proceeding.

## VII.  Google's Claims are Not Ripe.

Finally as this case is still in the investigatory stages, it is not ripe for adjudication. Google asks this Court to speculate about claims the Attorney General may bring in the future as

a result of his on-going investigation and based on its unilateral interpretation of the documents sought in the Subpoena. The Attorney General, not Google, is best positioned and statutorily authorized, to determine what claims may be brought against Google under the MCPA. The doctrine of ripeness, as a doctrine of justiciability "drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 57 n.18 (1993).

In particular, "[a] Court should refrain from enjoining an administrative action, such as an investigation, where the issue sought to be reviewed is not 'ripe' for review." *Cuomo v. Dreamland Amusements, Inc.,* 2008 WL 4369270 at *7 (S.D.N.Y. September 22, 2008) (citation omitted). Because Google has not even responded to the Subpoena and the Attorney General has not made a final determination regarding Google's violations of the MCPA, this case is not ripe. Federal Courts must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law." *Wycoff,* 344 U.S. at 243. "A maximum of caution is necessary in the type of litigation that we have here, where a ruling is sought that would reach far beyond the particular case." *Id.* Finally, factual development of the case still remains with respect to claims against Google under the MCPA and Google's claims are not ripe.

**VIII.   Conclusion**

For the reasons set forth, Jim Hood, Attorney General for the State of Mississipp, in his official capacity, requests that the Court grant the motion and dismiss the case with prejudice.

This the 12th day of January, 2015.

Respectfully Submitted,

JIM HOOD, ATTORNEY GENERAL FOR THE
STATE OF MISSISSIPPI, in his official capacity

By:    JIM HOOD, ATTORNY GENERAL FOR THE
        STATE OF MISSISSIPPI

By:    */s/ Douglas T. Miracle*
        DOUGLAS T. MIRACLE, MSB # 9648
        SPECIAL ASSISTANT ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-5654
Facsimile: (601) 359-2003
dmira@ago.state.ms.us

## CERTIFICATE OF SERVICE

    I, Douglas T. Miracle, Special Assistant Attorney General for the State of Mississippi, do

hereby certify that on this date I electronically filed the foregoing document with the Clerk of

this Court using the ECF system and sent a true and correct copy of the forgoing to counsel of

record:

    Daniel J. Mulholland
    FORMAN, PERRY, WATKINS, KRUTZ & TARDY, LLP - Jackson
    P.O. Box 22608
    200 S. Lamar Street, Suite 100 (39201-4099)
    Jackson, MS 39225-2608
    601/960-8600
    Fax: 601/960-8613
    Email: mulhollanddj@fpwk.com

    David H. Kramer - PHV
    WILSON, SONSINI, GOODRICH & ROSATI, PC
    650 Page Mill Road
    Palo Alto, CA 94304-1050
    650/493-9300
    Fax: 650/565-5100
    Email: dkramer@wsgr.com

[41]

Fred Krutz , III
FORMAN, PERRY, WATKINS, KRUTZ & TARDY
P.O. Box 22608
Jackson, MS 39225-2608
(601) 960-8600
Email: fred@fpwk.com

Blake C. Roberts - PHV
WILMER, CUTLER, PICKERING, HALE & DORR, LLP - Washington
1801 Pennsylvania Avenue, NW
Washington, DC 20006
Fax: 202/663-6363
Email: blake.roberts@wilmerhale.com

Jamie S. Gorelick - PHV
WILMER, CUTLER, PICKERING, HALE & DORR, LLP - Washington
1801 Pennsylvania Avenue, NW
Washington, DC 20006
202/663-6500
Fax: 202/663-6363
Email: jamie.gorelock@wilmerhale.com

Patrick J. Carome - PHV
WILMER, CUTLER, PICKERING, HALE AND DORR, LLP - Washington
1875 Pennsylvania Avenue, NW
Washington, DC 20006
202/663-6610
Fax: 202/663-6363
Email: patrick.carome@wilmerhale.com

Peter Neiman - PHV
WILMER, CUTLER, PICKERING, HALE AND DORR, LLP - New York
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212/295-6487
Fax: 212/230-8888
Email: peter.neiman@wilmerhale.com

Violetta G. Watson - PHV
WILMER, CUTLER, PICKERING, HALE AND DORR, LLP - New York
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212/230-8800

[42]

Fax: 212/230-8888
Email: violetta.watson@wilmerhale.com

This the 12th day of January, 2015.

/s/ Douglas T. Miracle
DOUGLAS T. MIRACLE

[43]