IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

Google, Inc.
                    *Plaintiff*                     )
                                                    )
                                                    )
        v.                                          )
                                                    )     No. 3:14-cv-981-HTW-LRA
                                                    )
                                                    )
                                                    )
Jim Hood, Attorney General of the                   )
State of Mississippi, in his official               )
capacity                                            )
                    *Defendant*                     )
                                                    )

---

**ATTORNEY GENERAL JIM HOOD'S MEMORANDUM IN OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION**

---

Jim Hood, Attorney General for the State of Mississippi in his official capacity (hereafter the "Attorney General" or "General Hood"), files this memorandum in opposition to Google's motion for temporary restraining order and preliminary injunction. ("Supp. Mem."). The Attorney General has separately filed a motion to dismiss Google's complaint for lack of subject matter jurisdiction and other grounds. *See* Ex. A (Attorney General Jim Hood's Memorandum in Support of Motion to Dismiss Complaint Based on Jurisdiction and Other Grounds) ("Mem. Dismiss"). The Attorney General incorporates the arguments and authorities set forth in the motion to dismiss with respect to subject matter jurisdiction and *Younger* abstention and will not repeat those arguments here in their entirety. For the reasons the case should be dismissed, the motion for preliminary injunction should be denied.

## I.   Introduction

Google's complaint and brief are replete with accusations against the Attorney General regarding his investigation concerning Google's possible violations of the Mississippi Consumer Protection Act, ("MCAP"), Miss. Code Ann. § 75-24-1, *et seq.*  Google charges the Attorney General has engaged in retaliation by issuing a subpoena for documents and information and that the Attorney General's investigation is having a "chilling effect" on its constitutionally protected speech in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

Google asks this Court to enjoin the Attorney General from any further investigation of Google and preemptively bar him from ever instituting civil litigation or criminal charges against it by virtue of 47 U.S.C. § 230 of the Communications Decency Act ("CDA").  Supp.  Mem. at 2.  Google also contends the Attorney General's Subpoena is preempted by the Copyright Act, 17 U.S.C. §§ 301, 512, and the Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 337 and that "[m]any of the Attorney General's inquiries concern copyright infringement. . . ." *Id.* at p. 3.  Google claims the FDCA bars the Attorney General from obtaining documents and information "relating to the importation of prescription drugs." *Id.*  Although Google objects to the investigation arguing it violates the enumerated statutory and constitutional provisions, Google does not challenge the constitutional validity of any state statute through which General Hood is conducting his investigation.

At present and due to the on-going status of the investigation, the Attorney General has not instituted criminal prosecution and/or civil litigation against Google.  As part of that investigation, the Attorney General served Google with an Administrative Subpoena and Subpoena Duces Tecum, *see* Ex. B ("Subpoena"), seeking documents and information.  This

Subpoena is directly related to finding out whether Google has violated the MCPA. Instead of challenging the Subpoena in state court, Google filed this action trying to preemptively litigate its defenses to claims that have yet to be filed. Obviously, the Attorney General cannot know the information the Subpoena will elicit. If the Subpoena reveals conduct by Google that violates the MCPA and for which Google is not immunized under the CDA, then he could proceed under the MPCA. So, initially, Google's challenge to the Subpoena clearly is not ripe because it requires this Court to assume that General Hood would bring an action that violates federal law. There is no basis in law or fact for such an assumption.

Even before assessing the preliminary injunction factors, Google has clearly failed to establish subject matter jurisdiction in filing this declaratory action. *See* Ex. A. Google asks this court to declare its rights, but the question is: "What rights would the Court be declaring?" According to Google's theory, ***any*** claims the Attorney General could possibly bring for matters sought via the Subpoena *violate* the CDA, the First, Fourth and Fourteenth Amendment to the Constitution, or be preempted by the Copyright Act and the FDCA.

Google repeatedly argues that it cannot be sued for being a publisher of third-party content posted on its website. Google's argument misses the point entirely given any number of claims that would be supported by the MCPA and not precluded by the CDA. From there, Google incorrectly presume its declaratory claims "arise under" federal law for purposes of Section 1331. In reality, Google's claims do not arise under federal law, but constitute defenses to potential and anticipated state law claims. For purposes of the Declaratory Judgment Act, ("DJA"), 28 U.C.C. § 2201 and 2202, defenses to threatened or impending state law claims do not confer federal subject matter jurisdiction; therefore, jurisdiction is lacking in this case.

[3]

## II.     Background

### A.     History of Proceedings

On October 21, 2014, the Attorney General issued the Subpoena at issue pursuant to

Miss. Code Ann. § 75-24-27.  *See* Ex. A. Google's response to the Subpoena was due on

November 20, 2014, but by agreement of the parties was extended to January 5, 2015.[1]

Complaint, ¶ 78.  On December 19, 2014, Google filed this lawsuit and sought a temporary

restraining order against the Attorney General.  Google took this step despite the fact that the

Attorney General had previously agreed to move the response date from November 20, 2014 to

January 5, 2015.  Google not request any additional time to respond to the Subpoena, nor did it

seek relief against the Subpoena in state court, despite the fact that the Subpoena is enforceable

under state law.  The Court conducted a hearing on December 22, 2014 on Google's request for a

temporary restraining order and subsequently the Court entered an Order on Agreed Stay,

Briefing Schedule and Preliminary Injunction Hearing Date dated December 23, 2014.  Docket

No. 25.  In accordance with the deadlines established in the Order, the Attorney General moves

to dismiss Google's Complaint for the reasons set forth below.

### B.     The Attorney General's Investigation and Google's Prior Actions.

Throughout, Google accuses the Attorney General of such actions as "falsely accus[ing]

it of, among other things, 'aiding and abetting' and even 'encourag[ing] . . . illegal activity.

Supp. Mem. at 9.  According to Google, the Attorney General "has cited no evidence at all of

misconduct by Google to back up these inflammatory allegations." *Id.* at 10.  Google accuses

the Attorney General of "[i]gnoring both the law and the evidence Google has presented . . .

[and] has continued to target Google. . . ." *Id.* at 12.  While these are a few of the accusations

---

[1]     Thus, at the time Google filed its motion for temporary restraining order and preliminary injunction, its deadline for responding to the subpoena was still three weeks out.  That deadline has again been extended, by agreement, until March 6, 2015.

leveled by Google it would have this Court believe that General Hood's investigation exists in a vacuum and without basis or justification and that somehow he stands alone in what Google obviously perceives as his "persecution" of Google. The evidence is overwhelmingly to the contrary and shows that both the United States government and a significant number of state Attorneys General have joined General Hood concerning the legality and propriety of certain Google products. This dialogue with state Attorneys General has been on-going for some time without resolution as to many of the issues. However, the concerns with Google have not been limited to state Attorneys General as the United States Department of Justice investigated Google's activities regarding the importation of prescription drugs which resulted in the entry of a non-prosecution agreement with Google.

In August of 2011, Google entered into a Non-Prosecution Agreement ("NPA") with the United States Attorney's Office for the District of Rhode Island, United States Department of Justice (the "Government"). *See* Ex. C, (NPA). There, the Government conducted an investigation into Google's acceptance of advertisements placed by online pharmacy advertisers that did not comply with United States law regarding the importation and dispensation of prescription drugs. *See* Ex. C at p. 1. As a result of the Government's investigation, Google, *inter alia*, agreed to forfeit $500,000,000 (five hundred million) to the United States as substitute *res* for the proceeds of controlled prescription drug sales by Canadian online pharmacies that advertised through Google's AdWords program. *Id.* at p. 7.

With respect to the states, on February 13, 2013, Attorneys General from Hawaii, Mississippi, and Virginia wrote to search engines regarding "concern[ ] about the infringing activities[ ] [i]n addition to the economic impact, the sale of counterfeit products clearly places the consumer's health and safety at risk." *See* Ex. D (February 13, 2013 Letter). The letter noted

that the Director of Immigration and Custom Enforcement "provided chilling examples of the harm that can be inflicted by such products." *Id.* The letter requested responses to a number of topics. *Id.*

In March of 2013, Google entered into an Assurance of Voluntary Compliance ("March 8 Agreement) as part of a multi-state investigation by State Attorneys General, including General Hood. *See* Ex. E (Wiggins Decl., ¶ 3 and Ex. 1,). A total of thirty-seven (37) states joined in this agreement with Google. *Id.* The March 8 Agreement pertained to a Google product, known as Google Street View, whereby Google outfitted its Street View cars with antennae to drive down public streets and collect WiFi network identification for use in offering "location aware" or geolocation services. *Id.* The March 8 Agreement included both "Prohibitive and Affirmative Conduct" on the part of Google. *See* Ex. E (Wiggins Decl., Ex. 1, p. 5). As part of the agreement, Google paid $7,000,000 (seven million) apportioned among the participating states. *Id.*

On July 2, 2013, Attorneys General from Nebraska and Oklahoma wrote Google's Senior Vice President and General Counsel "in regard to an *alarming trend* involving videos on Google's video subsidiary, YouTube." *See* Ex. F. (July 2, 2013 Letter) (emphasis supplied). The letter stated "[a]s we understand the process, video producers are asked prior to posting whether they will allow YouTube to host advertising with the video and, for those who consent, the advertising revenue is shared between the producer and Google. While this practice itself is not troubling we were disappointed to learn that many such monetized videos posted to YouTube depict or even promote dangerous or illegal activities." *Id.* The letter cited to specific examples of these concerns. *Id.*

[6]

Again on October 7, 2013, Attorneys General from Nebraska, Hawaii, Virginia and General Hood wrote Google's Senior Vice President for Corporate Development. *See* Ex. G (October 7, 2013 Letter).  This letter stated "[a]s you are no doubt aware, several state Attorneys General *have expressed concerns* regarding your company's monetization of dangerous and illegal content, particularly on Google's video subsidiary, YouTube." *Id.* (emphasis supplied). The letter further expressed concern "regarding the prevalence of content on Google's platforms *which constitute intellectual property violations* and which with such content is shared and trafficked over Google's systems.  Other concerns include the promotion of illegal and prescription-free drugs through Google and the facilitation of payments to and by purveyors of all the aforementioned content through Google's payment services." *Id.* (emphasis supplied).

On November 8, 2013 Google entered into yet another Assurance of Voluntary Compliance with thirty-seven (37) states and the District of Columbia. *See* Ex. E (Wiggins Decl. ¶ 4, Ex. 2) ("November 8 Agreement").  This agreement related to Google's posting of information to Apple's Safari Browser. *Id.*  The November 8 Agreement contained certain requirements which included that "Google shall not employ HTTP Form POST functionality that uses javascript to submit a form without affirmative user action for the purposes of overriding a Brower's Cookie-blocking settings so that it may palace an HTTP Cookie on such Browser, without that user's prior consent." *Id.* at 2.  Google agreed to pay $17,000,000 (seventeen million) apportioned among the participating states and the District of Columbia. *Id.* at 4.

On December 10, 2013, twenty-three (23) Attorneys General, including General Hood, again wrote Mr. Walker advising "[d]uring the past year, a growing number of state Attorneys General have expressed concerns regarding the troubling and harmful problems posed by several of Google's products. *See* Ex. H (December 10, 2013 Letter).  According to the December 10

letter, these issues included:  (1) Google's monetization of dangerous and illegal content; (2) the prevalence of content constituting intellectual property violations and ease with which such content is shared and trafficked over Google's systems; (3) the promotion of illegal and prescription-free drugs; and (4) the facilitation of payments to and by purveyors of all of the aforementioned content through Google's payment services." *Id.*

Despite the lengthy history of communication with Google in an effort to resolve a number of important issues to state Attorneys General, Google now asks this Court to enjoin General Hood from continuing his investigation. *See* Exhibit J (Multiple Letters from General Hood to Google).  Google would no doubt use such an order against other state Attorneys General conducting their own investigations.  Obviously without the documents sought in the Subpoena, the Attorney General does not currently have the information necessary to evaluate potential causes of action under the MCAP.  More incredibly than this, however, is Google's request for an injunction to prohibit the Attorney General from ever instituting civil litigation or criminal charges for violations of Mississippi law.  Obviously Google knows that without having to disclose the documents, the Attorney General would likely never have enough specific information to sue under the MCPA.  For its part, Google says that it has been cooperative with General Hood and therefore, any further investigation and inquiry is baseless.  The evidence presented just since August of 2011 shows otherwise and Google cannot be the arbiter of whether its conduct violates state law, nor should it be permitted to use the federal judicial process to interfere with an on-going state investigation.  If the Attorney General ultimately files suit under the MCPA, Google will have its day in Court – it just should not be this Court.

**III.    Subject Matter Jurisdiction is Lacking and the Preliminary Injunction should be Denied and the Case Dismissed.**

    **A.    Google has failed to Establish Subject Matter Jurisdiction.**

Absent from Google's supporting brief is a single statement, argument or authority establishing subject matter jurisdiction.  In fact, the only mention of jurisdiction is a single statement in the complaint that the case "arises under the United States Constitution and the laws of the United States, and presents a federal question under Article III of the Constitution and 28 U.S.C. § 1331 and 1343(a)(3).  Complaint, ¶ 6.  The Fifth Circuit has rejected conclusory statements in the complaint to establish jurisdiction. *See Garr v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996).  Federal question jurisdiction "is not satisfied merely because the dispute is in some way connected with a federal matter." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984) (citation and internal quotation marks omitted).  Instead of arising under federal law, Google's declaratory action asserts defenses to threatened or impending state law claims that the Attorney may file against it in the future.

    **B.    Jurisdiction is Lacking under 28 U.S.C. § 1331 and 1343(a)(3)**.

The Attorney General incorporates the arguments and authorities from Section IV (A) of the Attorney General's memorandum in support of the motion to dismiss, pp. 10-23 as if fully set forth herein.  Alternatively, Google asserts jurisdiction is proper under 28 U.S.C. § 1343(a)(3). The Attorney General incorporates the arguments and authorities from Section V (B) of the memorandum in support of the motion to dismiss, at pp. 28-29.

IV.    **Google failed to State a Justiciable Claim under the First and Fourteenth Amendment and Section 1983.**

A.    **Google's cannot Establish a "Chilling Effect" Claim.**

Whether analyzed in terms of subject matter jurisdiction or under Article III's justiciability requirement, Google failed to state a justiciable claim based on the alleged chilling effect it claims the Attorney General's investigation is having on protected speech. Google alleges the Attorney General's inquiry "chill[s] the operation of Google's search engine, Autocomplete feature, YouTube video-sharing site and advertising thereby threatening to silence vast amounts of protected speech" in violation of the First Amendment. Complaint, ¶ 97. Notably absent from Google's complaint is any specific instance in which any constitutionally protected speech has actually been silenced or that Google has been forced to take any steps to remove otherwise protected speech as a result of the Attorney General's investigation. Google further claims that "[t]he Attorney General's Inquiry against Google constitutes the exercise of prosecutorial and/or civil regulatory authority under color of state law." *Id.* at ¶ 98.

Google alleges that "[t]he Attorney General's Inquiry has violated, is violating, and any further steps . . . would further violate the rights of Google under the First and Fourteenth Amendments. *Id.* at ¶ 100. Again, Google does not identify how this has occurred, is occurring now or would in the future violate its protected speech. Google's complaint is devoid of a constitutional challenge, either facial or as applied, to any state statutory scheme. Google confines its complaint to what it terms the "Attorney General's Inquiry" and alleges the Attorney General's "inquiry" has a "chilling" effect on its First Amendment rights. Complaint ¶¶ 94-100. The significance of the distinction between challenging a statute as unconstitutional on its face, or as applied, as opposed to challenging the purported and subjective chilling of the Attorney General's investigation will be addressed below.

[10]

In addressing claims of the "chilling of speech", the Supreme Court in *Laird v. Tatum*, 404 U.S. 1, 11 (1972, acknowledged that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights. *Id.* at 11. The Court referenced its decision in *Baird v. State Bar of Ariz.*, 401 U.S. 1 (1971); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967); *Lamont v. Postmaster General*, 381 U.S. 301 (1965); and *Baggett v. Bullitt*, 377 U.S. 360 (1964). However, the Court distinguished those cases from *Laird* because "[i]n none of these cases, however, did the chilling effect arise merely from the individual's knowledge that a government agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." *Laird*, 408 U.S. at 11. In reversing the lower court, the Supreme Court ruled that federal court jurisdiction cannot be invoked by a party who alleges that his First Amendment right is being "chilled *by the mere existence without more, of a governmental investigative and data gathering activity* that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." *Laird*, 408 U.S. at 11 (emphasis supplied).

This is precisely what Google has alleged in its complaint. *See* Complaint, ¶ 99 ("The Attorney General's Inquiry is not the least restrictive means of accomplishing any compelling governmental purpose and is not narrowly tailored to accomplish any compelling purpose."). Google objects to the Attorney General's investigation because of what it believes will result in future litigation. This type of subjective chilling is insufficient to confer federal jurisdiction. *See Laird*, 408 U.S. at 11 (allegations of subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of a specific future harm). *See also Virginia*

[11]

*v. Hicks*, 539 U.S. 113 (2003); *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997); *U.S. v. Lemons*, 697 F.2d 832 (8th Cir. 1983); *Forsyth Cnty. Ga. v. Nationalists Movement*, 505 U.S. 123, 129 (1992). The cases cited by Google supporting its First Amendment claims are inapposite. *See infra*, Section V. (A) (2), pp. 26-27.

Because Google has not challenged the constitutionality of any statute, the enforcement of which has a chilling effect on its First Amendment rights, its generalized claim regarding what it has defined as the "Attorney General's Inquiry," falls within the Court's holding in *Laird*. Google does not allege any state statutory scheme imposes costly, self-executing compliance burdens or chills protected First Amendment activity. As has been previously set forth, the Subpoena is not self-executing and would require the Attorney General to file an enforcement action in state court. Thus, if Google does not comply, there would be no immediate compliance burden until it had the opportunity to litigate its defenses to the Subpoena in a state forum.

The second "chilling effect" exception has traditionally been called "overbreadth." This exception has been consistently applied only to claims that a statute, though constitutional in its present application, tends to "chill" the constitutional free speech rights of others in different contexts. *See Wallace v. Brewer*, 315 F. Supp. 431, 455 (D.C. Ala. 1970) (criminal prosecution can be enjoined under 42 U.S.C. § 1983 where a challenged statute which infringes upon first amendment rights is unconstitutional on its face or where the statute is applied for purposes of discouraging protected activities).

**B.      Google cannot establish a First Amendment "Retaliation" Claim.**

Even if Google could make out a *prima facie* case of First Amendment retaliation – which it cannot – Google showed in its brief why that claim has no likelihood of success on the merits. Specifically, as Google acknowledges, the Attorney General can defeat a retaliation

[12]

claim by showing the that "State prosecution [or action] was undertaken with no hope of a valid conviction [or success]." Supp. Mem. at 25 (quoting *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979)). In this regard, the Fifth Circuit has adopted the "bad faith" standard applicable in *Younger* abstention cases to evaluate retaliation claims. *See Thompson*, 593 F.2d at 1387, n.22.

The Fifth Circuit actually clarified the standard there explaining that the Attorney General's burden is to show [ ] by a preponderance of the evidence that it would have reached the same decision to prosecute even had the impermissible purpose not been considered." *Id.* As discussed, the Attorney General has demonstrated, as a matter of law, that the Subpoena was likely to produce information directly relevant to whether Google is in violation of the MCPA, leaving no doubt that the Attorney General would have issued the Subpoena under any circumstances to ensure that Google is not injuring the citizens of Mississippi. See Smith v. Hightower, 693 F.2d 359, 369 (5th Cir. 1982) ("[t]he strength and seriousness of the charges remains relevant in determining if the prosecution would have been brought anyway under the third prong of *Thompson*.").

## V.   *Younger* Abstention Warrants Denial of the Preliminary Injunction and Dismissal of the Case.

While the Court should dismiss the case for lack of subject matter jurisdiction, alternatively, the Court should abstain based on the *Younger* abstention doctrine. Under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted. While there is no currently filed lawsuit pending in state court, the Fifth Circuit has recognized that "*Younger's* applicability has been expanded to include certain kinds of civil and even administrative proceedings that are 'judicial' in nature." *Texas Assoc. of Business v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004); *see also Ohio Civil Rights*

[13]

*Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (applying *Younger* to matter before a state agency).[2]

Based on *Younger* and its progeny, all three prongs are satisfied and abstention is warranted.  First, quashing the Attorney General's state-law subpoena will interfere with the on-going state consumer protection investigatory proceedings.  *See* Ex. A, (Subpoena).  Second, the ongoing proceedings involve multiple important state interests, namely the enforcement of state subpoenas issued under state statutory authority and the enforcement of state consumer protection laws.  Third, state law and the pending state consumer protection investigatory proceeding through the issuance the Subpoena, provides Google with the opportunity to raise its constitutional arguments in state court, if necessary.[3]  A refusal to abstain will create substantial federal-state friction over the enforceability of state issued subpoenas and frustrate the state's ability to enforce its consumer protection laws.  By contrast, Google cannot demonstrate irreparable harm in the face of abstention because it will be able to raise its constitutional claims before a state court thereby eliminating federal intervention and avoiding duplicative litigation.

## A.     The Subpoena Constitutes an "On-Going Proceeding".

*Younger's* first prong is met when the state action, whether civil or administrative, is "judicial in nature."  *Texas Ass'n of Bus. v. Earl*, 388 F.3d 515, 520 (5th Cir. 2004); *Ohio Civil Rights Comm'n*, 477 U.S. 619 (1986).  In the context of *Younger*, the Supreme Court has

---

[2]       *Younger's* three-prong test is well-established:  (1) the dispute should involve ongoing state judicial proceedings (2) the state must have an important interest in regulating the subject matter of the claim; and (3) there should be an adequate opportunity in the state proceedings to raise constitutional challenges. *Wighman v. Tex.* Supreme Court, 84 F.3d 188, 189 (5th Cir. 1996) (quoting *Middlesex*, 457 U.S. at 432.  Here, Google seeks an injunction against the Attorney General, a state constitutional officer, from acting on two matters that are expressly committed to state officials, state law, and state courts:  (1) the legality of subpoena issued under state law and enforceable only in state courts and (2) the enforcement of Mississippi's consumer protection laws.

[3]       The Subpoena is not self-executing.  If Google fails to comply with the Subpoena, the Attorney General may apply to the Chancery Court of Hinds County, Mississippi, First Judicial District, for an order compelling compliance in accordance with Miss. Code Ann. § 75-24-17.

[14]

explained that "judicial in nature" means a state process that "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed to already exist." *NOPSI*, 491 U.S. at 371.  The Attorney General's Subpoena, issued as part of an ongoing investigation into whether Google's activities violate the MCPA, is "judicial in nature."

While Google may contend that *Younger* is to be applied only to judicial proceedings (*i.e.,* filed cases) and does not apply to subpoenas issued by a state officer prior to the filing of a civil case or prior to a criminal indictment courts see the matter differently.  A subpoena issued by an attorney general "commences an adversary process during which the person served with the subpoena may challenge it in court before complying with its demands.  As judicial process is afforded before any intrusion occurs, the proposed intrusion is regulated by, and its justification derives from, that process."  *In re: Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000) (internal citations omitted).

A number of courts have affirmed investigatory proceedings occurring pre-indictment are an integral part of a state criminal prosecution and constitute 'ongoing state proceedings' for *Younger* purposes.  *See Empower Texans, Inc. v. Texas Ethics Comm'n*, 2014 WL 1666389 (W.D. Tex. 2014); *Geir v. Miss. Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013) (federal court, *sua sponte*, abstained under Younger); *Mir v. Shah*, 2012 WL 6097770 (S.D.N.Y. 2012); *Cuomo v. Dreamland Amusements*, 2008 WL 4369270 (S.D. N.Y 2008); *J & W. Seligman v. Spitzer*, 2007 WL 2822208 (S.D.N.Y 2007); *Mirka United, Inc., v. Cuomo*, 2007 WL 4225487 (S.D.N.Y November 27, 2007); *Kaylor v. Fields*, 661 F.2d 12177, 1182 (8th Cir. 1981) ("The issuance [by the Arkansas Attorney General] of the subpoenas . . . is part of a state proceeding in which the plaintiffs have an opportunity to present their claims" and therefore requires Younger abstention.).  The *Seligman* decision was further buttressed by an earlier decision in *Hip-Hop*

[15]

*Summit Action Newwork v. New York Temp. State Comm'n on Lobbying*, 2003 WL 22832569 at

* 3 (S.D.N.Y Nov. 25, 2003) ("[T]he Attorney General is a state official charged with

investigating illegal activities, who issued the contested subpoenas pursuant to that power. The

issuance of subpoenas by a state official under these circumstances constitutes and on-going

proceeding for purposes of *Younger*."). *Younger's* first requirement of an on-going state

proceeding is met.

Google relies on *Major League Baseball v. Christ*, 331 F.3d 1177 (11th Cir. 2003) and

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), that this Court can enjoin the

Attorney General in this case. Neither case provides authority in this case to enjoin the Attorney

General. In *Crist*, the Subpoena was issued by the Attorney General under Florida's antitrust

statute seeking information related to a Major League Baseball decision that fell *squarely* within

the "business of baseball" exemption from federal antitrust law. Though the Court held that the

exemption itself "did not necessarily extend to an antitrust investigation," it found that the

Subpoena should be enjoined under the Fourth Amendment because it was clear from the face of

the Subpoena that the conduct being investigated could not possibly violate state or federal

antitrust laws. *Id.* at 1186. Here, the Subpoena seeks information that could lead to evidence of

violations of the MCPA. It cannot be said from the face of the Subpoena that it seeks nothing

that could not give rise to liability under state law. Thus, *Crist* is clearly distinguishable.

In *Morales*, the National Association of Attorneys General ("NAAG") adopted "Air

Travel Industry Enforcement Guidelines" ("Guidelines") following the passage of the Airline

Deregulation Act ("ADA"). *Id.* at 379. Seven (7) state attorneys general sent a memorandum to

the airlines about bringing fair advertisements in line with the NAAG guidelines. *Id.* These

airlines filed a declaratory action arguing express preemption of federal law. *Id.* The Court

[16]

found that "the ADA included a pre-emption provision prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier. *Id.* at 378. The Court, after addressing express and implied preemption, determined that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services, are pre-empted under 49 U.S.C. App. § 1305(a)(1)." *Id.* at 384. So while the enjoined states' actions, it did so because federal law expressly preempted NAAG's published Guidelines regarding the preempted subject matter. Here there is nothing of the sort. The Subpoena in question in this case, which seeks information about possible violations of state law, simply cannot be equated to the published NAAG Guidelines which expressly conflicted with federal law. Thus, Morales is not applicable in the present context.

### B.    The Subpoena Implicates Compelling State Interests.

The Attorney General's investigation of Google and the issuance of the Subpoena in furtherance of that investigation, involves compelling state interests. The enforcement of subpoenas issued pursuant to state statute enforceable only in state court is an important state interest. *See Judice v. Vail*, 430 U.S. 327, 335-36 (1977). The expressly stated basis of the Subpoena is the Attorney General, as a state constitutional officer, has a strong interest in maintaining the effectiveness of consumer protection subpoenas as a prosecutorial tool. The Subpoena was issued in furtherance of the Attorney General's investigation. Thus, prong two of *Younger* is met.

### C.    Google has an Opportunity to Challenge the Subpoena in State Court.

The third *Younger* prong looks to whether the party has an adequate opportunity for judicial review in state court. This aspect of *Younger* is "fueled by the notion that courts of equity should not intervene where a party has an adequate remedy at law. *Cescos Int'l, Inc. v.*

*Jortling*, 895 F.2d 66, 70 (2nd Cir. 1990).  Where a compelling or "vital" state interest is involved, "a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Middleesex County Ethics Comm'n v. Garden State bar Ass'n*, 457 U.S. 423, 431 (1982); *NOPSI*, 491 U.S. at 365.  However, even without the heightened burden, Google has the burden of proving, at a minimum, that the state procedure for appeal does not afford it an opportunity to present constitutional challenges and have those challenges addressed. *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1978).  Google cannot satisfy its burden here for two reasons.  First, after the Attorney General issued the Subpoena, Google could have brought a state court action to quash the subpoenas in state circuit court.  The ability to a party to raise in Mississippi state courts a Fourth Amendment challenge to state subpoenas has been recognized for nearly one hundred years.  *See Knox v. L.N. Dantzler Lumber Co.*, 114 So. 873, 878 (Miss. 1927).

Second, even if Google failed to comply with the Subpoena, the Attorney General would still  have to file an enforcement action in state court pursuant to Miss. Code Ann. § 75-24-17 to compel production of the documents.  If the Attorney General did not file the enforcement action in state court, Google would not suffer any adverse consequences from its failure to comply because the Subpoena is not self-executing.  If on the other hand, the Attorney General filed an enforcement action pursuant to Section 75-24-17, Google would be afforded the full opportunity to present its defenses, constitutional and otherwise, before that state court tribunal.[4]

---

[4]       In *Empower Texans, Inc. v. Texas Ethics Commission*, the Court was unpersuaded by plaintiff's concern regarding non-compliance with a subpoena issued by the Attorney General stating that "[n]othing in *Younger* and its progeny requires Plaintiffs to be immunized from the consequences of their actions while pursuing their legal arguments. 2014 WL 1666389 at *4.

Furthermore, and for purposes of *Younger,* it does not matter that the state court action to enforce the Subpoena is filed after a party has filed in federal court. *See Attorney General Abramms*, 761 F. Supp. at 241-42.

With the available state court action in the event the Google does not comply with the subpoena and the Attorney General files an enforcement action under § 75-24-17, *Younger* "precludes any presumption that the state courts will not safeguard federal constitutional rights." *Id.* When it is abundantly clear that the party has an opportunity to present their federal issues in the state proceeding, no more is required to invoke *Younger* abstention. *Juididice*, 430 U.S. at 337. More importantly, under *Younger,* any uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention." *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 78 (2nd Cir. 2003). Thus, the third *Younger* prong is satisfied.

      **(1)**      **Google's Fourth Amendment Claim does not Defeat *Younger.***

Rather than move in state court to quash the subpoena, Google asks the Court to enjoin the Attorney General's investigation (thereby quashing the Subpoena) because it claims the subpoena's breadth violates Fourth Amendment standards. This argument rests on the proposition that the Fourth Amendment prohibits the issuance of a subpoena that may capture protected speech and that the subpoena "demands information about lawful conduct that is immunized from state regulation under federal statutory and constitutional law, including Section 230 of the CDA, the First and Fourteenth Amendments, the Copyright Act, including the DMCA, and the FDCA. Complaint, ¶ 103.

First, Google does not allege that the Attorney General is without legal authority to issuance the Subpoena in the first instance. In fact, the Attorney General issued the Subpoena

[19]

pursuant to Miss. Code Ann. § 75-24-27. Instead, Google attacks the breadth of the Subpoena and that it may implicate protected speech under the First Amendment. As has previously been set forth, Google's First Amendment challenge does not state a justiciable claim. Furthermore, while the Fourth Amendment's prohibition against unreasonable searches applies to administrative subpoenas, the Supreme Court has held that such subpoenas are, at best, "constructive searches." *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 202-08, 66 S.Ct. 494, 502-05, 90 L.Ed. 614 (1946). "An administrative subpoena is not self-executing and is therefore technically not a 'search.' It is at most a constructive search, amounting to no more than a simple direction to produce documents, subject to judicial review and enforcement.

Thus, unlike the subject of an actual search, the subject of an administrative subpoena has an opportunity to challenge the subpoena before yielding the information. In the course of that resistance, the Fourth Amendment is available to the challenger as a defense against enforcement of the subpoena. *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3 (1st Cir. 1996). *Id.* After the Attorney General issued the Subpoena, Google could have moved to quash the subpoenas in state circuit court. The ability to a party to raise in Mississippi state courts a Fourth Amendment challenge to state subpoenas has been recognized for nearly one hundred years. While Google has tried to link its Fourth Amendment claim to the First Amendment, courts have made clear that the potential for a subpoena or search warrant to capture material protected by the First Amendment adds no new element to the traditional Fourth Amendment inquiry. *United States v. Mayer*, 490 F.3d 1129 (9th Cir. 2007).

### (2) Google's Preemption Claim does not Defeat *Younger.*

Google has raised preemption under the Copyright Act and the FDCA alleging that some hypothetical claims the Attorney General may bring in the future would be preempted.

[20]

Complaint, ¶¶ 104-105.  Presumably Google raises preemption in an attempt to avoid *Younger*.

This argument fails for two (2) reasons:  (1) MPCA claims are not preempted and (2) the

Supreme Court has confirmed that a federal court must abstain under *Younger* even when the

plaintiff raises a "substantial claim" of preemption.  *See New Orleans Pub. Serv. Comm'n.*

*(NOPSI) v. Council of City of New Orleans*, 491 U.S. 350 (1989).

## VI.  The Traditional Preliminary Injunction Factors do not Support Enjoining the Attorney General.

A party moving for a preliminary injunction must show:  (1) a substantial likelihood of

success on the merits; (2) substantial threat of an irreparable injury without the relief; (3)

threatened injury that outweighs the potential harm to the party enjoined; and (4) that granting

the preliminary relief will not disserve the public interest.  *Tex. Med. Providers Performing*

*Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012).  A movant must "clearly establish

each of the traditional four preliminary injunction elements. *DSC Commc'n . Corp. v. DGI*

*Techn., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).  The decision to grant a preliminary injunction is

the exception rather than the rule." *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760

F.2d 618, 620 (5th Cir. 1985).  The Fifth Circuit has "cautioned repeatedly" that a preliminary

injunction is an "extraordinary remedy" to be granted only if the party seeking it has "clearly

carried the burden of persuasion" on all four elements.  *PCI Transp., Inc. v. Fort Worth &*

*Western R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### A.  Google has no Likelihood of Success on its Challenge to the Subpoena.

#### 1.  The CDA Completely Immunize Google from State Law Claims.

Google's argument rests on the premise that it cannot be liable for publication of content

created by a third-party, citing Section 230 of the CDA.  Complaint, ¶¶ 85-92.  Google also

states that Section 230 of the CDA "bars the Attorney General from commencing any legal

[21]

proceeding that seeks to hold Google liable . . . ." *Id.* This statement is obviously incorrect given the full language of Section 230(e)(3) providing that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." *Id.* Google attempts to shoehorn the Subpoena as only seeking documents that would be covered by the CDA, stating that "[b]ecause Google did not develop the third-party content on which the Attorney General focuses, the CDA precludes the Attorney General's inquiry." Supp. Mem. At 15. Google ignores possible claims that would not be precluded by the CDA and which are the subject of the Subpoena.

<div align="center">

**(a)**    **The Subpoena Seeks Information to Support State Law Claims Concerning Conduct not Immunized by the CDA.**

</div>

Section 230 of the CDA generally provides immunity to entities such as Google arising from its passive display as a "publisher" of content created by third parties. *Id.* But passive conduct is not what the Attorney General is investigating via the Subpoena. Google states "[c]ourts throughout the county, including the Fifth Circuit, have held that 'Congress provided broad immunity under the CDA to Web-based providers for all claims stemming from their publication of information created by third parties . . . ." Supp. Mem. at 16. However, Google's position on this point begs the question: what about claims stemming from Google's activities where is not merely publishing information created by third parties? This answer, which Google does not address, is that the CDA provides no immunity. The conduct at issue falls within the three (3) exceptions to CDA immunity.

First, the CDA provides that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." Section 230(e)(2). Courts have interpreted this provision as a carve-out from CDA immunity for both federal and state law intellectual property claims. *See e.g., Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690

<div align="center">

[22]

</div>

(S.D.N.Y. 2009); *Universal Comm. Sys. C. Lycos, Inc.*, 478 F.3d 413, 422-23 (1st Cir. 2007)

("Claims based on intellectual property laws are not subject to Section 230 immunity."); *Chicago*

*Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craig's List, Inc.*, 519 F.3d 666, 670 (7th

Cir. 2008) ("To appreciate the limited role of § 230(c)(1), remember that 'information content

providers' may be liable for contributory infringement if their system is designed to help people

steal music or other material in copyright." ).

Furthermore, four categories of state intellectual property laws are likely exempt from

CDA immunity (1) trademark law, (2) laws protecting individuals' rights of publicity, (3) laws

that protect copyrights in pre-1972 recordings, and (4) true names and address statutes, to the

extent they apply to the distribution of electronic files.  The subpoena seeks information and

documents regarding stolen intellectual property.  *See* Ex. A. (Subpoena, Request Nos. 71-76.

These requests may elicit information regarding Google's facilitation of copyright infringement

in pre-1972 sound recordings, which could serve as a basis for an enforcement action under state

laws that protect such copyrights.  Without such information, the Attorney General cannot assess

the nature of the claims.

Second, the CDA does not immunize Google from prosecution for its own acts of fraud

or misconduct.  For example, the Attorney General's Subpoena seeks "documents concerning the

use of Google Advertising Services to promote or serve ads on websites or in conjunction with

videos on YouTube that are or appear to be promoting, facilities, offering for sale, disseminating,

or engaging in dangerous or Illegal Content/Conduct.  *See* Ex. A (Subpoena, Req. No. 160).

This and similar requests in the Subpoena may illicit evidence that Google knowingly allows

sites engaged in unlawful activities to use its advertising services, despite Google's express

policies and representations to consumers forbidding such activities.  Such evidence could

[23]

demonstrate Google's affirmative and fraudulent misrepresentations that would be outside the scope of the CDA's immunity. *See CYBERSitter, LLC v. Google, Inc.*, 905 F. Supp. 2d 1080, 1086 (C.D. Cal. 2012) (denying Google's motion to dismiss on CDA immunity); *Mazur v. ebay, Inc.*, 2008 WL 618988, at *9 (N.D. Cal. 2008) ("The CDA does not immunize" an interactive computer service provider "for its own fraudulent misconduct."); *Anthony v. Yahoo! Inc.*, 421 F. Supp.2d 1257, 1263 (N.D. Cal. 2006 ("[The CDA] does not absolve Yahoo! From liability for any [of its own] accompanying misrepresentations.").

Third, the CDA does not immunize Google from prosecution for its own participation in developing illegal content. Section 230 of the CDA provides immunity to interactive computer services from liability only if the provider is not also an 'information content provider . . . responsible, in whole or in part, for the creation or development of' the offending content. Section 230(f)(3). For example, the Ninth Circuit held that a "website helps develop unlawful content, and thus falls within this exception to Section 230, *if it contributes materially to the alleged illegal conduct." Fair Housing Council of San Fernanndo Valley v. Roommates.Com, LLC.*, 521 F.3d 1157, 1168 (9th Cir. 2008). This determination under *Roommates.Com* necessarily requires an examination of the relevant documents. Google cannot argue all of its conduct falls within the CDA when it is the only one who has access to the relevant documents. Claims of fraud and misrepresentation would be cognizable under Miss. Code Ann. § 75-24-5 of the MCPA which prohibits "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." *Id.* These claims would not be immunized by Section 230.

The Subpoena also seeks documents and information related to Google's Autocomplete function. *See* Ex. A, (Subpoena Request Nos. 76-79). These requests could reveal evidence that

[24]

Google has engaged in unfair trade practices by programming Autocomplete to direct users (Mississippi residents) who are searching for lawful content and activities to search instead for sites engaged in unlawful activities.  An MCPA claim based on this type of conduct would not be barred by the CDA because Google created, designed, and wholly controls Autocomplete.  At best, the CDA provides Google a defense to a claim when it is acting as a passive content provider.  Obviously, factual development is necessary to determine the applicability of the immunity provided under Section 230, which includes the Subpoena served by the Attorney General.  The Attorney General is entitled to know whether, Google is, in fact, acting as merely a "publisher" of third-party material (i.e. a passive activity under Section 230 of the CDA), or whether it does more than passively publish third-party content.

Furthermore, to the extent that claims against Google arise from tortious conduct related to actions other than posting third-party content, the CDA does not provide immunity.  Here, Miss. Code Ann. § 75-24-25(g) of the MCPA comes into play because it prohibits the practice of "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another."  *Id.*  The Subpoena clearly seeks information that may form the basis for claims under the MCPA that are not barred under the CDA.  As the Court said in *J & W. Seligman v. Spitzer*, 2007 WL 2822208 (S.D.N.Y 2007), without such subpoenas, the Attorney General "seldom could amass the evidence necessary" to commence fraud actions.  2007 WL 2822208 at *5.

### (2)   Google has no Likelihood of Success under the First Amendment

As set forth *supra*, pp. 20-25, Google has failed to state a justiciable claim for relief under the First and Fourteenth Amendment and therefore, has no likelihood of success on the merits for purposes of a preliminary injunction.   Google cites *Lacey v. Maricopa County* in

[25]

support.  But there, the Ninth Circuit held the district court had improperly granted a motion to dismiss First Amendment retaliation claims were a government official – in addition to filing arrest and contempt motions and having arrested plaintiff without authorization – issued subpoenas that a local judge presiding over county grand jury proceedings had already determined were invalid.  Under those extraordinary circumstances, the Court found plaintiffs had adequately alleged a primary intent to silence protected speech.  *Id.* at 917.  Here, the Attorney General is still trying to conduct his investigation by issuing a valid subpoena under state law.  He has not issued arrests warrants or taken other such measures present in *Lacey*.

The other cases cited by Google involve outrageous, entirely inapposite misconduct by public officials.  Those cases concluded that courts improperly granted motions to dismiss First Amendment retaliation where – among other things – plaintiffs had asserted that government officials "fabricated a criminal investigation in furtherance of a conspiracy" or "adopted . . . official resolution publically censuring appellant in retaliation for appellant's representation of an adverse party in state litigation, thereby subjecting appellant to an official investigation.  *See Pendleton v. St. Louis County*, 178 F.3d 1007, 1010 (8th Cir. 1999); *Little v. City of N. Miami*, 805 F.2d 962, 968 (11th Cir. 1986).  The evidence presented here shows that the Attorney General, along with Attorneys General throughout the country have raised issues which are the subject of the Subpoena.  To suggest that the Attorney General's investigation is somehow "fabricated" simply ignores the facts.

### (3)    Google has no Likelihood of Success under the Fourth Amendment.

As set forth *supra,* at pp. 24-26, Google has no likelihood of success under the Fourth Amendment.  Google again relies on *Crist* but that case stands for the proposition that "investigations premised solely upon *legal* activity are the very type of 'fishing expeditions' that

violate the Fourth Amendment.  *Christ*, 331 F.3d at 1189 (emphasis in original).  In *Christ*, the

Attorney General issued subpoena under state antitrust laws, but the Court concluded that the

conduct being investigated was unquestionably legal under federal law that preempted state law.

*Id.  Crist* does not apply here because Google cannot credibly claim the same blanket immunity

from MCPA liability based on federal statutory or Constitutional law that Major League Baseball

could claim from state antitrust laws.  As previously set forth, neither the First Amendment nor

the CDA prohibit potential liability against Google on a variety of grounds at issue in the

Subpoena.  Unlike *Christ*, in the context of Major League Baseball's exemption from federal

antitrust laws, Google cannot credibly claim that it is entirely immune from any activity that

would violate the MCPA.

Google's reliance on *Zurcher v. Stanford Daily*, 436 U.S. 547, 559 (1978), is also

misplaced.  While the Supreme Court noted that the Fourth Amendment must be applied with a

"scrupulous exactitude" to a search warrant seizing material protected by the First Amendment,

it vacated an injunction barring police from searching a newspaper, finding it "untenable" to

conclude that property may not be searched unless the occupants are reasonably suspected of a

crime and subject to arrest.  *Id.*  Unlike search warrants, it is well-settled that the requirements

for judicial enforcement of an administrative subpoena are minimal."  *United States v. Chevron,*

*U.S.A., Incop.*, 186 F.3d 644, 647 (5th Cir. 1999).  When reviewing administrative subpoenas,

"the court plays a strictly limited role.  The court's inquiry is limited to two questions:  (1)

whether the investigation is for a proper statutory purpose and (2) whether the document the

agency seeks are relevant to the investigation."  *Sandsend Fin. Consultants, Ltd. v. FHLBB*, 877

F.2d 875, 879 (5th Cir. 1989 (internal citations and quotations omitted); *see See v. City of*

*Seattle*, 387 U.S. 541, 544 (1976) (Fourth Amendment requires only that the subpoena be

"sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.").[5]

### (4)   Google has no Likelihood of Success on Preemption Claims.

Google has no likelihood of success on its preemption challenge under the Copyright Act and the FDCA.  Google has not alleged complete preemption to establish jurisdiction, and only suggests that "much" of the Attorney General's investigation is preempted by the Copyright Act, and the FDCA.  Complaint, ¶¶ 104-105.  Google is simply incorrect.  Under the "extra element" test applied by the Fifth Circuit, a right under state law is not "equivalent" to any of the rights in the scope of federal copyright law, and there is no preemption if "one or more qualitatively different elements are required to constitute the state-created cause of action. *Computer Mgmt. Asst. Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000).  The elements of the Attorney General's potential state law claims do not overlap with federal copyright law.  The Attorney General's investigation seeks evidence to determine whether Google has misled consumers about the steps it takes to protect consumers from infringing and other illegal material in the way it sorts content in its services.  Proving unfair or deceptive trade practices based on this theory would not involve the same elements as a copyright infringement claim.

To establish copyright infringement, only two elements must be proven:  (1) ownership of a valid copyright, and (2) copying of the work or otherwise invading one of the exclusive rights of copyright holders (publicly performing, displaying, etc.). *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 341, 361 (1991); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir.

---

[5]      Relevance is not seriously challenged here.  For 'purposes of an administrative subpoena, the notion of relevancy is a broad one. . . . So long as the material requested touches a matter underlying the investigation, an administrative subpoena will survive a challenge that the material is not relevant. *Sandsend*, 878 F.2d at 882.  Or as the Supreme Court has stated, relevance is satisfied when the information sought "was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties." *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) (cited in *United States v. Markwood*, 48 F.3d 696, 977 (6th Cir. 1995)).  For administrative subpoenas, relevancy is "broadly construed" and should allow agencies "access to virtually any material that might case light on the allegations." *Doe v. United States*, 253 F.3d 256, 267 (6th Cir. 2001).

[28]

1991).  In contrast, a deceptive trade practices claim would require proof of misrepresentation, thus satisfying the "extra element" test.  In *Computer Mgmt. Asst. Co.,* the Fifth Circuit held that Louisiana's unfair trade practices claims were not preempted by the Copyright Act because they required proof of the "extra element" of fraud or misrepresentation.  *Id.*

Depending on what the evidence shows, the Attorney General could pursue a number of claims based on misrepresentation, none of which would be preempted by the Copyright Act, including:  (1) misrepresentations about the quality of search results; (2) misrepresentations; about Google's advertising services with partner websites; (3) misrepresentations to advertisers on YouTube or on websites that partner with Google; (4) deceptive trade practices by directing consumers to dangerous or illegal conduct through Autocomplete; and (5) Unfair and deceptive practices by using user information to direct users to websites containing illegal or dangerous conduct.

For a state law to be expressly preempted by the Copyright Act, two conditions must be met.  First the content of the protected right must fall within the subject matter of the copyright. Second, the nature of the rights granted under state law must be "equivalent" to any of the exclusive rights in the general scope of a federal copyright.  *See Brown v. Ames*, 201 F.3d 654, 657 (5th Cir. 2000).

### (a)    Copyright Act

In its memorandum, Google cites only two non-binding cases in support of copyright preemption, neither of which is on point.  *People v. Williams*, 920 N.E.2d 446 (Ill. 2009) affirmed the appellate court's reversal of a conviction because the Copyright Act pre-empted state antipiracy laws.  *Id.*  In *State v. Perry*, 697 N.E.2d 264 (Ohio 1998) the court held that the Copyright act preempted prosecution of state charges of unauthorized use of computer software.

[29]

*Id.* Neither case involved unfair or deceptive trade practices claims of the sort the Attorney General may bring in the future against Google under the MCPA. Instead, those cases involved state laws that regulate conduct much more of the type falling under copyright protection – piracy and stolen software.

Google points to a section of the Subpoena titled "Stolen Intellectual Property," in support of its preemption claim under the Copyright Act. This section of the Subpoena contains thirteen document requests and two interrogatories Google claims seeks information premised on direct or contributory copyright infringement. For example, Google notes that the Subpoena demands production of "documents . . . concerning the use of Google Services . . . to commit, promote, or facilitate copyright infringement." Complaint, ¶ 79.

While such information *could* arguably be used to show copyright infringement, the same information could be used to show that Google misled its customers in various ways; for example, by stating that it was demoting infringing material on search results even though it failed to do so, or by stating that it otherwise attempted to screen out infringing material even though Google failed to make any such efforts. As previously set forth, claims based on misrepresentation are not preempted by the Copyright Act. Furthermore, the fact that the Subpoena requests documents relating to copyright infringement does not mean that the Attorney General intends to bring claims preempted by the Copyright Act. This is the problem with Google's anticipatory lawsuit; the Attorney General has not brought any claims to determine whether preemption would even apply. The Attorney General's requests for information are fully consistent with an investigation into misrepresentation about Google's conduct with respect to this material.

**(b)     FDCA**

Google claims that the Attorney General's Subpoena references and thus is preempted by two provisions of the FDCA that, in Google's own works, "govern the importation and introduction of drugs into interstate commerce." Specifically Google argues that "the Attorney General is concerned with 'the allegation that "Google . . . 'was on notice that most Canadian online pharmacy advertisers . . . geo-targeted their advertisements to consumers in the United States and imported into the United States . . . controlled prescription drugs, in violation of Title 21 United States Code, Section 331 (a) and (d)'. . ."  Supp. Mem. 32.  That the information sought by the Attorney General may relate to several FDCA provisions hardly establishes that the Attorney General seeks this information in order to enforce state laws or requirements preempted by federal law.  This, once again, is Google's attempt to be the sole arbiter of its own conduct without disclosing documents that may show the contrary.  The Attorney General seeks information related to unfair trade practices involving potential misrepresentations Google may have made to consumers in Mississippi about the legality of drugs being sold by online pharmacies, not violations of the FDCA by Google in the illegal importation or selling of such drugs.  At this stage of the Attorney General's investigation, Google cannot credibly argue the information sought by the Subpoena could only support preempted claims rather than any number of non-preempted state law claims under the MCPA.

**B.      There is No Immediate Threat of Irreparable Harm from the Subpoena.**

Irreparable harm must be proven separately and convincingly, or no injunction may issue. This burden is not reduced even if Google has established an extremely strong likelihood of success on the merits (which it has not).  *Metal Management Mississippi v. Barbour*, 2008 WL 3842979, at * 12 (Citing *White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989).  Although

seeking to enjoin an ongoing state proceeding, Google does not once suggest how litigation of their defenses in state court would cause them irreparable harm in the event that (1) the Attorney General files an action to enforce the Subpoena in the event of Google's non-compliance; or (2) the Attorney General files a state court suit, either civil or criminal.

Google merely restates its conclusion that "[t]he Attorney General has already violated Google's First Amendment rights by seeking to regulate, through coercion, the content of its protected speech . . . and by retaliating for its failure to change its practices." Supp. Mem. This argument by Google is internally inconsistent. On the one hand, Google says the Attorney General has violated its rights through regulating protected speech, while on the other hand claiming that the Attorney General has retaliated against it for "failing to change its practices." If Google has not changed its practices, then its speech has not been limited.

It is clear that Google has an adequate remedy at law and no injunctive relief should be granted. Some courts have treated adequate remedy at law and irreparable harm as two sides of a coin and were one exists the other cannot. *See Forest County Potawatomi Community of Wisconsin v. Doyle*, 803 F. Supp. 1526, 1534 (W.D. Wis. 1992) ("By definition, irreparable harm means an adequate remedy at law."). Other courts draw a line of distinction opting to hold that an adequate remedy at law is a "precondition" to any form of injunctive relief and irreparable harm is an additional factor that must be proved when a preliminary is sought. *See Roland Mach. Co. v. Dresser Indust., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

The Fifth Circuit considering abstention in favor of a military tribunal held the plaintiff "retain[ed] an adequate remedy at law and [would] not suffer irreparable harm by having his case resolved in a military tribunal. *Lawrence v. MaCarthy*, 344 F.3d 467, 471 (5th Cir. 2003). The Fifth Circuit has likewise discussed the requirement of irreparable harm in the context of a

Section 1983 action and a request to enjoin a state court. In that case, the Court discussed the "form of the traditional 'irreparable injury' that is prerequisite to injunctive relief," the requirement of irreparable harm would necessitate a showing of "probable danger that the right may be defeated, unless the injunction . . . issued." *American Radio Ass'n*, 483 F.2d 1, 5 (5th Cir. 1973). The Fifth Circuit held that there was no showing of irreparable harm because the only danger to the plaintiff's cause of action would arise "if we equate danger with the litigation of one's claim in the Alabama state courts." *Id.* Noting that the 'purpose of a preliminary injunction is to preserve one's cause of action until it can be adjudicated properly on the merits[,]" the Fifth Circuit held that no irreparable harm existed when the cause was to be adjudicated on the merits by the state court, and thus, no preliminary injunction was appropriate.

Google has left the Court to wonder how being required to litigate in the Chancery Court of Mississippi could possibly cause it to suffer irreparable harm. The fact is that Google's only potential danger is simply their fear of litigating in Mississippi state court. The Fifth Circuit has roundly rejected such inadequate showings as even approaching the level of irreparable harm and held that where an adequate remedy at law exists in a state court, irreparable harm is not present. Here, if the Attorney General moves to enforce the Subpoena in Chancery Court at a future date (which at this moment would not be prior to March 6, 2015), then Google will have the full opportunity to raises its defenses in that forum.

C. **Google's Threatened Injury does not Outweigh the potential harm to the Attorney General and the Citizens of the State of Mississippi.**

Under no set of circumstances does Google's threatened injury outweigh the harm to the state should an injunction issue. The expressly stated basis of the Subpoena is the Attorney General, as a state constitutional officer, has a strong interest in maintaining the effectiveness of consumer protection subpoenas as a prosecutorial tool. *See J & W Seligman & Co.*, 2007 WL

[33]

2822208, at * 6 ("The Attorney General's investigation also involves an '*important state interest:" investigating and preventing fraudulent conduct and enforcing subpoenas issue pursuant to that law*."). Here, the contested Subpoena stated that "[t]he Attorney General of the State of Mississippi has information providing reasonable grounds to believe that Google, Inc. may have violated one or more provisions of the [MPCA]." *See* Ex. A, p. 1. The Subpoena was issued in furtherance of the Attorney General's investigation. The only thing that will take place is if an injunction does not issue is that Google will have to litigate its case in state court. Google will maintain every defense it has asserted in this action. For the reasons set forth in Subsection B, this factor weighs almost entirely in favor of the Attorney General.

### D.      The Balance of Equities and Public Policy Oppose an Injunction.

The balancing of equities tips heavily, if not entirely, in favor of the Attorney General. The interests implicated from the Attorney General's perspective are (1) statutory framework for the protection of consumers within the State, and (2) the Executive Branch's authority, through the Attorney General, to investigate and prosecute either civil or criminal violations of the State's consumer protection laws, and (3) the State judiciary's right and obligation to interpret, apply, and enforce the laws of the state and subpoenas issued in accordance with that law. On the other side of the scale, Google offers nothing more than their interest in forum shopping and a desire to avoid litigation in the State's courts through preemptive, anticipatory and premature filings in federal court. State courts are, according to the United States Supreme Court, presumptively the appropriate forum for such disputes, and Google's fear of litigating in the state courts has never been found as justification for interference by the federal judiciary.

Google asks this Court to engage in a draconian and unprecedented usurpation of the State's sovereignty in disregard for the principles of comity and federalism. The interest of a

sovereign state in legislating, investigating, and enforcing its own laws should not be usurped lightly and certainly not, whereas here, Google has failed to demonstrate any countervailing equitable concerns.  Because Google has failed to advance any concerns to even place on the opposite side of the scale, there is little to no balancing required in this case.

## VII.   Conclusion

For the reasons set forth, and for the further reasons set forth in the motion to dismiss for lack of subject matter jurisdiction, Jim Hood, Attorney General for the State of Mississippi, in his official capacity, requests that the Court deny Google's motion for preliminary injunction and dismiss the complaint with prejudice.

This the 12th day of January, 2015.

<div style="margin-left:40%">

Respectfully Submitted,

JIM HOOD, ATTORNEY GENERAL, STATE OF MISSISSIPPI, in his official capacity

By:     JIM HOOD, ATTORNY GENERAL, STATE OF MISSISSIPPI

By:     */s/ Douglas T. Miracle*
        DOUGLAS T. MIRACLE, MSB # 9648
        SPECIAL ASSISTANT ATTORNEY GENERAL

</div>

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-5654
Facsimile: (601) 359-2003
dmira@ago.state.ms.us

[35]

## CERTIFICATE OF SERVICE

I, Douglas T. Miracle, Special Assistant Attorney General for the State of Mississippi, do

hereby certify that on this date I electronically filed the foregoing document with the Clerk of

this Court using the ECF system and sent a true and correct copy of the forgoing to counsel of

record:

Daniel J. Mulholland
FORMAN, PERRY, WATKINS, KRUTZ & TARDY, LLP - Jackson
P.O. Box 22608
200 S. Lamar Street, Suite 100 (39201-4099)
Jackson, MS 39225-2608
601/960-8600
Fax: 601/960-8613
Email: mulhollanddj@fpwk.com

David H. Kramer - PHV
WILSON, SONSINI, GOODRICH & ROSATI, PC
650 Page Mill Road
Palo Alto, CA 94304-1050
650/493-9300
Fax: 650/565-5100
Email: dkramer@wsgr.com

Fred Krutz , III
FORMAN, PERRY, WATKINS, KRUTZ & TARDY
P.O. Box 22608
Jackson, MS 39225-2608
(601) 960-8600
Email: fred@fpwk.com

Blake C. Roberts - PHV
WILMER, CUTLER, PICKERING, HALE & DORR, LLP - Washington
1801 Pennsylvania Avenue, NW
Washington, DC 20006
202/663=6920
Fax: 202/663-6363
Email: blake.roberts@wilmerhale.com

Jamie S. Gorelick - PHV
WILMER, CUTLER, PICKERING, HALE & DORR, LLP - Washington
1801 Pennsylvania Avenue, NW
Washington, DC 20006
202/663-6500

[36]

Fax: 202/663-6363
Email: jamie.gorelock@wilmerhale.com

Patrick J. Carome - PHV
WILMER, CUTLER, PICKERING, HALE AND DORR, LLP - Washington
1875 Pennsylvania Avenue, NW
Washington, DC 20006
202/663-6610
Fax: 202/663-6363
Email: patrick.carome@wilmerhale.com

Peter Neiman - PHV
WILMER, CUTLER, PICKERING, HALE AND DORR, LLP - New York
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212/295-6487
Fax: 212/230-8888
Email: peter.neiman@wilmerhale.com

Violetta G. Watson - PHV
WILMER, CUTLER, PICKERING, HALE AND DORR, LLP - New York
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212/230-8800
Fax: 212/230-8888
Email: violetta.watson@wilmerhale.com

This the 12th day of January, 2015.

/s/ Douglas T. Miracle
DOUGLAS T. MIRACLE