**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **GOOGLE, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | *Electronically filed* |
| | ) | |
| v. | ) | Case No. 3:14-CV-981-HTW-LRA |
| | ) | |
| **JIM HOOD, ATTORNEY GENERAL** | ) | |
| **OF THE STATE OF MISSISSIPPI,** | ) | |
| **IN HIS OFFICIAL CAPACITY**, | ) | |
| | ) | |
| Defendant. | ) | |

---

**AMICI CURIAE BRIEF IN SUPPORT OF**
**GENERAL HOOD'S MOTION TO DISMISS**

---

For their amici curiae brief in support of Mississippi Attorney General Jim Hood's motion to dismiss the complaint of Google, Inc. (DE #31), the duly elected Attorneys General for the Commonwealth of Kentucky and the States of Arizona, Connecticut, Illinois, Maryland, New Hampshire, New Mexico, Oregon, Rhode Island, Vermont, and Washington respectfully submit as follows:

**I.      Introduction and Statement of Interest of Amici**

Ostensibly a dispute between Plaintiff, Google, Inc., and Defendant, Jim Hood, in his official capacity as Attorney General for the State of Mississippi, this lawsuit involves matters of significant national importance.  It involves, for example, the power and duty of state Attorneys General across the nation to act on behalf of their respective citizenry, the source of their authority, as well as their ability to discharge their duties to investigate unlawful conduct.  More specifically, this lawsuit involves the extent of each state Attorney General's right to investigate

1

an interactive computer service provider's potential violation of state consumer protection laws and the extent of his or her ability to utilize civil administrative subpoenas in doing so.

As the chief law enforcement officers for their states charged with protecting the vital public interest, state Attorneys General are given broad authority to investigate activity that may violate state consumer protection laws. The amici have a heightened interest in the Court's resolution of this case, and particularly the Court's resolution of General Hood's pending motion to dismiss, in light of the precedential effect of any decision interpreting the Attorney General's authority to investigate potentially unlawful conduct on the Internet.

The Attorneys General amici respect, value, and defend the first amendment rights embodied in the First and Fourteenth Amendments to the Constitution.  They also support the freedom of discourse on the Internet that the "immunity" defense of Section 230 of the Communications Decency Act has been interpreted to promote.  However, the immunity afforded interactive computer services such as Google is not absolute, as recognized by numerous courts.  (*See* Mississippi Attorney General Memorandum of Law in Support of Motion to Dismiss, DE #32, pp. 16-19).  The concerns identified by the Attorney General of Mississippi in his pleadings and the twenty-three (23) other Attorneys General signing a December 10, 2013 letter to Google (DE #33-8) are legitimate matters of public inquiry under state consumer protection laws and, depending upon the information gleaned from the Attorney General's investigation, could support viable legal claims against Google for its actions separate and apart from actions by those to whom it makes available its various Internet platforms.  Unlike Google, which has improperly sought to invoke this Court's jurisdiction with its premature challenge to the Mississippi subpoena, the Attorneys General do not prejudge the outcome of the investigation.  However, they acknowledge and defend the Mississippi Attorney General's

2

legitimate concern for his constituents' welfare and support him in his effort to defend his authority to investigate potential unlawful conduct as the chief law enforcement official for his state.   Accordingly, and for the reasons stated herein and in the Mississippi Memorandum of Law in Support of Motion to Dismiss, the Attorneys General respectfully submit that the Motion to Dismiss should be granted.

## II.   Background

This case centers on an Administrative Subpoena and Subpoena Duces Tecum issued by General Hood to Google as part of an investigation into whether Google may have violated the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. § 75-24-1, *et seq.*   (*See* Complaint, DE #1; Subpoena, DE #33-2).   The Subpoena seeks information and documents regarding various Google practices, procedures, and operations, including Google's monetization of web content, Google's review of dangerous or illegal content, and the mechanics of Google's search engine.   (*See* Subpoena, DE #33-2).   The Subpoena followed General Hood's unsuccessful efforts to resolve his concerns about Google's practices on a more informal basis, as reflected in a series of letters (*see* DE ##33-4, 33-7, 33-8), including the aforementioned December 10, 2013 letter to Google signed by General Hood and twenty-three (23) other Attorneys General (DE #33-8).

Prior to the agreed-upon deadline for responding to the Subpoena requested by Google, and in the absence of any order from a Mississippi court directing or requiring such response, Google filed the instant federal lawsuit against General Hood.   (*See* DE #1, ¶ 74).   Google's Complaint for Declaratory and Injunctive Relief seeks, in part, a declaration that enforcement of the Subpoena is impermissible under Section 230 of the Communications Decency Act ("CDA"), the First, Fourth, and Fourteenth Amendments to the United States Constitution, the

Copyright Act, including the Digital Millennium Copyright Act ("DMCA"), and/or the Food, Drug, and Cosmetic Act ("FDCA").  (DE #1, p. 32).  Google also seeks a permanent injunction barring the Attorney General from enforcing the Subpoena and/or instituting criminal prosecution or civil litigation against Google for making third-party content accessible to Internet users.  (*Id.* at p. 33).

## III.    Discussion - Authority of Attorneys General to Investigate

Attorneys General are the chief law enforcement officers of their states and have considerable and broad common law and statutory authority to investigate matters affecting the public interest.  Carried to the United States from England as part of the common law, the office of Attorney General has existed in this country since its founding.  *See, e.g., Johnson v. Com. ex rel. Meredith*, 291 Ky. 829, 165 S.W.2d 820, 826 (Ky. 1942) ("The office of Attorney General existed in England from an early date.  Most of the American colonies established an office of the same name, and it was carried into the succeeding state governments.").  In England, "the duty of the Attorney General was to represent the king, he being the embodiment of the state." *Com. ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 867 (Ky. 1974) (citation omitted).   In the United States, however, "under the democratic form of government now prevailing[,] the people are king[.]" *Id.* (citation omitted).  Thus, today's Attorneys General represent the people. *See id.*

"It is generally recognized that unless denied by statute the attorney general of any state is clothed with all the powers incident to and traditionally belonging to his office." *Johnson*, 165 S.W.2d at 826.  Stated otherwise, the Attorney General "has all common law powers and duties except as modified by the constitution or statutes[.]" *Id.* (citation omitted).  The Attorney General's common law, statutory, and constitutional duties are, in the words of the Mississippi

Supreme Court, "many." *State v. Culp*, 823 So. 2d 510, 514 (Miss. 2002). Among all of the Attorney General's duties, however, "paramount . . . is his duty to protect the interests of the general public." *Id.* (citation and internal quotation marks omitted).

In furtherance of this paramount duty, Attorneys General are granted broad authority to investigate potential violations of state laws within their jurisdiction, particularly state consumer protection laws. *See, e.g., Schneiderman v. Rillen*, 930 N.Y.S.2d 855, 855-56 (N.Y. Sup. Ct. 2011) ("The Attorney General is permitted broad authority to conduct investigations, based on the complaint of others or on his own information, with respect to fraudulent or illegal business practices.") (citation omitted); *Harmon Law Offices, P.C. v. Attorney General*, 991 N.E.2d 1098, 1103 (Mass. App. Ct. 2013) (finding that the Massachusetts consumer protection statute "gives the Attorney General broad investigatory powers to conduct investigations whenever she believes a person has engaged in or is engaging in any conduct in violation of the statute"); *Commonwealth v. Pineur*, 533 S.W.2d 527, 529 (Ky. 1976) ("Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.") (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). In the words of the United States Supreme Court, an administrative agency that is charged with seeing that the laws are enforced, like an Attorney General's office, has and may "exercise powers of original inquiry." *Morton Salt Co.*, 338 U.S. at 642. Indeed, unlike the judicial function, which "depend[s] on a case or controversy for power to get evidence[,]" an Attorney General's office "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 642-43.

The authority to investigate has been recognized to be among the "most common and important functions identified with the office of Attorney General . . . ."  Emily Myers and Lynne Ross, eds., National Association of Attorneys General, *State Attorneys General Powers and Responsibilities*, 2d ed., pp. 12-14 (2007).  Many investigations initiated by an Attorney General's office involve important policy issues and reform of widespread fraud and abuse for a state and its consumers.  Further, Attorneys General frequently cooperate in multistate investigations, and this cooperation is instrumental in a state's efforts to advocate on behalf of its citizen-consumers and hold corporations responsible for any unfair, false, or deceptive acts committed on state citizens.  Investigations and resulting litigation involving such cooperation have helped to improve the quality of life and health of citizens in states across the nation.

In carrying out these investigations, administrative subpoenas, also referred to as civil investigative demands or "CIDs," are an important tool.  *See Ports Petroleum Co., Inc., of Ohio v. Nixon*, 37 S.W.3d 237, 243 (Mo. 2001) (Wolffe, J. dissenting) ("The civil investigative demand is an investigative tool provided to the attorney general by statutes that give broad authority to ensure that commerce in this state is beneficial to consumers.").  Absent use of "the civil investigative demand, the attorney general may be in the position of having to sue first and ask questions later."  *Id.*  "The civil investigative demand authorizes him to ask questions first, and then, if the investigation shows there is a basis for suit, to bring an action under the relevant statute." *Id.*

Recognizing the value of CIDs as investigative devices, many state statutes and state courts grant Attorneys General considerable latitude and discretion in issuing them.  *See Roemer* v. Cuomo, 888 N.Y.S.2d 669, 670-71 (N.Y. App. Div. 2009) (noting that the New York Attorney General has "broad authority" to issue subpoenas in connection with investigations into

fraudulent or illegal business activities).   In Mississippi, where General Hood issued the Subpoena relevant to this case, for example, Miss. Code Ann. § 75-24-27 broadly provides that the Attorney General may issue subpoenas and subpoenas duces tecum "[t]o accomplish the objectives and to carry out the duties prescribed" by the MCPA.   In Kentucky, the Attorney General has authority to issue a civil investigative demand whenever he has "reason to believe that a violation of the Consumer Protection Act is being committed, *or* that the public interest requires his investigation into potential violations of the Act."   *Ward v. Commonwealth*, 566 S.W.2d 426, 428 (Ky. App. 1978) (emphasis added); *see also* Ky. Rev. Stat. § 367.240(1). Further, in Indiana, as in other states, the Attorney General may issue a CID even to a person who is not a target of the investigation, so long as "a reasonable basis exists to believe the non-violator possesses information relevant to the investigation."   *Everdry Marketing and Management, Inc. v. Carter*, 885 N.E.2d 6, 10 (Ind. Ct. App. 2008); *see also Harmon Law Offices*, 991 N.E.2d at 1103 ("[T]he Attorney General's power to issue a CID extends beyond the person being investigated.").[1]

Although the power of Attorneys General to issue investigative subpoenas is expansive, it is not unlimited.   There are mechanisms for challenging improper and unduly burdensome subpoenas in state court.[2]   In the instant case the MCPA provides as follows:

> If any person knowingly and willfully . . . fails or refuses to obey any subpoena or investigative demand issued by the Attorney General, the Attorney General may,

---

[1] *See also* Ky. Rev. Stat. § 367.240 (authorizing the Kentucky Attorney General to issue a civil investigative demand to "<u>any person</u> who is believed to have information… relevant to the alleged or suspected violation ….") (emphasis added).

[2] *See, e.g.,* Ky. Rev. Stat. § 367.240(2) ("At any time before the return date specified in an investigative demand, or within twenty (20) days after the demand has been served, whichever period is shorter, a petition to extend the return date, or to modify or set aside the demand, stating good cause, may be filed in the Circuit Court where the person served with the demand resides or has his principal place of business or in the Franklin Circuit Court.").

after notice, apply to the chancery or county court of the county in which such person resides or has his principal place of business, or if the person be absent or a nonresident of the State of Mississippi, of such court of the county in which the state capitol is located, and, after hearing thereon, request an order:

> (a) Granting injunctive relief to restrain the person from engaging in any unfair or deceptive trade practice in the advertising or sale of any merchandise or the conduct of any trade or commerce that is involved in the alleged or suspected violation;

> (b) Vacating, annulling, or suspending the corporate charter of a corporation created by or under the laws of this state or revoking or suspending the certificate of authority to do business in this state of a foreign corporation or revoking or suspending any other licenses, permits or certificates issued pursuant to law to such person which are used to further the allegedly prohibited practice;

> (c) Granting such other relief as may be required, until the person files the statement or report, or obeys the subpoena or investigative demand;

> (d) The Attorney General may request that an individual who refuses to comply with a subpoena on the ground that testimony or matter may incriminate him be ordered by the court to provide the testimony or matter. Except in a prosecution for perjury, an individual who complies with a court order to provide testimony or matter directly related to a violation of the Mississippi Consumer Protection Act after asserting a privilege against self-incrimination to which he is entitled by law shall not have the testimony or matter so provided, or evidence derived therefrom, received against him in any criminal investigation or proceeding.

Any disobedience of any final order entered under this section by any said court shall be punished as a contempt thereof.

Miss. Code Ann. § 75-24-17.  Accordingly, under Mississippi law a court may order compliance and/or sanctions resulting from failure to comply with a subpoena only after the subpoena's target has been provided with notice and a hearing.  *See id.*  At this hearing, of course, the target has the opportunity to raise any objection or challenge to the subpoena's demands.

Here, Google is attempting to short-circuit Mississippi's valid administrative enforcement process by filing suit in federal court.  In fact, Google filed suit even before the parties' agreed-

8

upon Subpoena response deadline, much less any action by General Hood to compel compliance with the Subpoena under the terms of § 75-24-17.  Moreover, Google's suit does not merely challenge the Subpoena's requests for documents and information, it challenges the claims Google imagines General Hood *may* file against it at some unknown point in the future.

Allowing Google's claims to go forward at this juncture would set a dangerous precedent. Obviously, it would thwart General Hood's ability to investigate and enforce, as necessary, violations of Mississippi's consumer protection laws by Google.  Significantly, it also could jeopardize each and every Attorney General's ability to investigate and enforce violations of his or her state's consumer protection laws by Google or any other company hosting internet content, thereby jeopardizing each and every Attorney General's ability to protect the public from false, misleading and deceptive business practices by such companies.  Google has admitted that the CDA does not bar a subpoena to investigate unlawful conduct.  (*See* Google's Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction, DE #3, p. 18 n. 10)  ("A subpoena limited to seeking the facts necessary to determine whether immunity exists would be a different matter.").  However, Google objects to the breadth of the subpoena, which is exactly the type of dispute that is routinely resolved, if necessary, in state courts in accordance with state statutes.  A target of an investigation should not be permitted to conjure up federal defenses for hypothetical claims for the purpose of forestalling or impeding a legitimate investigation.

In the memorandum supporting his motion to dismiss, General Hood covers in detail the legal arguments supporting a prompt dismissal of Google's complaint.  (*See* DE #32).  There is no need to repeat General Hood's well-reasoned legal analysis here.  However, it is worth emphasizing and reinforcing General Hood's contention that Google's lawsuit is premature.  At

this time, there exists no order from any Mississippi court requiring Google's obedience to or sanctioning Google's failure to obey the subject Subpoena. *See* Miss. Code Ann. § 75-24-17. Further, General Hood has not yet made any decision to move forward with consumer protection litigation against Google. Under these circumstances, there is no case or controversy ripe for adjudication. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.") (citation omitted); *id.* ("To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision[.]") (citation omitted).

Additionally, it is worth emphasizing and reinforcing General Hood's argument that this Court lacks subject matter jurisdiction over Google's complaint. Google bases its complaint for declaratory and injunctive relief on consumer protection claims it predicts or anticipates General Hood *may* file against Google at some later date. In this way, Google's federal "claims" truly are federal defenses to an imagined state cause of action. A federal defense, however, is not a proper basis for federal jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption[.]") (emphasis omitted). In the absence of subject matter jurisdiction, this Court must dismiss Google's case.

Google attempts to avoid this jurisdictional bar by arguing, in part, that it is entitled to immunity under the Communications Decency Act for any state law consumer protection claims General Hood may bring against it. Notably, however, the immunity the CDA affords internet service providers is not absolute. Although the CDA immunizes an interactive computer service from liability for content posted by a third party, it does not provide immunity for content or

speech properly attributable to the service provider itself.  *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) ("Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties[.]"); *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) ("[T]hese provisions [of the CDA] bar plaintiffs from holding ISPs legally responsible for information that third parties created and developed. Congress thus established a general rule that providers of interactive computer services are liable <u>only for speech that is properly attributable to them</u>.") (emphasis added) (citations and internal quotation marks omitted); *Jones v. Dirty World Entertainment Recordings, LLC*, 766 F. Supp. 2d 828, 836 (E.D. Ky. 2011) ("The immunity afforded by the CDA is not absolute and may be forfeited if the site owner invites the posting of illegal materials or makes actionable postings itself." (citing *Roommates.com*, 521 F.3d 1157).  Accordingly, General Hood is entitled to investigate Google's activity to determine whether Google may be responsible for web content violative of Mississippi's Consumer Protection Act.  Indeed, it is unfair to ask General Hood to respond to Google's contention that the CDA cloaks it with immunity when Google is withholding the very materials that will allow General Hood to evaluate whether the CDA applies to Google's acts and practices.

In short, as is evident from the letters of record signed by multiple Attorneys General, Mississippi is not the only state with concerns about Google's consumer practices.  (*See* DE ##33-4, 33-7, 33-8).  Mississippi, like every state, is entitled to address these concerns on behalf of its sovereign through further investigation utilizing proper tools, including administrative subpoenas.  Mississippi, like every state, also is entitled to review information gathered pursuant to its investigation and make decisions about actions to take—or not take—to enforce its consumer protection laws for its citizens.  Google may challenge Mississippi's Subpoena

consistent with state law. But, Google must not be allowed to bypass state subpoena review processes and derail a legitimate state consumer protection investigation by filing premature declaratory judgment lawsuits in federal court. Both public policy and the law prohibit it.

## IV.   Conclusion

For the reasons set forth above, the Attorneys General of the Commonwealth of Kentucky and the States of Arizona, Connecticut, Illinois, Maryland, New Hampshire, New Mexico, Oregon, Rhode Island, Vermont, and Washington urge the Court to grant General Hood's motion to dismiss Google's complaint (DE #31).

Respectfully submitted,

JACK CONWAY, ATTORNEY GENERAL
COMMONWEALTH OF KENTUCKY

By:    JACK CONWAY, ATTORNEY GENERAL
COMMONWEALTH OF KENTUCKY

TODD LEATHERMAN
Executive Director, Office of Consumer Protection

By:     /s/ Laura S. Crittenden_____
Laura S. Crittenden, KSB #92527
Assistant Attorney General

Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, KY 40601
laura.crittenden@ky.gov

*Counsel for the Commonwealth of Kentucky*

**ALSO SUPPORTED BY:**

**MARK BRNOVICH**
**ATTORNEY GENERAL OF ARIZONA**
1275 W. Washingon St.
Phoenix, AZ 85007

**GEORGE JEPSEN**
**ATTORNEY GENERAL**
**STATE OF CONNECTICUT**
55 Elm St.
Hartford, CT 06106

**LISA MADIGAN**
**ATTORNEY GENERAL OF ILLINOIS**
100 West Randolph, 12th Floor
Chicago, Illinois 60601

**BRIAN E. FROSH**
**ATTORNEY GENERAL OF MARYLAND**
200 Saint Paul Place
Baltimore, Maryland 21202

**JOSEPH FOSTER**
**ATTORNEY GENERAL, NEW HAMPSHIRE**
33 Capitol St.
Concord, NH 03301

**HECTOR H. BALDERAS**
**ATTORNEY GENERAL OF NEW MEXICO**
P.O. Drawer 1508
Santa Fe, NM 87504-1508

**ELLEN F. ROSENBLUM**
**ATTORNEY GENERAL, OREGON**
1162 Court Street NE
Salem, OR 97301

**PETER F. KILMARTIN**
**ATTORNEY GENERAL, RHODE ISLAND**
150 South Main St.
Providence, RI 02903

**WILLIAM H. SORRELL**
**ATTORNEY GENERAL, VERMONT**
109 State St.
Montpelier, VT 05609

**BOB FERGUSON**
**ATTORNEY GENERAL, WASHINGTON**
1125 Washington Street SE
P.O. Box 40100
Olympia, WA 98504

## <u>CERTIFICATE OF SERVICE</u>

The foregoing amici curiae brief was electronically filed this 22nd day of January, 2015. All parties indicated on the electronic filing receipt will be served via the Court's electronic filing system.

_/s/ Laura S. Crittenden_____