**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

Google Inc.,                        )
                                    )
                *Plaintiff*,        )
                                    )
                                    )
                *v.*                )   No. 3:14cv981 HTW-LRA
                                    )
                                    )   **CONSOLIDATED MEMORANDUM**
                                    )   **BRIEF IN OPPOSITION TO**
Jim Hood, Attorney General of the State  )   **DEFENDANT'S MOTION TO**
of Mississippi, in his official capacity, )   **DISMISS AND IN REBUTTAL TO**
                                    )   **DEFENDANT'S RESPONSE TO**
                *Defendant.*        )   **GOOGLE'S MOTION FOR A**
                                    )   **TEMPORARY RESTRAINING**
                                    )   **ORDER AND PRELIMINARY**
                                    )   **INJUNCTION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE MOTION TO DISMISS SHOULD BE DENIED ........................................4

    A.   This Court Has Subject Matter Jurisdiction Over Google's Claims.......................5

    B.   The Court Should Not Abstain ...........................................................................10

        1.   None Of The Exceptional Circumstances Required For *Younger* Abstention Is Present .....................................................................................12

        2.   The Facially Conclusive Exception To *Younger* Applies ..........................15

        3.   The Bad Faith Exception To *Younger* Applies ...........................................16

III.  THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION ...............18

    A.   Google Will Succeed On The Merits Of Its Claims ............................................19

        1.   CDA Immunity ...........................................................................................19

            a.   The CDA Bars The Subpoena And Threatened Case Under The MCPA ......................................................................................19

            b.   The Attorney General's Hypothetical Alternative Cases Fail ...................................................................................................22

        2.   The Subpoena And Threats Violate Google's First Amendment Rights ........................................................................................................25

        3.   The Subpoena Violates Google's Fourth Amendment Rights..................30

        4.   The Subpoena Is Preempted In Part By Federal Law ...............................31

            a.   The Copyright Act .......................................................................31

            b.   The Federal Food, Drug, And Cosmetic Act ................................33

    B.   Google Faces A Substantial Threat Of Irreparable Harm.....................................33

    C.   A Preliminary Injunction Will Not Harm The Attorney General And Will Serve the Public Interest ..................................................................................34

IV.   CONCLUSION.....................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACRA Turf Club, LLC v. Zanzuccki*,
    748 F.3d 127 (3d Cir. 2014)..........................................................................................12, 13

*Alcatel USA, Inc. v. DGI Technologies, Inc.*,
    166 F.3d 772 (5th Cir. 1999) ..............................................................................................31

*Anne Arundel County, Maryland v. 2020c West Street, Inc.*,
    No. CIV. A. HAR 91-2580, 1991 WL 263559 (D. Md. Dec. 3, 1991) ....................................7

*Anthony v. Yahoo! Inc.*,
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) ...............................................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................5

*Backpage.com, LLC v. Cooper*,
    939 F. Supp. 2d 805 (M.D. Tenn. 2013).................................................................................8

*Backpage.com LLC v. Hoffman*,
    No. 13-CV-03952, 2013 WL 4502097 (D.N.J. Aug. 20, 2013) ..............................................8

*Backpage.com, LLC v. McKenna*,
    881 F. Supp. 2d 1262 (W.D. Wash. 2012)..............................................................................8

*Braniff International, Inc. v. Florida Public Service Commission*,
    576 F.2d 1100 (5th Cir. 1978) .........................................................................................9, 10

*Bud Antle, Inc. v. Barbosa*,
    45 F.3d 1261 (9th Cir. 1994) ...............................................................................................15

*Buttrey v. United States*,
    690 F.2d 1186 (5th Cir. 1982) ...............................................................................................5

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) .............................................................................................22

*Choice Inc. of Texas v. Greenstein*,
    691 F.3d 710 (5th Cir. 2012) .................................................................................................5

*Cooksey v. Futrell*,
    721 F.3d 226 (4th Cir. 2013) ...............................................................................................28

*Cuomo v. Clearing House Association, L.L.C.*,
    557 U.S. 519 (2009)................................................................................6, 7

*CYBERSitter, LLC v. Google Inc.*,
    905 F. Supp. 2d 1080 (C.D. Cal. 2012) ....................................................23

*Daboub v. Gibbons*,
    42 F.3d 285 (5th Cir. 1995) .....................................................................32

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ....................................................19, 22, 24

*Elrod v. Burns*,
    427 U.S. 347 (1976)..................................................................................34

*Empower Texans, Inc. v. Texas Ethics Commission*,
    No. A-14-CA-172-SS, 2014 WL 1666389 (W.D. Tex. April 25, 2014) ................................14

*Ex Parte Young*,
    209 U.S. 123 (1908)...................................................................................5

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .................................................................24

*Federal Savings & Loan Insurance Co. v. Dixon*,
    835 F.2d 554 (5th Cir. 1987) ..................................................................17

*Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California*,
    463 U.S. 1 (1983)........................................................................................7

*FTC v. American Tobacco Co.*,
    264 U.S. 298 (1924)..................................................................................30

*Gaar v. Quirk*,
    86 F.3d 451 (5th Cir. 1996) .......................................................................8

*Gay Student Services v. Texas A & M University*,
    612 F.2d 160 (5th Cir. 1980), *abrogated on other grounds by Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) ......................................7

*GlobeRanger Corp. v. Software AG*,
    691 F.3d 702 (5th Cir. 2012) ...................................................................31

*Golden State Transit Corp. v. City of Los Angeles*,
    493 U.S. 103 (1989)....................................................................................6

*Green v. America Online (AOL)*,
　318 F.3d 465 (3d Cir. 2003)..............................................................................24

*Guillemard-Ginorio v. Contreras-Gomez*,
　585 F.3d 508 (1st Cir. 2009)............................................................................13

*Izen v. Catalina*,
　398 F.3d 363 (5th Cir. 2005) ..........................................................................28

*Jordan v. Reis*,
　169 F. Supp. 2d 664 (S.D. Tex. 2001) ...........................................................16

*Keenan v. Tejeda*,
　290 F.3d 252 (5th Cir. 2002) ..........................................................................28

*Lacey v. Maricopa County*,
　693 F.3d 896 (9th Cir. 2012) .....................................................................26, 27

*Laird v. Tatum*,
　408 U.S. 1 (1972).............................................................................................5

*Little v. City of North Miami*,
　805 F.2d 962 (11th Cir. 1986) .........................................................................27

*Louisiana Debating & Literary Association v. City of New Orleans*,
　42 F.3d 1483 (5th Cir. 1995) ..........................................................................13

*Lovell v. City of Griffin*,
　303 U.S. 444 (1938)..........................................................................................7

*Lowe v. Ingalls Shipbuilding, Division of Litton Systems, Inc.*,
　723 F.2d 1173 (5th Cir. 1984) ...........................................................................8

*Maine v. Thiboutot*,
　448 U.S. 1 (1980)..............................................................................................5

*Major League Baseball v. Butterworth*,
　181 F. Supp. 2d 1316 (N.D. Fla. 2001), *aff'd sub nom. Major League Baseball v.
　Crist*, 331 F.3d 1177 (11th Cir. 2003) .....................................................7, 13, 30

*Major League Baseball v. Crist*,
　331 F.3d 1177 (11th Cir. 2003) .......................................................................34

*MANual Enterprises, Inc. v. Day*,
　370 U.S. 478 (1962)........................................................................................29

*McDonald's Corp. v. Robertson*,
　147 F.3d 1301 (11th Cir. 1998) .......................................................................18

*Middlesex County Ethics Commission v. Garden State Bar Association*,
    457 U.S. 423 (1982)...........................................................................................10, 11, 14

*Mir v. Shah*,
    569 F. App'x 48 (2d Cir. 2014) ...................................................................................14

*Mir v. Shah*,
    No. 11 Civ. 5211, 2012 WL 6097770 (S.D.N.Y. Dec. 4, 2012)...................................14

*Mississippi ex rel. Hood v. Gulf Coast Claims Facility*,
    No. 3:11-CV-00509, 2011 WL 5551773 (S.D. Miss. Nov. 15, 2011)...........................12, 13

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992).................................................................................................6, 34

*Mulholland v. Marion County Election Board*,
    746 F.3d 811 (7th Cir. 2014) .....................................................................................13

*National Railroad Passenger Corp. v. State of Florida*,
    929 F.2d 1532 (11th Cir. 1991) ..................................................................................15

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989).................................................................................................2, 11, 12

*Obado v. Magedson*,
    No. CIV. 13-2382 (JAP), 2014 WL 3778261 (D.N.J. July 31, 2014) ...........................25

*Page v. Braker*,
    No. Civ. 06-CV-2067, 2007 WL 432980 (D.N.J. Jan. 31, 2007) .................................26

*Pendleton v. St. Louis County*,
    178 F.3d 1007 (8th Cir. 1999) ...................................................................................27

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ...................................................................................23

*Petroleum Exploration, Inc. v. Public Service Commission of Kentucky*,
    304 U.S. 209 (1938).................................................................................................34

*Planned Parenthood of Houston & Southeast Texas v. Sanchez*,
    403 F.3d 324 (5th Cir. 2005) .....................................................................................8

*Pompey v. Broward County*,
    95 F.3d 1543 (11th Cir. 1996) ...................................................................................11

*Prentis v. Atlantic Coast Line Co.*,
    211 U.S. 210 (1908).................................................................................................12

*Public Service Commission of Utah v. Wycoff Co.,*
 344 U.S. 237 (1951) .................................................................................9, 10

*Recording Industry Association of America, Inc. v. Verizon Internet Services,*
 351 F.3d 1229 (D.C. Cir. 2003) ..........................................................32

*Recovery Chapel v. City of Springfield, Mo.,*
 No. 6:14–CV–3289, 2014 WL 4954111 (W.D. Mo. Oct. 2, 2014) ........................................14

*Reed v. Giarrusso,*
 462 F.2d 706 (5th Cir. 1972) ..............................................................11

*Sealed Appellee 1 v. Sealed Appellant 1,*
 767 F.3d 418 (5th Cir. 2013) ..............................................................9

*Sears, Roebuck & Co. v. Stiffel Co.,*
 376 U.S. 225 (1964) ..........................................................................32

*See v. City of Seattle,*
 387 U.S. 541 (1967) ..........................................................................30

*Shaw v. Delta Air Lines, Inc.,*
 463 U.S. 85 (1983) ................................................................2, 5, 7, 8

*Sierra Club, Lone Star Chapter v. FDIC,*
 992 F.2d 545 (5th Cir. 1993) ..............................................................17

*Smith v. California,*
 361 U.S. 147 (1959) ..........................................................................29

*Soldal v. Cook County.,*
 506 U.S. 56 (1992) ............................................................................7

*Sony Corp. v. Universal City Studios, Inc.,*
 464 U.S. 417 (1984) ..........................................................................33

*Sprint Communications, Inc. v. Jacobs,*
 134 S. Ct. 584 (2013) ..............................................................2, 11, 12

*Sprint Corp. v. Evans,*
 818 F. Supp. 1447 (M.D. Ala. 1993) ..............................................15

*Stayart v. Google Inc.,*
 783 F. Supp. 2d 1055 (E.D. Wis. 2011), *aff'd,* 710 F.3d 719 (7th Cir. 2013) ........................25

*Stipelcovich v. Directv, Inc.,*
 129 F. Supp. 2d 989 (E.D. Tex. 2001) ..............................................32

*Tapia v. City of Albuquerque*,
   10 F. Supp. 3d 1207 (D.N.M. 2014) ...................................................................7

*Texas Medical Providers Performing Abortion Services v. Lakey*,
   667 F.3d 570 (5th Cir. 2012) ..........................................................................35

*Texans for Free Enterprises v. Texas Ethics Commission*,
   732 F.3d 535 (5th Cir. 2013) ..........................................................................33

*Texas Association of Business v. Earle*,
   388 F.3d 515, 520 (5th Cir. 2004) ..............................................................13, 14

*Thompson v. Florida Bar*,
   526 F. Supp. 2d 1264 (S.D. Fla. 2007) ............................................................11

*Tollefsrud v. Solum*,
   Civ. No. 13–2201, 2014 WL 37576 (D. Minn. Jan. 3, 2014) ...............................14

*United States v. Baylor University Medical Center*,
   711 F.2d 38 (5th Cir. 1983) ............................................................................34

*United States v. Kentucky*,
   252 F.3d 816 (6th Cir. 2001) ..........................................................................15

*United States v. Miller*,
   425 U.S.435 (1976)........................................................................................30

*University of Texas v. Camenisch*,
   451 U.S. 390 (1981).......................................................................................19

*Universal Communication Systems, Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007)...........................................................................23

*Venable v. Louisiana Workers' Compensation Corp.*,
   740 F.3d 937 (5th Cir. 2013) ............................................................................5

*Verizon New England, Inc. v. Rhode Island Department of Labor & Training*,
   723 F.3d 113 (1st Cir. 2013)...........................................................................11

*Voicenet Communications, Inc. v. Corbett*,
   Civil Action No. 04-1318, 2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ................8

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ........................................................................27

*Williams v. San Francisco Unified School District*,
   340 F. Supp. 438 (N.D. Cal. 1972) ..................................................................18

*Wilson v. Thompson,*
    593 F.2d 1375 (5th Cir. 1979) ...............................................................................16

*Younger v. Harris,*
    401 U.S. 37 (1971)................................................................................. *passim*

*Zeran v. America Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) ..........................................................................22, 23

*Zieper v. Metzinger,*
    474 F.3d 60 (2d Cir. 2007)................................................................................26

*Zito v. Steeplechase Films, Inc..*
    267 F. Supp. 2d 1022 (N.D. Cal. 2003) .............................................................32

*Zurcher v. Stanford Daily,*
    436 U.S. 547 (1978)........................................................................................26

## STATUTES

42 U.S.C. § 1983 ..............................................................................................2, 5

47 U.S.C. § 230(b)(2) ...........................................................................................4

47 U.S.C. § 230(c)(1) ..........................................................................................19

47 U.S.C. § 230(e)(2)..........................................................................................22

## OTHER AUTHORITIES

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2949 (3d ed.) ......................18

## I.      INTRODUCTION

Google seeks a preliminary injunction against the Mississippi Attorney General to prevent him from inflicting further irreparable harm on Google until this Court has an opportunity to consider the merits of the federal claims pleaded in Google's Complaint.  Federal law denies individual states the authority to regulate Internet service providers like Google over the third-party content they make accessible over the Internet.  But for nearly two years, the Attorney General has pressured Google to remove third-party content he disfavors from its search engine and YouTube video-sharing service.  He has repeatedly threatened to prosecute Google under the Mississippi Consumer Protection Act ("MCPA") if it does not remove that content.  And he has threatened, and then served, an extraordinarily burdensome subpoena in retaliation for Google's refusal to comply with his unlawful censorship demands.

The Attorney General's filings make little effort to defend his censorship demands or his repeated threats to prosecute Google for its display of third-party content, and instead largely try to change the subject.  Most of his briefing is devoted to procedural objections, which boil down to the claim that this Court has no authority to enforce federal law here.[1]  In the Attorney General's view, Google cannot litigate its affirmative federal claims because it can assert the protections of federal statutory and constitutional law as a defense in state court.  In other words, the possibility that Google could raise such defenses in state court, after its federal and constitutional rights have been violated, means that this Court should not get involved here.

Settled law is directly to the contrary.  Google has properly pleaded that the Attorney General is interfering with its federally-protected rights under color of state law, in violation of

---

[1] Consistent with the Court's December 23, 2014 order authorizing three rounds of briefing ending on January 22, 2014, this memorandum both responds to the Attorney General's motion to dismiss and replies to the Attorney General's opposition to Google's preliminary injunction motion.

42 U.S.C. § 1983.  The Supreme Court has termed "beyond dispute" the jurisdiction of a federal court to enjoin state officials from violating federally protected rights.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).  A district court's obligation to exercise that jurisdiction is "virtually unflagging."  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593 (2013).  And "there is no doctrine that the availability . . . of state judicial proceedings excludes the federal courts."  *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) ("*NOPSI*").

On the propriety of the Subpoena and threatened action against Google under the MCPA, the Attorney General's arguments fare no better.  Rather than addressing what he has actually said and done, the Attorney General instead inaccurately argues that Google is here seeking a total exemption from state law.  *See, e.g.*, Mem. in Opp'n at 2, ECF No. 34 ("AG Opp.").  And then the Attorney General invents hypothetical cases (*i.e.*, not the cases he has been threatening for 19 months) that he might arguably bring against Google without running afoul of federal law.[2]

The record makes clear precisely what it is that Google seeks: an order enjoining the Attorney General from "(a) enforcing the [Subpoena] . . . issued by the Attorney General and served on Google on October 27, 2014 (returnable January 5, 2015) or (b) bringing a civil or criminal charge against Google under Mississippi law for making accessible third-party content to Internet users (as threatened)."  PI's Mot. for TRO and Prelim. Inj. at 1, ECF No. 2.  Google is not asking for the general exemption from investigation or prosecution described by the Attorney

---

[2] The Attorney General's brief touches on seemingly random topics like pre-1972 sound recordings, and the possibility of some unspecified discrepancy between Google's conduct and unspecified statements Google may have made advertisers or consumers.  These newly-minted theories bear only passing resemblance to what his Subpoena actually seeks and what the Attorney General's public statements threaten; they lack any factual support and do not avoid the limitations on state authority imposed by the CDA, the Constitution, the FDCA and the Copyright Act.  *See infra* at 22-25, 30-33.

General, but only for an injunction barring the very prosecution on improper grounds he has repeatedly threatened, and enjoining enforcement of a retaliatory and unlawful Subpoena. The requested injunction would not impair in the slightest the Attorney General's ability to conduct an appropriate investigation as to conduct not immunized by federal law, or to prosecute Google under state law if it was violated.

The Attorney General has not withdrawn his repeated threats to prosecute Google for making third party content accessible on the Internet, and he has not withdrawn the Subpoena he has issued, which explicitly focuses on that threatened case. The question before the Court is therefore not whether the Attorney General can imagine some case *other* than the one he has threatened that might be proper. The issue for the Court is instead whether what the Attorney General has actually done and repeatedly threatened is unlawful.

On that, the factual record is undisputed. The Attorney General has not challenged the facts set forth in the detailed declarations, supported by multiple exhibits, submitted by Google in support of its motion. There is no dispute that third parties, not Google, created all of the content about which the Attorney General complains.[3] There is no dispute that the Attorney General has threatened to criminally prosecute Google under the MCPA for making that publicly-available third-party content more accessible to internet users. There is no dispute that the Subpoena was issued in retaliation for Google's refusal to self-censor to the extent demanded. There is no dispute that the Subpoena focuses on third-party content, including, in large part, content related to alleged copyright infringement or the importation of prescription drugs, or that the Attorney General repeatedly refused to narrow that Subpoena, and instead

---

[3]  *See* Grand Decl. ¶¶ 20 & 23, ECF No. 16; Downing Decl. ¶¶ 19 & 20, ECF No. 15; Chhabria Decl. ¶¶ 28 & 29; Declaration of Patrick Thomas ¶ 7 ("Thomas Decl."). Prior to bringing suit, Google provided the Attorney General evidence confirming this. Neiman Decl. ¶ 34, ECF No. 17. The Attorney General has identified no contrary evidence.

asserted that federal law has "no impact" on the scope of his demands.  Neiman Decl. ¶ 32; *see also, e.g.*, *id.* ¶ 34; *id.* Ex. 30 at 4 ¶ 1.

Given the broad immunity Congress granted Internet service providers, the robust protections of the First and Fourth Amendments, and the well-established preemptive reach of the CDA, Copyright Act, and FDCA, Google is likely to succeed in its claim that this undisputed course of conduct is unlawful.  As two supplemental declarations demonstrate, this conduct has already concretely and improperly injured Google, chilling its exercise of its federal rights.  *See generally* Thomas Decl.; Declaration of Alice Wu ("Wu Decl.").

The appropriate course is to issue a preliminary injunction that preserves the status quo while the Court considers the merits of Google's federal claims.  A preliminary injunction will not interfere with any of the Attorney General's legitimate enforcement prerogatives, but it will prohibit the Attorney General from continuing to infringe Google's federal rights by (1) bringing the civil or criminal case he has threatened based on Google linking to or displaying third-party content (*e.g.*, websites and videos), or (2) enforcing the Subpoena.  A preliminary injunction will protect Google's constitutional rights, and will further the Congressionally-declared national policy of protecting the  "vibrant and competitive free market that presently exists for the Internet . . . , unfettered by . . .  State regulation."  47 U.S.C. § 230(b)(2).

## II.     THE MOTION TO DISMISS SHOULD BE DENIED

The Attorney General's motion to dismiss argues that because Google could raise its various objections to his conduct as defenses in state court if and when he carries out his threats to sue Google or seeks to enforce the Subpoena, this court either lacks jurisdiction or should abstain from exercising it.

The Attorney General is wrong on both counts.  No legal doctrine relegates Google to the forum and time of the Attorney General's choosing to remedy the violation of its rights under federal law.[4]

### A.   This Court Has Subject Matter Jurisdiction Over Google's Claims

Dismissal for lack of subject matter jurisdiction is appropriate only when "it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013) (internal quotation marks omitted).  Where the defendant has not submitted evidence contesting the allegations of the complaint, "the district court is to accept as true the allegations and facts set forth in the complaint." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).[5]

It is "beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."  *Shaw*, 463 U.S. at 96 n.14 (citing *Ex Parte Young*, 209 U.S. 123, 160-62 (1908)).  Indeed, 42 U.S.C. § 1983 creates a federal cause of action against those interfering with federal rights under color of state law.  The "federal rights" to which federal jurisdiction extends include both constitutional and statutory rights, *Maine v. Thiboutot*, 448 U.S. 1, 4-7 (1980), and the "interference" that the federal courts can enjoin can take myriad

---

[4] Citing *Laird v. Tatum*, 408 U.S. 1 (1972), the Attorney General also erroneously claims that Google's First Amendment claims are not justiciable.  AG Opp. at 11-12; Mem. in Supp. of Mot. to Dismiss at 23-26, ECF No. 32 ("AG MTD").  There was no justiciable controversy in *Laird* because the "chilling effect was allegedly caused not by any specific action of the Army against respondents," but rather by the mere "existence and operation of the intelligence gathering and distributing system." *Buttrey v. United States*, 690 F.2d 1186, 1190 (5th Cir. 1982).  Google has challenged specific actions of the Attorney General against it—the Subpoena and the threats of a civil or criminal action—and its First Amendment claims are therefore justiciable.  *See Laird*, 408 U.S. at 11, 13-14.  *See also infra* 9 n.10.

[5] The Attorney General recites the Rule 12(b)(6) standard for failure to state a claim, AG MTD at 8-9, but he never asserts or explains how Google has failed to allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  To the contrary, Google has shown that its claims are not just plausible, but likely to succeed.  *See infra* at 19-33.

forms, *see Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105-06 (1989)

(Section 1983 "must be broadly construed" and "provides a remedy against all forms of official

violation of federally protected rights." (internal quotation marks omitted)).

    *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), is particularly instructive.

There, several state attorneys general threatened to bring a civil case under their consumer

protection statutes unless certain airlines adopted desired rules related to airfare advertising.  *Id.*

at 379-80.  The airlines asserted that a federal law deregulating the airlines barred the threatened

suits.  *Id.* at 380.  The Supreme Court agreed and affirmed the injunction, concluding that the

airlines did *not* need to wait to be sued by the attorneys general and assert federal law as a

defense in state court.  *Id.* at 381.  *Morales* thus makes clear that threatening litigation under

consumer protection laws related to activity protected by federal law—exactly what the Attorney

General has done here —is precisely the kind of "interference" by state officials with "federal

rights" that federal courts have jurisdiction to enjoin.  *Id.*

    State officials' demands for information can also constitute impermissible "interference"

with federal rights which federal courts may enjoin.  In *Cuomo v. Clearing House Ass'n, L.L.C.*,

557 U.S. 519 (2009), the Supreme Court reviewed a federal court injunction barring New York's

attorney general from demanding that national banks provide certain data about their lending

practices.  *Id.* at 523.  The Supreme Court agreed that federal law exempted national banks from

state supervisory authority and that the attorney general's demands for information (backed up

by threats of subpoena) interfered with that federal right.  *Id.*  And the Court affirmed the

injunction "as applied to the threatened issuance of executive subpoenas by the Attorney General

for the State of New York."  *Id.* at 536.  The Attorney General's theory here—that a party

aggrieved by state demands for information in violation of federal law lacks any recourse in

6

federal court—simply cannot be reconciled with the Supreme Court's affirmance of a federal court injunction against such a demand in *Clearing House*. *Id.*; *see also Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316 (N.D. Fla. 2001) (enjoining enforcement of state Attorney General's civil investigative demand), *aff'd sub nom. Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003).

These well-settled principles fully establish this Court's jurisdiction to determine whether to enjoin the Attorney General's interference with federal rights by way of threatened litigation and demands for information.[6]  Google alleges that the Attorney General has violated its rights under the First and Fourth Amendments, as well as the CDA, the Copyright Act, and the FDCA.[7]

The First and Fourth Amendments create federal rights with which states may not interfere.[8]  *See, e.g.*, *Soldal v. Cook Cnty.*, 506 U.S. 56, 59-61 (1992) (Fourth Amendment); *Lovell v. City of Griffin*, 303 U.S. 444, 450 (1938) (First Amendment).  Federal statutes that

---

[6] That Google also seeks declaratory relief does not change the analysis.  Plaintiffs in *Shaw* sought both an injunction and declaratory relief, but this did not stop the Court from concluding that it had jurisdiction to resolve the dispute.  *See* 486 U.S. at 96 n.14.  Rather, once "jurisdiction has been established," the "separate remedy available through declaratory judgment may also proceed."  *Gay Student Servs. v. Tex. A & M Univ.*, 612 F.2d 160, 166 (5th Cir. 1980), *abrogated on other grounds by Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 20 n.20 (1983).

[7] The Attorney General repeatedly states that Google does not challenge the constitutionality of (or assert preemption of) any statute or regulation.  See AG Opp. at 10 & 12; AG MTD at 23, 25, 26, 29, & 39.  To the contrary, Google's Complaint, ECF No. 1 ("Compl."), alleges that applying the MCPA to bar Google from making available third party content to internet users violates the First Amendment and is preempted by the CDA and, in part, by the Copyright Act and the FDCA.  *See* Compl. ¶¶ 82, 92, 100 & 107.

[8] The authority offered to counter this Court's clear jurisdiction over constitutional claims is strikingly inapposite.  *Anne Arundel Cnty., Maryland v. 2020c W. St., Inc.*, No. CIV. A. HAR 91-2580, 1991 WL 263559, at *1 (D. Md. Dec. 3, 1991) rejected a *defendant's* attempt to remove an action filed in state court with exclusively state law claims—the inverse of this case.  And *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207 (D.N.M. 2014), affirms that "the Fourth Amendment constrains governments' use of subpoenas in their investigative capacities" (as is the case here), and merely recognizes that when subpoenas are used "as a part of discovery in run-of-the-mill civil litigation," not every dispute is constitutional.  *Id.* at 1316-17.

preempt state law, like the CDA, the Copyright Act and the FDCA, do as well. *Shaw,* 463 U.S. at 96 n.14 ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 331 (5th Cir. 2005) ("It is well-established that the federal courts have jurisdiction under 28 U.S.C. § 1331 over a preemption claim seeking injunctive and declaratory relief."). Federal courts around the country have recognized that individuals aggrieved by state interference with rights granted by the CDA may invoke the federal court's jurisdiction. *See Voicenet Commc'ns, Inc. v. Corbett*, Civil Action No. 04-1318, 2006 WL 2506318, at *2-3 (E.D. Pa. Aug. 30, 2006) (recognizing Section 1983 claim for CDA rights where state attorney general executed search warrant on Internet service provider); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1271-75 (W.D. Wash. 2012) (enjoining violation of Section 1983 for deprivation of rights under, *inter alia*, CDA Section 230); *see also Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 828 (M.D. Tenn. 2013) (same); *Backpage.com LLC v. Hoffman*, No. 13-CV-03952, 2013 WL 4502097, at *5-7 (D.N.J. Aug. 20, 2013) (same).[9]

---

[9] The Attorney General's reliance on *Gaar v. Quirk*, 86 F.3d 451 (5th Cir. 1996), and *Lowe v. Ingalls Shipbuilding, Division of Litton Sys., Inc.*, 723 F.2d 1173 (5th Cir. 1984), is misplaced. Those cases did not concern the jurisdiction of federal courts to enjoin *state officers* from interfering with federal rights. Rather, they addressed whether one private party may bring a federal declaratory judgment action against another private party to adjudicate a federal defense potentially relevant to a dispute between them. *See Lowe*, 723 F.2d at 1180 n.7 ("no state action, actual or threatened, was alleged, proved or found"); *Gaar*, 86 F.3d at 453 (medical malpractice dispute between private parties). As *Lowe* itself states, whatever the limits on invoking federal jurisdiction over such private disputes, a suit against a state officer alleging interference with federal rights "presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 723 F.2d at 1180 n.7 (quoting *Shaw*, 463 U.S. at 96 n.14).

*Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237 (1951), on which the Attorney General extensively relies, *see* AG MTD at 6, 10-14, & 16, does not change this analysis.  In *Wycoff*, the Court rejected a lawsuit seeking a declaration that certain conduct was in interstate commerce and thus beyond the scope of certain state regulation.  Unlike Google, the plaintiff in *Wycoff* faced neither a demand for information from the state, nor a threat of state prosecution.  "[B]ecause there [wa]s no proof of any threatened or probable act of the defendants which might cause the irreparable injury essential to equitable relief by injunction," the Court found that the "dispute has not matured to a point where we can see what, if any, concrete controversy will develop."  *Id.* at 241, 245.  By contrast, Google's Complaint contains detailed allegations describing threatened and ongoing actions by the Attorney General directed squarely at Google, including both threats of prosecution and demands for information that presently violate Google's rights and have inflicted irreparable harm, as detailed below.  *See* Compl. ¶¶ 32-34, 36, 39-40, 42-45, 47-51, 53, 58, 63-68, 70-84, 94-97, 100, 107; *infra* at 25-31, 33-34.[10]

While the Attorney General seeks to draw from *Wycoff* a broad rule that federal courts will not hear claims that could be brought as defenses in state court, the Fifth Circuit has squarely rejected this incorrect reading.  In *Braniff International, Inc. v. Florida Public Service Commission*, 576 F.2d 1100 (5th Cir. 1978), six airlines sued the Florida Public Service Commission seeking an injunction against Florida's efforts to regulate airline schedules on the theory that federal law preempted the state regulation.  *Id.* at 1102.  After the district court dismissed, the Fifth Circuit reversed.  The court explained that the language from *Wycoff* on which Florida (like the Attorney General here) relied—including the passage stating that "[f]ederal courts will not seize litigations from state courts merely because one, normally a

---

[10] For these reasons, Google's claims are "concrete and justiciable, and therefore ripe" to be decided by this Court.  *Sealed Appellee 1 v. Sealed Appellant 1*, 767 F.3d 418, 423 (5th  Cir. 2013).

defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law"—was "obiter dictum" and that "during the 26 years since its decision in *Wycoff* the Supreme Court has never invoked the rationale . . . to obtain the result reached by the district court here." *Id.* at 1104.  The Fifth Circuit stressed that in *Wycoff* there was "no evidence whatsoever of any past, pending or threatened action by the [defendant] touching [the plaintiff's] business in any respect" and there was accordingly no "true 'case or controversy' as required by Article III." *Id.* at 1105 (quoting *Wycoff*, 344 U.S. at 240).  The Fifth Circuit held that this, and not the language quoted in the Attorney General's papers, was the "true import" of *Wycoff*.  *Id*. at 1104.  In closing, the Fifth Circuit declared—in words fully applicable to the Attorney General's argument here—"[t]hat appellants' constitutional claim is or may be a defense to the Commission's actions states a mere truism; it is not, under the circumstances, a limitation upon the power of the district court to entertain the controversy before it." *Id.* at 1106.

### B.     The Court Should Not Abstain

In *Younger v. Harris,* 401 U.S. 37 (1971), the Supreme Court ruled that federal courts should abstain from exercising jurisdiction over an action brought by an indicted state criminal defendant seeking to enjoin the pending state criminal case against him.  The Supreme Court subsequently applied *Younger* to require abstention in a handful of other circumstances.  *See, e.g.*, *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assn*, 457 U.S. 423, 431, 435 (1982) (pending state civil disciplinary proceeding).  Lower courts drew from these subsequent cases the three-part *Middlesex* test the Attorney General relies on in his briefs, *see* AG MTD at 30; AG Opp. at 14 n.2, considering abstention appropriate whenever there is "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provide[s] an

10

adequate opportunity to raise [federal] challenges." *Sprint*, 134 S. Ct. at 593 (omission and brackets in original) (internal quotation marks omitted).

But in 2013, the Supreme Court squarely rejected this approach, holding that *Younger* abstention is *not* appropriate whenever the three-part *Middlesex* test is satisfied.  Rather, in *Sprint*, the Court explained that *Younger* abstention doctrine extends to "three exceptional circumstances . . . but no further," and the *Middlesex* considerations are "not dispositive," but instead are only "*additional* factors appropriately considered" *within* these circumstances.  *Id.* at 593-94 (emphasis in original) (internal quotation marks omitted).  Those three exceptional circumstances are "ongoing state criminal prosecutions," "certain 'civil enforcement proceedings,'" and "pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Id.* at 591 (omission in original) (quoting *NOPSI*, 491 U.S. at 368).  As detailed below, this case does not fall within any of those three exceptional circumstances, and this Court should decline the Attorney General's invitation to abstain under *Younger*.  And even if the case qualified as one of the three exceptional circumstances where *Younger* abstention might be warranted (which it does not), the "bad faith" and "facially conclusive preemption" exceptions to *Younger* would apply here.

In deciding whether to abstain under *Younger*, a court accepts the allegations of the complaint as true and reads it in the light most favorable to the plaintiff.  *See Reed v. Giarrusso*, 462 F.2d 706, 707 (5th Cir. 1972) (accepting allegations as true in applying *Younger*); *Verizon New England, Inc. v. R.I. Dep't of Labor & Training*, 723 F.3d 113, 116 (1st Cir. 2013); *Pompey v. Broward Cnty.*, 95 F.3d 1543, 1548 n.6 (11th Cir. 1996).  "[E]vidence outside the four corners of the complaint can be considered when addressing *Younger/Middlesex* abstention."  *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1271 (S.D. Fla. 2007).

**1.      None Of The Exceptional Circumstances Required For *Younger* Abstention Is Present**

There is no "ongoing state criminal prosecution," and the Attorney General has conceded

as much.  *See* AG MTD at 4 ("[T]he Attorney General has not instituted criminal prosecution

and/or civil litigation against Google.").  Nor are there "civil proceedings involving certain

orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Sprint*, 134 S. Ct. at 586.  Such proceedings are limited to matters like state court civil contempt

proceedings.  *See ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 137 & n.8 (3d Cir. 2014).

The remaining *Sprint* exceptional circumstance—"certain civil enforcement

proceedings"—also does not apply here.  To warrant *Younger* abstention, a civil enforcement

proceeding must be "akin to a criminal prosecution," *Sprint*, 134 S. Ct. at 588,  is

"characteristically initiated to sanction the federal plaintiff," *id*., and must be "judicial in nature,"

such that it "investigates, declares *and* enforces liabilities as they stand on present or past facts

and under laws supposed to already exist."  *NOPSI*, 491 U.S. at 370 (quoting *Prentis v. Atl.

Coast Line Co.*, 211 U.S. 210, 226 (1908) (quoted in AG MTD at 31) (emphasis added)).

The Attorney General's Subpoena neither declares nor enforces any liability.  As the

Attorney General explains, the Subpoena is "not self-executing" and would "require the Attorney

General *to file an enforcement action* in state court in the event of non-compliance by Google."

AG MTD at 25 (emphasis added); *see also id.* at 36 (Subpoena is "no more than a simple

direction to produce documents, subject to judicial review and enforcement"); AG Opp. at 12

(same).  And as the Attorney General previously argued to the Hon. Carlton W. Reeves while

contesting the removal of a case, such a subpoena "does not amount to a 'civil action,'" but is,

instead, "a pre-litigation investigative tool."  *Mississippi ex rel. Hood v. Gulf Coast Claims*

*Facility*, No. 3:11-CV-00509, 2011 WL 5551773, at *2 (S.D. Miss. Nov. 15, 2011).  Judge

Reeves agreed.  *Id.* at *4.

Post-*Sprint* cases confirm that the Attorney General's *threat* to charge Google does not

turn his "pre-litigation investigative tool" into the required civil enforcement proceeding.  *See*

*Mulholland v. Marion Cnty. Election Bd.,* 746 F.3d 811, 817 (7th Cir. 2014) ("The possibility

that a state proceeding may lead to a future prosecution of the federal plaintiff is not enough to

trigger *Younger* abstention."); *Acra Turf Club LLC,* 748 F.3d at 140 (Supreme Court has only

applied *Younger* abstention where "a state entity . . .  commenced civil or criminal proceedings

by filing some type of formal complaint or charges.")

Even before *Sprint*'s clarification of abstention law, many courts held that a threat of a

civil enforcement action does not warrant *Younger* abstention.  *See, e.g.*, *La. Debating &*

*Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995) ("[T]he period

between the threat of enforcement and the onset of formal enforcement proceedings may be an

appropriate time for a litigant to bring its First Amendment challenges in federal court.");

*Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 519 (1st Cir. 2009) (requiring "the

commencement of formal enforcement proceedings before abstention is required") (internal

quotation marks omitted); *Major League Baseball*, 181 F. Supp. 2d at 1321 (attorney general's

issuance of multiple civil investigative demands did not warrant *Younger* abstention).

No court applying *Sprint* has ever held that an administrative subpoena constitutes a civil

enforcement proceeding for *Younger* abstention purposes, nor has the Fifth Circuit ever held

(before or after *Sprint*) that an administrative subpoena warrants *Younger* abstention.  Before

*Sprint*, the Fifth Circuit in *Texas Association of Business v. Earle* applied *Younger* abstention to

state grand jury proceedings because a "grand jury proceeding has . . . both the administrative

and *judicial* functions" that "pertain directly to the enforcement of the state's criminal laws." 388 F.3d 515, 520 (5th Cir. 2004) (emphasis added). Whether or not that reasoning survives *Sprint*, it would not apply here because the Attorney General, unlike the grand jury, is neither an arm of the Court nor has any judicial function, meaning his non-self-executing Subpoena could not reasonably be construed as launching a "civil enforcement proceeding."[11]

The Attorney General cites several cases from other jurisdictions that he claims require federal courts to abstain whenever a state attorney general has issued a subpoena. AG MTD at 32. None apply the standards for abstention set forth in *Sprint*, but instead apply only the *Middlesex* test. To the extent these cases suggest abstention in the face of a subpoena, they are not good law in light of *Sprint*, and provide no basis for abstaining.[12] A straight-forward

---

[11] The first *Middlesex* factor—"an ongoing state *judicial* proceeding"—is absent here for this very reason. *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432. The remaining *Middlesex* factors cut against exercising jurisdiction here, as well. The Attorney General submitted no evidence of how such a proceeding would "implicate important state interests." *Id.* And defending a subpoena enforcement action in state court would not allow Google to redress the Attorney General's ongoing threats of prosecution. *Id.*

[12] Only one of the cases cited by the Attorney General—*Empower Texans, Inc. v. Texas Ethics Commission*, No. A-14-CA-172-SS, 2014 WL 1666389 (W.D. Tex. April 25, 2014)—post-dates *Sprint*. But the decision did not consider *Sprint*, erroneously applying only the *Middlesex* factors and concluding that abstention was appropriate because the plaintiffs conceded there was an ongoing state proceeding, initiated by administrative complaints. *Id.* at *3, *5. The Attorney General's pre-*Sprint* cases come from the Second and Eighth circuits. The Second Circuit has repudiated, in light of *Sprint*, the reasoning of the entire line of district court cases cited by the Attorney General. *Compare Mir v. Shah*, No. 11 Civ. 5211, 2012 WL 6097770, at *3 (S.D.N.Y. Dec. 4, 2012) (citing *Dreamland Amusements, J&W Seligman & Co., Hip-Hop Summit Action Network* and *Mirka United, Inc.* for proposition that "Courts in this circuit . . . routinely applied *Younger* where investigatory subpoenas have been issued" and at some other "investigatory stage[s]") *with Mir v. Shah,* 569 F. App'x 48, 50 (2d Cir. 2014) (declaring district court's analysis "no longer applicable" in light of *Sprint* and instead abstaining based on a pending administrative complaint) (unpublished opinion). And it was the Eighth Circuit's misguided approach to *Younger* that the Supreme Court rejected in *Sprint. See Recovery Chapel v. City of Springfield, Mo.*, No. 6:14–CV–3289, 2014 WL 4954111, at *2 (W.D. Mo. Oct. 2, 2014) ("Defendants only cite Eighth Circuit cases that predate *Sprint Communications* even though the Supreme Court in that case explicitly repudiated the Eighth Circuit's approach to *Younger*."); *Tollefsrud v. Solum*, Civ. No. 13–2201, 2014 WL 37576, at *1 (D. Minn. Jan. 3, 2014) ("The Supreme Court . . . held that the Eighth Circuit's criteria for use of *Younger* abstention was overly permissive . . . .").

application of the Supreme Court's controlling decision in *Sprint* precludes abstention here.

### 2.      The Facially Conclusive Exception To *Younger* Applies

Abstention is also inappropriate because the Attorney General's inquiry probes into an exclusively federal domain, and there is no reason to defer to the state where federal preemption of the state action is "facially conclusive."  *See, e.g.*, *United States v. Kentucky*, 252 F.3d 816, 826 (6th Cir. 2001) (denying abstention where the case "presented a facially conclusive claim of federal preemption, inasmuch as a determination of the preemption question did not require a detailed analysis of state law or the making of findings on disputed facts.") (internal quotation marks and citations omitted); *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1273 (9th Cir. 1994) ("[I]t is readily apparent that [state labor board] is acting beyond its jurisdiction, for it is readily apparent that the employees in the bargaining unit at issue are at least arguably covered by" federal labor statute and thus "Younger abstention is inappropriate." (internal quotation marks omitted)); *Nat'l R.R. Passenger Corp. v. State of Fla.*, 929 F.2d 1532, 1537 n.12 (11th Cir. 1991) ("[W]hen preemption is readily apparent'" and "the state tribunal is acting beyond the lawful limits of its authority . . . abstention does not serve any interest of comity or our federalism.") (internal quotation marks omitted)); *Sprint Corp. v. Evans*, 818 F. Supp. 1447, 1457-58 (M.D. Ala. 1993) (denying abstention because Communications Act facially preempted state obscenity prosecution against telecommunications company).  No detailed inquiry into state law or the facts is necessary to find preemption here:  On their face the Subpoena and threatened enforcement action under the MCPA both focus on efforts to regulate or even criminalize the hosting of third-party content, precisely what the CDA preempts, and relate in large part to copyright infringement and prescription drug importation, preempted by the Copyright Act and the FDCA.

### 3.   The Bad Faith Exception To *Younger* Applies

A federal court should decline to abstain under *Younger* if (1) the plaintiff establishes that the state purposefully "retaliated against" "constitutionally protected" conduct, and (2) the state fails to show "by a preponderance of the evidence that it would have" taken the challenged action "even had the impermissible purpose not been considered."  *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979); *see also Jordan v. Reis*, 169 F. Supp. 2d 664, 669 (S.D. Tex. 2001) (plaintiff's "few factual allegations" of retaliation defeated motion to dismiss under *Younger*, where defendant failed to show he would have prosecuted absent retaliatory motive).

Google has presented specific, uncontroverted evidence showing that the Attorney General served the Subpoena in retaliation for Google's refusal to modify its constitutionally and statutorily protected editorial judgments sufficiently to suit his preferences.  *See* Mem. in Supp. of Prelim. Inj. at 9-14, 24-26, ECF No. 3 ("PI Mem."); *infra* 26-28.  The Attorney General, in a public speech, admitted having threatened to issue the Subpoena if Google did not accede to his censorship demands.  Neiman Decl. Ex. 9 at 8:8-13.  ("I told [Google] if you don't . . . work with us to make some of these changes that we've been suggesting since November, then I'm going to call on my colleagues to issue civil investigative demands or subpoenas . . . .").

And there is other evidence of the Attorney General's bad faith.  As noted in Google's opening brief, the Attorney General served the Subpoena after extensive lobbying by the MPAA to pressure Google to remove publicly available sites from its search engine index, PI Mem. at 1 & 11 n.4, and despite having even acknowledged in writing that CDA immunity precluded him from bringing a case against Internet platforms, *see* Neiman Decl. Ex. 12.  Google's opening brief noted that the MPAA had drafted one of the Attorney General's letters to Google, and that lobbyists for the MPAA were involved in the planning of one of the Attorney General's meetings with Google.  *See* PI Mem. at 11 n.4 & 26 n.13; *see also* Compl. ¶¶ 17, 49, 64-65.  Recent press

16

accounts show the MPAA's role was even more extensive than that, and appears to have included formulating the Attorney General's negotiating position, drafting document demands, and attempting to enlist the support of other attorneys general.  *See* Neiman Suppl. Decl. Exs. F, G & H.

One press account quotes an email from the MPAA's outside counsel, Tom Perrelli, describing his meeting with the Attorney General one day before a meeting the Attorney General held (along with representatives from other Attorneys General offices) with Google in January 2014:  "I spent more time with Hood . . . and, I hope, got him focused on the key issues and the asks.  He really does care a great deal about piracy . . . *he wants Google to delist pirate sites* and he is going to ask them to do that tomorrow."  Neiman Suppl. Decl. Ex. F at 4 (emphasis added).[13]

When Google did not censor its search results as demanded (something Google is not legally required to do under the Copyright Act, the CDA, or the First Amendment), "word came down from Perrelli that 'the time for letter writing is over' and that 'it is time to move to actually form an investigation.'"  *Id.* at 5.  Perrelli proposed: "Some subset of AGs (3-5, but Hood alone if necessary) should move toward issuing CIDs" and "[i]n terms of outreach and action by us, I think we should: a. Shore up Hood and try to get a small group . . . focused on a clear timetable for CIDs[;] b. Draft the CIDs[; and] c. Research state law to determine the best state to pursue

---

[13] The Court may consider the documents quoted in these press accounts in deciding the motion for a preliminary injunction, to which the Federal Rules of Evidence do not apply.  *See Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993).  When Google pressed the Attorney General to disclose his communications with the MPAA, both in a request under Mississippi's Public Records Act and under Federal Rule 34, the Attorney General refused, claiming the Court's December 23, 2013, order stayed his obligation to respond, that the communications were privileged, and that his motion to dismiss stayed any obligation under Rule 34.  *See* Neiman Suppl. Decl. Ex. E. The Court may draw adverse inferences from the Attorney General's refusal to reveal his communications with the MPAA.  *See Fed. Sav. & Loan Ins. Co. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987).

litigation and communicate that to Hood so that he can try to get the right AGs on board." *Id.* at

6. The Attorney General then provided the MPAA with advance notice of precisely when he

planned to serve the Subpoena. *See id.* at 7 (quoting an email from the MPAA's general counsel

as stating: "'Mississippi AG Hood is expected to issue a CID to Google sometime this week *(that*

*information is naturally very confidential)*'").

No federal court should hesitate to exercise jurisdiction to address a subpoena and

threatened enforcement action that is so clearly retaliatory and designed to penalize the exercise

of activity protected by federal law.

## III.    THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION

Google has submitted seven declarations and seventy-four exhibits in support of its

motion for a preliminary injunction. The Attorney General has submitted no evidence

controverting any of the facts set forth in those affidavits and supporting exhibits. In this

posture, "the written evidence" submitted by Google should be "presumed true," and the Court

may grant the preliminary injunction "on the basis of the undisputed evidence without

difficulty." 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2949 (3d ed.);

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998) (upholding district

court's grant of preliminary injunction where defendants failed to provide evidence putting

material facts in dispute); *Williams v. San Francisco Unified Sch. Dist.*, 340 F. Supp. 438, 442

(N.D. Cal. 1972) ("Although given the opportunity to do so, defendants did not attempt to rebut

the foregoing affidavits [supporting plaintiff's motion for preliminary injunction] . . . .

Accordingly, this court is required to take as true the statements of fact contained in the

affidavits.").

The undisputed evidence is more than sufficient to warrant preliminary relief.  Google here raises important questions of federal law and has demonstrated that it will likely succeed on the merits of its federal claims.  *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("A party thus is not required to prove his case in full.").  It has also shown that all equitable factors weigh decisively in its favor.

The Attorney General's arguments in response turn on his view that he is not violating federal law and has an interest under state law in pursuing an investigation.  This is not the time to resolve the ultimate merits of Google's federal claims.  *See id.* ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held").  The question at hand is only whether the Court should enter a preliminary injunction to maintain the status quo pending further litigation.  On that issue, the Attorney General has nothing meaningful to say.  He has not identified flaws in Google's legal arguments or shown any harm that he will suffer from temporarily complying with an injunction.  Nor can he deny that the public has a substantial interest in resolving the important federal law issues raised in Google's Complaint.  In contrast, denying the injunction will allow the Attorney General to continue to violate federal law, undermine important federal policies, and cause continuing irreparable harm to Google.

### A.     Google Will Succeed On The Merits Of Its Claims

#### 1.     CDA Immunity

##### a.     The CDA Bars The Subpoena And Threatened Case Under The MCPA

"Congress provided broad immunity under the CDA to Web-based service providers for all claims stemming from their publication of information created by third parties."  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing 47 U.S.C. § 230(c)(1)).  Section 230

preempts contrary state law and provides not only a defense to a potential civil or criminal action seeking to impose liability for third-party content, but also a shield from the burdens of defending against attempts to impose such liability, including the burdens of providing discovery.  *See* PI Mem. at 15-21.

It is undisputed that the Attorney General has repeatedly threatened to sue Google for making third-party content accessible to Internet users.  In addition to all the threats documented in Google's opening brief and supporting declarations, the day before this lawsuit was filed the Attorney General held a press conference to announce that Google "was assisting in a crime" because it does not exclude from search results third-party sites alleged to feature infringing content, that a "court battle" was coming to establish Google's obligation to remove such third-party content from search results, and that Google "should be convicted of a felony."   Neiman Suppl. Decl. Ex. A at 9:2-17, 19:16-20:6, 23:24-25:2.

Nor is there any dispute that the Attorney General's Subpoena demands documents aimed at developing a case against Google for activity immunized by the CDA.  That is made clear by: (1) the Attorney General's repeated threats to bring such a case, *see, e.g.*, Neiman Decl. Ex. 2 at 3; *id.* Ex. 5 at 3;  *id.* Ex. 10 at 53-60; *id.* Ex. 17 at 3; *id.* Ex. 30 at 1-2; (2) the Subpoena's repeated demands for information about Google's display of third-party content, *see, e.g.*, *id.* Ex. 30 at 7 ¶ 9; *id.* Ex. 30 at 4 ¶ 3; (3) the Subpoena's definitional provisions, which specify that the Subpoena seeks documents "regardless of whether or not" they relate to immunized activity, *id.* Ex. 30 at 4 ¶ 1; and (4) the Attorney General's repeated refusals to modify the Subpoena to exclude immunized activity, *id.* ¶¶ 32 & 34.

Rather than defending what his Subpoena actually seeks, or the litigation he has actually repeatedly threatened, the Attorney General proceeds as if the only question here is whether he

can hypothesize some theoretical case he might conceivably bring against Google without running afoul of Section 230, and some possible connection between some of what his Subpoena seeks and such a case.  AG Opp. at 22-25.

But that is beside the point.  The Court need not speculate as to whether the Attorney General has made specific, repeated threats of prosecution (the record establishes that he has).  The prosecution he has actually threatened against Google—(1) for displaying Autocomplete predictions the Attorney General does not like, *e.g.*, Neiman Decl. Ex. 17 at 3, 5-6, 10; (2) for showing search results that link to third-party websites to which the Attorney General objects, *e.g., id.* at 3-5, 9; (3) for displaying third-party videos on YouTube, *e.g., id.* at 3, 6-11; and (4) for running third-party advertisements alongside third party content accessible through Google's services, *e.g., id.*—violates Section 230.  Google is entitled to injunctive and declaratory relief from those threats.  Google, after all, is not seeking immunity from the application of Mississippi law in general, or the MCPA in particular.  It seeks only what Section 230 already offers— protection from the Attorney General bringing a case against Google under the MCPA for making accessible over the Internet content created by third parties, *i.e.*, immunized conduct.

So too, the test of the Subpoena's compliance with the CDA cannot be whether *any* of the information sought could be relevant to *any* case the Attorney General can hypothesize, regardless of how disconnected such a case is from the Attorney General's pattern of threats and demands.  The Attorney General must explain why the core of the Subpoena so clearly focuses on the same immunized activity for which he has threatened to prosecute Google, something the Attorney General has not even attempted to do.  Should the Court enjoin enforcement of the Subpoena, the Attorney General is of course free to develop a narrow subpoena that does not focus on activity immunized under the CDA.  But the possibility that such a hypothetical

subpoena might have modest overlap with the Subpoena actually served certainly cannot save the Subpoena at issue in this case.[14]

### b.   The Attorney General's Hypothetical Alternative Cases Fail

The various hypothetical alternative cases described for the first time in the Attorney General's briefs, *see* AG Opp. at 22-25; AG MTD at 16-19, bear no resemblance to the case the Attorney General has repeatedly threatened, and would certainly not require anything approaching his seventy-nine page Subpoena to investigate.  These hypothetical cases would also themselves violate the CDA.  Section 230 not only protects the "passive display" of third-party content by Internet providers like Google, but also bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content . . . ."  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("interactive service provider receives full immunity regardless of the specific editing or selection process"); *Myspace, Inc.*, 528 F.3d at 420 (holding immunity applied where service provider allegedly failed to properly screen users from illegal conduct and content).  This immunity amply covers the various hypothetical alternative theories of prosecution advanced for the very first time in the Attorney General's briefs.

i.    The Attorney General emphasizes that Section 230 immunity does not "limit or expand any law pertaining to intellectual property" (AG Opp. at 22 (quoting 47 U.S.C. § 230(e)(2)), but his Subpoena was issued pursuant to the MCPA—which is a consumer protection law, not a law pertaining to intellectual property.  And even if the Subpoena were based on the

---

[14] Moreover, even if none of the Subpoena implicated activity covered by the CDA, the Subpoena would still be invalid as an improper retaliation for Google's exercise of First Amendment rights. *See supra* at 16-18; *infra* at 25-30.

*state* intellectual property laws that might fall within the Attorney General's purview, there is authority that the CDA bars a state action against Google under these laws.[15]  Finally, the Attorney General fails to explain how the limited categories of state intellectual property law that he claims are exempt from the CDA authorize the wide-ranging requests he makes in the Subpoena.  If the Attorney General is in fact now concerned only about the availability of pre-1972 sound recordings online (a topic that does not appear anywhere in the 79-page Subpoena), he should draft a subpoena accordingly.

ii.     Section 230 immunity also reaches third-party advertisements served by Google. *See* PI Mem. at 21 (citing relevant case law).  The Attorney General nonetheless argues that certain requests in his Subpoena do not implicate CDA immunity because they may establish that Google "knowingly" allows advertisers engaging in unlawful conduct to use its advertising services.  AG Opp. at 23.  The Attorney General is wrong.  Section 230 immunizes Google "even after notice of the potentially unlawful nature of the third-party content."  *Lycos*, 478 F.3d at 420; *Zeran*, 129 F.3d at 333 ("Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA.").[16]

iii.    Contrary to the Attorney General's argument, AG Opp. at 22-24, Section 230 also immunizes Google even if it somehow did not enforce its own voluntary policies concerning

---

[15] *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007).  In dicta, the First Circuit disagreed.  *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007).  The Fifth Circuit has not addressed the issue.

[16] The other cases cited by the Attorney General on this front are inapposite.  In *Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257 (N.D. Cal. 2006), the plaintiff alleged that the service provider itself created dating service profiles and then falsely represented that they were generated by a third party. *See id.* at 1262.  In *CYBERSitter, LLC v. Google Inc.*, 905 F. Supp. 2d 1080 (C.D. Cal. 2012), the district court simply held that the plaintiff had "pled sufficient facts . . . to support cognizable state law claims for trademark infringement."  *Id.* at 1087.  For the plaintiff's false advertising claim, the district court held that "it is too early at this juncture to determine whether CDA immunity applies." *Id.* at 1086.

third-party content, and even if it advised the public of those policies.[17]  *See MySpace Inc.*, 528

F.3d at 420 (holding CDA applied even though service provider allegedly failed to screen

content prohibited by its policies); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)

(service provider's alleged failure to enforce its community guidelines did not impair Section

230 immunity).

iv.     The Attorney General faces another dead end with his reliance on *Fair Housing*

*Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008).  AG

Opp. at 24.  In that case, an online service for finding roommates *required* its users, allegedly in

violation of applicable anti-discrimination laws, to state their preferences for the sex, sexual

orientation and family status of potential roommates.  *See id.* at 1161-62, 1167.  CDA immunity

was not available because the online service was "designed to steer users based on

discriminatory criteria" and "force[d] users to participate in its discriminatory process."  *Id.* at

1167.  None of the Google services targeted by the Attorney General is remotely comparable.

Even the *Roommates.com* court specifically contrasted Google's services with those of the

defendant, noting that Google Search "do[es] not use unlawful criteria . . .  nor [is it] designed to

achieve illegal ends . . . ."  *Id.*

v.     The Attorney General's efforts to carve out the Autocomplete function from

Section 230 immunity is similarly unavailing.  *See* AG Opp. at 24-25.  Autocomplete provides

users with predicted search queries that the user may, but is not required to, select to facilitate the

user's search.  *See* Downing Decl. ¶ 16, Ex. 6 at 1-2.  Similar to Search, Autocomplete uses an

automated algorithm that weighs certain objective criteria, such as the number of times a search

---

[17] Google has voluntarily shared with the Attorney General many thousands of pages reflecting its various policies.  Neiman Decl. ¶ 33.  The Attorney General's failure to identify even one as misleading or inaccurate speaks volumes.

term has been entered by other users, the particular users' location, and that user's past search history, in order to generate guesses as to what query the user is typing.  *See* Downing Decl. Ex. 6 at 2.  Most importantly for CDA purposes, each of the Autocomplete predictions that the Attorney General has identified as objectionable over the years had been previously entered into Google's search engine by Google users (*i.e.*, Google did not author those search terms). Thomas Decl. ¶ 7.  Autocomplete's display of those predictions was thus simply an algorithmic distillation of prior third-party content, for which the CDA immunizes Google.  *See Obado v. Magedson*, No. CIV. 13-2382 (JAP), 2014 WL 3778261, at *6 (D.N.J. July 31, 2014) ("suggested search terms auto-generated by a search engine do not remove that search engine from the CDA's broad protection."); *Stayart v. Google Inc.*, 783 F. Supp. 2d 1055, 1056-58 (E.D. Wis. 2011), *aff'd*, 710 F.3d 719 (7th Cir. 2013).

## 2.    The Subpoena And Threats Violate Google's First Amendment Rights

The Attorney General has repeatedly used threats of enforcement actions and document demands to try to coerce Google into modifying its editorial judgment regarding third-party content accessible through Google's services.  *See* Neiman Decl. Ex. 2 at 3; *id*. Ex. 5 at 3; *id*. Ex. 9 at 8:8-13, 24:14-23.  The evidence further shows that he ultimately issued the Subpoena in retaliation for Google's failure to modify its editorial judgment to meet the Attorney General's demands.  *See id*. Ex. 9 at 24:14-23.  And the Attorney General's threats have already influenced Google's editorial judgments regarding third party content, denying the public access to First Amendment-protected speech.  *See* Thomas Decl. ¶¶ 3-8; Wu Decl. ¶¶ 4-9.

The Attorney General offers no countervailing evidence.  Instead, he erroneously argues that these facts do not entitle Google to relief.

a.    *First*, the Attorney General argues that the First Amendment does not protect Google against investigations alone.  *See* AG Opp. at 25-26.  However, Google alleges not only

an abusive investigation, but also specific threats of prosecution, and there is no dispute that the First Amendment forbids threats of prosecution based on protected speech.  *See, e.g.*, *Zieper v. Metzinger*, 474 F.3d 60, 65-66 (2d Cir. 2007) (First Amendment prohibits "intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request" to censor speech (internal quotation marks omitted)).

Moreover, the First Amendment does limit the Attorney General's authority to investigate.  It would surely be a gross violation of the First Amendment for the Attorney General to serve a newspaper with a subpoena demanding information about the formulation of the paper's editorial judgments (*e.g.*, whether to support a candidate running to unseat the Attorney General).  *See, e.g.*, *Zurcher v. Stanford Daily*, 436 U.S. 547, 566 (1978) (search warrant cannot authorize officers to "intrude into or to deter normal editorial and publication decisions").  The Attorney General's Subpoena here—apparently drafted by the MPAA and aimed at probing Google's editorial judgments regarding third-party content that the MPAA deems contrary to its financial interests, and also explicitly designed to punish Google for not acceding to the Attorney General's demands and MPAA's wishes—is no less improper.  *See* Neiman Suppl. Decl. Exs. F & G.

The Attorney General's effort to distinguish the cases cited in Google's opening brief on this point fails.   While some of these case involved more than just an investigation, all make clear that an improper investigation, standing alone, can indeed violate the First Amendment. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916-17, 922 (9th Cir. 2012) (en banc) (discussing the chilling effect from the "broad, invalid subpoenas demanding that the paper reveal its sources, disclose its reporters' notes, and reveal information about anyone who visited the [paper's] website");  *Page v. Braker*, No. Civ. 06-CV-2067, 2007 WL 432980, at *3 (D.N.J. Jan.

31, 2007) (investigation was the actionable injury in *Little v. City of North Miami*, 805 F.2d 962, 968 (11th Cir. 1986)).  As explained in *Lacey,* an "intrusive investigation that did not culminate in an arrest could chill the exercise of First Amendment rights[.]"  693 F.3d at 917 (citing *White v. Lee*, 227 F.3d 1214, 1237-38 (9th Cir. 2000)).[18]

The Attorney General seeks to distinguish *Pendleton v. St. Louis County*, 178 F.3d 1007 (8th Cir. 1999), which concerned only an investigation, on the theory that he is conducting a "real" inquiry, while the one in *Pendleton* was "fabricated."  AG Opp. at 26.  But *Pendleton*'s holding that an investigation conducted in "retaliation against the exercise of First Amendment rights is a basis for Section 1983 liability," 178 F.3d at 1011, refutes the Attorney General's claim that *more* than an investigation is required.

And to the extent authenticity matters, it is worth considering the total absence of any *evidence* in the record of a legitimate investigative purpose here.  The Attorney General notes only that other state attorneys general have sometimes expressed concerns about various Google business practices.  *See, e.g.*, AG Opp. at 5-8, 26.  But the defendant in this case is the only attorney general in the United States to repeatedly threaten prosecution, demand censorship, and serve a wildly over-broad subpoena apparently drafted by the MPAA (an organization that relentlessly lobbied in secret for the Attorney General's campaign against Google to address copyright concerns).  And he did so notwithstanding having acknowledged in a 2013 letter to Congress, signed by the Attorney General and 46 other state attorneys general, that Section 230

---

[18]  In *White*, the defendants' eight-month long investigation of plaintiffs "would have chilled or silenced a person of ordinary firmness from engaging in future First Amendment activities."  227 F.3d at 1229.  The court concluded not only that the "plaintiffs [were] entitled to seek a remedy for [the] constitutional violation," but also that "the unconstitutionality of . . . [the defendants'] actions was [so] apparent at the time [they had] acted" that they were not entitled to qualified immunity from the plaintiffs' claims.  *Id*. at 1226, 1229, 1239.

bars imposing liability on Internet platforms for making third-party content accessible.  Neiman Decl. Ex. 12 at 1.  If authenticity is the test, the Attorney General flunks.

b.      *Second*, the Attorney General's contention that Google's retaliation claim fails because he would "no doubt"  have "issued the Subpoena under any circumstances" lacks any support in the record.  AG Opp. at 12.  The Attorney General's own words establish that his "actions were substantially motivated against [Google's] . . . exercise of constitutionally protected conduct."  *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).   After acknowledging that the CDA immunized Google from suit, *see* Neiman Decl. Ex. 9 at 23:14-24:13, the Attorney General proposed, as a "remedy" to Google's refusal to remove disfavored content from search results that he and his fellow attorneys general "issue civil investigative demands[.]"  *Id*. at 24:14-19.

In light of his own statements reflected in the record, the Attorney General needs evidence, not just the conclusory assertions in his legal papers, to defeat Google's retaliation claim.  But he offers none.

c.      *Third*, the Attorney General asserts that Google's free speech cannot have been chilled because Google has not identified some concrete way in which it restrained its activity in response to the Attorney General's threats.  AG Opp. at 10.  Google "need not show [it] ceased [its] activities altogether to demonstrate an injury in fact."  *Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013) (internal quotation marks omitted).  Instead, the question of whether the government action is "sufficiently chilling" turns on whether it would "deter a person of ordinary firmness from the exercise of First Amendment rights.'"  *Id*.; *accord Izen*, 398 F.3d at 367. Here, persistent threats of prosecution or civil litigation, and acts of retaliation by a state attorney general would do just that.

And in fact, Google has altered its editorial judgments and limited access to certain third-party content in response, in part, to the Attorney General's improper use of his office.  Since 2013, Google has blocked thousands of words and phrases from appearing in Autocomplete predictions, in part as a response to the Attorney General's activities.  *See* Thomas Decl. ¶ 3. This has unnecessarily resulted in the removal of useful predictions for users.  *Id.* ¶¶ 4-6. Autocomplete will no longer show predictions for the name of ABC's popular new series:  "How to Get Away with Murder."  *Id.* ¶ 5.  Nor will it show predictions to a user with seasonal allergies entering the search query "Claritin d without a prescription" or, for that matter, any common drug available "without a prescription."  *Id.* ¶ 4.

Likewise, in response to the Attorney General's threats that Google faced potential criminal liability for permitting advertisements to run alongside YouTube videos posted by unlawful Internet pharmacies, Google chose to remove all advertisements alongside YouTube videos organized in its "health and pharmacy" vertical, rather than run the risk that an objectionable video might evade Google's robust systems and that ads would run against it.  Wu Decl. ¶¶ 4-9.  Practically speaking, this means that Google no longer runs the advertising it otherwise would have alongside unobjectionable videos regarding healthy living, nutrition, and sleep.  *Id.* ¶¶ 5-9 (*e.g.*, "Nutrition Tips for Healthy Living: Foods That Give You Heartburn"). This both denies users access to legitimate advertisements, and potentially dissuades speakers in the healthcare field from posting videos on YouTube by removing the financial incentive to do so, further impairing the public's access to fully protected speech.

In cases like *Smith v. California*, 361 U.S. 147 (1959) and *MANual Enterprises, Inc. v. Day*, 370 U.S. 478 (1962), the Supreme Court made clear that the First Amendment stands as a bulwark against precisely this sort of forced censorship of third-party speech, which inevitably

leads to (and has already led to) the exclusion of protected content.  *See* PI Mem. at 26-28.  In sum, Google is likely to succeed on the merits of its First Amendment claims.

### 3.    The Subpoena Violates Google's Fourth Amendment Rights

The Subpoena focuses on activity immunized by Section 230 and placed beyond the reach of state authorities by the First Amendment, the Copyright Act, and the FDCA.  *See* Neiman Decl. Ex. 30.  The Fourth Amendment bars state subpoenas investigating such lawful activity.  *See, e.g.*, *Major League Baseball*, 331 F.3d at 1187-88.

The Attorney General theorizes that some of the information sought by the Subpoena might reveal unspecified unlawful activity that is not immunized and does fall within his authority.  That assertion lacks any support in the record.  *See supra* at 22-25.  But even if true, it would not save the Subpoena from violating the Fourth Amendment.  The Fourth Amendment prohibits subpoenas that are unduly broad.  *United States v. Miller*, 425 U.S.435, 445 (1976) (Fourth Amendment "guards against abuse . . . by way of too much indefiniteness or breadth"); *See v. City of Seattle*, 387 U.S. 541, 544 (1967) ("the Fourth Amendment requires that [an administrative] subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome").  It is no answer to a challenge to the Subpoena's focus on immunized conduct for the Attorney General to say that some small fraction of what is actually being sought might be properly within his purview.  The whole point of the Fourth Amendment is to outlaw general searches launched merely on the theory that they might turn up some evidence of wrongdoing; the Fourth Amendment forces the State to particularize what it is seeking, and why it believes it will be found.  It is, after all "contrary to the first principles of justice to allow a search through all [of a company's] r[e]cords . . . in the hope that something will turn up."  *FTC v. Am. Tobacco Co.*, 264 U.S. 298, 306 (1924) (Holmes, J.).

### 4.     The Subpoena Is Preempted In Part By Federal Law
##### a.     The Copyright Act

Presented with settled case law establishing that the Copyright Act preempts state efforts

to punish copyright infringement, the Attorney General argues that the fifteen items in his

Subpoena under the heading "stolen intellectual property" are focused on something other than

copyright infringement.  *See* AG Opp. at 30.  This is an uphill battle for the Attorney General,

given his public accusation that Google is "assisting in [the] crime" of "stealing music and

movies and software," Neiman Suppl. Decl. Ex. A at 9:2-6, his repeated demand that Google

remove from its search results sites that have posted infringing content in the past, *see, e.g.*,

Neiman Decl. Exs. 2, 5, 17, 22, and his inclusion of the terms "copyright" and/or "infringement"

in most of the requests in the "stolen intellectual property" section of the Subpoena.  Neiman

Decl. Ex. 30 at 71-73 (Interrogatory Nos. 59-60, Request Nos. 119-123), 75-76 (Request Nos.

128-131).  The Attorney General's post-hoc explanation—that he might be seeking information

regarding pre-1972 sound recordings online—certainly does not square with the wide breadth of

the Subpoena.  *See* AG Opp. at 23; Neiman Decl. Ex. 30 at 71-73, 75-76.

Nor can the Attorney General avoid preemption by refashioning his investigation of

Google's role in alleged copyright infringement into an exploration of "whether Google has

misled consumers about the steps it takes to protect consumers from infringing . . . material in

the way it sorts content in its services."  AG Opp. at 28.

To escape preemption, the Attorney General would need to show this claim is

qualitatively different from ordinary copyright infringement.  *See GlobeRanger Corp. v.

Software AG*, 691 F.3d 702, 705-06 (5th Cir. 2012); *Alcatel USA, Inc. v. DGI Techs., Inc.,* 166

F.3d 772, 787 (5th Cir. 1999).  Claims related to the mere exposure to infringing copyrighted

material are not qualitatively different from copyright claims, and are thus preempted.  *See, e.g.*,

*Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (state law misappropriation claim preempted because plaintiffs failed to "allege or produce evidence of any element, such as an invasion of personal rights or a breach of fiduciary duty" that rendered their claims "different in kind from copyright infringement.") (internal quotation marks omitted); *cf. Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) (misrepresentation claims not preempted where false statement caused "damages not attributable to copyright infringement").

And the Attorney General would also need to show that his alternative cause of action would not require a Mississippi court to construe federal copyright law, for a "state court faced with a state law-based claim requiring construction of federal copyright laws in resolution of the claim's elements has no subject matter jurisdiction over the claim, even if expressed under state law." *Stipelcovich v. Directv*, *Inc*., 129 F. Supp. 2d 989, 992 (E.D. Tex. 2001).  Plainly, the Attorney General's claim would require a determination as to whether particular content is infringing (as opposed to a fair use), a determination that cannot be made without construing the Copyright Act, rendering his hypothetical claim preempted by federal law.

Finally, the Attorney General's "protect consumers from infringing content" theory (AG Opp. at 28) conflicts with the Digital Millennium Copyright Act ("DMCA").  *See* PI Mem. at 31.  By creating a safe harbor for search engines like Google who remove infringing content upon receipt of an appropriate takedown notice, the DMCA reflects Congressional judgment about how to balance protecting consumers from infringing content with the goal of a free and open Internet.  States are not free to reset that balance through their consumer protection laws.  *See Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229 (1964) ("When state law touches upon the area of [patent or copyright statutes], it is 'familiar doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by the state law."); *Recording Indus. Ass'n of Am., Inc. v.*

*Verizon Internet Servs.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003) ("[O]nly the 'Congress has the

constitutional authority and the institutional ability to accommodate fully the varied permutations

of competing interests that are inevitably implicated'" by new technology) (quoting *Sony Corp.*

*v. Universal City Studios, Inc*., 464 U.S. 417, 431 (1984)).

### b.      The Federal Food, Drug, And Cosmetic Act

The Attorney General cannot enforce the FDCA's limits on importing prescription drugs

into the United States.  *See* PI Mem. at 31-33.  Yet the Subpoena demands to know whether

"Google . . . 'was on notice that most Canadian online pharmacy advertisers . . . geo-targeted

their advertisements to consumers in the United States and *imported into the United States* . . .

controlled prescription drugs, *in violation of Title 21, United States Code, Section 331(a) and*

*(d)*.'"  Neiman Decl. Ex. 30 at 14 (Request No. 2) (emphasis added).  The Subpoena also seeks

documents relating to benefits Google allegedly received by aiding Canadian pharmacies, *see id.*

(Request No. 3), and specifically defines "Pharmaceuticals" by reference to the FDCA.  *Id.* at 8 ¶

10.  These items seek nothing more than information relevant to alleged violations of the FDCA.

The Attorney General insists that he is pursuing "information related to unfair trade practices

involving potential misrepresentations Google may have made to consumers in Mississippi about

the legality of drugs being sold by online pharmacies . . . ."  AG Opp. at 31.  But he has

identified no such representations, and no request in his Subpoena seeks or addresses such

representations in any way.  The FDCA-related requests are outside the Attorney General's

authority and should be enjoined.

### B.      Google Faces A Substantial Threat Of Irreparable Harm

It is well settled "that the loss of First Amendment freedoms for even minimal periods of

time constitutes irreparable injury justifying the grant of a preliminary injunction."  *Texans for*

*Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (internal quotation marks & brackets omitted); *see also Elrod v. Burns*, 427 U.S. 347 (1976).   Being denied the immunity granted by the CDA, and being subjected to state regulation preempted by the FDCA and the Copyright Act also constitutes irreparable harm.  *See Morales*, 504 U.S. at 381; *Crist*, 331 F.3d at 1186-89.

The Attorney General suggests that Google's only harm is having to litigate in state court.[19]  AG Opp. at 33.  Not so.  The Subpoena and the Attorney General's threats of prosecution confront Google with a stark choice: either conform its protected speech to the preferences of the Attorney General or face burdensome demands for information and risk civil or criminal prosecution.  Putting Google to that choice is itself irreparable harm, as many courts have held.  *See, e.g.*, *Morales*, 504 U.S. at 381 (finding irreparable harm from a threat of state prosecution); *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983) (finding irreparable harm when defendant hospital forced to choose between submitting to investigation that it considered unlawful and significant financial penalty).  And the Attorney General's unlawful influence on Google's protected editorial judgments, described above, amply demonstrates that the chilling effect of his conduct is real, and has already caused tangible and irreparable harm both to Google and to the public.

### C.   A Preliminary Injunction Will Not Harm The Attorney General And Will Serve the Public Interest

The only alleged harm to the Attorney General is his general interest in maintaining the effectiveness of consumer protection subpoenas as a prosecutorial tool.  *See* AG Opp. at 33-34.

---

[19] The availability of other forums in which to seek redress from the Attorney General's conduct (such as a state court) has nothing at all to do with whether that conduct has caused the kind of harm federal courts may address.  *See Petroleum Exploration, Inc. v. Pub. Serv. Comm'n of Ky.*, 304 U.S. 209, 217 (1938) ("It is settled that no adequate remedy at law exists, so as to deprive federal courts of equity jurisdiction, unless it is available in the federal courts.").

But the Attorney General has no legitimate interest in investigating by way of subpoena activity immunized by federal law.  And should the Court grant the relief sought by Google, the Attorney General will remain free to pursue investigation of conduct not so immunized.

The Attorney General also has no legitimate interest in the issuance of subpoenas for the purpose of inhibiting and retaliating against free speech.  This is especially true here given the unusual involvement of outside groups, such as the MPAA and the "Digital Citizens Alliance," in the Attorney General's investigation.  *See* Neiman Decl. Exs. 24-25; Neiman Suppl. Decl. Exs. F, G, & I.

Noticeably absent from the Attorney General's brief is any discussion of the public's interest, one of the four factors weighed by the Court in evaluating whether to issue a preliminary injunction.  *See Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012).  He does not contest that federal policy favors an open and accessible Internet or that public interests are advanced when constitutional rights are protected.  *See* PI Mem. at 34-35.

His failure to point to any public harm that would flow from an injunction in this case is telling.  *See* AG Opp. at 33-35.  By granting preliminary injunctive relief, the Court will not only be protecting the constitutional rights of Google, but also ensuring uncensored access to the Internet for millions of Americans who use Google's services every day.

## IV.    CONCLUSION

For the foregoing reasons and the reasons set forth in Google's memorandum in support of its motion for a preliminary injunction, Google respectfully requests that the Attorney General's motion to dismiss be denied, and that Google's motion for a preliminary injunction be granted.

DATED this 22nd day of January, 2015.

Respectfully submitted,

OF COUNSEL:                           /s/ Fred Krutz
Jamie S. Gorelick                     Fred Krutz, MSB No. 4270
Patrick J. Carome                     Daniel J. Mulholland, MSB No. 3643
Blake C. Roberts                      FORMAN PERRY WATKINS
WILMER CUTLER PICKERING                  KRUTZ & TARDY LLP
   HALE AND DORR LLP                  200 South Lamar Street, Suite 100
1875 Pennsylvania Ave., NW            Jackson, Mississippi 39201
Washington, DC 20006                  Post Office Box 22608
Telephone:  (202) 663-6000           Jackson, Mississippi 39225-2608
Facsimile:  (202) 663-6363           Phone:  (601) 960-8600
jamie.gorelick@wilmerhale.com         Facsimile:  (601) 960-8613
patrick.carome@wilmerhale.com         fred@fpwk.com
blake.roberts@wilmerhale.com          mulhollanddj@fpwk.com

Peter G. Neiman                       *Attorneys for Plaintiff Google Inc.*
Violetta G. Watson
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:  (212) 230-8000
Facsimile:  (212) 230-8888
peter.neiman@wilmerhale.com
violetta.watson@wilmerhale.com

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ
   & TARDY LLP
200 South Lamar Street, Suite 100
Jackson, Mississippi 39201
Post Office Box 22608
Jackson, Mississippi 39225-2608
Phone: (601) 960-8600
Facsimile: (601) 960-8613
mulhollanddj@fpwk.com

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the

United States District Court for the Southern District of Mississippi by using the Court's

CM/ECF system on January 22, 2015. I further certify that all parties are represented by

attorneys who are registered CM/ECF users and that service will be accomplished by the

CM/ECF system.

   /s/ Fred Krutz
Fred Krutz, MSB#4270