IN THE UNITED STATES DISRTICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GOOGLE, INC.                                                                                                  PLAINTIFF

V.                                                  CIVIL ACTION NO. 3:14-CV-981-HTW-LRA

JIM HOOD, in his official capacity                                      DEFENDANT
_____

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**
_____

Jim Hood, Attorney General for the State of Mississippi ("Attorney General") files this Reply Memorandum in Support of his Motion to Dismiss pursuant to L.U.Civ.R. 7(b)(4).[1]

**I.**     **Introduction**

Google's request for relief is quite extraordinary in that it asks this Court to interfere with an on-going state investigation by the Attorney General before having to respond to a validly-issued Administrative Subpoena and Subpoena Duces Tecum ("Subpoena"). In filing this action, Google has determined on its own accord that nothing sought in the Subpoena could be used against it in litigation under the Mississippi Consumer Protection Act ("MCPA"). Google's position not only inflicts damage on the principles of federalism and comity, but such a position strikes at the heart of the Attorney General's statutory authority to protect Mississippi residents from unlawful conduct under the MCPA. For the reasons set forth, the Attorney General respectfully requests that the Court grant his motion to dismiss.

---

[1]     The Attorney General filed a motion for leave to exceed the page limit set forth in L.U.Civ.R. 7(b)(5) [Docket No. 29] and supporting memorandum [Docket No. 30], and also requested leave to file a reply brief. Google did not object to this motion and the Attorney General respectfully requests that the Court receive the reply memorandum in full. The Attorney General's Reply Memorandum comports with the motion for ten (10) pages.

## II. Subject Matter Jurisdiction

Google filed suit, in part, under 28 U.S.C. § 1331 using 28 U.S.C. § 2201 as the procedural vehicle. Compl. ¶ 6. However, Google spends the majority of its brief arguing it "properly pleaded that the Attorney General is interfering with its federally-protected rights under color of state law, in violation of 42 U.S.C. § 1983." Opp. Mem. pp. 1-2. From there, Google erroneously states that § 1983 "creates a federal cause of action against those interfering with federal rights under color of state law." Opp. Mem. p. 5. Section 1983 creates no federal rights. *See Graham v. Conner*, 490 U.S. 386, 393-94 (1989) ("As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.").[2] The CDA, as an affirmative defense, does not confer jurisdiction under § 1983. Google has also failed to state a justiciable claim under the First Amendment based on its claims of "chilling" and "retaliation" and has likewise failed to demonstrate the existence of a constitutional claim under the Fourth Amendment. *See* Mem. Supp. Mot. Dismiss, pp. 36-37.

Google contends jurisdiction is proper under the principles articulated in *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85 (1983) where the Court stated that "[i]t is 'beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." Opp. Mem. p. 5. The Attorney General did not and does not contend federal courts cannot enjoin state officials under the appropriate circumstances. *Okpalobi v. Foster* 244 F.3d 405, 416 (5th Cir. 2001) (citing *Ex Parte Young*, 209 U.S. at 155-56) (*Ex Parte Young* exception is "properly understood to create a precise exception to the general bar against suing states in

---

[2] "Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . . [ ] Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573-74 (5th Cir. 1989).

federal fora . . . [and] this exception only applies when the named defendant state officials have some connection with the enforcement of the act and 'threat and are about to commence proceedings' to enforce the unconstitutional act."). The Attorney General is not seeking to enforce an unconstitutional act, but has issued a valid Subpoena under state law. Google has never challenged the constitutional authority of the Attorney General to issue such a Subpoena. The relevant inquiry is not whether federal courts can enjoin state officials, but under what circumstances. Google offers footnote 14 in the *Shaw* decision which said federal jurisdiction is proper under § 1331 where a plaintiff seeks injunctive relief from *state regulation* on grounds that such regulation is pre-empted by a federal statute. *Id.* But Google does not contend that any state statute or regulation is preempted by federal law as was the case in *Shaw* which addressed ERISA's express preemption of New York's state employment discrimination law. Google's broad reading of *Shaw* goes too far as the Court's holding was certainly guided by the preemptive reach of ERISA. The Court said "[w]e have no difficulty in concluding that [New York's law] . . . 'relate[s] to' employee benefit plans. The breadth of § 514(a)'s pre-emptive reach is apparent from that section's language." *Id.* at 96.

      Google also cites *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519 (2009), and *Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316 (N.D. Fla. 2001). These cases do not favor Google's position. In *Mora*les, the National Association of Attorneys General ("NAAG") adopted travel enforcement guidelines after federal deregulation of the airlines. *Id.* at 379. Thereafter, several attorneys general directed airlines to bring fare advertisements in line with the NAAG guidelines. *Id.* However, the federal deregulation statute expressly prohibited states from regulating rates and fares and concluded "[s]tate enforcement actions having a connection with or reference to airline 'rates,

routes, or services, are pre-empted under 49 U.S.C. App. § 1305(a)(1)." *Id.* at 384. Unlike the published guidelines in *Morales* which were expressly preempted by federal law, Google tries to extrapolate putative claims from the contents of the Subpoena to then argue the Copyright Act and/or the FDCA preempts the Subpoena. But even Google's own argument demonstrates the lack of complete preemption. Opp. Mem. p. 31. Likewise, *Cuomo* does not dictate the outcome in this case. There, the Attorney General of New York sought documents from several national banks which then moved to enjoin the request because the National Bank Act and its implementing regulations expressly prohibited state officials from exercising *visitorial powers* over national banks. *Id.* at 524. No similar federal statute proscribes the Attorney General's Subpoena under the MCPA.

Finally, the subpoena issued in *Crist* fell squarely within the "business of baseball" exemption from federal antitrust law. The court found the subpoena violated the Fourth Amendment because it was clear that the conduct being investigated could not possibly violate state or federal antitrust laws. *Id.* at 1186. Google cannot realistically argue that the conduct being investigated here cannot possibly violate state law. Google also cites *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1271-75 (W.D. Wash. 2012), *Backpage.com, LLC v. Cooper*, 939 F. Supp.2d 805, 828 (M.D. Tenn. 2013), and *Backpage.com v. Hoffman*, 2013 WL 4502097 at * 5-7 (D.N.J August 20, 2013). In each of these cases, however, plaintiffs challenged the *constitutionality* of state laws criminalizing the sale of certain sexually-oriented advertisements. In contrast, Google has not challenged the constitutionality of the MCPA. Likewise, the Fifth Circuit's decision in *Planned Parenthood of Houston & Se. Tex v. Sanchez*, 403 F.3d 324, 331(5th Cir. 2005) does not confer preemption jurisdiction. *Planned Parenthood* held that a private right of action existed where state law purportedly conflicts with a federal statute. *Id.* at

329. Google does not allege the MCPA is preempted by federal law, but instead makes the more amorphous contention that the Subpoena is preempted.

Google relies on *Voicenet Comm. Inc. v. Corbett*, 2006 WL 2506318 (E.D. Penn. August 30, 2006) where plaintiffs alleged violation of their rights under the CDA through the execution of a search warrant and enforcement of state law which criminalized the knowing distribution and possession of child pornography. *Id.* at *1. Although the district court said the CDA conferred an enforceable right under § 1983, it stands alone in that proposition. In contrast, the Circuit Court for the District of Columbia in *Klayman v. Zuckerberg and Facebook, Inc.*, 753 F.3d 1354 (D.C. Cir. 2014) held "[p]reemption under the [CDA] is an affirmative defense. . . ." *Id.* at 1357. As an affirmative defense, the CDA was intended as shield to certain claims in the event of litigation, but not as a sword to be wielded offensively through the Declaratory Judgment Act.

### III. First Amendment and "Google's Alleged Threats" of Prosecution.

Google fares no better on its charge that "alleged threats" of litigation have "chilled" its First Amendment speech. Opp. Mem. pp. 25-30. The documents relied on by Google in an effort to substantiate such a claim in fact show the lengths to which General Hood went to seek Google's cooperation in investigations of his and other Attorneys General before issuing the Subpoena. Google claims that because the Attorney General stated he may ultimately have to issue a subpoena to Google, the Subpoena somehow constitutes "retaliation" in violation of the First Amendment. This argument falls short. Clearly, General Hood could have served the Subpoena at least two (2) years ago, but instead opted to work with Google and other Attorneys General in an effort to resolve the outstanding issues. Opp. Mem., Nieman Supp. Decl., Ex. 1 ,

7:14, 15 ("We have been working -- I have, have been working with them [Google] since about 2009, 2010.").

Regardless of Google's theory regarding the Attorney General's alleged motivation for issuing the Subpoena, such investigatory retaliation claims have been rejected. In *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979), the court said a plaintiff must allege in this type of case an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder. . . ." *Id.* at 298-99.  Google does not assert its First Amendment rights are "proscribed by statute," but that the Attorney General's "Inquiry" is having a "chilling" effect on protected speech.[3] *See* Compl. ¶¶ 46, 59, 60, 76, 83, 89, 94-100. However, "general threat[s] by officials to enforce those laws which they are charged to administer do not create the necessary injury in fact." *See Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010); *see also United Public Workers of America (CIO) v. Mitchell*, 330 U.S. 75, 89 (1947); *Poe v. Ullman,* 367 U.S. 497, 507 (1961).  Further, "[t]he initiation of a criminal investigation in and of itself does not implicate a federal constitutional right." *Thompason v. Hall*, 426 Fed.Appx. 855 (11th Cir. 2011). "The Constitution does not require evidence of wrongdoing or reasonable suspicion of wrongdoing by a suspect before the government can begin investigating that suspect. *See United States v. Aibejeris*, 28 F.3d 97, 99 (11th Cir. 1994).

Google then says it has already suffered harm because it has "altered its editorial judgments and limited access to certain third-party content in response, *in part*, to the Attorney

---

[3] Google claims it has alleged that applying the MCPA to bar Google from making available third party content to internet users violates the First Amendment and is preempted by the CDA and, in part, by the Copyright Act and the FDCA. *See Compl*. ¶¶ 82, 92, 100 & 107. The Attorney General has not barred Google from any such activity and furthermore, a review of referenced claims in the Complaint shows Google only challenges the Attorney General's "Inquiry." Google does not challenge the constitutionality of the Attorney General's authority to issue the Subpoena under the MPCA, but only the Subpoena "as presently drafted." Compl., ¶ 107.

General's improper use of his office . . . and that [s]ince 2013, Google has blocked thousands of words and phrases from appearing in Autocomplete predictions, in part as a response to the Attorney General's activities." Opp. Mem. at 29 (citing Thomas Decl. ¶ 3).  First, *Laird v. Tatum*, 404 U.S. 1, 11 (1972) rejected this type of "subjective chilling" claim, stating "federal court jurisdiction cannot be invoked by a party who alleges his First Amendment right is being 'chilled by the mere existence, without more, of a governmental investigation and data gathering activity. . . . *Id.*  Furthermore, Google previously told the Attorney General that "Autocomplete is a feature that algorithmically predicts and displays queries as users type . . . and is **nothing more than a shortcut** for typing common queries into Google's search engine.  Removing entries from Autocomplete **does nothing to preclude users from typing objectionable queries.**"  *See* Neiman Decl., Ex. 4, p. 3 (emphasis supplied).  Google can hardly claim on the one hand that speech protected speech has been chilled, while at the same time telling the Attorney General the Autocomplete function does nothing the stop users from typing objectionable material.

### IV.     *Younger* Abstention Applies

Google argues that the Supreme Court's decision in *Sprint* altered the *Younger* abstention landscape such that abstention in this case would be improper.  According to Google, there is no on-going state criminal prosecution and thus, none of the *Younger* categories apply.  Lost in this argument is the nature of the Subpoena and the type of proceeding at issue under the MPCA.  In *NOPSI*, the Supreme Court reviewed whether the public service commission was acting in a judicial, rather than a legislative capacity.  The Court said "[w]hile we have expanded *Younger* beyond criminal proceedings, and even beyond proceedings in courts, we have never extended to proceedings that are not '*judicial in nature*.'" *NOPSI*, 491 U.S. at 369-70 (emphasis supplied).

In reviewing what constitutes a "judicial proceeding," the Court recalled the words of Justice Holmes in *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 2010 (1908) that "judicial in nature means a *state process that "investigates, declares and enforces liabilities* as they stand on present or past facts under laws supposed to already exist. *NOPSI*, 491 U.S. at 371. The Attorney General's statutory authority under the MCPA is clearly "judicial in nature" because he may "issue cease and desist orders to persons suspected of violating any provision" of the consumer protection law, § 75-24-27(b), "conduct hearings in aid of any investigation or inquiry" and may "enter into an assurance of voluntary compliance or an assurance of voluntary discontinuance with any person for settlement purposes." § 75-24-27(1)(d), (g). As part of the statutory framework, the Attorney General may "issue subpoenas and subpoenas duces tecum," § 75-24-17, as he did here. That the Attorney General can subpoena documents, summon witnesses, issue cease and desist orders and conduct hearings pursuant to the MCPA comports with the type of "judicial functions" carried out by grand juries which the Fifth Circuit held meets the *Younger* test. *See Texas Assoc. of Bus. v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004). *Sprint* did not overrule *Earle*. Thus, the Attorney General's investigation, including the Subpoena, falls within the category of proceedings recognized by *NOPSI* and affirmed by *Sprint*.

> A. *Younger's "Bad Faith"* Exception does not apply.

Google next says the Court should apply *Younger'*s bad faith exception because (1) the Attorney General made public statements about issuing a subpoena to Google, Opp. Mem. p. 16, and (2) lobbyists for the MPAA were involved in the planning of one of the Attorney General's meetings with Google. *Id.* The Fifth Circuit has said "[t]he bad faith exception is narrow and is to be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir.1985). The Supreme Court in *Kugler v. Helfan* said harassment "generally means that a prosecution has been

brought without reasonable expectation of obtaining a valid conviction." 421 U.S. 117, 126 n.6 (1975) (citing *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).  In his primary brief and as further set forth below, the Attorney General has amply deconstructed Google's claims that the Subpoena only seeks material for which Google enjoys immunity under federal law.

    **B.**  **Google's Facially Conclusive *Younger* Exception Fails.**

    Google argues *Younger* abstention is also inappropriate because the Attorney General's inquiry probes into an exclusively federal domain, and there is no reason to defer to the state where federal preemption of the state action is "facially conclusive."  Opp. Mem. p. 15.  According to Google, "[n]o detailed inquiry into state law or the facts is necessary to find preemption here. . ." *Id.*  Of note, Google fails to address the specific content of the Subpoena in detail and instead paints with a broad brush.  Even a limited review of the Subpoena shows Google's position to be incorrect.

    Among other things, the Attorney General's Subpoena seeks information about Google's potentially misleading claims about its own services.  For example, Google claims that it vets YouTube videos before agreeing to allow advertising on them, but it allows and profits from advertisements on any number of illicit YouTube videos.  *See* Ex. A, Declaration of Brian K. Leavitt, Exs. 1, 2, 3, 4, 5, 6, 7, 8, and 9; *see also Ex.* B, Declaration of Jay Houston, Exs. 1, 2, 3, 4, 5, and 6.  To that end, the Subpoena seeks, "documents concerning the use of Google Advertising Service to promote or serve ads on websites in conjunction with videos on YouTube that are or appear to be promoting, facilitating, offering for sale, disseminating, or engaging in dangerous or illegal Content/Conduct.  Subpoena, Request No. 16.  This and similar requests are intended to help determine whether Google knowingly misrepresents its handling of YouTube videos and the advertisements that run alongside them.  Such misrepresentations could render

Google subject to liability under the MCPA that would not be precluded by the CDA.  Thus, just a limited review of the Subpoena shows Google's "facially conclusive" preemption argument fails.  To the contrary, to make such a determination, this Court would have to engage in a detailed inquiry of the Subpoena entire Subpoena.  Because the Subpoena is not facially conclusive of preemption this argument fails.  *See NOPSI*, 491 U.S. at 367 ("[W]hat requires factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention question.").

**V.     Conclusion**

For the reasons set forth, and for the reasons previously set forth in his motion and memorandum in support of the motion to dismiss, Attorney General Jim Hood in his official capacity, respectfully requests that the Court grant his motion to dismiss.

This the 29th day of January, 2015.

>                              Respectfully Submitted,
>
>                              JIM HOOD, ATTORNEY GENERAL FOR THE
>                              STATE OF MISSISSIPPI, in his official capacity
>
> By:    JIM HOOD, ATTORNY GENERAL FOR THE
>        STATE OF MISSISSIPPI
>
> By:    */s/ Douglas T. Miracle*
>        DOUGLAS T. MIRACLE, MSB # 9648
>        SPECIAL ASSISTANT ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-5654
Facsimile: (601) 359-2003
dmira@ago.state.ms.us

## **CERTIFICATE OF SERVICE**

  I, Douglas T. Miracle, Special Assistant Attorney General for the State of Mississippi, do hereby certify that on this date I electronically filed the foregoing document with the Clerk of this Court using the ECF system and sent a true and correct copy of the forgoing to counsel of record:

  This the 29th day of January, 2015.

                       */s/ Douglas T. Miracle*