**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**GOOGLE, INC.**                                                    **PLAINTIFF**

**VS.**

                                 **CIVIL ACTION NO.  3:14cv981-HTW-LRA**

**JIM HOOD, ATTORNEY GENERAL
OF THE STATE OF MISSISSIPPI,
IN HIS OFFICIAL CAPACITY**                                **DEFENDANT**

## <u>ORDER</u>

Plaintiff Google, Inc. submits this juridical preemptive strike against Jim Hood, the Attorney General of the State of Mississippi, asking this court to hold that it, Google, Inc., is shielded by the applicable law from the Attorney General's alleged demands and accompanying real threats to prosecute Google, Inc., both civilly and criminally for allowing third-party creators of obnoxious, tasteless and criminal content to publish such on the search engine of Google, Inc., without censure or proper restriction, for public consumption.

The Attorney General, aggrieved by this lawsuit, has responded with several counterattacks involving subject matter jurisdiction, abstention, ripeness, and the reach of the applicable law.

As so often occurs, before this court addresses the merits of a filed lawsuit, whether the ultimate trier of fact will be a jury, or judge alone, the litigation progresses through the motion stage.  This lawsuit is typical.

So, before this court are the following two diametrically opposed motions: (1) Google's motion for a temporary restraining order and preliminary injunction against the

Attorney General, filed under the authority of Federal Rule of Civil Procedure 65(b)[1] [docket no. 2]; and (2), the Attorney General's motion to dismiss: for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)[2], for failure to state a claim and lack of ripeness under Federal Rule of Civil Procedure 12(b)(6)[3] [docket no. 31]. In the alternative, Attorney General Hood argues that this case should be dismissed under the Younger abstention doctrine, articulated in *Younger v. Harris*, U.S. 37 (1971).

Both parties, having fully briefed their positions, appeared on February 13, 2015 to make their oral arguments. On March 2, 2015, this court, having reviewed and studied the parties' arguments in addition to the briefs filed by the amicus curiae[4], entered an abbreviated ruling granting Google's motion for a temporary restraining order and preliminary injunction. This present order contains an extended discussion of the court's ruling on this motion.  Commensurate with this ruling, this court denies the Attorney General's motion to dismiss. This court's reasoning is set out below.

## A. Background

In its complaint, plaintiff Google describes itself as "an internet service provider that maintains and operates one of the world's most popular Internet search engines, providing free, fast, and convenient access to the trillions of individual web pages publicly-available on the Internet." Complaint, p. 1. Additionally, Google operates

---

[1] Rule 65(b) of the Federal Rules of Civil Procedure states:  "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

[2] Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter.

[3] Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the plaintiff has failed to state a claim upon which relief can be granted.

[4] See Docket Nos. 67,68,77,80, and 81.

YouTube, "a leading online forum for uploading, searching for, viewing and sharing videos." *Id.*  Its services, particularly its role as publisher of material originating from third parties, are at the epicenter of this litigation.

Google complains here that for eighteen (18) months, defendant Attorney General Jim Hood has "threatened to prosecute, sue, or investigate Google unless it agrees to block from its search engine, YouTube video-sharing site, and advertising systems, third-party content (i.e., websites, videos, or ads not created by Google) that the Attorney General finds objectionable." When Google refused to comply with his demands, the Attorney General served upon Google, on October 27, 2014, a 79-page subpoena under the Mississippi Consumer Protection Act ("MCPA")[5], Miss.Code § 75–24–1 *et seq.*

On December 19, 2014, Google brought a federal action in the Southern District of Mississippi seeking declaratory and injunctive relief against Attorney General Hood, in his official capacity. In its complaint, Google claims that the Attorney General's subpoena and threatened litigation violate Google's protected rights as provided by: the Communications Decency Act of 1996 ("CDA")[6]; the First[7], Fourth[8], and Fourteenth[9]

---

[5] Miss. Code. Ann. § 75-24-1 states:
"There is hereby created and established within the office of the attorney general an "Office of Consumer Protection," which shall be charged with the administration of this chapter. The attorney general is hereby authorized and empowered to employ the necessary personnel to carry out the provisions of this chapter."

[6] Title 47 U.S.C. § 230(b)(2) states:  "It is the policy of the United States . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."

[7] U.S. CONST. amend. I states, in its pertinent part:  "Congress shall make no law . . . abridging the freedom of speech, or of the press."

[8] U.S. CONST. amend. IV,  states:

Amendments to the United States Constitution; the Copyright Act[10], including the Digital

Millennium Copyright Act ("DMCA")[11], and by the Food, Drug, and Cosmetic Act

("FDCA")[12].

---

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[9] U.S. CONST. amend. XIV, § 1 states:

    All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[10] Title 17 U.S.C. § 301(a) states:

    On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

[11] Title 17 U.S.C. § 512(d) states, in its pertinent part:

    A service provider shall not be liable for monetary relief . . . for injunctive or other equitable relief, for infringement of copyright by reason of the provider referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link, if the service provider--
      (1)(A) does not have actual knowledge that the material or activity is infringing;
        (B) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
        (C) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
      (2) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
      (3) upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity . . . .

[12] Title 21 U.S.C. § 337(b)(1) states:

    A State may bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations, of section 341 [relating to defining food standards], 343(b) [relating to misbranding food], 343(c) [relating to imitation of another food], 343(d)

The relief sought by Google in its complaint is, thus, predictable. Google asks this court to declare the following: that Section 230 of the CDA and the First and Fourteenth Amendments to the United States Constitution prohibit the Attorney General from bringing civil or criminal charges against Google for content created by third parties; that any accusation the Attorney General makes against Google under the MCPA for copyright infringement, or importation of prescription drugs is preempted by the Copyright Act, including the DMCA, and/or the FDCA; and, that any enforcement of the current version of the subpoena at issue would be impermissible under Section 230 of the CDA, the First, Fourth and Fourteenth Amendments to the United States Constitution, the Copyright Act, including the DMCA, and by the FDCA.

In its complaint, Google also seeks an injunction, to ban the Attorney General, along with his agents and affiliates, from enforcing the subpoena at issue and instituting civil or criminal proceedings against Google for making accessible third-party content to Internet users. For its efforts here, Google requests an award of reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief this court deems proper.

On December 19, 2014, the same day Google filed its lawsuit, Google filed the motion sub judice under Federal Rule of Civil Procedure 65(b)[13]. This motion reiterates

_____

[relating to misleading containers], 343(e) [relating to misbranding food packaging], 343(f) [relating to prominence of information on packaging], 343(g) [relating to representation as to definition and standard of identity], 343(h) [relating to representations of standard of quality], 343(i) [relating to lack of representation on label], 343(k) [relating to use of artificial flavoring, coloring or chemical preservatives], 343(q) [relating to nutritional information], or 343(r) [relating to nutritional levels and health-related claims] of this title if the food that is the subject of the proceedings is located in the State.

[13] Rule 65(b) of the Federal Rules of Civil Procedure states:  "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: . . . the

Google's need for a temporary restraining order and preliminary injunction mentioned in its complaint, requesting an immediate hearing, with notice to opposing counsel, whereat Google could advance these concerns on the court's docket.

Google, in its endeavor for an injunction, asks this court to enjoin the Attorney General from: (1) enforcing the Administrative Subpoena and Subpoena Deuces Tecum (the "Subpoena") issued by the Attorney General and served on Google on October 27, 2014 (returnable January 5, 2015); and (2) bringing a civil or criminal charge against Google under Mississippi law for making accessible third-party content to internet users, as allegedly threatened.

On February 13, 2015, the parties appeared before this court and submitted arguments. Since the parties agreed upon the relevant facts, and since they viewed this matter primarily as a dispute of law, neither party called any live witnesses but, instead, relied upon documentary exhibits.

At issue, here, then, is whether the court should grant Google's motion which will effectively preserve the status quo until the court resolves the lawsuit on the merits, or whether this court should stay its hand in favor of allowing the Attorney General to undertake his investigation by the subpoena route.

### B. Jurisdiction

Before addressing the arguments embedded in Google's motion for preliminary injunction and temporary restraining order, the court, first, must evaluate its basis for exercising subject matter jurisdiction over this action for declaratory and injunctive relief. In its complaint, Google claims that this court has federal question subject matter

---

movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

jurisdiction under Article III of the United States Constitution[14] and under 28 U.S.C. §S1331[15] and 1343(a)[16].

Challenging this court's subject matter jurisdiction, the Attorney General has filed his motion to dismiss Google's action in its entirety [docket no. 31]. Google, says the Attorney General, has not asserted claims arising under 28 U.S.C. § 1331, but instead has only asserted defenses to anticipated state law claims. The Attorney General adds that Google's grievances are not yet ripe for adjudication in this federal forum. These arguments, however, are not well-taken; this court, as explained below, is satisfied that it has federal question subject matter jurisdiction here.

1. <u>Standard of Review for Fed. Rule Civ. Pro. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

The Attorney General campaigns for the vitality here of Rule 12(b)(1) for a dismissal of Google's lawsuit in its entirety. A motion to dismiss for want of subject

---

[14] U.S. CONST. Art. III, § 2, cl. 1, in pertinent part, states: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States…."

[15] Title 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[16] Title 28 U.S.C. § 1343(a) states:
The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 **(1)** To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
**(2)** To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
**(3)** To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
**(4)** To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

matter jurisdiction under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).  Phrased differently; "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss.,* 143 F.3d at 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)).

When addressing motions urging dismissal for lack of subject matter jurisdiction, courts may examine the motion pursuant to any one of the following three offerings: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

2.  Google's Request for Relief; Its Complaint

This is an appropriate place to gauge the metes and bounds of Google's complaint, to discern whether these metes and bounds encase facts which are not offensive to Rule 12(b)(1).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Thus, a declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. *See* 28 U.S.C. §

2201(a). While it is true that the Declaratory Judgment Act is merely a procedural device and alone does not "extend" the jurisdiction of the federal courts (*Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)), federal courts may exercise subject matter jurisdiction in certain cases where government officials threaten legal action.

Google's complaint details a lengthy history of interaction between Google and the Attorney General and describes many instances where the Attorney General allegedly sought to pressure Google to make significant changes in how it operates and manages its Google search engine and YouTube platforms.  Google has submitted correspondence between it and the Attorney General, purportedly showing that the Attorney General, at a series of meetings, constantly has expressed his dissatisfaction with Google's posting of certain content he finds objectionable, namely advertisements and videos originating from third parties. Complaint, ¶¶32-73. Prior to the issuance of the subpoena in question, the Attorney General allegedly made extensive inquiry into Google's operation and applied substantial pressure on Google to make certain changes in order to "better" sanitize the material Google made available to users. For example, the Attorney General demanded that Google take down entire websites that possibly contain illegal or dangerous content and, in his opinion, facilitate illegal activity. The Attorney General, says Google, also spoke publicly against Google on multiple occasions about his disapproval of Google's practices.

In its complaint, Google describes one instance where, on July 31, 2013, Attorney General Hood made some inflammatory statements about Google during a public speech at the Neshoba County Fair in Philadelphia, Mississippi.  According to

Google, the Attorney General accused Google of "taking advantage of our country and the pain of our people…[with the sale of] counterfeit items and counterfeit drugs over the Internet that harm our consumers." Complaint, ¶47. Google states that the Attorney General acknowledged Google's immunity under the CDA from state criminal prosecution and civil suit, then, said that corporations like Google "only respond to bad publicity" so "you [have] to take it to that level" in order to "change the way they're operating" first through meetings and then through the use of civil investigative demands. *Id*.

Then, on February 25, 2014, Attorney General Hood allegedly made a speech at a public session of a National Association of Attorneys General (NAAG) meeting where he opined that Google's efforts to properly filter illicit material were insufficient and ineffective.

Google claims that it responded to the Attorney General's concerns by voluntarily making requested changes, on several occasions, but declining to accommodate the Attorney General's expressed wishes on others, citing its right to free speech under the First Amendment.  After becoming dissatisfied with Google's efforts, theorizes Google, the Attorney General retaliated against Google by issuing the 79-page subpoena which Google here complains is overly burdensome and largely unlawful.  Google says that it asked that the subpoena be withdrawn, or at least limited to activity not immunized by the CDA, but the Attorney General declined this request and refused to withdraw the subpoena.

Given this above-described history of strained communication and increased acrimony between the parties, this court finds that Google's complaint has a home here

in federal court. "The dilemma posed by [governmental] coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129, 127 S. Ct. 764, 773, 166 L. Ed. 2d 604 (2007) *citing Abbott Laboratories v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The law "do[es] not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat…." *MedImmune,* 549 U.S.at 128-29, 127 S. Ct. at 772.

Google is not required to expose itself to civil or criminal liability before bringing a declaratory action to establish its rights under federal law, particularly where the exercise of those rights have been threatened or violated. *See MedImmune*, 549 U.S. at 128-29. The Attorney General's alleged "sustained campaign of threats against Google" demonstrates that Google's concern about facing civil or criminal charges is legitimate.

Having sought to establish that this dispute presents an actual "case or controversy", Google accuses the Attorney General of seeking to violate Google's rights under the First and Fourth Amendments, actions which are preempted by the CDA, and in part, by the Copyright Act and the FDCA.  Complaint, ¶¶ 82, 92, 100 & 107. These claims, federal in character, provide federal subject matter jurisdiction.  This court, then, is the proper forum for adjudicating these federal claims. *See Voicenet Commc'ns, Inc. v. Corbett*, No.CIV.A. 04-1318, 2010 WL 3657840, at *5 (E.D. Pa. Sept. 13, 2010)(assuming jurisdiction in a case involving a request for a temporary restraining order and preliminary injunction where defendants including the state attorney, were alleged to have violated plaintiffs' rights under the First, Fourth and Fourteenth

Amendments; the Communications Decency Act; and the Commerce Clause of the United States Constitution); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1269 (W.D. Wash. 2012)(granting a temporary restraining order against the Attorney General where plaintiff alleged that a new law violated the Communications Decency Act of 1996, and the First, Fifth, and Fourteenth Amendments and Commerce Clause of the United States Constitution).

Google's request for injunctive relief falls within the embrace of this same federal question subject matter jurisdiction.  In *Shaw v. Delta Air Lines, Inc.*, cited here by plaintiffs, the Supreme Court stated "it is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." 463 U.S. 85, 96, 103 S. Ct. 2890, 2899, 77 L. Ed. 2d 490 (1983)  (citing *Ex parte Young,* 209 U.S. 123, 160–162, 28 S.Ct. 441, 454–455, 52 L.Ed. 714 (1908)). Indeed, where a state attorney general makes clear that legal action will be taken under state law for violations thereof, a federal court may grant jurisdiction for the purpose of issuing an injunction if appropriate. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S. Ct. 2031, 2035, 119 L. Ed. 2d 157 (1992)[17].

---

[17]Also suitable for federal judicial review are requests for injunctive relief based on claims of federal preemption. According to the *Shaw* Court:

> A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

463 U.S. 85, 96, 103 S. Ct. 2890, 2899, 77 L. Ed. 2d 490 (1983); *See also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519 (2009)(where the Supreme Court affirmed the district court's grant of an injunction based upon the threatened issuance of subpoenas by the New York Attorney General due to federal preemption).

3.  <u>The Applicability of Younger Abstention</u>

Contrary to the Attorney General's assertions, Younger abstention does not compel the denial of Google's motion for preliminary injunction and temporary restraining order. In *Younger v. Harris,* 401 U.S. 37 (1971), the United States Supreme Court held that federal courts must abstain from exercising jurisdiction over an action brought by an indicted state criminal defendant seeking to enjoin the pending state criminal case against him. Since the resolution of *Younger*, the doctrine has been applied to bar federal relief in certain civil actions.  The breadth of *Younger*'s reach, according to the Supreme Court, is limited to the following three "exceptional circumstances": ongoing state criminal prosecutions, certain "civil enforcement proceedings," and "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591, 187 L. Ed. 2d 505 (2013)(citations omitted).

As Google argues, none of them applies here. At this time, there is no ongoing state criminal prosecution relating to this matter, nor are there "civil proceedings involving certain orders…uniquely in furtherance of the state courts' ability to perform their judicial functions."  The question, then, is whether the Attorney General's subpoena constitutes "certain civil enforcement proceedings."  The court agrees with Google that this is not so, as these proceedings are not "akin to a criminal prosecution," which is required for this option to apply. *See Sprint*, 134 S. Ct. at 588.[18]

---

[18]Google correctly points out that Attorney General Hood, in a prior case, acknowledged, and the court agreed, that a subpoena "does not amount to a 'civil action,'" but is, instead, a "pre-litigation investigative tool." *Mississippi ex rel. Hood v. Gulf Coast Claims Facility*, No. 3:11-CV-00509, 2011 WL 5551773, at *2 (S.D. Miss. Nov. 15, 2011).

Moreover, even if the *Younger* elements were satisfied here, the court would not be required to abstain here because an exception to the application of the doctrine applies.  Indeed, federal courts may disregard the *Younger* doctrine when a state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff.  *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004). Google has presented significant evidence of bad faith, allegedly showing that Attorney General Hood's investigation and issuance of the subpoena represented an effort to coerce Google to comply with his requests regarding content removal.  As previously discussed, the Attorney General made statements, on multiple occasions, which purport to show his intent to take legal action against Google for Google's perceived violations[19].  When Google declined to fulfill certain requests, the Attorney General issued a 79-page subpoena shortly thereafter.  The court is persuaded that this conduct may evidence bad faith on the part of the Attorney General.

Of particular importance in this evaluation of *Younger* applicability is the Supreme Court's directive that federal courts generally should entertain and resolve on the merits an action within the scope of its jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *Sprint*, 134 S. Ct. at 588. "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12, 107 S. Ct. 1519, 1527, 95 L. Ed.

---

[19] Particularly noteworthy here is a transcript(submitted to the court by Google) from a NAAG meeting held on June 18, 2013 where the Attorney General said: "I told[Google] if you don't…work with us to make some of these changes that we've been suggesting since November, then I'm going to call on my colleagues to issue civil investigative demands or subpoenas to get some of these documents that we think we show that they have, in fact, manipulated their algorithm to allow for these search of some of these pirating sites to pop up." Neiman Decl. Ex. 9 at 8:8-13.

2d 1 (1987).  Even where a state-court proceeding involves the same subject matter as the action filed in federal court, abstention is not necessarily warranted. *Sprint,* 134 S. Ct. at 588.

### C. Google's Motion for Temporary Restraining Order and Preliminary Injunction

    1. <u>Standard for Evaluating a Motion for Temporary Restraining Order or Injunction</u>

To be entitled to a preliminary injunction or temporary restraining order, a movant must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury, which would occur if the injunction is denied, outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.[17] *Women's Med. Ctr. of Northwest Houston v. Bell,* 248 F.3d 411, 419 n. 15 (5th Cir.2001); *Ladd v. Livingston*, No. 15-70004, 2015 WL 364244, at *2 (5th Cir. Jan. 28, 2015) *cert. denied*, No. 14-8168, 2015 WL 375732 (U.S. Jan. 29, 2015). The courts acknowledge that "[a]n injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune,* 534 F.2d 1115, 1121 (5th Cir.1976). This court, nevertheless, finds that Google has met its burden of establishing the four elements required to receive injunctive relief.

    2. <u>Google's Argument</u>

        i. <u>Substantial Likelihood of Prevailing on the Merits</u>

First, there is a substantial likelihood that Google will prevail on the merits of its claims under federal law.  In sum, Google petitions this court for declaratory and injunctive relief on the basis that the Attorney General's threatened action and

subpoena under the MCPA are impermissible under both federal statutory and constitutional law, as applied to Google.  Google argues that it is exempt from being the target of legal action under state law, to the extent that the action is based upon its publishing of third-party content on its platforms.

Google contends that the Communications Decency Act, enacted as Title 47 U.S.C. § 230, bars the subpoena and the threatened litigation under the MCPA. Google correctly points out that Congress intended to promote the free-flowing exchange of ideas on the Internet by passing the CDA[20] and created a policy, contained within the text of the CDA, pursuant to this objective.[21] The CDA contains a Good Samaritan

---

[20] Congress published the following findings in the text of the statute:
(1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.
(2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.
(3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.
(4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.
(5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.
Title 47 U.S.C. § 230

[21] It is the policy of the United States--
(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;
(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;
(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;
(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and
(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.
47 U.S.C.A. § 230.

protection provision which states: "No provider or user of an interactive computer

service shall be treated as the publisher or speaker of any information provided by

another information content provider."47 U.S.C. § 230. Subject to certain exceptions,

the statute also provides protection from civil liability:

> No provider or user of an interactive computer service shall
> be held liable on account of--
> (A) any action voluntarily taken in good faith to restrict
> access to or availability of material that the provider or user
> considers to be obscene, lewd, lascivious, filthy, excessively
> violent, harassing, or otherwise objectionable, whether or not
> such material is constitutionally protected….
> 47 U.S.C § 230.

This broad grant of immunity afforded to web-based service providers in §230 has been

recognized by the Fifth Circuit. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.

2008)("Courts have construed the immunity provisions in § 230 broadly in all cases

arising from the publication of user-generated content.")(citations omitted).

It bears repeating that Google petitions for relief relating only to conduct that *is*

seemingly immunized by federal law or falls in the category of conduct that is seemingly

the subject of federal preemption. Google claims that all of the third-party content that is

targeted by the Attorney General's subpoena and threatened enforcement action

against Google was created and developed by some other content provider.

Google acknowledges that some of the third-party content it publishes raises

legitimate concerns.  Google adds, however, that it has taken appropriate measures to

address such problematic material, pursuant to its own policy:

> "To be clear, Google agrees that much of the third-party
> content about which the Attorney General complains is
> objectionable.  And with great care, Google voluntarily
> strives to exclude content that violates either federal law or
> Google's own policies, by blocking or removing hundreds of

> millions of videos, web pages, advertisements, and links in
> the last year alone. These extensive efforts comply with and
> go well beyond Google's legal obligations."
> Memo. in Support of Motion for Temporary Injunction, Pgs.
> 3-4.

Thus, Google does not argue that the Attorney General's concerns are completely unfounded; rather, Google focuses on a specific category of third-party content, and at this point, Google desires to maintain the status quo until this court determines the extent of its responsibility under the law with regarding to the same.

Also noteworthy in this discussion of Google's likelihood of prevailing on the merits of its CDA claim is a letter Google has submitted to this court which purports to show the Attorney General's acknowledgment that federal law limits state and local law enforcement agencies' ability to prosecute Internet platforms. This letter, dated July 23, 2013, was sent to Congress by Attorney General Hood and 46 other state attorneys who "request[ed] that the U.S. Congress amend the [Communications Decency Act of 1996] so that it restores to State and local authorities their traditional jurisdiction to investigate and prosecute those who promote prostitution and endanger our children." It appears, then that Attorney General Hood is aware that federal law significantly restricts his ability to take action of the sort in question here.

Furthermore, the court also is persuaded that Google has demonstrated a substantial likelihood that it will prevail on its claim that Attorney General Hood has violated Google's First Amendment rights by: regulating Google's speech based on its content; by retaliating against Google for its protected speech (i.e., issuing the subpoena); and by seeking to place unconstitutional limits on the public's access to information.  First, the relevant, developing jurisprudence teaches that Google's

publishing of lawful content and editorial judgment as to its search results is constitutionally protected. *See Jian Zhang v. Baidu.com Inc.*, No. 11 CIV. 3388 JMF, 2014 WL 1282730 (S.D.N.Y. Mar. 28, 2014)("…there is a strong argument to be made that the First Amendment fully immunizes search-engine results from most, if not all, kinds of civil liability and government regulation")(citations omitted). The Attorney General's interference with Google's judgment, particularly in the form of threats of legal action and an unduly burdensome subpoena, then, would likely produce a chilling effect on Google's protected speech, thereby violating Google's First Amendment rights.

Additionally, it is well-settled that the Attorney General may not retaliate against Google for exercising its right to freedom of speech by prosecuting, threatening prosecution, and conducting bad-faith investigations against Google. *See Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005)(*citing Smith v. Plati,* 258 F.3d 1167, 1176 (10th Cir.2001)(*quoting Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir.2000)). As explained *supra*, Google has submitted competent evidence showing that the Attorney General issued the subpoena in retaliation for Google's likely protected speech, namely its publication of content created by third-parties.  Given the gravity of the rights asserted herein, the court finds it appropriate to enjoin further action on behalf of the Attorney General until a determination on the merits of Google's claims is made.

Next, this court also finds that Google's Fourth Amendment claim regarding the overbreadth of the subpoena in question has substantial merit.  According to Google, little in the subpoena pertains to proper subjects of the regulation by the Attorney General, as most of the requests for information seemingly regard conduct that is

immunized or preempted by federal law. The Attorney General, on the other hand,

claims that not all the information requested in the subpoena is off-limits for inquiry.

In its rebuttal to the Attorney General's argument, Google makes the following

statements in support of its position that enforcement of the subpoena should be

enjoined:

> The Fourth Amendment prohibits subpoenas that are unduly
> broad. *United States v. Miller*, 425 U.S.435, 445 (1976)
> (Fourth Amendment "guards against abuse . . . by way of too
> much indefiniteness or breadth"); *See v. City of Seattle*, 387
> U.S. 541, 544 (1967) ("the Fourth Amendment requires that
> [an administrative] subpoena be sufficiently limited in scope,
> relevant in purpose, and specific in directive so that
> compliance will not be unreasonably burdensome"). It is no
> answer to a challenge to the Subpoena's focus on
> immunized conduct for the Attorney General to say that
> some small fraction of what is actually being sought might be
> properly within his purview. The whole point of the Fourth
> Amendment is to outlaw general searches launched merely
> on the theory that they might turn up some evidence of
> wrongdoing; the Fourth Amendment forces the State to
> particularize what it is seeking, and why it believes it will be
> found. Docket No. 55, Pg. 39.

Google's reasoning here is well-taken. Attorney General Hood's subpoena must

comport with the requirements of the Fourth Amendment and not wage an unduly

burdensome fishing expedition into Google's operations.

Moreover, the court is persuaded that Google is also likely to succeed on its

preemption claims.  Here, Google avers that the Federal Copyright Act, including the

DMCA, preempts a large part of the subpoena.  The subpoena contains various

requests for information regarding copyright infringement. Many of these requests are

found in a section titled "Stolen Intellectual Property".  It is well-established that state

attorneys lack the authority to enforce the Copyright Act; such enforcement power lies

with the federal government.  *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995)("The Copyright Act expressly preempts all causes of action falling within its scope, with a few exceptions.") *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012)("There is increasing authority for the proposition that § 301(a) of the Copyright Act completely preempts the substantive field.")

The Attorney General admits that certain requests contained in the subpoena "*could* arguably be used to show copyright infringement" (AG Response, p. 30), but argues that the same information could also be used to expose Google's various practices of misleading customers. The court is not persuaded that the Attorney General's posited theoretical basis for making these requests is sufficient for the purpose of rebutting Google's preemption allegation.

Google also references the Digital Millennium Copyright Act ("DMCA"), codified at 17 U.S.C 512(c)(1), which provides a safe harbor for online service providers who, like Google, remove or disable access to allegedly infringing material upon proper request. Because Google has in place a mechanism by which aggrieved content may be contested, says Google, many of the Attorney General's requests are improper.

With respect to preemption, Google further argues that the federal Food, Drug, and Cosmetic Act ("FDCA"), which governs the importation and introduction of prescription drugs into interstate commerce, also preempts much of the Attorney General's investigation. With very limited exceptions, actions brought for violations of the FDCA are exclusively within the purview of the federal government. *See* 21 U. S.C. §337.  Google points out that the subpoena demands information concerned with Google's dealings with Canadian online pharmacies in violation of federal law. This

court, then, finds it necessary to temporarily enjoin Attorney General Hood's enforcement of the subpoena until the court resolves the extent, if any, to which the demands contained therein are preempted.  Based on the foregoing, this court finds that Google has asserted viable claims, which, at this juncture, appear to be substantially meritorious.

Commensurately, this court denies Attorney General Hood's Rule 12(b)(6) motion to dismiss. In evaluating a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556). Applying this standard, the court is satisfied that Google has met its burden.  Accordingly, this court denies Attorney General Hood's motion to dismiss with respect to its argument that Google has failed to state a claim here.

ii.  <u>Substantial Threat of Irreparable Injury</u>

This court agrees with Google's claim that it faces a substantial threat of irreparable injury should this injunction not be issued. This court need look no further than the First Amendment. The Fifth Circuit repeatedly has held that "[t]he 'loss of First

Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.,* 579 F.3d 502, 506 (5th Cir.2009) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (Former 5th Cir.1981)); *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ("[Plaintiff] has satisfied the irreparable harm requirement because it has alleged violations of its First Amendment rights….'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'")  Thus, Google's allegation that the Attorney General has violated Google's First Amendment rights by seeking to regulate, through coercion, the content of its protected speech and by retaliating against Google for its exercise of said speech, is sufficient for establishing the irreparable injury element of the test.

### iii.  Comparison of Harm

With respect to prong three of the test, Google argues that in contrast to the harm it faces because of the Attorney General's threatened litigation and unlawful subpoena, the Attorney General will suffer *de minimus* harm from complying with a temporary restraining order and preliminary injunction. Preliminary relief, says Google, will not prevent the Attorney General from prosecuting actual third-party offenders who created the material to which he objects; it will only "briefly delay this aspect of the Attorney General's dealing with Google…in order to allow Google's claims to be heard."

On this point, the Attorney General claims that he "has a strong interest in maintaining the effectiveness of consumer protection subpoenas as a prosecutorial tool."  While this is true, the court nevertheless agrees with Google that the issuance of a temporary restraining order and preliminary injunction will not significantly thwart the

Attorney General's ability to investigate and enforce violations of Mississippi's consumer protection laws.  The Attorney General will not be able to move on matters at issue herein, namely, the enforcement of the subpoena and the filing of charges against Google, but he still may conduct an investigation and file an action regarding other matters that are within his jurisdiction.

> iv.  <u>The Public Interest</u>

Regarding prong four, Google claims that the issuance of the preliminary injunction furthers the interest of the public by protecting its own constitutional rights and, incidentally, defending the rights of the public against government intrusion in the digital realm.  The public, says Google, has a strong interest in having largely-unfettered access to Internet mediums for the purpose of publishing and viewing content and information, as reflected by federal policy.

This argument also is well-taken by the court. Indeed, "'injunctions protecting First Amendment freedoms are always in the public interest.'" *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) *citing Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir.2006*).

### D.  Conclusion

Finding the motion well-taken, this court hereby grants Google's motion for a temporary restraining order and preliminary injunction in this action.  Accordingly, the court denies Attorney General Hood's motion to dismiss on all arguments advanced in support thereof.

This court reiterates that this grant of Google's motion here does not indicate how the court will ultimately rule on the merits of the case.

The parties shall now proceed in accordance with the prior-announced litigation schedule.

**SO ORDERED AND ADJUDGED**, this, the 27th day of March, 2015.


___s/ HENRY T. WINGATE_____
**UNITED STATES DISTRICT JUDGE**