# **EXHIBIT A**



**FORMAN**
**PERRY**
**WATKINS**
**KRUTZ &**
**TARDY** LLP
ATTORNEYS AT LAW

City Centre, Suite 100
200 South Lamar Street
Jackson, Mississippi 39201-4099

Post Office Box 22608
Jackson, Mississippi 39225-2608

Telephone: 601.960.8600
Main Facsimile: 601.960.8613
Asbestos Facsimile: 601.960.3241

www.fpwkt.com

FRED KRUTZ
Direct Dial: (601) 960-8622
fred@fpwk.com

January 14, 2015

**VIA EMAIL AND REGULAR MAIL**

Bridgette W. Wiggins
Special Assistant Attorney General
550 High Street
Post Office Box 22947
Jackson, Mississippi 39225-2947

      Re: Google Inc.'s Mississippi Public Records Act Request

Dear Bridgette:

This responds to your January 6, 2015 letter declining to produce any documents in response to Google Inc.'s December 19, 2014 Mississippi Public Records Act request to the Mississippi Attorney General.

You suggest that Judge Wingate's December 23 order – which granted Google the relief sought in its TRO motion – somehow also excused the Attorney General from having to comply with the pending MPRA request, even though you never brought that request to Judge Wingate's attention or sought *any* form of relief from him. Your position is mistaken. The operative paragraph of the Order provides as follows:

> [T]his case is stayed and the status quo shall be maintained until March 6, 2015, during which time the Defendant has agreed not to enforce the Administrative Subpoena and Subpoena Duces Tecum or bring civil or criminal charges against the Plaintiff.

The Order does not purport to address, much less preclude Google from seeking to enforce, its pending MPRA request, an entirely separate exercise. Nor does the Order relieve the Attorney General of its statutory obligation to produce public records under the MPRA.

Judge Wingate's on-the-record description of his Order during the December 22, 2014 hearing (transcript at 32) confirms the narrow scope of relief ordered, and that Judge Wingate's Order does not reach Google's MPRA request:

> THE COURT: So then there will be a stay of any requirement of Google to answer the subpoena or submit documents any further relative to the subpoena, a stay with regard to any civil or criminal enforcement provision. And, meanwhile, the briefing schedule that I set out will be in effect.
>
> MR. MIRACLE: Yes, Your Honor.
>
> THE COURT: And a sunset provision will be March 6th.
>
> MR. MIRACLE: Yes, Your Honor.
>
> THE COURT: Okay. I'm fine with that. You all fine with that?
>
> MR. KRUTZ: Yes, sir, we are. I think counsel – and we think it's a good idea.

In short, the Attorney General's attempt to turn Judge Wingate's order – squarely addressed to the relief Google sought in its TRO motion – into an order granting the Attorney General relief it did not and could not seek, a general bar on Google pursuing information to which it is entitled under the MPRA, is untenable.

Equally implausible is your alternative basis for withholding documents – that every document covered by the request is protected by either by the attorney client privilege, the work product doctrine, or the investigative reports exemption. Google's MPRA request seeks communications between the Attorney General and third parties or their representatives, who were seeking to influence the Attorney General in his dealings with Google. The Attorney General's communications with third parties seeking to influence his conduct are at the very core of what the MPRA requires be subject to public scrutiny, and cannot possibly be privileged, work product, or investigative reports. Indeed, the Attorney General has already acknowledged that such communications must be made public in response to MPRA requests. For example, the New York Times on October 28, 2014 posted on its website various documents it obtained through public record requests, including a February 20, 2014 email to the Attorney General from the lobbyist Mike Moore, regarding a "pre meeting on Google." *See* http://www.nytimes.com/interactive/2014/10/28/us/5-Rhode-Island-Attorney-General-Turned-Attorney-General-Lobbyist.html?_r=1 *(last visited December 15, 2014).* Such communications with lobbyists, trade associations, and lawyers seeking to influence the Attorney General are not exempt from disclosure, and must be produced.

Leaving aside the merit of your claims, your letter does not identify the documents which are responsive to Google's MPRA request, or the nature or the basis of the claims of privilege or exemption with respect to each of those documents. Certainly, one-size-fits-all objections are not sufficient.
In sum, your January 6, 2015 letter does not respond to Google's MPRA request in good faith or in compliance with law.

Unless you produce the requested documents, Google will seek appropriate relief.

Finally, to avoid the duplicative formality of serving you with a separate request, please treat the following subset of the materials sought in the MPRA request as also having been requested pursuant to Federal Rule of Civil Procedure 34(a) in the matter before Judge Wingate:

1. Any drafts of possible subpoenas, subpoenas duces tecum, or civil investigative demands ("CIDs") to Google provided directly or indirectly to the Office of the Mississippi AG (the "OMAG") by any of the third parties identified in item 1 of the MPRA request (the "third parties"), as referenced in http://arstechnica.com/tech-policy/2014/12/how-hollywood-spurned-by-congress-pressures-states-to-attack-google/ ("How Hollywood Pressures States") (quoting email from Jenner & Block's Tom Perrelli proposing that "some subset of AGs (3-5, but Hood alone if necessary) should move towards issuing CIDs . . . in terms of outreach and action by us, I think we should (a) Shore up Hood and try to get a small group . . . focused on a clear timetable for CIDs, (b) Draft the CIDs . . . ")

2. Any research provided directly or indirectly to the OMAG by any of the third parties regarding possible litigation against Google, as referenced in How Hollywood Pressures States (Perrelli: "we should . . . research state law to determine the best state to pursue litigation and communicate that to Hood so that he can try to get the right AGs on board").

3. The November 13, 2013 email from General Hood to Van Stevenson of the MPAA, referenced in How Hollywood Pressures States, in which General Hood discussed an upcoming meeting with "MPAA/RIAA outside counsel Tom Perrelli and others" to "discuss the next move," and any replies or responses thereto.

4. The August 28, 2014 letter referenced in How Hollywood Pressures States from the OMAG "to AGs in all 50 states" regarding "setting up a working group" related to the OMAG's planned subpoena or CID to Google, and any communication between the OMAG and the third parties reflecting, relating, or referring to the August 28, 2014 letter.

5. Any communications from OMAG to any of the third parties providing advance notice of the intent to issue a subpoena, subpoena duces tecum or CID to Google, as referenced in How Hollywood Pressures States (MPAA GC Fabrizio: "Mississippi AG Hood is expected to issue a CID to Google sometime this week *(that information is naturally very confidential)*").

6. Any communications from any of the individuals or entities identified in the MPRA request attaching or otherwise referencing the word files titled "Google can take action" "Google must change its behavior" "Google illegal conduct" and/or "CDA", as well as the word files themselves, as referenced in How Hollywood Pressures States (Jenner & Block's Perrelli indicating that he will send four "white papers" with these names to Connecticut's Attorney General).

7. Any drafts of any letters to Google provided directly or indirectly to the OMAG by any of the third parties, and any communications with any of the third parties reflecting, referring, or relating to such draft letters.

To insure the availability of these materials in time for use in the briefing and argument on the preliminary injunction hearing, we ask that you agree to produce this specifically identified subset of the requested materials by no later than January 19, 2015. Given the tight schedule, we ask that you stipulate pursuant to Rule 26(d)(1) that these focused requests go forward without awaiting a formal discovery conference pursuant to Rule 26(f).

        Sincerely,

        Forman Perry Watkins Krutz & Tardy LLP

        Fred Krutz

FK/mkm
cc: Doug Miracle (via Electronic Mail)