IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


GOOGLE INC.                                          PLAINTIFF

VS.                                CIVIL NO. 3:14CV981-HTW-LRA

JIM HOOD, ATTORNEY GENERAL OF THE
STATE OF MISSISSIPPI, IN HIS OFFICIAL
CAPACITY, ET AL.                                    DEFENDANTS




**TELEPHONE CONFERENCE**




BEFORE THE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE
APRIL 6TH, 2015
JACKSON, MISSISSIPPI



APPEARANCES:

FOR THE PLAINTIFF:   MR. FRED KRUTZ III
                     MR. PETER NEIMAN

FOR DEFENDANT HOOD:  MR. DOUGLAS T. MIRACLE
                     MS. BRIDGETTE W. WIGGINS
                     MS. KRISSY C. NOBILE
                     MS. MARY JO WOODS
                     MR. BLAKE BEE


REPORTED BY:  MARY VIRGINIA "Gina" MORRIS, RMR, CRR
              Mississippi CSR #1253
_____

501 East Court Street, Suite 2.500
Jackson, Mississippi  39201
(601) 608-4187

1          THE COURT:  Good afternoon.  Could I have the parties

2    identify themselves starting with plaintiff.

3          MR. KRUTZ:  This is Fred Krutz representing Google,

4    and my co-counsel Peter Neiman is also on the telephone.

5          MR. NEIMAN:  Good afternoon, your Honor.

6          THE COURT:  All right.  Good afternoon.

7          MR. KRUTZ:  Good afternoon.

8          THE COURT:  All right.  Let's go to the defense.

9          MR. MIRACLE:  Your Honor, on behalf of the Attorney

10   General, Doug Miracle.

11         MS. WIGGINS:  Bridgette Wiggins.

12         MS. WOODS:  Mary Jo Woods.

13         MR. BEE:  Blake Bee.

14         MS. NOBILE:  Krissy Nobile.

15         THE COURT:  All right.  Now, whose motion is it?

16         MR. NEIMAN:  Your Honor, this is Peter Neiman for

17   Google.  The issue that has come up is a disagreement about

18   when the Attorney General's responses to our discovery requests

19   are due.  We served these requests in January, and the Attorney

20   General has taken different positions over time about when his

21   response is due.

22         Most recently they've said they're not due until 30

23   days after your Honor issued his decision on March 27th.

24   Previously, they promised on the 18th to give their responses

25   on April 11th.  And then thereafter they -- on I think

1    March 27th they took the position that because they had filed a

2    motion for stay, they shouldn't have to respond at all.  And

3    now they've said that they'll respond by April 27th.

4            We don't think any of those is right.  This is -- the

5    discovery request has been pending for a very long time.  They

6    initially objected to the request on the ground that they had a

7    motion to dismiss pending.  Your Honor's March 2nd ruling

8    eliminated that ground.  And they should have responded 30 days

9    after that, and they haven't.

10           Your Honor's, you know, order directed that this

11   matter would proceed expeditiously; and that's what we've been

12   trying to do, and we just keep getting a different story from

13   them about when their response was due.  And we don't think

14   there's any reason for them to delay further in responding.

15   We've tried to work out production on a rolling basis and they

16   haven't agreed to that.  They just keep moving the goalposts

17   about when they're going to respond.

18           THE COURT:  Who's speaking for the Attorney General's

19   office?

20           MR. MIRACLE:  This is Mr. Miracle.  I will speak to

21   those issues that he just raised.  Your Honor, the notion that

22   discovery has been pending since January is simply incorrect

23   and does not comport with the local rules of the Southern

24   District or the Northern District.  We have advised counsel

25   opposite of that repeatedly.

1      They sent us a letter in January in letter format,

2 which was not served as discovery, saying, *Here are the*

3 *discovery requests we want you to answer.*  We advised them that

4 given our local rules, that there was no CMO, there was no

5 telephonic case management conference, there was nothing, that

6 we were not in a discovery phase.  So as far as when they

7 alleged that discovery has been pending, that simply is without

8 merit.

9      Your Honor, what we're doing is we're following your

10 Honor's orders to the letter.  On March 2nd the court set out a

11 specific time frame for how discovery and dispositive motions

12 would take place.  That was tied to your Honor's full opinion.

13 And on the 27th of March, your Honor, your opinion -- and the

14 last line of that opinion says, "The parties shall now proceed

15 in accordance with the prior announced litigation schedule."

16 That litigation schedule was set out in your March 2nd order.

17      So we have advised -- as recently as Friday, I advised

18 Mr. Krutz and Mr. Neiman that we were prepared to follow that

19 order, that we would waive any discrepancies as far as the

20 manner of service of the discovery request.  We would deem

21 those requests as being served on the date of your Honor's

22 order and that we would provide full responses or any privilege

23 logs thereto within 30 days pursuant to Rule 34.  So everything

24 we have set forth has been in accordance with your Honor's

25 orders.

1      They have asked for unilateral deadlines that we

2  should do and we should give them rolling discovery.  All we

3  have said, your Honor, is that we will provide those discovery

4  responses in accordance -- I don't think it could be much

5  clearer that your order said the parties shall now proceed with

6  the announced litigation schedule.  So that's been our position

7  and we have communicated that.

8      We had a conference call with Mr. Krutz last Tuesday

9  where we advised him that was our position.  He seemed to

10  suggest or at least indicate that was not unreasonable.  Then

11  on Wednesday we got an e-mail that wanted immediate discovery

12  on a rolling basis.

13      We just think the better practice here, your Honor,

14  was to follow the order of the court which tied discovery to

15  the entry of your March 27th opinion.  So I really think it's

16  pretty simple.  I don't even really feel like this is a

17  discovery dispute.  This is simply -- we have 30 days to

18  respond.  Discovery is -- I believe July 9th is the discovery

19  deadline.

20      So with that said, your Honor, I would simply ask that

21  you deny their -- there's no motion pending.  They didn't file

22  anything.  They've just raised this ore tenus with your office

23  this morning.  So with that said, we would ask that you deny

24  any of this relief that they're asking for here today.  We have

25  already advised in writing that we will provide responses or a

1    privilege log by April 27th, which is 30 days from your Honor's

2    order.  Actually, it's 31 days.  The 30th day falls on a

3    Sunday.

4              THE COURT:  And you make your responses by April what?

5              MR. MIRACLE:  27th.

6              THE COURT:  Let me hear back from plaintiff.

7              MR. KRUTZ:  Your Honor, this is Fred Krutz.  And we

8    have tried -- and we sent over to you all of the letters and

9    correspondence.  We have tried over the last week to sort this

10   out.  And I'll have to take a little bit of umbrage at what

11   Mr. Miracle said about our telephone call where I seemed to

12   indicate I thought what they were saying was reasonable.

13            We have always said that we thought the discovery --

14   that when -- what you did was set a deadline, like the end of

15   the football game, for when discovery; but you never said that

16   we couldn't start discovery until a certain point in time.  In

17   fact, you said in the hearing on March 2nd -- and I believe

18   it's in your order.  I don't have it in front of me -- you

19   wanted this to be adjudicated quickly.  And that's what we're

20   trying to do.

21            Now, they have had our -- what documents we wanted,

22   they have had them since January.  They've quibbled with us

23   about that wasn't proper form.  But they've had what we wanted

24   and it wasn't voluminous.  And we tried to work this out.  We

25   told them that we thought the discovery was due now, not on the

1    27th.

2         But we told them in order not to have to try to sort

3    this out as often with the court, to not take your time as the

4    federal district court judge over this discovery dispute, we

5    suggested a rolling schedule and specified some documents

6    that they could give us tomorrow -- this was last week -- and

7    the rest of them to be given to us by the 27th.  They didn't

8    want to do that.  They said that they had 30 days from the date

9    of your opinion on the 27th of March.  We're not sure where

10   they came up with that.

11        I then called Bridgette Wiggins and -- last week and I

12   said, *Look, we're lawyers that can work this out.  Y'all have*

13   *been reasonable with us throughout.  We don't need to involve*

14   *Judge Wingate in this.  Y'all are now -- even though we think*

15   *it's now and you're saying the 27th and you won't budge off of*

16   *that, we're now at the 7th.  You're at the 27th.  Can't we just*

17   *meet somewhere in between and try to get the -- you know, get*

18   *this worked out?*  They said no.

19        So, you know, we feel like, in short, your Honor, that

20   we've been entitled to the documents we've requested, which,

21   again, are not voluminous.  And they are readily available and

22   they've had this for several months.  We've tried to work with

23   them.  We're still willing to work with them.  But they've just

24   put their foot down and said it's the 27th or nothing.  And

25   that's why we're here today.

1          THE COURT:  Okay.  Let me turn back to the defense.

2   What kind of documents are they talking about?

3          MS. WIGGINS:  Your Honor, they're actually -- I

4   understand from -- in Fred's opinion it's not voluminous, but

5   they've actually asked for e-mail communications within our

6   office that would involve at least six different people.  Our

7   IT person is working on getting that information.  We just -- I

8   don't know why he says it's readily available, your Honor,

9   because it's not.  We're having to gather that information.  So

10  it's going to take us some time.

11         THE COURT:  So then how --

12         MR. NEIMAN:  I think that we asked them to -- I'm

13  sorry, your Honor.  I didn't mean to interrupt, but --

14         THE COURT:  Go ahead.

15         MR. NEIMAN:  -- may I describe the things we asked to

16  be provided right away?  Because they are discrete and narrow

17  and should be no difficulty at all in producing quickly.

18         THE COURT:  Say that again.

19         MR. NEIMAN:  Yeah, I -- your Honor, I would just like

20  to give you the list of the things that we asked them to

21  produce promptly, recognizing that some things might take more

22  time, because we're not talking about things that they need to

23  search six e-mail custodians and the like in order to find.

24  It's a very, you know, discrete set of things that we've asked

25  them to give us right away.  I'm happy to provide that list to

1   you if that's useful.

2          MR. MIRACLE:  Your Honor, this is Mr. Miracle for the

3   Attorney General again.  If I might, I mean, one of the

4   problems that this is -- the reason this is -- has come up is

5   we're now operating -- I mean, I think if the court says, *This*

6   *is what my order says* and -- I mean, them saying, *Well, we told*

7   *them we wanted this expeditiously and we think we're entitled*

8   *to it,* that is just going to lead to complete chaos for the

9   rest of this discovery period.

10          Our position was going to be, *Let's not do it*

11   *piecemeal.  We can have everything we believe by the 27th*,

12   which was within the time provided by the Federal Rules of

13   Civil Procedure.  I didn't really feel like we could go wrong

14   operating within your Honor's order and the Federal Rules of

15   Procedure.  When we get into trouble is when one party makes

16   unilateral demands and says, *We think you should be able to do*

17   *X by tomorrow.*  So, you know, this notion that we've created

18   some turmoil here I simply would object to.

19          THE COURT:  Again with regard to the documents that

20   are outstanding, are there more documents than just what was

21   stated a moment ago being provided from six different outside

22   people?

23          MR. NEIMAN:  Let me describe, your Honor, what

24   we've -- what we've asked for.  And I'll give you two -- two

25   things.  First of all, this is what we've asked to be provided

1    by April 7th when we made this request to them.  The initial

2    request was in January, and then on April 1st we asked for this

3    subset of what we asked for in January to be produced by no

4    later than April 7th.  And it's just five things.  Any draft

5    subpoenas that were provided to the Attorney General by outside

6    parties by specific -- the identified outside parties --

7                THE COURT:  Hold one second.  We need you to repeat

8    there.  Draft subpoenas.

9                MR. NEIMAN:  The first was any draft subpoenas

10   provided to the Attorney General by identified third parties.

11   And that's a list of people that I could give you.  The second

12   was General Hood's November 13, 2013, email to Mr. Stevenson

13   from the MPAA and any replies and responses thereto.

14                The third item was General Hood's August 28th, 2014,

15   letter to the Attorney Generals in all 50 states about setting

16   up a working group.  The fourth was four specific Word files

17   with -- by title, "Google can take action," "Google must

18   changes its behavior," "Google's illegal conduct" and "CDA,"

19   and any e-mails from identified third parties attaching those

20   Word files.

21                And the last was any document that the Attorney

22   General had already gathered in connection with a pending FOIA

23   request that the Attorney General had said in correspondence

24   with the FOIA requester would only take them 35 hours to

25   review.  So those were the five things that we asked for to be

1  provided no later than April 7th.  They were all -- they were

2  all asked for in January.

3          The obstacle that was identified then was that there

4  was a motion to dismiss pending.  That was no longer true after

5  March 2nd.  We thought, therefore, that at the very latest 30

6  days after March 2nd these items were due, the whole thing that

7  we requested in January were due.

8          The Attorney General initially seemed to be of a

9  slightly different view, thinking that was not due until

10  April 11th and then the goalpost shifted a couple of more times

11  after that.  But the things we're asking for to be produced by

12  April 7th are narrow, specific and easily identified, doesn't

13  require searching some long list of custodian's e-mail.

14          THE COURT:  All right.  Mr. Miracle.  Mr. Miracle.

15          MR. MIRACLE:  Well, your Honor, first and foremost, I

16  don't believe that counsel opposite gets to make the

17  determination as to what efforts it requires on our technology

18  side.  I mean, he's just repeating the same arguments over and

19  over again that I --

20          THE COURT:  Well, why don't you tell me -- why don't

21  you tell me the difficulty in submitting the subpoenas.  Let's

22  start with that.  What's the difficulty?

23          MR. MIRACLE:  I'm sorry.  Could you repeat that, your

24  Honor?  Our connection's fading in and out a little bit.

25          THE COURT:  What's your difficulty in locating any

1   subpoenas that were served upon you by third parties?

2           MR. MIRACLE:  No, that -- I apologize, your Honor,

3   because I -- you probably don't have what Mr. Neiman was

4   reading from.  It's not subpoenas from third parties.  He's

5   talking about communications that may have gone back and forth

6   between our office and people outside this office regarding the

7   subpoena that was served by the Attorney General on Google.  So

8   that does involve other communications.  Your Honor, I --

9           MR. NEIMAN:  I'm sorry.  I hate to interrupt

10  Mr. Miracle.  Could I just read the text of the request?  Just

11  any draft subpoenas --

12          MR. KRUTZ:  This is Fred Krutz.  Your Honor, I just

13  asked my assistant Marilyn to scan and e-mail over to your

14  office that April 1st e-mail that Mr. Neiman is referring to so

15  that you'll have the actual document in front of you.  I will

16  say that Mr. Neiman read accurately what's in there.  But it's

17  on your -- it's on the way right now.

18          THE COURT:  Okay.

19          MR. MIRACLE:  Well, I guess, your Honor, too, I mean,

20  our IT -- I am not personally getting these documents off our

21  system.  We have an IT person that's doing that.  So I am not

22  able to say -- until our IT person comes to us and says, *I have*

23  *concluded my search and I have -- I have gathered the*

24  *parameters and I have* -- that is what our IT person is doing.

25  So to the extent that I can provide your Honor an answer to

```
 1    what is the difficulty, we have provided all this information
 2    to our IT person and they are in the process of gathering it.
 3    Now, our IT person doesn't have an unlimited staff.  Our IT
 4    person has other responsibilities.  So this is part and parcel
 5    of all that.
 6          But, again, I think that the problem here is arising
 7    from when one party is trying to decide when the other party
 8    should or shouldn't comply and place deadlines and then call
 9    the court when their deadline is not met.  It just seems to me
10    the better course that we're providing for proceeding under the
11    rules and we would have eliminated this all long.
12          THE COURT:  About the November 13th correspondence?  I
13    think it's MMPA, something like that, what's your difficulty in
14    locating that?
15          MS. WIGGINS:  Your Honor, we're -- again, our IT
16    person is still searching our e-mails looking for that
17    particular e-mail.
18          THE COURT:  And what about the next one?  I think
19    it's -- what, is it August '14?
20          MR. NEIMAN:  August 28, 2014, your Honor.
21          THE COURT:  Okay.  The AG's -- is it the AG's letter
22    to other AGs across the country?
23          MS. WIGGINS:  Your Honor, I believe that may be one
24    that we have located.
25          THE COURT:  What about the next one, the Word files?
```

1        MS. WIGGINS:  That one, your Honor, we're still

2   putting together.

3        THE COURT:  And then the last one, the documents that

4   the AG has in response to a FOIA request.

5        MS. WIGGINS:  Well, actually, your Honor, because that

6   third party did not pursue that request any further, there were

7   no documents produced with regard to that FOIA request.

8        THE COURT:  Now, who is your IT person?

9        MS. WIGGINS:  His name is C. Rick Moore.

10       THE COURT:  And he is a member of your office?

11       MS. WIGGINS:  That is correct, your Honor.

12       THE COURT:  And what kind of staff does he have?

13       MS. WIGGINS:  It may be two or three, your Honor, that

14   take care of the entire Attorney General's Office.

15       THE COURT:  And when did you submit these requests for

16   him to locate these particular documents?

17       MS. WIGGINS:  Shortly after the hearing where you made

18   your ruling giving us the discovery outline, your Honor.

19       THE COURT:  And did you make that request orally or

20   written?

21       MS. WIGGINS:  It was orally for him to begin

22   searching.

23       THE COURT:  So then when did you give him directions

24   as to what to find?

25       MS. WIGGINS:  I don't have that information in front

1    of me, your Honor, but it was shortly after that.  We've been

2    giving him additional information for several days for him to

3    put together a complete search.

4            MR. MIRACLE:  And, your Honor, if I might, some of

5    this I feel like may be impinging upon our work product and our

6    discussions that we're having with our staff here at the

7    Attorney General's Office.

8            THE COURT:  I thought you told me that you'd been

9    working on these matters.

10           MR. MIRACLE:  We have, your Honor.

11           THE COURT:  It doesn't sound like you've been working

12   on them.  That was not a misstatement to the court, was it?

13           MR. MIRACLE:  I'm sorry.  What --

14           THE COURT:  That was not a misstatement to the court,

15   was it?

16           MR. MIRACLE:  That we'd been working on it?

17           THE COURT:  Right.  You're the one that said you'd

18   been working on it, didn't you?

19           MS. WIGGINS:  Yes, your Honor.  And we have been

20   working on it.  He's in the process of conducting the searches

21   now.

22           THE COURT:  So, then, your statement to me is that

23   you'd been working on it; but then when I asked you specifics

24   about what you've been doing, then you want to say that's part

25   of work product now?

1           MR. MIRACLE:  Well, I just was asking -- when you were

2     asking about conversations we were having, I have not

3     personally had conversations with Mr. Moore.  Other members of

4     our staff have been having conversations.  I'm just a little

5     bit nervous about talking about the conversations we're having.

6     But the representation that he has been working on it is

7     accurate.

8           THE COURT:  Well, you weren't very nervous about

9     telling me he's been working on it, were you?

10          MR. MIRACLE:  No, your Honor.

11          THE COURT:  You wasn't very nervous about telling me

12     that you'd given him some oral directives, were you?

13          MS. WIGGINS:  No, your Honor.

14          THE COURT:  So -- but you've gotten nervous when I

15     asked you specifically when you've done these kind of things

16     and who did it?  That makes you nervous?

17          MR. MIRACLE:  I just -- I just think -- I just raised

18     the issue of work product, that I think we're entitled to

19     maintain our privileges as far as discovery work that we're

20     doing; but there has been no misrepresentation here, your

21     Honor, whatsoever.

22          THE COURT:  There's been no what?

23          MR. MIRACLE:  There's been no misrepresentation.  He

24     has been working on it.

25          THE COURT:  Counsel, you're not afraid if I ask him

1    whether he's been working on it he might say no, are you?

2            MS. WIGGINS:  No, your Honor, we're not afraid of that

3    at all.

4            THE COURT:  I mean, I'm not having -- I'm not having

5    some effort here to deceive the court, am I?

6            MS. WIGGINS:  No, your Honor, not at all.

7            THE COURT:  Well, then I don't understand

8    Mr. Miracle's resort all of a sudden to work product and that

9    is not something he can discuss all of a sudden.  I don't quite

10   understand that.

11           MR. MIRACLE:  Your Honor, I certainly did not mean to

12   imply that by saying that there were work product issues.  It's

13   just when we're -- when we're on the phone with counsel

14   opposite and being asked specific questions about conversations

15   we're having with members of our staff, that was my only

16   concern, that I don't want to be accused of waiving any

17   privileges.  But the representation that he has been working on

18   this is accurate.  I raised --

19           THE COURT:  I don't believe --

20           MR. MIRACLE:  -- that out of an abundance of caution.

21           THE COURT:  I don't believe counsel opposite raised

22   this matter.  I believe that was your explanation, wasn't it?

23           MR. MIRACLE:  That was not an explanation, your Honor.

24   That was simply a concern on my part about specific discussions

25   that my office may be having with employees within our office.

1   That was more in the way of a hypothetical that I simply don't

2   want to be --

3              THE COURT:  A hypothetical?  What --

4              MR. MIRACLE:  -- accused by counsel --

5              THE COURT:  -- was the hypothetical?

6              MR. MIRACLE:  -- opposite of saying, *Well, they've*

7   *waived everything as far as discussing what they've talked*

8   *about with their IT guy.  We want everything -- you know, we*

9   *want everything they've talked about with their IT guy.*  I was

10  just anticipating that as a concern as we were delving more and

11  more deeply into conversations our office was having with our

12  IT staff.  That is all I meant by that, your Honor.

13             THE COURT:  So, then, tell me, when can you provide

14  this information to the opposite side?

15             MS. WIGGINS:  Your Honor, with regard to the e-mail

16  that I believe Mr. Krutz just sent to you with the five

17  requests, we believe we could have that to counsel opposite

18  within seven days.  With the remainder of the request, our

19  response, be able to provide it on April 27th as we previously

20  advised.

21             THE COURT:  Okay.  Repeat that one more time.

22             MS. WIGGINS:  With regard to the five requests in the

23  April 1st e-mail from counsel opposite, we believe we can have

24  that -- a response and correspondence privilege log to them

25  within seven days from today.  Excuse me.  That would be seven

1  working days.  And the remainder of the production, our

2  response being submitted by the April 27th deadline that we

3  previously advised of.

4       THE COURT:  Privilege log by April 7 and then the

5  other five items by the 27th.  Is that correct?

6       MS. WIGGINS:  No, your Honor.  With regard to the five

7  items in the April 1st e-mail, within seven working days from

8  today's date.

9       THE COURT:  So that would be what day?

10      MS. WIGGINS:  We're pulling out a calendar now, your

11  Honor.

12    (PAUSE)

13      MS. WIGGINS:  We calculate that to be April 14th.  I'm

14  sorry.  April 15th.  I'm sorry, your Honor.  We calculate that

15  to be April 15th with regard to the five items in the April 1st

16  e-mail.  With the remainder of our response being produced on

17  April 27th.

18      THE COURT:  Let me hear from the other side.

19      MR. NEIMAN:  Your Honor, I -- you know, if that is the

20  good faith representation of the Attorney General's Office

21  that's the soonest that they can provide us those items, then

22  that's acceptable.  I would just ask, your Honor, that --

23  because I anticipate we may have similar arguments raised by

24  third parties who have received subpoenas who will claim that

25  somehow your March 2nd order delayed the time by which they had

1   to respond to things until some point after your opinion was

2   issued, which I don't think is the proper reading of that, that

3   it might be useful to just reflect that agreement that's been

4   reached today in an order so that everybody understands that

5   there isn't some, you know, delay in people's obligations to

6   respond following the March 2nd order.

7           THE COURT:  Counsel, this was your ore tenus motion

8   following which you asked for a telephone conference with the

9   court.

10          MR. KRUTZ:  Yes, your Honor.

11          THE COURT:  We now have an understanding between the

12  parties on this matter.  So then plaintiff is to draft a

13  proposed order reflecting these dates and the last observation

14  and then to submit it to the defense for approval as to form

15  and then submit it to the court.  Now, are there any questions

16  about any of this from anybody?

17          MR. MIRACLE:  No, your Honor.

18          MR. KRUTZ:  Your Honor, I just had one question.  I

19  think this is correct; but on the 27th, the remainder of the

20  documents are to be produced along with a privilege log that

21  would lay out appropriately any documents that they are

22  claiming they are not going to produce.

23          THE COURT:  Who is speaking?

24          MR. KRUTZ:  I'm sorry, your Honor.  Excuse me.  This

25  is Fred Krutz.

 1            THE COURT:  All right.

 2            MR. MIRACLE:  Your Honor, this is Mr. Miracle.  We

 3   have already made that representation to counsel opposite as to

 4   the documents by the 27th with an appropriate privilege log.

 5   So I would reaffirm that today.

 6            THE COURT:  Okay.  In that case --

 7            MR. KRUTZ:  Thank you, your Honor.

 8            THE COURT:  All right.  Then, as I said, I would like

 9   plaintiff to submit the proposed order to opposing counsel to

10   verify that it is in conformity with the ruling made here

11   today, and then that order should be provided to the court and

12   the court will enter the order.  Now --

13            MR. KRUTZ:  Yes, sir, your Honor.  We will do that.

14   Thank you.

15            THE COURT:  All right.  Any other questions from

16   anybody?

17            MR. KRUTZ:  No, sir.

18            MR. MIRACLE:  No, your Honor.

19            THE COURT:  Thank you very much.

20       (TELEPHONE CONFERENCE CONCLUDED)

21

22

23

24

25

```
1                        CERTIFICATE OF REPORTER

2

3        I, MARY VIRGINIA "Gina" MORRIS, Official Court

4   Reporter, United States District Court, Southern District of

5   Mississippi, do hereby certify that the above and foregoing

6   pages contain a full, true and correct transcript of the

7   proceedings had in the aforenamed case at the time and

8   place indicated, which proceedings were recorded by me to

9   the best of my skill and ability.

10        I certify that the transcript fees and format

11   comply with those prescribed by the Court and Judicial

12   Conference of the United States.

13        This the 15th day of April, 2015.

14

15                        s/ Gina Morris
                          _____
16                        U.S. DISTRICT COURT REPORTER

17

18

19

20

21

22

23

24

25
```