**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| Google Inc., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| *v.* | ) | No. 3:14cv981 HTW-LRA |
| | ) | |
| | ) | **PLAINTIFF GOOGLE INC.'S** |
| | ) | **MOTION TO COMPEL THE** |
| Jim Hood, Attorney General of the State | ) | **PRODUCTION OF DOCUMENTS BY** |
| of Mississippi, in his official capacity, | ) | **DEFENDANT JIM HOOD, THE** |
| | ) | **ATTORNEY GENERAL OF THE** |
| *Defendant.* | ) | **STATE OF MISSISSIPPI** |
| | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

By order dated April 10, 2015, this Court directed the Attorney General to produce five categories of documents, absent a valid privilege claim. *See* Order on Ore Tenus Discovery Motion, ECF No. 94 (the "April 10 Order"). The Attorney General has withheld most of the documents called for by the Court's order. But there is no valid basis to assert privilege. Most of the documents in question were prepared by third parties lobbying the Attorney General to take action against Google. Neither the attorney-client privilege nor the work product doctrine permits public officials to shield such interactions from scrutiny. The privilege log provided by the Attorney General confirms that there is no basis to withhold the documents. The log fails to provide most of the information required by Local Rule 26(a)(1)(C) and does not come close to satisfying the Attorney General's burden to establish that each document at issue is privileged. Plaintiff Google Inc. ("Google") moves to compel the Attorney General to produce in full the documents covered by the April 10 Order, as discussed below.

## FACTUAL AND PROCEDURAL BACKGROUND

The April 10 Order directed the Attorney General to produce the following five categories of documents, along with a privilege log, by April 15, 2015:

a. Any draft subpoenas provided to the Attorney General by the third parties identified in Google's request [of January 14, 2015].

b. Attorney General Hood's November 13, 2013 email to [MPAA lobbyist] Vans Stevenson, and any replies or responses thereto;

c. Attorney General Hood's August 28, 2014 letter to the Attorneys General in all 50 states regarding setting up a working group;

d. The Word files listed in item (6) of Google's January 14, 2015 request ("Google can take action" "Google must change its behavior" "Google's illegal conduct" "CDA"), and any emails from the third parties attaching those word files; and

e. Any documents already gathered in connection with the Techdirt Mississippi Public Records Act request that are responsive to Google's requests.

The April 10 Order also directed the Attorney General to respond to the remainder of Google's document requests by April 27, 2015.

On April 15, the Attorney General served his responses and objections for the five priority document categories, along with a privilege log and 65 pages of heavily redacted documents. *See* Neiman Decl. Ex. 1. He produced no documents at all within the fifth category specified by the Court, later explaining that while documents had been "identified" in relation to the Techdirt Mississippi Public Records Act request, none had been "gathered."[1] He also refused to produce much of the responsive material in his possession, claiming that the documents are protected by the attorney-client privilege, the work product doctrine, the common interest doctrine, or some combination thereof. *Id.* The Attorney General's privilege log, however, did not substantiate his claims. It failed to provide the author of withheld documents, the names of the individuals who sent or received withheld communications, the names of documents, and offered vague descriptions of withheld material, such as "Email with Legal Memoranda." *Id.*

After a written and telephonic consultation between the parties, the Attorney General agreed to cease withholding some information and provided a supplemental privilege log. The new log, provided by the Attorney General on April 21, includes more information about who sent and received certain communications; it also provides email subject lines and attachment names for some of the withheld documents. *See* Neiman Decl. Ex. 2. It also concedes that the Attorney General does not know who drafted many of the withheld documents and instead states, "on information and belief," that they "were prepared by or at the direction of" one of two or three named lawyers in private practice, at the law firms Jenner & Block LLP ("Jenner"), Orrick,

---

[1] That distinction is spurious. We do not ask for any relief in this motion on this ground, however, because under the Court's order the Attorney General remains obligated to produce responsive documents in this category by April 27, whether or not previously gathered.

Herrington & Sutcliffe LLP ("Orrick"), and SNR Denton US LLP ("Denton").  *Id.*  The Attorney General confirmed that he had no attorney-client relationship with these firms.  Published accounts indicate that, in connection with lobbying activities, Orrick represents Microsoft and Jenner represents the MPAA.  *See* Neiman Decl. Ex. 5, Joe Mullin, *Hollywood v. Goliath: Inside the Aggressive Studio Effort to Bring Google to Heel*, Ars Technica, Dec. 19, 2014 (hereinafter Mullin, *Hollywood*).

On April 21, the Attorney General also provided the engagement letter governing his relationship with the Mike Moore Law Firm ("Moore").  *See* Neiman Decl. Ex. 3.  The letter is dated June 29, 2012, two months *after* the date of one of the documents the Attorney General withheld based on an alleged privileged relationship with Moore.  The letter states that the Attorney General retained Moore "to assist in its investigation of whether Google's practices [REDACTED]."  *Id.*  (The Attorney General claimed that the redacted material constituted work product.)  *See* Neiman Decl. Ex. 2 (Supplemental Privilege Log Entry 11).  The letter provided that "[i]f the [Attorney General] decides to proceed with litigation, the [Attorney General] will enter into a Retainer Agreement with [Moore]."  Neiman Decl. Ex. 3.  It stated that the retainer agreement "will provide . . . for the payment of reasonable fees and expenses to [Moore] from any recovery in this matter, which will include fees and expenses incurred during the Investigation."  *Id.*

Despite conferring in good faith, the parties have not resolved their differences.

## ARGUMENT

The Court should order the Attorney General to produce the withheld documents discussed below because he has not met his burden to demonstrate that they are protected from disclosure.  "A party asserting a privilege exemption from discovery bears the burden of

demonstrating its applicability." *In re Santa Fe Intl. Corp.*, 272 F. 3d 705, 710 (5th Cir. 2001) (assessing claim of common legal interest extension of attorney-client privilege); *see also King v. University Healthcare Sys., L.C.*, 645 F.3d 713, 720-21 (5th Cir. 2011) (party claiming attorney-client privilege bears burden of proof); *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985) (party claiming attorney-client privilege or work product doctrine bears burden of proof).

The question of whether a privilege applies "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Id.* "A simple declaration that the privilege exists is insufficient." *Varo Inc. v. Litton Sys., Inc.*, 129 F.R.D. 139, 142 (N.D. Tex. 1989). The Fifth Circuit has thus repeatedly held that "the privilege claimant's burden extends to proof of preliminary facts showing that the matter is eligible for protection." *Santa Fe*, 272 F.3d at 710 n.7. "A failure of proof as to any element causes the claim of privilege to fail." *Varo*, 129 F.R.D. at 142.

This Court's Local Rules in turn require that privilege logs include at least the following information: "name of the document . . . description of the document . . . , which description must include[ ] each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege." L. U. Civ. R. 26(a)(1)(C). The failure to provide this information "may be viewed as a waiver of the privilege or protection." *Id.* The Attorney General's initial and amended privilege logs plainly violate this rule. Because the Attorney General has not otherwise met his evidentiary burdens, nor could he, the Court should compel the immediate production of each of the document categories discussed below.

4

I.    **THE COURT SHOULD COMPEL PRODUCTION OF THE DRAFT SUBPOENAS AND CIDS**

The Attorney General refused to produce any documents in the first category specified by the Court's April 10 Order: "[a]ny draft subpoenas provided to the Attorney General by the third parties identified in Google's request."  In his privilege log, he acknowledges receiving three draft subpoenas and two draft CIDs.  He admits these documents were *not* prepared by an attorney representing the Attorney General.  Instead, he states that, "on information and belief," the subpoenas were prepared at the direction of lawyers at Jenner, Orrick, and Denton—firms that he has conceded do not represent him.  The Attorney General nonetheless claims that all the draft subpoenas and CIDs are protected work product, and that the three which were transmitted through Moore are also covered by the attorney-client privilege.  The Attorney General cannot meet his burden, and should be ordered to produce all five documents.

A.    **Attorney-Client Privilege Does Not Protect The Draft Subpoenas**

To assert the attorney-client privilege, a party "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."  *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original).  "The privilege does not protect 'everything that arises out of the existence of an attorney-client relationship.'"  *United States v. Nelson*, 732 F.3d 504, 518 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2682 (2014) (quoting *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir.1976)).  Indeed, "[i]t shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney."  *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994); *see also In re Grand Jury*

*Proc. in re Fine*, 641 F.2d 199, 204 n. 5 (5th Cir. 1981) ("[T]he attorney-client privilege should be confined within the narrowest limits consistent with its purpose.").

The supplemental privilege log entries for the three draft subpoenas withheld as privileged fail to meet the Attorney General's burden and violate Local Rule 26(a)(1)(C). *See* Neiman Decl. 2 (Supplemental Privilege Log Entries 1, 2, & 5) (reproduced in relevant part below).

| Name | Description | Date(s) | Author(s) | Recipient(s) | Privilege(s) |
|---|---|---|---|---|---|
| PL000001-PL000067 | Draft Subpoena (Request No. 1) | Received on or about Oct. 17, 2014 | ["On information and belief, this document was prepared by or at the direction of Tom Perrelli and/or Brian Moran."] | From Mike Moore Law Firm to Blake Bee, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Attorney-Client<br><br>Work Product |
| PL000075-PL000119 | Draft Subpoena (Request No. 1) | Received on or about Sept. 11, 2014 | ["On information and belief, this document was prepared by or at the direction of Tom Perrelli and/or Brian Moran."] | From Mike Moore Law Firm to Bridgette Williams, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Attorney-Client<br><br>Work Product |
| PL000167-PL000176 | Draft Subpoena (Request No. 1) | Received on or about April 3, 2012 | ["On information and belief, this document was prepared by or at the direction of Jeff Modisett and/or Anthony Eliseuson (SNR Denton US LLP)."] | From Mike Moore Law Firm to Bridgette Williams, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Attorney-Client<br><br>Work Product |

These entries violate Local Rule 26(a)(1)(C) because the description of the documents fails to demonstrate that "each requisite element" of the privilege is met. The log does not show, and the Attorney General has not otherwise proven, that the draft subpoenas fell within the scope of his attorney-client relationship with Moore,[2] that he had an attorney-client relationship with the potential authors, that he made a confidential communication to a lawyer for the primary purpose of obtaining legal services, or that production of the subpoena would disclose confidential information provided by the Attorney General or the advice or opinions of his counsel. The log also does not explain how the draft subpoena received on or about April 3,

---

[2] Indeed, the Attorney General has redacted from the engagement letter the very information necessary to determine the scope of Moore's representation.

2012—which pre-dates the June 29, 2012 engagement letter—is nonetheless privileged.  On this record, the Attorney General has thus failed to carry his burden.

Indeed, the documents are plainly not privileged.  *First*, the draft subpoenas could not have been based upon confidential information provided by the Attorney General to his counsel because he had no attorney-client relationship with any of the suspected authors.  *Second*, disclosing the draft subpoenas would not reveal the advice of the Attorney General's counsel because, as the Attorney General admits, his counsel did not author them.  *Third*, just as "documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer," *Robinson*, 121 F.3d at 975, having one's attorney serve as a mere conduit for documents prepared by outside parties does not transform them into privileged material.  *See Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990) ("[I]nformation which an attorney secures from a third party while acting on behalf of his client is not shielded from disclosure by the privilege."); *cf.* David A. Greenwald et al., Jenner & Block Practice Series: Protecting Confidential Legal Information at 13 (2011) ("Although many communications from a lawyer to a client are protected by the privilege, there is an exception in instances where the lawyer acts merely as conduit for a third party's message to the client.").

*Fourth*, there is good cause to doubt the confidentiality of the Attorney General's claimed relationship with the Mike Moore Law Firm.  According to the New York Times' Pulitzer Prize-winning reporting, Mr. Moore disclosed in an interview that he was advising the Attorney General and "was then hired . . . by the Digital Citizen Alliance" to advise on the same subject matter.  Neiman Decl. Ex. 4, Nick Wingfield & Eric Lipton, *Google's Detractors Take Their Fight to the States*, N.Y. Times, Dec. 16, 2014.  The paper further reported that "Mr. Moore then became a critical source for the movie industry . . . telling them how [the Attorney General's]

inquiry was progressing and even alerting industry executives that Google had been sent a subpoena—before it said it had been told." *Id.*  Both Mr. Moore's unusual parallel representations and his dissemination of otherwise confidential information about the Attorney General's inquiry call into question the confidentiality of his communications with the Attorney General and suggest that any privilege has been waived.  The Court need not reach these issues, however, as the Attorney General cannot meet his burden of showing that the draft subpoenas— which were not authored by Moore, but drafted by others who do not represent the Attorney General and merely passed through Moore on their way to the Attorney General—are protected by the attorney-client privilege.

### B.    Work Product Doctrine Does Not Protect The Draft Subpoenas And CIDs

To qualify as work product, a document must be "prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R .Civ. P. 26(b)(3)(A).  To determine if a document is prepared in anticipation of litigation, Fifth Circuit courts look to the "primary motivating purpose behind [its] creation."  *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citations omitted).  A document is prepared "for [a] party or its representative" if it is prepared by an agent of the party or its counsel.  *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (holding that "[work product] doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself").

Just as for attorney-client privilege, the entries for the five draft subpoenas and CIDs claimed as work product do not meet the Attorney General's burden and violate local rules.  *See* Neiman Decl. Ex. 2 (Supplemental Privilege Log Entries 1-5) (reproduced in relevant part below).

| Name | Description | Date(s) | Author(s) | Recipient(s) | Privilege(s) |
|------|-------------|---------|-----------|--------------|--------------|
| PL000001-PL000067 | Draft Subpoena (Request No. 1) | Received on or about Oct. 17, 2014 | ["On information and belief, this document was prepared by or at the direction of Tom Perrelli and/or Brian Moran."] | From Mike Moore Law Firm to Blake Bee, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Attorney-Client<br><br>Work Product |
| PL000075-PL000119 | Draft Subpoena (Request No. 1) | Received on or about Sept. 11, 2014 | ["On information and belief, this document was prepared by or at the direction of Tom Perrelli and/or Brian Moran."] | From Mike Moore Law Firm to Bridgette Williams, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Attorney-Client<br><br>Work Product |
| PL000068-PL000074 | Draft CID (Request No. 1) | Received on or about Nov. 26, 2013 | ["On information and belief, this document was prepared by or at the direction of Tom Perrelli and/or Brian Moran."] | From Orrick (Brian Moran) to Blake Bee, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Work Product |
| PL000120-PL000166 | Draft CID (Request No. 1) | Received on or about Apr. 22, 2014 | ["On information and belief, this document was prepared by or at the direction of Tom Perrelli and/or Brian Moran."] | From Orrick (Brian Moran) to Mary Jo Woods, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Work Product |
| PL000167-PL000176 | Draft Subpoena (Request No. 1) | Received on or about April 3, 2012 | ["On information and belief, this document was prepared by or at the direction of Jeff Modisett and/or Anthony Eliseuson (SNR Denton US LLP)."] | From Mike Moore Law Firm to Bridgette Williams, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Attorney-Client<br><br>Work Product |

The document descriptions fail to show that the elements of the work product doctrine are met: they offer no basis to conclude that the documents were prepared by the Attorney General, his attorney, or one of their agents or that the author of the materials anticipated litigation. The log also fails to describe the Attorney General's relationship, if any, with the law firms and private attorneys it references. The Attorney General has thus failed to meet his burden to show that the materials are work product.

Indeed, for multiple reasons it is clear the Attorney General cannot do so. *First*, having conceded that he had no attorney-client relationship with the suspected authors, the Attorney General cannot argue that the materials constitute *his* work product. They were not prepared by him, by his attorney, or by anyone retained to assist the Attorney General or his counsel in preparing for litigation. *See Nobles*, 422 U.S. at 238-39 (extending work product to the agents of

9

a client or its counsel).[3]  *Second*, having conceded that he does not even know who prepared the materials, the Attorney General cannot prove that the unknown author had the motive— preparation for anticipated litigation—required to establish the work product protection.

*Third*, if (as seems likely) the materials were created by counsel for a private client that did not itself anticipate litigation as a party, they are not protected because documents created at the direction of someone who does not anticipate being (or representing) a party to litigation is not work product.  *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997) ("The essential element . . . is that the attorney was preparing for or anticipating some sort of adversarial proceeding involving his or her client . . . we know of no authority allowing a client . . . to claim work product immunity for materials merely because they were prepared while some other person . . . was anticipating litigation.").

*Fourth*, even if the materials did somehow constitute third-party work product, the third-party surrendered that protection by sharing the materials with the Attorney General.  "[W]ork product immunity is lost when a party simply makes a voluntary submission of material to a government agency to incite it to attack the informant's adversary."  *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. CIV.A. 11-2777, 2013 WL 3367137, at *12 (E.D. La. July 5, 2013).

*Finally*, the Attorney General has not demonstrated that he is authorized to *assert* work product as to these documents, as he is neither the attorney who prepared the material nor the client that attorney represented.  *See In re Grand Jury Proc.*, 43 F.3d 966, 972 (5th Cir. 1994)

---

[3] During the meet-and-confer process, the Attorney General identified *Boyer v. Gildea*, 257 F.R.D. 488 (N. D. Ind. 2009), as authority for classifying materials received from third-parties as work product.  That case is inapposite.  In it, the "third-party" at issue was the former representative of the party and was functioning in that capacity.  *See id.* at 492 ("[I]t is significant that Werling served as the Trustee's prior counsel in this litigation and that [the communication at issue] was directed to the Trustee's current counsel.").  The Attorney General does not contend that Jenner, Orrick, or Denton represented him in the past.

("[T]he work product privilege belongs to both the client and the attorney, either one of whom may assert it.").

Because the Attorney General has failed to meet his burden to show that the withheld material is protected by the work product doctrine, nor could he carry that burden, the Court should compel production of the documents.

## II.   THE COURT SHOULD COMPEL PRODUCTION OF THE REQUESTED WORD FILES

The Attorney General also failed to produce any documents responsive to the fourth category of documents required to be produced under the Court's April 10 Order: "The Word files listed in item (6) of Google's January 14, 2015 request ('Google can take action' 'Google must change its behavior' 'Google's illegal conduct' 'CDA'), and any emails from the third parties attaching those word files."  Instead, he withheld three "Email with Legal Memoranda" based on a claim that they were work product.  The Attorney General's supplemental privilege log entries for these items violate Local Rule 26(a)(1)(C) and do not meet his burden to show that the documents are work product.  *See* Neiman Decl. Ex. 2 (Supplemental Privilege Log Entries 8-10) (reproduced in relevant part below).

| Name | Description | Date(s) | Author(s) | Recipient(s) | Privilege(s) |
|---|---|---|---|---|---|
| PL000202 - PL000222 | Email with Legal Memoranda (Request No. 4). ["The subject of the email is entitled 'Draft memos.'  The attachments listed on the email are as follows: 'AG Memo 3 – Google Must Change Its Behavior'; 'AG Memo 4 – CDA'; 'AG Memo 2 – Google Can Clamp Down'; AG Memo 1 – Google Illegal Conduct.' The titles of the four legal memoranda are as follows: 'Google Can Take Action to Stop Illegal Behavior'; 'The Communications Decency Act Does Not Immunize Google From Liability For Facilitating Illegal Conduct'; 'Google Must Reform Its Behavior'; 'How Google Facilitates Illegal Conduct.'"] | Received on or about Jan. 14, 2014 | ["The email with the attached memorandum was sent from Rob McKenna.  On information and belief, this document was prepared by or at the direction of Tom Perrelli, Rob McKenna, and/or Brian Moran."] | From Orrick (Rob McKenna) to Blake Bee, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Work Product |
| PL000223 - | Email with Legal Memoranda (Request No. 4). ["The subject of the email is entitled 'January | Received on or | ["The email with the attached | From Jenner & Block (Thomas | Work Product |

11

| PL000245 | Meeting.'  The attachments listed on the email are as follows: 'AG Memo 1 – Google Illegal Conduct'; 'AG Memo 3 – Google Must Change Its Behavior'; 'AG Memo 2 – Google Can Take Action'; 'AG Memo 4 – CDA'. The titles of the four legal memoranda are as follows: 'How Google Facilitates Illegal Conduct'; 'Google Can Take Action to Stop Illegal Behavior'; 'Google Must Reform Its Behavior'; 'The Communications Decency Act Does Not Immunize Google From Liability For Facilitating Illegal Conduct.'] | about Jan. 9, 2014 | memorandum was sent from Thomas Perrelli.  On information and belief, this document was prepared by or at the direction of Tom Perrelli, Rob McKenna, and/or Brian Moran."] | Perrelli) to Blake Bee, Special Assistant Attorney General with the Office of the Mississippi Attorney General | |
| PL000177 - PL000201 | Email with Legal Memoranda (Request No. 4) ["The subject of the email is entitled 'January Meeting.'  The attachments listed on the email are as follows: 'AG Memo 1 – Google Illegal Conduct'; 'AG Memo 3 – Google Must Change Its Behavior'; 'AG Memo 2 – Google Can Take Action'; 'AG Memo 4 – CDA'. The titles of the four legal memoranda are as follows: 'How Google Facilitates Illegal Conduct'; 'Google Can Take Action to Stop Illegal Behavior'; 'Google Must Reform Its Behavior'; 'The Communications Decency Act Does Not Immunize Google From Liability For Facilitating Illegal Conduct.'] | Received on or about Jan. 9, 2014 | ["The email with the attached memorandum was sent from Thomas Perrelli.  On information and belief, this document was prepared by or at the direction of Tom Perrelli, Rob McKenna, and/or Brian Moran."] | From Jenner & Block (Thomas Perrelli) to Mary Jo Woods, Special Assistant Attorney General with the Office of the Mississippi Attorney General | Work Product |

The work product assertions over these Word documents suffer from the same deficiencies as those over the draft subpoenas and CIDs.  Though listing the file names and titles of the attachments, the supplemental log's document descriptions fail to show that the "requisite elements" of the work product doctrine are met.  Reading the entries, it is clear that the documents were not prepared by the Attorney General, his attorney, or one of their agents at all, but instead are traced to Jenner and Orrick, who represent Microsoft and the MPAA in their lobbying activities, not the Attorney General.  Nor were the documents prepared for the Attorney General; rather, the documents appear to be generic advocacy pieces, which Jenner and Orrick disseminated to multiple Attorneys General (and maybe other recipients) in hopes of generating hostility towards Google.  *See* Neiman Decl. Ex. 5, Mullin, *Hollywood* (reporting that Jenner's Perrelli intended to provide the documents to Connecticut's Attorney General, who was looking for a "small number of tangible things" to request from Google).  Nor does the information

12

provided suggest that the documents were prepared in anticipation of litigation.  Indeed, many of

the document titles do not even appear to relate to litigation, such as "Google Can Take Action to

Stop Illegal Behavior" or "Google Must Reform Its Behavior."  And, for the reasons discussed

above, *see supra* at 10, even if the materials were originally prepared by or for a party in

anticipation of litigation, any work product protection was waived when the materials were

shared with the Attorney General in an effort to incite him to attack Google.

## III.  THE COURT SHOULD COMPEL PRODUCTION OF THE REDACTED PORTIONS OF THE ATTORNEY GENERAL'S LETTERS TO STATE ATTORNEYS GENERAL

The third category of documents in the Court's April 10 Order was "Attorney General

Hood's August 28, 2014 letter to the Attorneys General in all 50 states regarding setting up a

working group."  In response, the Attorney General provided 31 copies of a letter transmitted to

state attorneys general around the country, redacting approximately half the letter on the grounds

that it was protected by the work product doctrine and common-interest doctrine.  The Attorney

General failed to support either of these claims.  *See* Neiman Decl. Ex. 2 (Supplemental Privilege

Log Entry 7) (reproduced in relevant part below).

| Name | Description | Date(s) | Author(s) | Recipient(s) | Privilege(s) |
|------|-------------|---------|-----------|--------------|--------------|
| D000004-D000065 | Redacted Portion of Letters from Attorney General Hood | August 28, 2014 | Attorney General Hood | Attorneys General in Other States | Work Product Common Interest Doctrine |

*First*, with respect to work product, the Attorney General's privilege log again fails to

comply with Local Rule 26(a)(1)(C) or offer a basis for finding that the information is protected.

Most importantly, the log entry fails to describe how preparation for litigation was the "primary

motivating purpose" for preparing the letters.  And indeed, the unredacted portion of the letters

makes no reference to litigation of any kind.  It instead describes a voluntary program that

Google offered to state attorneys general to allow them to flag illicit content on YouTube for

13

priority review and (if appropriate) removal.  *See* Neiman Decl. Ex. 1 (D000004).  If the

"*primary* motivating purpose" of the Attorney General's letter was to persuade Google to alter

this program or make additional voluntary policy changes—rather than prepare for litigation—

the document cannot be work product.  *See United States v. El Paso Co.*, 682 F.2d 530, 543 (5th

Cir. 1982) (declining to extend work product protection to tax pool analysis where "[t]he primary

motivating force behind the tax pool analysis . . . is not to ready El Paso for litigation over its tax

returns [, but] . . . to anticipate, for financial reporting purposes, what the impact of litigation

might be on the company's tax liability.")

     *Second*, the Attorney General's privilege log fails to show that these letters are

encompassed within the claimed "Common Interest Doctrine."  The Fifth Circuit has warned that

the common legal interest privilege "must be construed narrowly" because it is "an obstacle to

truth-seeking."  *Santa Fe*, 272 F.3d at 710.  The Fifth Circuit recognizes it only for "(1)

communications between co-defendants in actual litigation and their counsel; and (2)

communications between potential co-defendants and their counsel."  *Id.* (internal citations

omitted); *see also Power-One, Inc. v. Artesyn Techs., Inc.*, 2007 WL 1170733, at *2 n.2 (E.D.

Tex. April 18, 2007) (Love, J.) ("Of course, the common legal interest doctrine is not itself a

privilege, but merely extends a recognized privilege, often the attorney-client privilege, to

communications with parties with a common legal interest.").

     Here, the Attorney General has offered no basis to find that his letter falls within the

narrow scope of the Fifth Circuit's common legal interest doctrine, nor could he.  The attorneys

general are neither co-defendants nor potential co-defendants (nor potential co-plaintiffs) in

litigation related to the letter.

**CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court compel the

Attorney General to immediately produce the requested documents.


DATED this 22nd day of April, 2015.

Respectfully submitted,


|  |  |
|---|---|
| | __s/Fred Krutz_____ |
| OF COUNSEL: | Fred Krutz, MSB#4270 |
| Jamie S. Gorelick | Daniel J. Mulholland, MSB#3643 |
| Patrick J. Carome | FORMAN PERRY WATKINS |
| Blake C. Roberts |   KRUTZ & TARDY LLP |
| WILMER CUTLER PICKERING | 200 South Lamar Street, Suite 100 |
|   HALE AND DORR LLP | Jackson, Mississippi 39201 |
| 1875 Pennsylvania Ave., NW | Post Office Box 22608 |
| Washington, DC 20006 | Jackson, Mississippi 39225-2608 |
| Telephone:  (202) 663-6000 | Phone:  (601) 960-8600 |
| Facsimile:  (202) 663-6363 | Facsimile:  (601) 960-8613 |
| jamie.gorelick@wilmerhale.com | fred@fpwk.com |
| patrick.carome@wilmerhale.com | mulhollanddj@fpwk.com |
| blake.roberts@wilmerhale.com | |
| | *Attorneys for Plaintiff Google Inc.* |
| Peter G. Neiman | |
| WILMER CUTLER PICKERING | |
|   HALE AND DORR LLP | |
| 7 World Trade Center | |
| 250 Greenwich Street | |
| New York, NY 10007 | |
| Telephone:  (212) 230-8000 | |
| Facsimile:  (212) 230-8888 | |
| peter.neiman@wilmerhale.com | |

15

**GOOD FAITH CERTIFICATE**

A Good Faith Certificate executed by counsel for the parties is filed with this motion pursuant to Local Rule 37(a).

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Mississippi by using the Court's CM/ECF system on April 22, 2015. I further certify that all parties are represented by attorneys who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 s/Fred Krutz
Fred Krutz, MSB#4270