# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| Google Inc., | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     *v.* | ) No. 3:14cv981 HTW-LRA |
| | ) |
| | ) **PLAINTIFF GOOGLE INC.'S** |
| | ) **MEMORANDUM IN SUPPORT OF** |
| Jim Hood, Attorney General of the State | ) **MOTION FOR A PROTECTIVE** |
| of Mississippi, in his official capacity, | ) **ORDER WITH RESPECT TO** |
| | ) **NOTICES OF RULE 30(B)(6)** |
|     *Defendant.* | ) **DEPOSITIONS OF GOOGLE INC.** |
| | ) |
| | ) <u>ORAL ARGUMENT REQUESTED</u> |
| | ) |

## INTRODUCTION

At the March 2, 2015 conference, the Attorney General represented to the Court that it expected its deposition discovery to be "very limited." The Attorney General thereafter served Google with six separate Rule 30(b)(6) deposition notices of extraordinary breadth, requesting testimony and all documents relating to everything from the location of Google's millions of servers to the details of its proprietary search algorithms. This appears to be nothing more than an effort to impose through discovery the very same burdens on Google that this Court has already enjoined the Attorney General from imposing via his 79-page administrative subpoena.[1]

During meet-and-confer discussions, Google explained the vast overbreadth of the notices and the disconnect between the Attorney General's prior representations to this Court and the scope of discovery the Attorney General now seeks; Google also proposed a reasonable compromise. Specifically, Google offered:

1. To make available for deposition under Rule 30(b)(1) the five declarants whose declarations supported the preliminary injunction motion;

2. To provide a Rule 30(b)(6) witness who could describe and explain at a reasonable level of detail the workings of the various Google services described in the Complaint: Search, Autocomplete, YouTube, AdWords, and AdSense, along with a service not described in the Complaint about which the Attorney General had expressed interest: Instant Search;

---

[1] The Attorney General also served extraordinarily burdensome document requests, seeking largely the same information sought by the subpoena that the Court enjoined. After Google objected, the Attorney General abandoned most of these requests. *See* Declaration of Peter G. Neiman in Support of Plaintiff Google Inc.'s Motion for a Protective Order With Respect to Notices of Rule 30(b)(6) Depositions of Google Inc. ("Neiman Decl."), Ex. 10 at Plaintiff Google Inc.'s Responses and Objections to Defendant's First Request for Production of Documents.

3. In connection with that Rule 30(b)(6) deposition, to provide documents sufficient to describe those services at a reasonable level of detail;

4. To include within the scope of the Rule 30(b)(6) deposition the factual basis for Google's position that it did not create the identifiable content about which the Attorney General has complained; and

5. To include within the scope of the Rule 30(b)(6) deposition testimony describing and explaining at a reasonable level of detail the various measures taken by Google to address third-party content that are described in paragraphs 19-24, 26-29, and 31 of the Complaint, including how Google uses data in connection with those activities.

After several discussions, the Attorney General withdrew the six prior deposition notices, but replaced them with three revised notices that would also impose unnecessary discovery burdens still not aimed at information bearing on the few disputed factual issues in this case.

For example, the Attorney General demands that Google prepare a witness to identify "all uses" and "monetization" of user and advertiser "content or data" for Search, Autocomplete, Instant Search, YouTube, AdSense, and AdWords, along with any related "content and data collection, storage, and retention policies and practices," *and* that it produce "All DOCUMENTS RELATING TO" the same. *See* Declaration of Peter G. Neiman in Support of Plaintiff Google Inc.'s Motion for a Protective Order With Respect to Notices of Rule 30(b)(6) Depositions of Google Inc., Ex. 9, Revised Notice 3 ("Neiman Decl.").[2]  Similarly, the Attorney General demands a witness to discuss all versions of all agreements (dating back to 2010) that "define[] the obligations, duties, interests, and rights of Google and [a] third party concerning . . . third

---

[2] The Attorney General's original notice "only" requested this mind-boggling amount of information for Search, YouTube, and AdWords.  *See* Neiman Decl. Ex. 4, Notice 4.  In the spirit of "compromise," he added Autocomplete, Instant Search, and AdSense.

party content" and to provide an explanation for every change that has been made in such agreements since January 1, 2010. *See* Neiman Decl. Ex. 7, Revised Notice 1. The Attorney General also seeks a witness to describe the details of Google's search algorithms, and all documents relating to those algorithms. *See* Neiman Decl. Ex. 8, Revised Notice 2.

But this case is about whether the Attorney General can regulate Google's making accessible a specific type of content—content created by third parties that the Attorney General deems objectionable. This is a legal question, squarely answered by the Constitution and the Communications Decency Act ("CDA"). Congress granted interactive service providers like Google broad immunity from state regulation of their display of third-party content. That immunity, as our preliminary injunction briefs showed, simply does not depend on the intricacies of Google's agreements with users, or how Google personalizes accounts for its users, or the technical inner workings of its proprietary algorithms and source code. That is why, in litigating the preliminary injunction motion, "[t]he parties agreed upon the relevant facts, and . . . viewed this matter primarily as a dispute of law." Order of March 27, 2015, ECF No. 88, at 6.

Seeking to justify his sudden demands for expansive discovery, the Attorney General offers three general rationales.

*First*, the Attorney General claims that he needs extensive discovery to test whether Google is a "provider of an interactive computer service" under Section 230 of the CDA. That proposition is not seriously in dispute. Federal courts have repeatedly held that Google is a provider of an interactive computer service; the Attorney General did not contest that issue when opposing Google's motion for preliminary relief; and *he has previously acknowledged that Google is a provider of an interactive computer service*. Requiring companies like Google—which courts around the country have on numerous occasions concluded is indeed "provider of

3

an interactive computer service"—to nonetheless submit to burdensome and unnecessary discovery every time they invoke Section 230 would defeat the very purpose of CDA immunity.

*Second*, the Attorney General claims that he needs extensive discovery to examine whether Google complies with its terms of service. Google's compliance with its own terms of service is not at issue in this case. Google has sought relief from the Attorney General's subpoena and specific threats of prosecution. It has *not* sought to enjoin the Attorney General from ever investigating it in good-faith, including for supposed violations of its own terms of service. Rather, the core issue in this case concerns whether the Attorney General's subpoena (aimed squarely at Google's display of third-party content) and specific threats to prosecute Google (again aimed directly at Google's display of third-party content) violated Google's rights under federal law—*not* whether his lawyers can now identify alternative hypothetical bases for investigating Google about something other than third-party content accessible via Google's services.

*Third*, the Attorney General states that he is entitled to probe the factual allegations of the Complaint. That is not disputed. But the core allegations of the Complaint, ECF No. 1, ¶¶ 32-81, are simply a narration of the Attorney General's threats and demands, which require no discovery from *Google* to probe. The Complaint also provides information about when and how Google takes action against problematic third-party content; this is primarily background—none of Google's claims (nor any of the Attorney General's defenses) turns on these steps Google

voluntarily takes.[3]  Indeed, the Good Samaritan clause of the CDA *explicitly* rejects any state efforts to impose liability based on an interactive computer service provider's voluntary removal of certain third-party content, including on a theory that doing so creates an obligation to remove other content.  *See* 47 U.S.C. § 230(c); *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (interactive service providers are shielded from liability under the CDA for "decisions relating to the monitoring, screening, and deletion of content from its network") (internal quotation marks omitted).  In any event, Google does not object to reasonable discovery on these allegations of the Complaint, and the discovery offered by Google during the meet-and-confer process should more than satisfy any legitimate interest in these topics.  But there is no basis for the Attorney General to probe the technical engineering details of Google's proprietary systems and algorithms.

     Because the Attorney General's extraordinary demands are clearly unjustified, Google seeks a protective order against the deposition notices to the extent they require discovery beyond what Google has in good-faith offered to provide (described above).  Google should not have to endure harassing, burdensome, and unnecessary discovery (substantially similar in character to the information sought in the Attorney General's 79-page administrative subpoena and already preliminarily enjoined by this Court) in order to vindicate Google's constitutional and statutory rights in this case.

---

[3] Google's claim that the "safe harbor" provision of the Digital Millennium Copyright Act, 17 U.S.C. § 512, requires the preemption of state law actions seeking to impose liability for conduct eligible for the safe harbor does *not* rest on showing that Google complies with the safe harbor provision.  Instead, the existence of the safe harbor—along with the availability of a federal right of action to the copyright holder if the safe harbor requirements are not met—precludes remedies under state laws like the Mississippi Consumer Protection Act ("MCPA").

## FACTUAL AND PROCEDURAL BACKGROUND

The Court concisely summarized what this case is about in its March 27, 2015, Order granting Google's motion for a preliminary injunction: "Google petitions this court for declaratory and injunctive relief on the basis that the Attorney General's threatened action and subpoena under the MCPA are impermissible under both federal statutory and constitutional law, as applied to Google." ECF No. 88, at 15-16.  This case is thus about the Attorney General's alleged misconduct.  And few—if any—of the Attorney General's defenses require discovery, as they pertain to issues such as standing, ripeness, justiciability, immunity, and the scope of Google's constitutional rights.  For that reason, when appearing before this Court to present argument on Google's motion for preliminary relief, "the parties agreed upon the relevant facts, and . . . viewed this matter primarily as a dispute of law." *Id.* at 6.

Consequently, with the consent of all parties, this Court's Order setting a schedule contemplated targeted discovery and rapid determination of Google's claims.  It provided "90 days for discovery from the date of the filing of the defendant's answer" and explained that "[t]his matter will be adjudicated quickly."  ECF No. 82, at 4.  Google proposed only "a targeted amount of discovery," that went largely to its claims that the Attorney General acted in bad faith.  ECF No. 84 at 5:10-12, 7:7-10.  When the Court asked counsel for the Attorney General whether he intended to take any depositions, counsel responded:

> I think it is going to depend on the documents.  I think it is going to be primarily document-related discovery, and I think as [counsel for Google] has pointed out, I think it would be limited in terms of the number of depositions at this point, very limited.  Primarily document requests and interrogatories.

*Id.* at 8:7-12.  The Attorney General's counsel later stated that the Attorney General "also desires to have this matter 'adjudicated quickly.'"  ECF No. 92, at 1.

6

The Attorney General has not identified any documents or other new information that has prompted him to change course. But after retaining at least seven new lawyers from at least four different private law firms, many of whom have a history of bringing cases against Google,[4] the Attorney General issued six wide-ranging Rule 30(b)(6) deposition notices, which he subsequently withdrew, substituting the three revised (but still wide-ranging) notices that are the subject of this motion:

- Revised Notice 1 seeks testimony for all agreements between Google and third parties that control their relationship or "define[] the obligations, duties, interests, and rights" of the parties with respect to third-party content related to Search, Autocomplete, YouTube, AdWords, AdSense; it also seeks all versions of such documents (going back to 2010), the effective dates of those versions, an explanation for any changes made between each version, and all information regarding Google's "basis, interpretation, enforcement, and implementation" of those agreements. *See* Neiman Decl. Ex. 7, Revised Notice 1 at 8.

- Revised Notice 2 seeks testimony "describ[ing] and explain[ing] the workings of Search *to include the algorithms*;" the workings of Autocomplete, Instant Search, YouTube, AdWords, and AdSense; "the factual basis for the assertion that Google is merely a 'provider' of an 'interactive computer service;'" "the factual basis for the assertion [not actually made in the Complaint] that 'Google [does] not create or develop any content accessible via Google;" Google's policies for accepting

---

[4] *E.g.*, *In re: Google Inc. Gmail Litigation*, No. 5:13-md-02430, MDL No. 2430 (N.D. Cal. 2013) (Mr. Tapley is listed as Plaintiffs' Co-Lead Counsel, and Messrs. Lutz, Rommel and Wyly are also listed as counsel for individual plaintiffs); *Sheppard v. Google, Inc.*, No. 4:12-cv-04022 (W.D. Ark. 2012) (same attorneys are counsel for plaintiff).

7

advertisements; and "how Google attempts to comply with legal requirements and Google's own internal policies" referenced in the Complaint. Neiman Decl., Ex. 8, Revised Notice 2 at 8 (fourth alteration in original).

- Revised Notice 3 seeks testimony for "all uses Google makes of . . . user content or data, advertiser content or data, [and] the content or data of a YouTube user opting to advertise" in relation to either certain actions described in the Complaint *or* Search, Autocomplete, Instant Search, YouTube, AdSense, and AdWords; testimony for "the monetization Google makes of . . . all user content or data, advertiser content or data, and the content or data of [a] YouTube user opting to advertise" in relation to the same subjects; and testimony regarding "Google's content and data collection, storage, and retention policies and practices" relating to the use of user or advertiser content or data in relation to the same subjects. Neiman Decl. Ex. 9, Revised Notice 3 at 8.

Each of the revised notices also demands "All DOCUMENTS RELATING TO" the areas of examination described above. "Relating to" is defined to mean "in whole or in part analyzing, commencing upon, constituting, containing, concerning, consisting of, dealing with, describing, discussing, embodying, evidencing, identifying, involved with, memorializing, mentioning, referring to, reflecting, showing, stating, summarizing or in any way pertaining to the referenced matter or thing." Neiman Decl. Ex. 8, Revised Notice 2 at 4. These demands for production call for unfathomable quantities of data wholly irrelevant to this case.

The revised notices seek to frustrate the Court's March 2 Order and far exceed the scope of the claims and defenses at issue. And many of the demands therein echo the very subpoena

that the Attorney General has been preliminarily enjoined from enforcing.[5]  A protective order is appropriate.

## ARGUMENT

Under Rule 26(c) of the Federal Rules of Civil Procedure, a party presented with discovery requests causing "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), may, upon a showing of good cause, obtain an order of protection from the court.  That order may "forbid[] the disclosure or discovery," "prescribe[] a discovery method other than the one selected by the party seeking discovery," "forbid[] inquiry into certain matters," "limit[] the scope of disclosure or discovery to certain matters," or fashion other relief as appropriate.  *Id*.  A court "must" intervene when a party seeks discovery that is "unreasonably cumulative or duplicative" or where "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

I.     **GOOD CAUSE EXISTS TO PROHIBIT THE DISCOVERY CALLED FOR BY THE FIRST REVISED NOTICE**

The Court should prohibit the discovery called for by the First Revised Notice because Google's agreements with users and advertisers have no bearing on this case and the extraordinary burden and expense of the proposed discovery outweighs its likely benefit.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

During the meet and confer process, the Attorney General claimed that he is entitled to

---

[5] For example, the Attorney General's Second Revised Notice attempts to discover Google's algorithms, which mirrors at least seven specific document requests contained in the subpoena. *Compare* Neiman Decl. Ex. 8, Revised Notice 2, Topic 1 *with* Declaration of Peter Neiman in Support of Plaintiff Google's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 17, Ex. 30, Subpoena Request Nos. 25, 60, 63, 66, 120, 129, 131 ("Neiman TRO/PI Mot. Decl.").

9

seek deposition testimony to probe whether Google may be in violation of Mississippi state law by not complying with its own terms of service. That issue has no bearing on this case. The injunction Google has sought would not block inquiry into Google's compliance with its own terms of service. Rather, Google seeks an injunction against (1) threatened prosecution for making accessible third-party content, and (2) enforcement of a subpoena aimed squarely (from the very first definition) at third-party content.

As Google has previously explained, it is settled law that Section 230 immunity applies—and renders the Attorney General's threats and subpoena unlawful—even if Google failed to "enforce its own voluntary policies concerning third-party content, and even if it advised the public of those policies." ECF No. 55, at 23-24 (citing *Doe*, 528 F.3d at 420; *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)).

Inquiry into Google's terms of service, and the adequacy of its compliance with those terms, is clearly beyond the scope of proper discovery in this case. *See Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, No. 02-3398, 2005 WL 1400463, at *4 (E.D. La. June 1, 2005) (quashing Rule 30(b)(6) deposition notice where the plaintiff "failed to demonstrate that these areas of inquiry are relevant to its breach of contract claims"). Discovery, including Rule 30(b)(6) testimony, "must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered." *Carlson Cos. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1088-89 (D. Minn. 1973) (citing *Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 925 (5th Cir. 1964)). That is particularly true where, as here, the proposed discovery would impose great burden without any discernible benefit.

**II.     GOOD CAUSE EXISTS TO LIMIT THE DISCOVERY CALLED FOR BY THE THIRD REVISED NOTICE TO THAT OFFERED BY GOOGLE**

Similarly, the Court should limit the discovery called for by the Third Revised Notice. Google's uses and monetization of user and advertiser content or data have nothing to do with what this case is about: whether Google's constitutional and statutory rights and immunities were violated by the Attorney General's threats to prosecute Google for making third-party content accessible or by his retaliatory subpoena regarding Google's making accessible third-party content. Google's "content and data collection, storage, and retention policies and practice" similarly has no bearing on this case. These topics amount to fishing expeditions imposing burdens far exceeding their nonexistent benefit. Notwithstanding that, Google has offered to provide a Rule 30(b)(6) witness who could describe and explain at a reasonable level of detail Google's use of data in connection with the various measures taken by Google to address third-party content that are described in paragraphs 19-24, 26-29, and 31 of the Complaint. The Court should limit discovery under the Third Revised Notice to that offered by Google.

**III.    GOOD CAUSE EXISTS TO LIMIT THE DISCOVERY CALLED FOR BY THE SECOND REVISED NOTICE TO THAT OFFERED BY GOOGLE**

Google does not seek to prohibit all the discovery proposed in the Second Revised Notice, and has already offered to provide much of it to the Attorney General. However, the Attorney General has refused this compromise proposal, instead insisting to maintain several of his unreasonable demands. The Court should limit the discovery proposed in the Second Revised Notice as described below.

### A. Areas of Examination 1-6, 11, and 12[6]

The first six areas of examination proposed in the Second Revised Notice seek Rule 30(b)(6) testimony to "[d]escribe and explain the workings of" six listed Google services, including the Search "algorithms" referenced in the Complaint, along with all documents relating to the workings of those services. Neiman Decl. Ex. 8, Revised Notice 2 at 8. The eleventh area of examination similarly seeks testimony to "describe and explain how Google attempts to comply with legal requirements and Google's own internal policies as alleged in paragraphs 19-31 of Google's Complaint," which describe measures taken by Google to address third-party content. *Id.* The twelfth area of examination seeks testimony to "[d]escribe and explain Google's policies for accepting advertisements." *Id*.

Google has offered to provide a Rule 30(b)(6) witness who could describe and explain at a reasonable level of detail the workings of the six named Google services, as well as documents sufficient to describe those services at a reasonable level of detail. It has also offered to provide a Rule 30(b)(6) witness who could describe and explain at a reasonable level of detail the various measures taken by Google to address third-party content that are described in paragraphs 19-24, 26-29, and 31 of the Complaint, which include the only paragraphs of the Complaint describing Google's policies on advertising. Such discovery is sufficient to allow the Attorney General to probe the factual background for Google's claims.[7] The Attorney General, however, insists upon much broader discovery, including collection of many more documents and testimony about Google's search algorithms, which has nothing to do with the lawsuit pending before this Court.

---

[6] When enumerating the areas of examination, the Second Revised Notice skips numbers nine and ten.

[7] In addition, Google informed the Attorney General that it would not object to him conducting Rule 30(b)(1) depositions of the five employees who submitted declarations in support of Google's motion for a temporary restraining order and preliminary injunction.

The Attorney General's position is wrong for at least two reasons.  *First*, a Rule 30(b)(6) deposition is not designed to force a witness to provide testimony on every facet of an entity.  *See Bowers v. Mortg. Elec. Registration Sys., Inc.*, No. 10-4141, 2011 WL 6013092, at *7 (D. Kan. Dec. 2, 2011) ("[T]he burden . . . of producing a representative to testify to . . . far-reaching 22 topics contained [in a] Rule 30(b)(6) deposition notice outweighs the likely benefit of the discovery sought."); *Alexander v. F.B.I.*, 186 F.R.D. 137, 143 (D.D.C. 1998) (holding that targeted interrogatories and requests for production were more appropriate discovery mechanisms than a Rule 30(b)(6) deposition that would be a "memory contest"); *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 79 (D. Conn. 2010) (granting protective order where certain topics were better suited for individual Rule 30(b)(1) depositions).

*Second*, and more fundamentally, the Attorney General's position reflects a deep misunderstanding of what this case is about.  This case turns largely on questions of law, and what little fact development needs to be done pertains primarily to the Attorney General's own conduct and motivation.  The Attorney General previously seemed to recognize that point.  *See* ECF No. 84, at 8:7-12 ("I think it would be limited in terms of the number of depositions at this point, very limited."); Order of March 27, 2015, ECF No. 88, 6 ("[T]he parties agreed upon the relevant facts, and . . . viewed this matter primarily as a dispute of law . . . .").  Now, the Attorney General has reversed course, apparently taking the position that, regardless of the facts and legal issues going to the heart of this case, he is entitled to far-ranging discovery on Google's operations, including probing of its proprietary algorithms.  The Attorney General is wrong. And the Court should not allow his clear end run of this Court's Order enjoining the Attorney General's subpoena by permitting discovery going beyond what is necessary to resolve this case. *See Frasca v. NCL (Bah.) Ltd.*, No. 12-20662-CIV, 2014 WL 979062, at *4 (S.D. Fla. Mar. 13,

13

2014) (holding that Rule 30(b)(6) notice was improper "end-run around" court's prior discovery order) (citation omitted); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 12-CV-0260-H, 2013 WL 3467413, at *5 (S.D. Cal. July 10, 2013) (same).

### B. Area of Examination 8

In the eighth area of examination proposed in the Second Revised Notice, the Attorney General demands that Google provide a witness to "[d]escribe and explain the factual basis for the assertion that 'Google [does] not create or develop any content accessible via Google.'" Neiman Decl. Ex. 8, Revised Notice 2 at 8 (alteration in original). Google never made that assertion. Instead, in an allegation that the Attorney General misleadingly excerpts, Google's Complaint asserts that "Google did not create or develop any of the content accessible via Google *that is the subject of the Attorney General's Inquiry*." ECF No. 1, Complaint ¶ 89 (emphasis added). Google has already provided the Attorney General with information confirming that each specific item of content about which he has complained (to the extent identifiable) was created by third parties, not Google. Google also offered to provide Rule 30(b)(6) testimony regarding the factual basis for its position that it did not create such content. The Attorney General's demand to probe more broadly into the basis for an assertion that Google has not made and that has no bearing on this case makes no sense.

### C. Area of Examination 7

The seventh area of examination in the Second Revised Notice demands testimony to "[d]escribe and explain the factual basis for the assertion that Google is merely a 'provider' of an 'interactive computer service,'" along with all related documents. Neiman Decl. Ex. 8, Revised Notice 2 at 8. This proposed discovery should be prohibited to the extent that it exceeds the substantial related information that Google has already agreed to provide. During the meet-and-confer process, the Attorney General claimed that this topic is merely an attempt to determine

whether Google is a "provider of an interactive computer service" under the CDA. The Attorney General, however, has never challenged Google's status as a provider of an interactive computer service, including in his opposition to the preliminary relief ordered in this case. Nor could he: Google plainly satisfies the statutory definition, as many courts have held.[8]

The Attorney General's assertion that Google's status under the CDA is now in doubt is difficult to credit. Indeed, in a November 27, 2013 letter to Google General Counsel Kent Walker, the Attorney General acknowledged that Google is an interactive computer service provider. He stated, "It is undoubtedly true that courts have interpreted Section 230 to protect service providers, including Google." The Attorney General also wrote: "Computer service providers like Google are protected from certain forms of liability where they publish information provided by another information content provider."[9] Neiman TRO/PI Mot. Decl., ECF No. 17, Ex. 17 at 9.

Permitting the Attorney General to conduct sweeping and burdensome discovery on the dubious proposition that he is unsure of Google's status under the CDA undermines the very

---

[8] *See, e.g.*, *Am. Income Life Ins. Co. v. Google, Inc.*, No. 2:11-CV-4126-SLB, 2014 WL 4452679, at *8 (N.D. Ala. Sept. 8, 2014); *O'Kroley v. Fastcase, Inc.*, No. 3-13-0790, 2014 WL 2881526, at *2 (M.D. Tenn. June 25, 2014); *Gavra v. Google, Inc.*, No. 5:12-CV-06547-PSG, 2013 WL 3788241, at *1 (N.D. Cal. July 17, 2013); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010); *Rosetta Stone Ltd. v. Google, Inc.*, 732 F. Supp. 2d 628, 632 (E.D. Va. 2010), *aff'd*, 676 F.3d 144 (4th Cir. 2012); *Goddard v. Google, Inc.*, No. C. 08-2738, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007); *Parker v. Google*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004).

[9] Although this letter was drafted by Jenner & Block, presumably on behalf of the MPAA, the Attorney General made minor revisions to it, put it on his letterhead, and signed it. *See* Nick Wingfield & Eric Lipton, *Google's Detractors Take Their Fight to the States*, N.Y. Times, Dec. 16, 2014, *available at* http://www.nytimes.com/2014/12/17/technology/googles-critics-enlist-state-attorneys-general-in-their-fight.html; N.Y. Times, Letter to Google From Mississippi's Attorney General, Dec. 16, 2014, *available at* http://www.nytimes.com/interactive/2014/12/16/technology/attorney-general-letter-to-google.html?_r=0.

immunity granted by Congress to interactive computer service providers like Google. As the Fourth Circuit has explained:

> Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process. As we have often explained in the qualified immunity context, 'immunity is an immunity from suit rather than a mere defense to liability' and 'it is effectively lost if a case is erroneously permitted to go to trial.' We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (citations omitted). If a company like Google is obligated to offer volumes of documents and highly-detailed testimony about every aspect of its services each time it invokes Section 230, the CDA would offer no real immunity. That is not what Congress intended.

Consequently, the Court should prohibit discovery on this area of examination to the extent it goes beyond the description and explanation of its services that Google has already offered to provide.

**CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court grant Google's motion and enter an appropriate order of protection.

DATED this 8th day of June, 2015.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL:<br>Jamie S. Gorelick<br>Patrick J. Carome<br>Blake C. Roberts<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>1875 Pennsylvania Ave., NW<br>Washington, DC 20006<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br>jamie.gorelick@wilmerhale.com<br>patrick.carome@wilmerhale.com<br>blake.roberts@wilmerhale.com<br><br>Peter G. Neiman<br>Christopher J. Bouchoux<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>Telephone: (212) 230-8000<br>Facsimile: (212) 230-8888<br>peter.neiman@wilmerhale.com<br><br>Chris Johnstone<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100<br>chris.johnstone@wilmerhale.com | _s/ Daniel J. Mulholland_<br>Fred Krutz, MSB No. 4270<br>Daniel J. Mulholland, MSB No. 3643<br>FORMAN WATKINS<br>  KRUTZ & TARDY LLP<br>200 South Lamar Street, Suite 100<br>Jackson, Mississippi 39201<br>Post Office Box 22608<br>Jackson, Mississippi 39225-2608<br>Phone: (601) 960-8600<br>Facsimile: (601) 960-8613<br>fred.krutz@formanwatkins.com<br>daniel.mulholland@formanwatkins.com<br>*Attorneys for Plaintiff Google Inc.* |

**CERTIFICATE OF SERVICE**

      I certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Mississippi by using the Court's CM/ECF system on June 8, 2015. I further certify that all parties are represented by attorneys who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                              s/ Daniel J. Mulholland
                                                      Daniel J. Mulholland, MSB No. 3643