# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

Google Inc.,

      *Plaintiff*,

      *v.*

Jim Hood, Attorney General of the State of Mississippi, in his official capacity,

      *Defendant.*

No. 3:14cv981 HTW-LRA

**PLAINTIFF GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER WITH RESPECT TO NOTICES OF RULE 30(B)(6) DEPOSITIONS OF GOOGLE INC.**

<u>ORAL ARGUMENT REQUESTED</u>

**INTRODUCTION**

For eighteen months, the Attorney General threatened to prosecute Google for making accessible publicly-available Internet content created by third parties that the Attorney General deemed objectionable. When Google refused to comply in full with the Attorney General's censorship demands, he retaliated with a 79-page subpoena explicitly focused on third-party content. When Google sought to negotiate the scope of that subpoena to *exclude* conduct immunized by the Communications Decency Act ("CDA"), the Attorney General refused, asserting that the federal law immunizing Google's display of third-party content had "no impact" on the scope of his investigation. Declaration of Peter G. Neiman in Support of Plaintiff Google Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction ("Neiman TRO/PI Decl."), ECF No. 17, ¶¶ 32 & 34.[1]

To vindicate its rights under federal law to make accessible third-party content "unfettered by state regulation," Google filed this case. Google has consistently sought narrow relief related *only* to its making accessible content created by third parties and to the retaliatory subpoena explicitly focused on third-party content. Order of March 27, 2015, ECF No. 88, at 17 ("March 27 Decision"); Complaint for Declaratory and Injunctive Relief ("Complaint"), ECF No. 1, at Prayer for Relief. Google has made clear throughout that it is "not asking for [a] general exemption from investigation or prosecution." Consolidated Memorandum Brief in Opposition to Defendant's Motion to Dismiss and in Rebuttal to Defendant's Response to Google's Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 53, at 2.

---

[1] That assertion cannot be reconciled with the Attorney General's own admission, in a letter to Congress, that the CDA *did* limit his investigative authority. *See* Neiman TRO/PI Mot. Decl., Ex. 17 at 9; March 27 Decision at 18 ("It appears, then that Attorney General Hood is aware that federal law significantly restricts his ability to take action of the sort in question here.").

1

Because Google's entitlement to display third-party content unfettered by state regulation is so well established under federal law, the Attorney General has consistently tried to change the subject—suggesting that there is something *other than* making accessible third-party content that he is entitled to investigate, and perhaps charge Google for. Thus, the Attorney General's opposition to Google's preliminary injunction motion devoted pages to hypothetical inquiries the Attorney General might conduct into other topics, such as alleged discrepancies between Google's conduct and its terms of service. But as this Court found, those other topics are not relevant to the relief Google sought. *See* March 27 Decision at 17 ("It bears repeating that Google petitions for relief relating only to conduct that *is* seemingly immunized by federal law or falls in the category of conduct that is seemingly the subject of federal preemption.").

The current discovery dispute repeats the debate about the scope of this case that the Court has already resolved. The Attorney General seeks to justify expansive discovery by theorizing that there might be some conduct in which Google is engaging that does not constitute the display of content created and developed by third parties, and that he is entitled to discovery to determine what that conduct is.

But this case is still *not* about whether the Attorney General can identify hypothetical investigations that would not infringe Google's CDA immunity. The issue remains whether the Attorney General may prosecute Google for displaying third-party content, and may enforce a subpoena explicitly focused on the display of third-party content.[2]

To put it differently, were the Attorney General to identify some specific conduct in which Google is engaged that does *not* constitute making accessible third-party content, that

---

[2] To discern the subpoena's improper focus, one need look no further than the very first definition in the Attorney General's subpoena, which demands information "regardless of whether or not the acts would be protected under [CDA] § 230." Neiman TRO/PI Decl. Ex. 30 at 4.

would show only that the identified conduct falls outside the scope of the injunction Google seeks. It would cast no doubt on Google's entitlement to the injunction itself, which impacts only conduct that *does* constitute making accessible third-party content, as well as the retaliatory subpoena that infringes Google's CDA immunity on its face.[3]

Thus, Google would be well within its rights to resist most, if not all, of the discovery the Attorney General has sought. In the hopes of reaching a compromise, however, Google instead offered the Attorney General discovery more than sufficient to understand Google's services and to assess whether the specific items of content for which the Attorney General threatened to prosecute Google were created by third parties and thus fall within the scope of CDA immunity. To that end, Google has offered Rule 30(b)(6) testimony to describe and explain, at a reasonable level of detail, the workings of Search, Instant Search, Autocomplete, YouTube, AdWords, and AdSense, as well as to provide documents sufficient to describe those services at a reasonable level of detail. Google has also offered to provide Rule 30(b)(6) testimony regarding the factual basis for its position that it did not create or develop the identifiable content about which the Attorney General has complained. These proposals alone will afford the Attorney General an adequate opportunity to assess whether Google was an "information content provider" with respect to any of the content about which the Attorney General complained. After all, an

---

[3] The Attorney General is mistaken when he asserts that Google "must demonstrate that this case is *only about* third-party content" to prevail. Attorney General Jim Hood's Memorandum Brief in Opposition to Plaintiff Google Inc.'s Motion for a Protective Order with Respect to Notices of Rule 30(b)(6) Depositions of Google Inc. ("Opp. Br."), ECF No. 135 at 13. For example, the Attorney General cannot run roughshod over Google's CDA immunity merely because his demand for all documents relating to Search calls for the production of Doodles created by Google to appear on its Search page on special occasions. *See, e.g.*, Google Doodle, Fourth of July 2014, *available at* http://www.google.com/doodles/fourth-of-july-2014 (celebrating America). Having refused to narrow the subpoena to demands not blocked by the CDA, the Attorney General cannot evade an injunction against its enforcement by showing that such a narrowing might be possible.

"information content provider" simply means someone who "creat[ed] or develop[ed]" the content at issue—and Google is willing to explain how it did not create or develop the identifiable content targeted by the Attorney General during his years-long campaign of threats and harassment against Google. Nothing more is required or necessary.

In seeking more, the Attorney General here attempts to impose through discovery the very same burdens he has been enjoined from imposing in the subpoena.[4] For example, if the Court denies Google's motion for a protective order, the Google will be obligated to respond to Rule 30(b)(6) deposition notices that demand, among other things, all documents "analyzing, ... concerning, ... describing, discussing, embodying, evidencing, ... mentioning, referring to, reflecting, ... or in any way pertaining to" the "workings of Search." Vast quantities of data are responsive to that demand, including not only Google's proprietary algorithms, but also information about searches run by individual users. And all of that information has *nothing* to do with this case. The Attorney General has offered no theory explaining how, by helping users find third-party websites on the Internet, Google somehow creates or develops the content on those sites. It plainly does not. This is just one example of the Attorney General's overbroad demands, many of which his Opposition brief failed to defend.[5]

---

[4] The record contains ample evidence of just how burdensome the Attorney General's demands would be. As Google explained in its opening brief, the Attorney General is attempting "to impose through discovery the very same burdens on Google that this Court has already enjoined [him] from imposing via" the subpoena. Plaintiff Google Inc.'s Memorandum in Support of Motion for a Protective Order With Respect to Notices of Rule 30(b)(6) Depositions of Google Inc. ("Opening Brief"), ECF No. 129 at 1. Google has submitted sworn declarations attesting to just how burdensome the subpoena would have been. *See* Decl. of Brian Downing, ECF No. 15, ¶¶ 4, 5, 18; Decl. of Victoria Grand, ECF No. 16, ¶¶ 2, 6-7, 12, 19; Decl. of Sheily Chhabria, ECF No. 14, ¶¶ 5, 12, 14, 19, 26-27. Those declarations fully support Google's burden claims here.

[5] Remarkably, in his Opposition Brief, the Attorney General does not reference a single one of the document demands included in his Rule 30(b)(6) notices, let alone defend them.

Finally, this case is *not* about whether Google complies with the safe harbor provisions of the Digital Millennium Copyright Act (DMCA). Instead, the very existence of those provisions—and the availability of an exclusive federal remedy for copyright infringement if they are not met—preempts the Attorney General's attempt to impose liability under state law. To the extent Google complies with the DMCA safe harbors, Congress insulated it from liability for infringing third-party content. To the extent Google does not comply with the DMCA safe harbor requirements, rights-holders like movie studios have an exclusive federal cause of action against Google. In neither scenario does the Attorney General have any standing to bring a state law claim against Google, or jurisdiction to investigate alleged infractions of statutes that he cannot enforce. Whether or not Google qualifies for the *federal* DMCA safe harbor for *federal* copyright claims is simply irrelevant to this case.

Accordingly, the Court should grant Google's Motion for a Protective Order and limit deposition testimony by Google to what it has already offered to provide, which is more than adequate in a case in which the key questions are legal, not factual. The discovery proposed by Google will enable the Attorney General to understand how Google's services operate and assess whether Google created or developed any of the content at issue. Nothing more is appropriate.

**ARGUMENT**

Good cause exists to enter an order of protection under Federal Rule of Civil Procedure 26(c) that limits the discovery sought under the Revised Notices to that proposed by Google, for the reasons articulated in Google's Opening Brief. *See* ECF No. 129 at 9-16. The Attorney General's arguments in opposition are unavailing for each of his three revised Rule 30(b)(6) notices for the reasons explained below.

**I.     GOOD CAUSE STILL EXISTS TO PROHIBIT THE DISCOVERY CALLED FOR BY THE FIRST REVISED NOTICE.**

The Attorney General claims that the voluminous discovery related to Google's terms of service and user agreements called for by the First Revised Notice is necessary to determine if Google is an information content provider. His premise is that this discovery might reveal that Google "obtains ownership and other property interests in all content displayed through its services," which he contends would make Google an information content provider within the meaning of the CDA as to all such content. *See* Opp. Br. at 14. Under the CDA an "information content provider" is not entitled to Section 230 immunity for the content it provides.

But the Attorney General is simply wrong as a matter of law to suggest that Google's terms of service or user agreements could turn it into an "information content provider" under the CDA. An "information content provider" is a defined term under the CDA. It means "a person or entity that is responsible, in whole or in part, for the *creation or development* of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). The definition thus turns on acts of creation or development of content. "Ownership" or other "property interests" in the content—the topics the Attorney General says he seeks to explore in the First Revised Notice—have nothing at all to do with it.

Consistent with the plain language of the CDA, in *Doe v. MySpace*, *Inc.*, 528 F.3d 413, 418 (5th Cir. 2008), the Fifth Circuit held that CDA immunity extends to "all claims stemming from . . . publication of information created by third parties." The *Doe* Court never suggested that if the publisher acquires a license to somehow use some ownership rights in the material at issue (as most publishers do), the protections of the CDA would be lost.

To the contrary, courts have consistently rejected efforts to defeat CDA immunity based on an interactive computer service provider's rights in content created and developed by third

parties. *See Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1105-07 (W.D. Wash. 2014) (finding Amazon immune under § 230 despite argument that it is "owner" of allegedly defamatory reviews and had a license to use them); *Small Justice LLC v. Xcentric Ventures LLC*, No. 13-CV-11701, 2014 WL 1214828, at *7 (D. Mass. Mar. 24, 2014) (rejecting "argument that an ISP becomes an information content provider when … it receives an exclusive license to the content posted by a third party"); *Nasser v. WhitePages, Inc.,* Civ. No. 5:12CV-097, 2013 WL 6147677, at *4 (W.D. Va. Nov. 22, 2013) ("Neither is immunity lost when an interactive service provider pays a third party for the content at issue") (footnote omitted); *Finkel v. Facebook, Inc.*, No. 102578/09, 2009 N.Y. Misc. LEXIS 3021, at *3 (N.Y. Sup. Ct. Sept. 15, 2009) ("Ownership of content plays no role in the [CDA's] statutory scheme."); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 42 (Wash. Ct. App. 2001) (rejecting argument "that ... because Amazon claim[ed] licensing rights in the posted material, Amazon in effect became the content provider" (footnote omitted)); *Blumenthal v. Drudge*, 992 F. Supp. 44, 49-53 (D.D.C. 1998) (AOL immune despite paying monthly fee for content, acquiring a license to it, promoting it, and having right to require revisions to it it). The Attorney General cites no authority supporting his contrary view.[6] Because the Attorney General's theory of relevance fails as a matter of law, the Court should grant the protective order Google seeks as to the First Revised Notice. *See Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, Civ. A 02-3398, 2005 WL 1400463, at *4

---

[6] The Attorney General is also mistaken with his reference to a "jury's determination" of issues in this case. Opp Br. at 15. Google seeks solely equitable relief (that is, an injunction and a declaration of its rights) in its Complaint; whether it is entitled to that relief will be determined by this Court. *See Homebuilders Ass'n of Mississippi, Inc. v. City of Brandon, Miss.*, 640 F. Supp. 2d 835, 839 (S.D. Miss. 2009) (stating that "[i]t is well settled that in" cases where a plaintiff seeks only equitable relief, there is "no right to a jury trial") (citing *United States v. Reddoch*, 467 F.2d 897, 899 (5th Cir.1972)).

(E.D. La. June 1, 2005) (quashing Rule 30(b)(6) deposition notice where the plaintiff "failed to demonstrate that these areas of inquiry are relevant to its breach of contract claims").

## II. GOOD CAUSE STILL EXISTS TO LIMIT THE DISCOVERY CALLED FOR BY THE THIRD REVISED NOTICE TO THAT OFFERED BY GOOGLE.

The Attorney General's justification for the discovery sought by the Third Revised Notice reflects a fundamental misunderstanding of the issues before this Court. The Attorney General states that discovery is necessary for "examination of Google's claim of [DMCA] safe harbor protection," and that "determination of whether Google is entitled to safe harbor protection under the DMCA [is] a contested issue on which Google bears the burden of proof." Opp. Br. at 17, 20. To the contrary, Google's entitlement to relief does *not* depend on whether its conduct qualifies for the federal DMCA safe harbor defense to federal copyright infringement claims. The DMCA merely creates a safe harbor from copyright infringement lawsuits for those who comply with takedown notices from copyright owners. Google removes hundreds of millions of pages from its search index every year upon receipt of DMCA-compliant takedown notices from copyright owners.

But Google would still be entitled to an injunction against the Attorney General even if one assumed that all of its services fall outside the DMCA safe harbors. That is because Google is making a preemption argument that goes to the Attorney General's jurisdiction, rather than a substantive copyright argument. As this Court has already found, "[i]t is well-established that state attorneys lack the authority to enforce the Copyright Act; such enforcement power lies with the federal government." March 27 Decision, ECF No. 88, at 20-21. Because the Attorney General cannot pursue an investigation based on the Copyright Act at all, whether Google can prove that it complies with the Copyright Act in general, or the DMCA safe harbor in particular, is entirely beside the point.

8

The DMCA safe harbor provision underscores the preemptive force of the Copyright Act. The harbor would offer no safety at all if copyright holders—dissatisfied with federal law and without grounds for an infringement claim—could spur state law enforcement officials to harass and prosecute those that Congress chose to protect. But Google need not show compliance with the DMCA safe harbor provisions to prevail on its claim that the Attorney General lacks authority to enforce the federal copyright laws. Accordingly, the discovery sought by the Third Revised Notice should be limited to what Google has offered to provide.[7]

### III. GOOD CAUSE EXISTS TO LIMIT THE DISCOVERY CALLED FOR BY THE SECOND REVISED NOTICE TO THAT OFFERED BY GOOGLE.

The parties' dispute over the discovery called for by the Second Revised Notice continues to narrow, as the Attorney General made further significant concessions in his Opposition Brief. However, as described below, the Attorney General continues to insist upon unreasonable and unnecessary discovery with respect to several areas of examination. On those topics, the Court should limit discovery to that proposed by Google.

#### A. Areas of Examination 1-6, 11, and 12

The most significant disagreement between the parties with respect to Areas of Examination 1-6, 11, and 12 concerns an issue that the Attorney General did not address in his Opposition Brief. Separate and apart from the testimony demanded in each of these areas of examination, the Second Revised Notice calls for the production of "[a]ll DOCUMENTS RELATING TO" each of the "workings of" Search, Autocomplete, Instant Search, YouTube, AdWords, AdSense, measures Google takes to address third-party content, and Google's

---

[7] The Attorney General suggests that Google has "peculiarly refused to offer testimony concerning" the allegations of the Complaint that describe the services at issue. Opp. Br. at 17. He is wrong. Google has offered to describe and explain at a reasonable level of detail the workings of those services.

9

acceptance of advertising. This material would be exceptionally burdensome for Google to collect, review, and provide to the Attorney General, would contain highly proprietary trade secrets, and most, if not all, of it would have no relevance to the claims and defenses in this case. The Attorney General's failure to offer any defense of these requests speaks volumes. Google has offered to provide documents sufficient to describe the services at issue at a reasonable level of detail, and the Court should limit document discovery accordingly.

The remaining principal dispute[8] between the parties concerns whether Google must provide Rule 30(b)(6) testimony (and documents) concerning its Search algorithms. As noted in its Opening Brief, Google's highly proprietary[9] Search algorithms are utterly irrelevant to this case. The Attorney General has offered no theory explaining how, by helping users locate third-party websites publicly available on the Internet, Google somehow creates or develops the content on those sites. And even if the Attorney General had such a theory, testimony describing and explaining at a reasonable level of detail how Search works would be more than sufficient.

In fact, in his Opposition Brief, the Attorney General does not even defend his demand for Search algorithms. He instead tries to shift the discussion to discovery that he did *not* request: Autocomplete algorithms. *Compare* Declaration of Peter G. Neiman in Support of

---

[8] The Attorney General also discusses Areas of Examination 11 and 12, but offers no explanation of why Google's offer to describe and explain at a reasonable level of detail the various measures it takes to address third-party content that are described in paragraphs 19-24, 26-29, and 31 of the Complaint, along with the workings of AdSense and AdWords, is insufficient. He instead suggests that the inquiries are justified by issues utterly irrelevant to Google's claims—its compliance with the DMCA safe harbor provisions and actions from early in the company's history that led to a non-prosecution agreement with the Justice Department that concerned issues of federal law.

[9] *See, e.g.*, *Gonzales v. Google Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006) ("[T]his court is concerned that a narrow sample of Google's proprietary index and query log, ... may act as the thin blade of the wedge in exposing Google to potential disclosure of its confidential commercial information.").

Plaintiff Google Inc.'s Motion for a Protective Order with Respect to Notices of Rule 30(b)(6) Depositions of Google Inc., ECF No. 129-1, Ex. 9, Revised Notice #2, Area of Examination #1 ("Describe and explain the workings of Search to include the algorithms as described in Paragraph 12 of Google's complaint") *with id.*, Area of Examination #2 ("Describe and explain the workings of Autocomplete"). The Attorney General's Autocomplete discovery request has it right: he has no need for Autocomplete algorithms either, as a description and explanation of how the Autocomplete feature works is more than sufficient to assess whether Google functions as an information content provider with respect to the Autocomplete predictions that concerned the Attorney General. The Court may properly circumscribe the Rule 30(b)(6) depositions to keep them within proper bounds. *See Frasca v. NCL (Bah.) Ltd.*, No. 12-20662-CIV, 2014 WL 979062, at *4 (S.D. Fla. Mar. 13, 2014); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, Civ. No. 12-CV-0260-H, 2013 WL 3467413, at *5-7 (S.D. Cal. July 10, 2013) (same).[10] It should do so here.[11]

**B.     Area of Examination 8**

In his Opposition Brief, the Attorney General backed away from the overbroad requests made in Area of Examination 8. He agreed instead to accept Google's proposal to provide Rule 30(b)(6) testimony regarding the factual basis for its position that it did not create or develop the identifiable content about which the Attorney General has complained. *See* Opp. Br. at 23. This compromise should largely resolve the discovery issues between the parties, as it allows the

---

[10] That these two cases involve prior discovery orders does not make them inapposite. To the contrary, it establishes that where a court has ruled that certain discovery is out of bounds—and clearly here the Attorney General may not discover through depositions and document discovery that which he is enjoined from investigating or demanding through the Subpoena—a Rule 30(b)(6) deposition may not be used as an "end run" around that limitation on discovery. *Id.*

[11] Requiring testimonial and documentary evidence regarding Google's algorithms would also improperly require disclosure of Google's trade secrets, which the company zealously guards and other federal courts have recognized are entitled to significant safeguards. *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 685 (N.D. Ca. 2006).

Attorney General to test the factual basis for Google's contention that it is not an information content provider with respect to the content that concerns the Attorney General, which has been the primary rationale offered for the extensive discovery he has demanded.

### C. Area of Examination 7

The parties' agreement on Area of Examination 8 addresses the Attorney General's articulated need for Area of Examination 7. That topic requests documents and testimony regarding the "factual basis for the assertion that Google is merely a 'provider' of an 'interactive computer service.'" Opening Br., ECF No. 129 at 14-16. It is well settled—as the briefing throughout this case has demonstrated—that Google is a provider of an interactive computer service under the CDA. *See id.* at 15 n.8 (collecting some of the federal court cases recognizing that fact).[12] And the Attorney General has largely backed away from contending that he needs exhaustive discovery to re-examine this issue. He instead claims that he needs Area of Examination 7 to probe the basis for Google's assertion that it is not an information content provider. *See* Opp. Br. at 24 ("Although Google may meet the statutory definition of an 'interactive service provider,' General Hood is entitled to investigate and discover whether Google is also an 'information content provider.'"). But that issue is the very discovery that will be probed through Area of Examination 8, which concerns the basis for whether Google created or developed the content at issue. Indeed, in light of the Attorney General's current description of Area of Examination 7, the only difference between it and Area of Examination 8 is that the latter is limited to the identifiable content about which the Attorney General has complained. That limitation is appropriate—whether Google creates or develop other content is simply not at

---

[12] Indeed, the Attorney General has admitted it before. *See* Opening Br., ECF No. 129 at 15 (citing the letter to Google's General Counsel where the Attorney General stated "[i]t is undoubtedly true that courts have interpreted Section 230 to protect service providers, including Google").

issue in this case—and the Attorney General has already accepted that limitation. *See* Opp. Br. at 23. Discovery under Area of Examination 7 should thus be limited to what Google has already agreed to provide under Area of Examination 8.

To the extent the Attorney General does seek discovery to examine whether Google is a provider of an "interactive computer service," that discovery remains unduly burdensome and unnecessary for the reasons cited in Google's Opening Brief. *See* Opening Br., ECF No. 129 at 14-16. Contrary to the Attorney General's contentions, Google did not cite the Attorney General's past statements acknowledging that Google is a provider of an interactive computer service or the overwhelming consensus among federal courts on that same issue as evidence that "decisions in this case have already been made *on the merits*," Opp. Br. at 24 (emphasis in original), or to support a claim for issue preclusion, *id.* at 27 n.5. What the agreement among federal courts and the Attorney General's own statements do indicate, however, is that Google's basic status as a provider of an interactive computer service is not subject to rational dispute and under Section 230 should not be subject to unrestrained discovery by the Attorney General.[13] *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'") (citations omitted); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008) ("[S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but from having to

---

[13] In addition to the cases cited above, the statutory definition of an "interactive computer service" plainly covers search engines. Congress defined an "interactive computer service" to include "access software provider[s]." 47 U.S.C. § 230(f)(2). Congress in turn defined "access software provider" to mean a "a provider of software … or enabling tools" that "filter, screen, allow, … disallow …[,] pick, choose, analyze, … digest …[,] transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." *Id.* § 230(f)(4).

fight costly and protracted legal battles.") (en banc); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 425-26 (1st Cir. 2007) (upholding district court's denial of discovery "concerning the 'construct and operation' of Lycos's websites" where plaintiff "has not pointed to any discovery that would support a viable claim against Lycos that falls outside of Section 230 immunity" because the discovery would constitute impermissible "fishing expeditions") (citation omitted).

Google has agreed to provide the Attorney General with discovery that is more than sufficient for the actual issues presented by this case. The Attorney General has nonetheless insisted on pursuing expansive fishing expeditions that would pose extraordinary burdens on Google. The Court should grant Google's motion for a protective order, especially in light of the Attorney General's past bad faith efforts to impose burdens on Google in violation of Google's constitutional and statutory rights.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant Google's motion and enter an appropriate order of protection.

DATED this 22nd day of June, 2015.

Respectfully submitted,

OF COUNSEL:
Jamie S. Gorelick
Patrick J. Carome
Blake C. Roberts
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
jamie.gorelick@wilmerhale.com
patrick.carome@wilmerhale.com
blake.roberts@wilmerhale.com

Peter G. Neiman
Christopher J. Bouchoux
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8000
Facsimile: (212) 230-8888
peter.neiman@wilmerhale.com

Chris Johnstone
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
chris.johnstone@wilmerhale.com

    s/ Fred Krutz
Fred Krutz, MSB No. 4270
Daniel J. Mulholland, MSB No. 3643
FORMAN WATKINS
  KRUTZ & TARDY LLP
200 South Lamar Street, Suite 100
Jackson, Mississippi 39201
Post Office Box 22608
Jackson, Mississippi 39225-2608
Phone: (601) 960-8600
Facsimile: (601) 960-8613
fred@fpwk.com
mulhollanddj@fpwk.com
*Attorneys for Plaintiff Google Inc.*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Mississippi by using the Court's CM/ECF system on June 22, 2015.

                                                s/Fred Krutz
                                                Fred Krutz, MSB#4270