IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GOOGLE INC.                                                                                            PLAINTIFF

v.                                                                         Civil Action No. 3:14-cv-981-HTW-LRA

JIM HOOD, in his official capacity
as Attorney General of the State of
Mississippi                                                                                              DEFENDANT

---

**ATTORNEY GENERAL JIM HOOD'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO COMPEL INTERROGATORY RESPONSES**

---

Google seeks to enjoin the Attorney General of Mississippi from "enforcing the Subpoena and/or instituting criminal prosecution and/or civil litigation against Google for making accessible ***third-party content*** to Internet users[.]" (ECF No. 1, ¶¶ 32-33) (emphasis added). In order to prevail, Google must prove that what it claims is third-party content is indeed third-party content. Incredibly, Google pretends that this Court has already accepted, on the merits, Google's assertions as to what is third-party content. All relief sought by Google in this case is therefore premised on this unproven assumption. So, when the Attorney General sought discovery of what information on Google's services is actually "third-party content," Google refused to explain, or even identify, what content on its services is third-party content. Google did this because, as its opposition brief explains, demonstrating what content available on Google's services is third-party content, as opposed to Google's content, would actually be impossible. (Opposition, ECF No. 189, p. 3). Thus, Google relies upon its trick—pretending that it has already conclusively proved that which it cannot prove.

1

The Court's ability to separate Google content from third-party content is absolutely necessary for three reasons.  First, if this Court enters a permanent injunction preventing the Attorney General from "instituting criminal prosecution and/or civil litigation against Google for making accessible third-party content to Internet users[,]" Google would be forced to seek an impermissible, undefined injunction that simply advises the Attorney General to "obey the law"—without explaining what aspects of Google's practices are actually immunized by the proposed injunction.  Second, the Attorney General disputes that the content that is subject to his subpoena or investigation is actually third-party content, and not Google-created content.  Third, Google's trick also ignores this Court's prior Order.  While Google pretends that this Court has determined that all of the content at issue in the subpoena is third-party content, the Court has clearly stated that it has "not forecast[ed] any ultimate ruling on the merits."  (Order on TRO, ECF No. 82, p. 3).

This Court should compel Google to respond to discovery that seeks the facts necessary to separate Google's content from third-party content, so that the Court and the jury will have the evidence necessary to make an "ultimate ruling on the merits."  If complying with this discovery is actually "impossible," then the relief Google seeks is likewise impossible.

## ARGUMENT

Google must prove at trial that the content at issue in this case is purely third-party content, but Google refuses to provide the discovery necessary to make that determination.

### A. Google's Inability To Respond To Discovery Demonstrates Its Inability To Support Its Requested Relief With Evidence.

Google claims that it filed this lawsuit seeking an injunction declaring that Google is immune from state investigation of its actions when Google makes accessible third-party

2

content.  The Attorney General's discovery is focused on *whether or not* the content at issue on Google's own services is purely third-party content.

Google's resistance to providing substantive responses on the issue of distinguishing third-party content from Google-created content demonstrates that Google seeks an impossibly broad and vague injunction.  Indeed, Google now admits that distinguishing third-party content from Google-created content is an "impossible task":

> Finally resolving this case does not require the Court to adjudicate *which* of the more than one *trillion* ever-changing websites whose information is captured in Google's search index (and about which the Attorney General might someday complain) were created by third parties.  There is therefore no reason to require Google in discovery to provide an analysis of all of the content captured in that index.
>
> Yet that **impossible task** is precisely what the Attorney general demands: that Google identify all third-party content accessible through its services that might be unacceptable to the Attorney General (Interrogatory No. 2) and that it identify all Google content accessible through its services (Interrogatory No. 3).

(ECF No. 189, p. 3, emphasis added).  This "impossible task" is not what "the Attorney General demands"—it is what the law demands from Google, the party requesting a permanent injunction.  (*Id.*).  And, the discovery that the Attorney General has requested is the very evidence that will be required for the Court to properly evaluate Google's requested relief— evidence Google now says would be an "impossible task" to produce, which is something Google should have considered before filing this lawsuit.

Faced with the inability to support its requested relief with actual and admissible evidence, Google changes course and asserts that the discovery sought is "irrelevant to adjudicating Google's claims"—Google's trick. (ECF No. 189, p. 1).  But, Google ignores this Court's preliminary injunction order explaining that "[Google's] services, particularly its role as publisher of material originating from third parties, are at the epicenter of this litigation."

3

(Order, ECF No. 88, p. 3).  Not only did this Court recognize the issue of third-party content as the epicenter of this litigation, Google's petition for a preliminary and permanent injunction clearly involves third-party content:

> A. Declare (i) that Section 230 of the CDA and the First and Fourteenth Amendment of the U.S. Constitution preclude civil or criminal charges or liability under the MCPA against Google *for content created by third parties* …; [and]
> [….]
> C. Preliminarily and permanently enjoin the Attorney General … from enforcing the Subpoena and/or instituting criminal prosecution and/or civil litigation against Google for *making accessible third-party content to Internet users*;

ECF No. 189 (quoting ECF No. 1, ¶¶ 32-33, emphasis added by Google).

Section 230 of the Communications Decency Act (CDA) protects Internet entities from various claims relating to content posted on their websites by third parties (*i.e.*, third-party content).  The Act does ***not*** protect the actual creator of the content (*i.e.*, Google-created content).  Google receives no protection for Google-created content, and remains solely responsible for it.

Yet, Google begs this Court to prevent General Hood from testing whether the content at issue in this lawsuit is Google-created content or third-party content.  Google's own user agreements confirm that Google is much more than a mere librarian of the internet; the user agreements confirm that Google in fact publishes content that would eviscerate the immunity it seeks: "[o]ur Services display *some* content that is not Google's." (ECF No. 134-3, p. 1). Google's admission that only *some* content is not Google-created content is, likewise, an admission that **at least some content *is* created by Google**.  That distinction is the subject of this case and this discovery dispute.

4

To evaluate the broad injunction requested by Google, both the Parties and this Court must *first* determine exactly what content available on Google's services is third-party content and *then* separate it from Google-created content. This is because "[t]he normal standard of specificity is that the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Sanders v. Air Line Pilots Asso., Int'l*, 473 F.2d 244, 247 (2d Cir. 1972) (citing *Brumby Metals, Inc. v. Bargen*, 275 F.2d 46, 49 (7th Cir. 1960)). *Accord Seattle-First Nat. Bank v. Manges*, 900 F.2d 795, 800 (5th. Cir. 1990) (quoting *Fed. Trade Comm'n v. Sw. Sunsites, Inc.*, 665 F.2d 711, 724 (5th Cir. 1982)) (The parties must "be able 'to interpret the injunction from the four corners of the order' as required by Rule 65(d)."); *see also International Longshoremen's Assoc., Local 1291 v. Philadelphia Marine Trade Assoc.*, 389 U.S. 64, 19 L. Ed. 2d 236, 88 S. Ct. 201 (1967). "As the Supreme Court noted in the *International Longshoremen's* case, Rule 65(d) reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds." *Sanders*, 473 F.2d at 246-48 (citing *International Longshoremen's*, 389 U.S. at 76). The relief Google seeks creates precisely this danger: neither Google nor the Court can accomplish the "impossible task" of separating all Google-created content from third-party content "so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981). If in response to discovery Google *itself* cannot distinguish its own content from third-party content, then how can this Court be expected to craft a proper, specific, and enforceable injunction? That, too, would be an impossible task.

Because Google admits it cannot prove the allegations plead in its Complaint, Google is forced to argue that this case presents purely legal questions that are supported by *undisputed*

facts.  This is false.  Google's Complaint contains 108 paragraphs of allegations; General Hood disputed and denied all but *one*. (*See* ECF No. 113 ¶ 10) (admitting that he is the Attorney General of Mississippi, and the chief legal officer and advisor for the state).  Aside from this paragraph, every other "fact" alleged by Google is disputed, and yet admittedly "impossible" for Google to prove.  *Id*.

Google has refused to provide the discovery responses necessary to distinguish Google-created content from third-party content, even though this lawsuit involves hotly contested factual issues concerning this very distinction.  By refusing to distinguish third-party content from Google-created content—but still asking for injunctive and declaratory relief to prevent the Attorney General from investigating Google "*for content created by third parties*," (ECF No. 189)—Google is in reality seeking an injunction ordering General Hood to "obey the law."  "A general injunction which in essence orders a defendant to obey the law is not permitted." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981); *see also Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 898 (5th Cir. 1978) ("This [Rule 65(d)] command of specificity is a reflection of the seriousness of the consequences which may flow from the violation of an injunctive order. ... Such 'obey the law' injunctions cannot be sustained.").  By admitting that responding to discovery is impossible, Google has admitted that achieving the relief it seeks is likewise impossible.

### B. Google's Deficient Interrogatory Responses.

#### 1. Interrogatory No. 1

The Attorney General is entitled to discover the scope of the injunction that Google seeks.  Interrogatory No. 1 asks a simple question: "Identify *all* Google Services which Google contends are the subject of this action and for which it seeks relief."  Curiously, Google refuses

to give a straight answer. Google has responded by saying the list *includes* Search, YouTube, AdWords, AdSense, and Autocomplete. The Attorney General simply wants to know whether these are *all* of the services at issue in this case, or whether there are others. As plaintiff, Google is the master of its allegations and the relief it seeks, yet Google refuses to share the scope of the sought relief with the defendant.

### 2. Interrogatory No. 2

Interrogatory No. 2 asks one of two central questions necessary to develop the factual record in this case: "Identify and describe all facts which support or refute your contentions in Count I of your complaint that all of the content accessible via Google that is the subject of the Attorney General's Inquiry constitutes content provided by 'another information content provider' within the meaning of 47 U.S.C. § 230." Rather than answer the question, Google objected and instructed the Attorney General to view select pages from Google's pre-suit production of documents, Yet, as shown below, Google has refused to properly verify *any* of its interrogatory responses and, therefore, the Attorney General is unable to test the responsiveness of this, or any other, interrogatory.

### 3. Interrogatory No. 3

Interrogatory No. 3 asks the other central question: "Identify and describe all content available on any of Google's services which is not third-party content within the meaning of 47 U.S.C. § 230." Google has objected and refused to answer. Without the answer, however, neither the Attorney General nor this Court can evaluate the proper scope of Google's requested injunction, nor can the Court conduct the analysis necessary to issue an injunction.

4. **Interrogatory No. 4**

Interrogatory No. 4 asks: "Identify and describe all facts which support or refute your contention in Count II of your complaint that the Attorney General's Inquiry is retaliatory conduct which seeks to chill speech protected by the First and Fourteenth Amendments." Again, Google objected and refused to answer, other than to direct the Attorney General to look at the pleadings. Google, perhaps cognizant of the shallowness of its pleaded case, also stated that it is still looking for better facts to support its case.

5. **Interrogatory No. 5**

Interrogatory No. 5 asks: "Identify and describe all facts, in addition to the ones alleged in your complaint, which support your claims for relief." Google responded that it doesn't have any facts other than those in the pleadings, but like its response to interrogatory No. 4, Google states that it is still looking for better facts.

The key facts relevant to Google's claims—whether the content on its services is its own content or third-party content—are in Google's control, not the control of the Attorney General or non-parties. Instead of answering the interrogatory, however, Google requests that this Court allow Google to answer this interrogatory at the *close* of discovery—after the Attorney General loses his opportunity to cross examine and refute Google's evidence. This Court should require that Google answer Interrogatory No. 5 now.

6. **Interrogatory No. 6**

Interrogatory No. 6 concerns sworn declaration testimony that Google offered, and that the Court relied upon in issuing the Preliminary Injunction. This interrogatory seeks three categories of information: (1) the "relevant Google business records" that each declarant swore she/he reviewed in preparing her/his declaration; (2) the "conversations with other Google

personnel" that each declarant swore she/he had relied upon in making her/his declaration; and, (3) the identity of the persons who assisted the declarant in making the assertions in each paragraph of her/his declaration. In response, Google did not disclose a single "Google business record" that declarants Chhabria, Downing, or Grand reviewed when preparing their declarations. Google did not disclose a single "conversation[] with other Google personnel" that declarants Chhabria, Downing, or Grand participated in when preparing their declarations. Google did not disclose the identities of the persons who assisted the declarants in the preparations of their declarations. Instead, Google responded that lawyers helped the declarants with their testimony. Google's response raises serious concerns about the veracity of the sworn testimony submitted to and relied upon by this Court. Google should be required to give a complete response to interrogatory No. 6.

C. **Google's Deficient Verification.**

Google's interrogatory responses were improperly verified by Google's *litigation* counsel. This Court should order Google to properly verify the responses as required in this circuit: "[W]hile the courts are divided as to whether an attorney can verify interrogatory answers for a corporate entity, courts in the Fifth Circuit have determined that a Rule 33(b) verification is required of the corporate entities, signed under oath by an authorized representative of the corporate entity and **not by its counsel**." *Laborde v. SGS North Am., Inc.,* 2012 U.S. Dist. LEXIS 153341, *4-5 (M.D. La. 2012) (emphasis added). In response, Google attempts to explain its improper verification by appeal to treatises and cases outside this circuit. Google should be required to properly verify its interrogatory responses.

**CONCLUSION**

There is no dispute that Google-created content is displayed on Google's services: "[o]ur Services display *some* content that is not Google's." (ECF No. 134-3, p. 1). Unless and until a complete factual record is developed and the Court is empowered "to adjudicate *which* of the more than one *trillion* ever-changing websites whose information is captured in Google's search index (and about which the Attorney General might someday complain) were created by third parties," (ECF No. 189, p. 3), any order granting an injunction will not allow "the party enjoined[, the Attorney General,] … to ascertain from the four corners of the order precisely what acts are forbidden." *Sanders*, 473 F.2d at 247. Any such injunction would be an impossibly vague injunction to generally "obey the law." Google's refusal to participate in discovery as to the facts at the epicenter of this litigation is inexcusable and should not be tolerated. Google should be compelled to fully and completely respond to interrogatories one through six and to verify those responses without hiding behind its counsel.

Dated this 27th day of October, 2015.

                                  Respectfully submitted,

                                  JIM HOOD, in his official capacity as
                                  Attorney General of the State of Mississippi

                                  *s/ John W. Kitchens*
                                  John W. Kitchens

John W. Kitchens, (MSB# 101137)
KITCHENS LAW FIRM, P.A.
Post Office Box 799
Crystal Springs, MS 39059-0799
Telephone:  601-892-3067
Facsimile:  601-892-3057
jkitchens@kitchenslaw.net

Douglas T. Miracle (MSB # 9648)
Special Assistant Attorney General
Bridgette W. Wiggins (MSB # 9676)
Special Assistant Attorney General
Krissy Casey Nobile (MSB # 103577)
Special Assistant Attorney General
Alison E. O'Neal McMinn (MSB # 101232)
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, MS 39205-0220
Telephone: 601-359-5654

F. Jerome Tapley – PHV
Hirlye R. (Ryan) Lutz III - PHV
CORY WATSON, PC
2131 Magnolia Avenue South, 2nd Floor
Birmingham, AL 35205

Carolyn G. Anderson – PHV
ZIMMERMAN REED LLP
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402

*Attorneys for Defendant Jim Hood*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Mississippi by using the Court's CM/ECF system on October 27, 2015.  I further certify that all parties are represented by attorneys who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ John W. Kitchens*
John W. Kitchens

John W. Kitchens, (MSB# 101137)
KITCHENS LAW FIRM, P.A.
Post Office Box 799
Crystal Springs, MS 39059-0799
Telephone:  601-892-3067
Facsimile:  601-892-3057
jkitchens@kitchenslaw.net