**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

GOOGLE, INC.,

|                                   |                              |
|-----------------------------------|------------------------------|
|                  *Plaintiff*,     | No. 3:14-cv-981-HTW-LRA       |

   v.

JIM HOOD, ATTORNEY GENERAL OF THE
STATE OF MISSISSIPPI, IN HIS OFFICIAL
CAPACITY,

       *Defendant.*

<u>**MEMORANDUM IN SUPPORT OF MOTION OF NON-PARTIES STEVEN B.
FABRIZIO AND MPAA TO QUASH SUBPOENA SEEKING DEPOSITION OF
MPAA GENERAL COUNSEL STEVEN B. FABRIZIO**</u>

Steven B. Fabrizio and the Motion Picture Association of America, Inc. ("MPAA")

respectfully submit this Memorandum in Support of their Motion To Quash Subpoena Seeking

Deposition of MPAA General Counsel Steven B. Fabrizio.[1]  Because Mr. Fabrizio had virtually

no interaction with General Hood, the conclusion is inescapable that Google seeks his deposition

not to advance any legitimate discovery goal, but rather to satisfy Google's curiosity about, and

potentially undermine, the MPAA's anti-piracy legal strategies, and to deter the MPAA from

petitioning government officials in connection with its efforts to protect its members'

copyrighted works.

## INTRODUCTION

Google, Inc. ("Google") sued the Attorney General of Mississippi, Jim Hood, principally

contending that federal law bars Attorney General Hood's efforts to investigate Google for

---

[1] The MPAA and Google have met and conferred regarding this motion, and Google has
indicated that it will oppose it.

potential violations of Mississippi law.  This Court has already noted that Google and Attorney General Hood have "agreed upon the relevant facts" and "viewed this matter primarily as a dispute of law."  Order Den. Mot. to Dismiss, ECF No. 88 at 6.  Google's counsel has told the Court that "there isn't really a fight on the facts here," *see* Prelim. Inj. Hr'g Tr., ECF No. 83 at 11:11-12, and that it needed only "targeted" discovery.  *See* Ruling on Mot. for TRO Hr'g Tr., ECF No. 84 at 5:13, 7:10.  Google has pledged to the Court that "what little fact development needs to be done pertains primarily to the Attorney General's own conduct and motivation."  Pl.'s Mot. for Prot. Order, ECF No. 129 at 13.

But Google's discovery efforts have strayed well beyond its promised narrow focus on General Hood's conduct and motivations.  Rather, Google has sought extremely broad discovery of numerous third parties, particularly the MPAA.  The MPAA is the voice and advocate of the motion picture and television industry, whose member studios are among the many victims of digital piracy.  Like many other victims of illegal activities, the MPAA has approached law enforcement officials, including Attorney General Hood, to provide information about those crimes, its general interest in enforcing the rule of law on the Internet as it impacts MPAA members, and to seek law enforcement's assistance.  *See, e.g.*, Oral Arg. Recording at 23:23, *Google, Inc. v. Hood*, No. 15-60205 (5th Cir. Dec. 1, 2015) (oral argument on appeal from preliminary injunction) (cmt. of Judge Higginson) ("There would be nothing wrong with a victim to go to the Attorney General, and say – and Google wants to know – if there actually is a pirated film.").  Google has shown a keen interest in learning more about the MPAA's content protection activities, and is using discovery in this case to that end.  Even before its latest salvo, Google had served six subpoenas on the MPAA, its law firm, three of its member companies, and two of its employees or former employees.

The MPAA has responded to Google's subpoenas by producing the documents and deponents that provide evidence of the communications that the MPAA had with Attorney General Hood or his office, on the theory that such communications are at least arguably relevant to Google's claims regarding the Attorney General's motivations.  The MPAA has produced thousands of pages in response to Google's subpoena for documents; one of its former employees who communicated with the Attorney General has been deposed; and the MPAA agreed to produce a second employee for a deposition (which has not yet happened because Google apparently failed to consult with Attorney General Hood's lawyers regarding the deposition date).[2]

Now, however, Google seeks the deposition of the MPAA's General Counsel, Mr. Fabrizio,[3] despite the fact that he had only three communications, ever, with Attorney General Hood—only one of which (a brief introductory handshake) was in person, and only one of which (a letter) was before Google filed this lawsuit—and despite the fact that Mr. Fabrizio's role at the MPAA places him at the heart of privileged legal strategies and conduct protected by the First Amendment.  Google's insistence on deposing the General Counsel of a third-party, it should be noted, stands in sharp contrast to Google's refusal, to date, to allow a deposition of Google's own General Counsel.[4]  The MPAA understands that Google's General Counsel, unlike Mr. Fabrizio, had multiple, substantive communications with Attorney General Hood during the

---

[2] Google took the deposition of former MPAA employee Brian Cohen on October 8, 2015.  ECF No. 175.  Google noticed the deposition of current MPAA employee Vans Stevenson for February 25, 2015, ECF No. 203.  The MPAA and Mr. Stevenson agreed to the date, but were advised weeks later, on February 3, 2016, that Google no longer intended to proceed on that date.

[3] The subpoena issued to Mr. Fabrizio is reproduced as Attachment A to this memorandum. *Accord* Notice to Take Deposition of Steven B. Fabrizio, ECF No. 208.

[4] MPAA counsel understand that the Attorney General has noticed the deposition of Google's General Counsel, but Google has refused to provide any dates for that deposition.

relevant period and served as Google's chief negotiator in discussions between the parties to this Action.  In any event, the relevance of Mr. Fabrizio's testimony is difficult to imagine, and his position at the MPAA renders most if not all of what he knows subject to several privileges. Google's subpoena should be quashed.

## I.   Background

As General Counsel, Mr. Fabrizio is the highest-ranking legal advisor to the MPAA.  He oversees all of the MPAA's legal efforts to protect its members' content, provides legal advice to the MPAA and its members, and coordinates the provision of legal advice to the MPAA and its members by outside counsel.  *See* Attachment B ("Fabrizio Decl.") ¶ 2.  As General Counsel, Mr. Fabrizio also oversees all MPAA involvement in litigation, including its response to the multiple subpoenas served by Google on the MPAA in this case.  *See* Fabrizio Decl. ¶ 3.

Mr. Fabrizio had a total of three communications with the Attorney General, all either just prior to or in the months subsequent to Google filing this lawsuit.  As Mr. Fabrizio's declaration explains, he had had no communications with the Attorney General until a few days before Google filed this lawsuit.  In total, Mr. Fabrizio sent two letters to Attorney General Hood—one on December 16, 2014 and a second on January 14, 2015—in response to formal inquiries to the MPAA from the Attorney General's Office.  *See* Attachment C ("Handzo Decl.") at Exs. B, C.  Mr. Fabrizio never spoke with or otherwise communicated with the Attorney General's Office regarding those communications.  Indeed, Mr. Fabrizio  never sent an email to the Attorney General, and no one in the Attorney General's office has ever sent an email to Mr. Fabrizio.  *See* Fabrizio Decl. ¶ 5.  Mr. Fabrizio was never copied on a message addressed to or

from the Attorney General.  *See* Fabrizio Decl. ¶ 4.[5]  Nor did Mr. Fabrizio ever have any oral

communication with anyone from the Attorney General's office until, during the course of

Google's lawsuit, he engaged in an extremely brief exchange of pleasantries at a court hearing in

December 2015.  *See* Fabrizio Decl. ¶ 4-5.

## II.    Argument

Under Rule 45(d)(3) of the Federal Rules of Civil Procedure, a court "must quash or

modify a subpoena that … subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(iv).

Courts evaluating the burden imposed on a third-party witness consider a number of factors:  (1)

the relevance of the information sought; (2) the requesting party's need for the information; (3)

the breadth of the request; (4) the time period covered by the request; (5) the particularity with

which the request is described; and (6) the burden imposed.  *See Wiwa v. Royal Dutch Petroleum

Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  The undue burden analysis "calls upon the court to

consider whether the information is necessary and unavailable from any other source."  *Positive

Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (internal

citations omitted).  Depositions of counsel are highly disfavored.  *Theriot v. Parish of Jefferson*,

185 F.3d 477, 491 (5th Cir. 1999).

### A.    The MPAA's General Counsel Has No Relevant Testimony Regarding Communications with Attorney General Hood.

The MPAA has cooperated with reasonable discovery requests in the Mississippi

litigation.  It has produced thousands of pages of documents it sent to or received from Attorney

---

[5] Two messages that Mr. Fabrizio sent either to MPAA personnel or outside counsel were
forwarded by those clients to the Attorney General.  *See* Fabrizio Decl. 4.  The MPAA asserted
no privilege over those messages, and produced them because they were forwarded to the
Attorney General.

General Hood,[6] and it has worked to facilitate the deposition of two MPAA witnesses – one a former employee, the other a current employee who was prepared to be deposed until Google unilaterally informed MPAA that it did not intend to proceed on the agreed-upon date.  But Google's attempt to depose Mr. Fabrizio here is not reasonable discovery.

Even accepting Google's premise that communications with the Attorney General's office are relevant to the Mississippi litigation, Mr. Fabrizio communicated with the Attorney General only once prior to Google filing this lawsuit, and that communication occurred in a formal letter to the Attorney General just days before Google filed suit.  Fabrizio Decl. ¶ 4. And Mr. Fabrizio never had any oral communications with Attorney General Hood or his office until Google initiated this litigation, when Mr. Fabrizio introduced himself to Attorney General Hood at a court proceeding in the case.  Fabrizio Decl. ¶ 5.

In the absence of communications with the Attorney General, there is nothing even marginally relevant for Mr. Fabrizio to testify about.  This case is thus strikingly similar to *Herrington v. Babcock Law Firm, LLC*, Civ. A. No. 14-mc-31-JJB-RLB, 2014 WL 4996182, at *2 (M.D. La. Oct. 7, 2014), wherein a plaintiff in a legal malpractice suit attempted to subpoena the files of his former opposing counsel.  The court ruled that the former opposing counsel did not have to produce information that was never seen by the counsel accused of malpractice. Because the malpractice defendants "were not privy to this information [held in the files of their opposing counsel] at the relevant time[,] … [that information] could not have affected" the decisions alleged to have constituted malpractice.  *Id.*; *see also Hall v. Louisiana*, Civ. A. No. 12-657-BAJ-RLB, 2014 WL 1652791, at *9-10 (M.D. La. April 23, 2014) (granting motion to

---

[6] The MPAA has *not* agreed to produce highly confidential documents that Attorney General Hood never even saw or was aware of and are irrelevant to assessing the Attorney General's motives.

quash subpoena where plaintiff alleged state legislature passed law with discriminatory intent, because third parties' testimony about law to legislature was not probative of legislature's intent).

The only conceivable theory on which Mr. Fabrizio has relevant information regarding the Attorney General's motives is if Google desires to ask Mr. Fabrizio what other people, who did talk to the Attorney General's office, told Mr. Fabrizio about their communications with the Attorney General.  If that were Google's focus here, Mr. Fabrizio is at most a third-best source of information regarding the Attorney General's conduct and motivations.  Google has not attempted to explain why it could not acquire such information from the individuals who *actually* communicated with the Attorney General.  And, more to the point, Google has not explained (as it must under Rule 45) why it could not obtain the same information from the party it actually chose to sue, rather than a third party.

Third-party subpoenas are routinely quashed in circumstances like these.  Where the information to be sought can be obtained from one of the litigants themselves, courts routinely refuse to permit third parties to be dragged further into the litigation.  *See, e.g.*, *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (quashing requests that are duplicative of those directed to party); *Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15-cv-438-RP, 2015 WL 4393581, at *1 (W.D. Tex. July 15, 2015) ("[B]ecause the information at issue is available from Apple, a party to the litigation, any interest Plaintiffs have in obtaining said information from a non-party is far outweighed by the burden imposed."); *Personal Audio LLC v. Togi Entm't, Inc.*, Case No. 14-mc-80025 RS(NC), 2014 WL 1318921, at *3 (N.D. Cal. Mar. 31, 2014) ("[I]nformation regarding whether Texas defendants contributed to [a third party's] IPR petition … is obtainable from a source more direct, more convenient, and less burdensome

the Texas defendants themselves."); *Roosevelt Irrigation District v. Salt River Project Agric.*

*Improvement*, Case No. 2:10-cv-00290-DAE-BGM, 2016 WL 159842, at *3 (D. Ariz. Jan. 14,

2016) (quashing subpoena because the "request is not relevant to Plaintiff's current claims, the

documents are available from party defendants, and the requests place an undue burden on non-

party Montgomery").  And this is particularly true when the person from whom discovery is

sought is an attorney.  *See In re Subpoena of Curran*, No. 3:04-MC-039-M, 2004 WL 2099870,

at *9 (N.D. Tex. Sept. 20, 2004) (prohibiting questions of attorney regarding facts that could be

obtained by deposing others to whom the information was communicated).

**B.      The General Counsel's Testimony Regarding Facts Other than
         Communications with Attorney General Hood Is Irrelevant and Privileged.**

Because Mr. Fabrizio had only one communication with the Attorney General's office

during the relevant period, Google's intention in its deposition must be to question him regarding

something else.  Indeed, Google used portions of its deposition of MPAA former employee Brian

Cohen to try to uncover MPAA's broader strategic efforts.  *See* Handzo Decl. at Ex. A (Cohen

Dep. 38:17-22) ("Q.  What else, beyond the use of attorneys general, were considered as

strategies to compel search engines to change their behavior?  A.  Legislative.  Q.  What sort of

legislative strategies?"); *id.* (Cohen Dep. 77:21-22) ("Q.  Can you describe that general

overarching strategy?").  Similarly, Google's subpoena to three of the MPAA's member studios

specially requests documents concerning communications with the attorneys general of states

other than Mississippi.

Because none of these possible topics are relevant to Google's lawsuit regarding the

Attorney General's conduct and motivations, the subpoena should be quashed for that reason

alone.  But Google's attempt to compel testimony on these subjects would also erode two core

fundamental legal privileges.  First, because all or substantially all testimony from Mr. Fabrizio

would reveal the MPAA's legal strategy to protect its members' intellectual property rights, compelling such testimony would invade upon the MPAA's attorney-client privilege.  Second, inquiry by Google into the MPAA's decisions to petition government law enforcement officials for assistance regarding Google's conduct threatens to chill the First Amendment associational rights of the MPAA, its employees (including Mr. Fabrizio), and its members.   Thus, any conceivable testimony Google would seek to elicit from Mr. Fabrizio would be protected from disclosure on two separate bases— *first*, because it would invade upon the attorney-client privilege, and *second*, because it would chill First Amendment associational rights.

### 1.    The MPAA's Efforts To Advance Its Legal Strategy To Protect Intellectual Property Rights.

One possible category of questioning Google might pursue would concern the MPAA's legal strategies to protect its members' intellectual property.  This category is precisely the sort of questioning that has caused "[f]ederal courts … [to] have held that depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case," and is why "[t]he party seeking the deposition … [of an attorney] has the burden."  *West Peninsular Title Co. v. Palm Beach Cty*, 132 F.R.D. 301, 302 (S.D. Fla. 1990).

As the MPAA's Global General Counsel, Mr. Fabrizio oversees all legal efforts to protect the MPAA's members' content.  To that end, he provides legal advice and coordinates the provision of legal advice by outside counsel.  The General Counsel's communications with his clients regarding their content protection options and strategies are almost entirely privileged. Those communications discuss the enforcement of legal rights, whether directly, through a robust intellectual property litigation strategy, or indirectly, by counseling clients on their engagement with legal issues.  This is classic attorney-client privileged material, and a deposition of the General Counsel regarding these legal strategies would "disrupt the effective

operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-81 (D.D.C. 2011).  Particularly where non-privileged communications can be obtained through the depositions of non-attorneys that Google is already taking or has taken, a deposition of the attorney is inappropriate.  *See, e.g.*, *Issaquena & Warren Counties Land Co. v. Warren County, Miss. Bd. of Supervisors*, Civ. A. No. 5:07-cv-106-DCB-JMR, 2011 WL 6092450, at *4-5 (S.D. Miss. Dec. 7, 2011) (refusing to grant deposition of counsel where litigant had already deposed party who received counsel's communications); *Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 WL 4755368, at *4 (N.D. Tex. Nov. 3, 2009) (quashing subpoena for attorney's testimony where party had opportunity to question non-attorney fact witnesses).

### 2. The MPAA's Efforts To Advocate To Law Enforcement Officials To Protect Intellectual Property Rights.

The MPAA has a multi-pronged enforcement strategy to protect its members' content. Importantly, some of that strategy involves the constitutionally protected right to ask government law enforcement officials to respond to and pursue violations of law affecting MPAA members and, more broadly, to support the rule of law on the Internet as it impacts MPAA's members. While non-party MPAA has already produced documents and testified regarding the communications that it actually had with Attorney General Hood, its internal communications regarding these associational, petitioning, and speech activities are privileged.

The First Amendment privilege protects this kind of information because forcing entities to testify or produce information "with … a real potential for chilling the free exercise of political speech and association" raises very troubling prospects, *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981), and thus requires that when there

is "an objectively reasonable probability that compelled disclosure will chill associational rights," *Beane v. Utility Trailer Mfg. Co.*, Civ. A. No. 10-0781, 2011 WL 2462895, at *1 (W.D. La. June 21, 2011), the burden shifts to the requesting party to justify the intrusion on these First Amendment rights, *see Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010).

To determine whether the disclosure would chill associational rights, the court must look at whether potential disclosures would have the practical effects of (i) deterring participation in the association and its activities; (ii) discouraging associations from joining public policy debates; (iii) inhibiting members from freely exchanging information and ideas; (iv) giving opponents an unfair advantage in the political or public policy arenas; or otherwise (v) frustrating an association's abilities to effectively pursue its mission by revealing to opponents its strategies or tactics. *See id.* at 1160.

Specifically, and as Mr. Fabrizio's declaration makes clear, compelling testimony from Mr. Fabrizio regarding efforts by the MPAA, its employees, counsel to its members, and outside counsel to enlist the help of law enforcement officials would significantly chill their incentive and ability to associate together to advocate for their position before the government. As with the victims of any unlawful activity, especially high-profile activity with significant financial consequences and powerful interests on the other side, the decision of whether and how to seek the help of law enforcement is a difficult one. For an association or any one of its members to make such a decision, it must have the freedom to have an unfettered dialogue, free from the concern that the subject of the allegedly unlawful conduct will later use the process of this court as punishment for petitioning the government.

Requiring Mr. Fabrizio to testify regarding the MPAA's efforts to advocate to law enforcement officials – communications that were never actually shared with those officials and

thus shed no light on the government's conduct – would inhibit the association's ability to participate in that deliberative process.  *See* Fabrizio Decl. ¶¶ 6-7.  As Mr. Fabrizio's declaration demonstrates, the kinds of communications necessary for an association to determine whether and how to petition government law enforcement officials regarding offending conduct would be impossible if the participants knew that their discussions would be disclosed both to the offending party and to the government official.  *See* Fabrizio Decl. ¶¶ 8-10.  Disclosing those communications to the party engaged in the alleged misconduct would make it easier for that party to avoid or combat enforcement; disclosing them to the government officials themselves would make it impossible to effectively strategize.  *See* Fabrizio Decl. ¶¶ 8-10.  Petitioning the government will be severely chilled if the decision to seek assistance from law enforcement officials is disclosed in this manner.

Mr. Fabrizio's communications with MPAA employees, counsel to its members, and outside counsel regarding the MPAA's multi-pronged enforcement strategy therefore is not only protected from disclosure by the attorney client privilege, but also by the First Amendment.

### C.      The Court Should Issue a Protective Order and Not Deal with Irrelevant Inquiries into Privileged Information on a Question-by-Question Basis.

The subpoena ought to be quashed in its entirety.  This is not a case in which an occasional privileged or inappropriate question can be dealt with on a one-off basis, in between the proper grounds for inquiry.  Rather, this is a case in which there are no or nearly no proper grounds:  *Everything that Mr. Fabrizio knows either is irrelevant, discoverable from a party or a non-attorney witness actually involved in the communications, or privileged*.  It would be the rare question on which Mr. Fabrizio *does* have relevant, non-privileged testimony.  In such circumstances, the burden far outweighs the benefit, and the subpoena should be quashed in its entirety.  *See, e.g.*, *Robinson v. Comm'r*, 70 F.3d 34, 38 (5ᵗʰ Cir. 1995) (recognizing that where

reason for subpoena is to obtain information that is irrelevant, subpoena should be quashed);

*Johnson v. Metro Gov't of Nashville & Davidson County*, Nos. 3:07-0979, 3:08-0031, 2009 WL

819491, at *5-6 (M.D. Tenn. Mar. 26, 2009) (quashing subpoena in its entirety where proposed

topics were either privileged, obtainable directly from other sources, or irrelevant); *U.S. Liab.*

*Ins. Corp. v. Goldin Metals, Inc.*, Civ. A. No. 1:10CV-175-LG-RHW, 2012 WL 130254, at *1

(S.D. Miss. Jan. 17, 2012) (granting protective order against deposition of attorney where *most*

of testimony would be privileged); *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.,*

455 F. Supp. 1197, 1204 (N.D. Ill. 1978) (quashing subpoena where even if information is

relevant, deposition was not "a source of crucial information going to the heart of the [claim],"

the nature of the deposition was "ill-defined," and the deposition posted a "danger … to First

Amendment freedoms").

## CONCLUSION

For the foregoing reasons, the Subpoena should be quashed.


Dated: March 8, 2016                              Respectfully submitted,

                                                  /s/ Brad Pigott
                                                  Brad Pigott
                                                  PIGOTT & JOHNSON
                                                  775 North Congress Street
                                                  Jackson, MS  39202
                                                  Tel. (601) 354-2121
                                                  Fax (601) 354-7854
                                                  bpigott@pjlawyers.com

                                                  David A. Handzo (D.C. Bar No. 384023)
                                                  JENNER & BLOCK LLP
                                                  1099 New York Avenue NW, Ste. 900
                                                  Washington, DC 20001
                                                  Tel. (202) 639-6000
                                                  Fax (202) 639-6060
                                                  dhandzo@jenner.com
                                                  *Pro Hac Vice Forthcoming*

*Counsel for Respondents Motion Picture*
*Association of America, Inc., Steven B.*
*Fabrizio, and Jenner & Block LLP*