# ATTACHMENT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| GOOGLE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> JIM HOOD, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, IN HIS OFFICIAL CAPACITY, <br><br> *Defendant*. | No. 3:14-cv-981-HTW-LRA |

### DECLARATION OF STEVEN FABRIZIO
### IN SUPPORT OF MOTION TO QUASH RULE 45 SUBPOENA

I, STEVEN B. FABRIZIO, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Senior Executive Vice President and Global General Counsel of the Motion Picture Association of America, Inc. ("MPAA"). The MPAA is an organization that advocates for the motion picture and television industries. Its members include the six major motion picture studios in the U.S.: Walt Disney Studios Motion Pictures; Paramount Pictures Corporation; Sony Pictures Entertainment Inc.; Twentieth Century Fox Film Corporation; Universal City Studios LLC; and Warner Bros. Entertainment Inc. The MPAA's mission is to promote developments in the art of filmmaking, and to preserve and expand existing opportunities to make creative works.

2. In my role as General Counsel, I oversee all of the MPAA's legal efforts to protect our members' content, provide legal advice to the MPAA and our members, and coordinate the provision of legal advice to the MPAA and our members by outside counsel.

3. As General Counsel, I also oversee all MPAA involvement in litigation, including our present response to Google's subpoenas in this litigation – subpoenas that have sought documents from the MPAA, our outside lawyers, and our member studios, as well as depositions of former MPAA employee Brian Cohen and current MPAA employee Vans Stevenson. I have stayed actively involved to ensure that the litigation response is reasonable and aligned with the MPAA's legal rights and interests.

4. To the best of my knowledge, I have had a total of three communications with Attorney General Hood in my lifetime. On December 16, 2014, I sent a letter to Attorney General Hood, in response to a request from the Attorney General's office for information about MPAA's perspective on a then-recent change by Google to its search algorithm, which Google claimed would lower pirate sites in the search results presented to users. On January 14, 2015, I sent another letter to Attorney General Hood, in response to a request from the Attorney General's office for MPAA's views as to the types of measures Google could and, in our view, should take to stop its facilitation of copyright infringement. In both instances, the request for information came from Attorney General Hood's office to one of my MPAA colleagues. I never spoke with or otherwise communicated with Attorney General Hood, or his office, about either the December 16, 2014, or the January 14, 2015 letter. Finally, in December 2015, as a result of Google's lawsuit, I encountered and introduced myself to Attorney General Hood as he was walking out of a court proceeding held in the Fifth Circuit Court of Appeals. I had never previously met the Attorney General. That momentary and perfunctory greeting consisted of a few words, none of which was substantive.

5. Other than the aforementioned communications, to the best of my knowledge, I have never communicated with Attorney General Hood or any member of his staff, in any way,

orally or in writing. Moreover, to the best of my knowledge, neither Attorney General Hood nor any member of his staff has ever sent any communication to me. Nor have I been copied on any communications sent to or from Attorney General Hood or any member of his staff. I am aware (through the MPAA's document productions in response to Google's subpoenas) of two messages that I sent either to MPAA personnel or outside counsel that were subsequently forwarded to Attorney General Hood.

6. To fulfill the MPAA's mission, a core group of MPAA employees, counsel to the member studios, and outside counsel to MPAA engage in discussions about how to formulate strategies and messages that combat, deter, mitigate, or remedy digital piracy, including how to petition federal and state government to better address digital piracy and how to seek the enforcement of laws that help address the theft of copyright material, as well as generally support the rule of law on the Internet as it impacts MPAA's members. These conversations have included strategic, open, and frank discussions about how best to raise the public's awareness and the awareness of law enforcement officials regarding Google's potentially illegal conduct, and how best to communicate our position to law enforcement officials. My sole responsibility as a participant in these conversations is to provide legal advice and guidance about legal options.

7. My ability to communicate freely and openly with MPAA employees, counsel to the member studios, and outside counsel is critical to the MPAA's success. Reluctance to communicate freely and openly with the MPAA's employees, counsel to member studios, and outside counsel would limit the MPAA's ability to organize, coordinate and promote the MPAA's efforts on behalf of its members – including, where necessary, petitioning the government for relief from illegal conduct – frustrating the MPAA's core purpose for

associating, and making MPAA employees much less effective advocates for the MPAA's members.

8.     If my communications concerning the petitioning of government officials are disclosed in connection with this matter, I will be discouraged from conducting open and frank discussions with the MPAA's employees, counsel to the member studios, and outside counsel about whether and to what extent it is within our interest to petition the government to enforce (and to assist the government in its effort to enforce) laws that help protect copyrighted material and our members. In fact, the forced disclosure of my communications will discourage the MPAA from petitioning the government on this topic at all.

9.     Possible disclosure of these communications to the very entities that facilitate the theft of copyrighted materials, like Google, and the very government officials whom the MPAA is considering petitioning, will also discourage me from speaking freely and openly with the MPAA's employees, counsel to the member studios, and outside counsel. This is because conversations about whether and how to seek law enforcement's assistance against a large, powerful interest are inherently sensitive and involve open and frank discussions about the efficacy of various approaches to seeking the enforcement of laws that help protect copyrighted material. The association could receive a negative reaction from the government, the powerful interest, or the public.

10.    If I had had any reason to believe that my communications about the matters at issue might be disclosed to the government, or to entities that engage in or facilitate piracy, I would not have engaged in candid discussion with the MPAA's employees, counsel to the member studios, and outside counsel.

11.     The chill that I and those with whom I associate in advancing the MPAA's mission would experience would have real economic consequences. If the MPAA is unable to strategize to advance its mission, its ability to protect creators and their works would suffer.

*****

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 8, 2016 in Washington, D.C.

STEVEN B. FABRIZIO