**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

GOOGLE INC.
    *Plaintiff,*

  v.

JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, IN HIS
OFFICIAL CAPACITY,
    *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 3:14-cv-981-HTW-LRA

**GOOGLE INC.'S OPPOSITION TO
THE MOTION PICTURE
ASSOCIATION OF AMERICA, INC.'S
MOTION TO QUASH RULE 45
DEPOSITION SUBPOENA**

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND.........................................................................................................2

    1.   The MPAA's Motion to Quash is Untimely and Violates the Local Rules..................2

    2.   Mr. Fabrizio and the MPAA Were at The Heart of a Multi-Year Lobbying
       Campaign Designed to Incite the Very Investigation that Attorney General
       Hood Launched............................................................................................................3

ARGUMENT...............................................................................................................................6

I.   The MPAA's Motion is Untimely and Violates the Local Rules ...........................................6

II.  Steven Fabrizio Has Relevant and Unprivileged Testimony and the MPAA Has
     Not Shown that any Undue Burden Would Flow from his Deposition .................................6

    A.   The MPAA Has Not Shown That Attending the Deposition Would be
        Burdensome ...............................................................................................................7

    B.   Steven Fabrizio Has Relevant Testimony About the MPAA's Effort to
        Influence Attorney General Hood to Undermine Google's First Amendment
        Rights .........................................................................................................................8

    C.   The Testimony Google Seeks is not Protected by Any Privilege ...............................12

        i.   Discussions of Lobbying Strategies with Third Parties are Not
           Protected by the Attorney-Client Privilege .......................................................12

        ii.   The First Amendment Does Not Protect the MPAA's Multi-Year
           Campaign to Convince a Public Official to Suppress Google's Speech...........15

CONCLUSION..........................................................................................................................18

# TABLE OF AUTHORITIES

**Page**

### CASES

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 263 F.R.D. 395 (W.D. Tex. 2009) ....................14

*Beane v. Utility Trailer Manufacturing Co.*, No. 10-0781, 2011 U.S. Dist. LEXIS 65582 (W.D. La.June 21, 2011)..................................................................................17

*Blair v. Prof'l Transp., Inc.*, No. 3:14-cv-18-RLY-WGH, 2015 U.S. Dist. LEXIS 29202 (S.D. Ind. Mar. 9, 2015)....................................................................................13

*FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380 (D.C. Cir. 1981)....................17

*Fisher v. United States*, 425 U.S. 391 (1976) ...............................................................................12

*Gatheright v. Clark*, No. 3:12-CV-111-SA-SAA, 2016 U.S. Dist. LEXIS 13506 (N.D. Miss. Feb. 4, 2016) ................................................................................................14

*Hall v. Louisiana*, No. 12-657-BAJ-RAB, 2014 U.S. Dist. LEXIS 56165 (M.D. La. April 23, 2014)............................................................................................................10

*Herrington v. Babcock Law Firm, L.L.C.*, No. 14-mc-31-JJB-RLB, 2014 U.S. Dist. LEXIS 142225 (M.D. La. Oct. 7, 2014) ..........................................................10, 11

*Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 U.S. Dist. LEXIS 122027 (N.D. Tex. Nov. 3, 2009) .........................................................................15

*NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449 (1958) ...............................................................15

*Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009)........................................................17

*Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395 (D.C. Cir. 1984) ..............................7

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009) ......................................................15, 16

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376 (D.D.C. 2011) .......................................................................................................14, 15

*Theriot v. Parish of Jefferson*, 185 F.3d 477 (5th Cir. 1999) ......................................................14

*United States v. Davis*, 636 F.2d 1028 (5th Cir. 1981)................................................................12

*United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) ........................................................12

*Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812 (5th Cir. 2004).....................................................7

## RULES

L.U.Civ.R. 7(b)(2)(C) ..................................................................................................5

L.U.Civ.R. 7(b)(8) .......................................................................................................6

Fed. R. Civ. P. 26(b)(1)................................................................................................8

Fed. R. Civ. P. 45(d)(3)................................................................................................7

## MISCELLANEOUS

David M. Greenwald & Michele L. Slachetka, *Jenner & Block Practice Series:*
    *Protecting Confidential Legal Information, A Handbook for Analyzing Issues*
    *Under The Attorney-Client Privilege And The Work Product Doctrine* (2015)...............13

Joe Mullin, *Hollywood v. Goliath: Inside the aggressive studio effort to bring*
    *Google to heel*, Ars Technica (Dec. 19, 2014), http://arstechnica.com/tech-
    policy/2014/12/how-hollywood-spurned-by-congress-pressures-states-to-
    attack-google/ (the "Mullin Article")....................................................................... *passim*

Russell Brandom, *Project Goliath: Inside Hollywood's secret war against*
    *Google*, The Verge (Dec. 12, 2014),
    http://www.theverge.com/2014/12/12/7382287/project-goliath (the "Bran-
    dom Article") ..................................................................................................... *passim*

*Steven Fabrizio Appointed MPAA Senior EVP and Global General Counsel*,
    MPAA (Nov. 14, 2013), http://www.mpaa.org/wp-
    content/uploads/2014/02/11.14.pdf.; ................................................................3

*Why Copyright Matters*, MPAA, http://www.mpaa.org/why-copyright-matters/
    (last visited Mar. 18, 2016) .............................................................................16

The motion to quash filed by Motion Picture Association of America, Inc. ("MPAA") is untimely. Having dragged its feet for months, the MPAA filed its motion just over a week before the deposition it seeks to avoid. This violation of the local rules is sufficient grounds to deny the motion outright.

The MPAA's Motion should also be denied on the merits. It claims that Steven Fabrizio has no relevant testimony, ignoring Mr. Fabrizio's leading role in the MPAA's efforts to drive Mississippi Attorney General Jim Hood's unlawful campaign against Google Inc. ("Google"). It has been widely reported that Mr. Fabrizio was a central figure in "Project Goliath," the MPAA's secret plan to spend hundreds of thousands of dollars lobbying *state* attorneys general to pressure Google to alter its search results and other products in service of their *federal* copyright agenda.[1] He worked with the MPAA's member studios and others—including the Digital Citizens Alliance ("DCA") and former Mississippi Attorney General and DCA lobbyist Mike Moore—to formulate the MPAA's covert strategy of using the Mississippi Attorney General's office to unjustifiably harass Google in furtherance of the MPAA's business objectives. Those efforts culminated in Attorney General Hood's issuance of the unlawful 79-page Civil Investigative Demand ("CID") at the heart of this lawsuit. Mr. Fabrizio's testimony, and the MPAA's internal communications more generally, go directly to proving Attorney General Hood's true motivations for targeting Google.

---

[1] *See, e.g.*, Russell Brandom, *Project Goliath: Inside Hollywood's secret war against Google*, The Verge (Dec. 12, 2014), http://www.theverge.com/2014/12/12/7382287/project-goliath (the "Brandom Article"); Joe Mullin, *Hollywood v. Goliath: Inside the aggressive studio effort to bring Google to heel*, Ars Technica (Dec. 19, 2014), http://arstechnica.com/tech-policy/2014/12/how-hollywood-spurned-by-congress-pressures-states-to-attack-google/ (the "Mullin Article").

Contrary to the MPAA's arguments, there is simply is no privilege excusing Mr. Fabrizio from giving relevant testimony—neither the attorney-client nor First Amendment privileges serve to shield sustained lobbying efforts aimed at recruiting a government official to target a business rival. Mr. Fabrizio played a key role in the MPAA's effort to induce and shape Attorney General Hood's attack on Google. As a result, Mr. Fabrizio has relevant, non-privileged testimony, and the MPAA's Motion to Quash should be denied.

## FACTUAL BACKGROUND

### 1. The MPAA's Motion to Quash is Untimely and Violates the Local Rules

The MPAA has been contemplating this Motion since January 14, 2016, when Google first noted its intent to depose Mr. Fabrizio. On February 9, the MPAA was served with a formal deposition subpoena, which set the deposition for the agreed-upon date March 17. Decl. of Michael H. Rubin in Supp. of Google's Opp'n to MPAA's Mot. to Quash Rule 45 Dep. Subpoena ("Rubin Decl.") ¶¶ 2-6. That advance notice it received notwithstanding, the MPAA did not move to quash the subpoena when it received the formal notice, instead waiting until February 23 to even inform Google that it actually intended to move to quash at all. And then the MPAA waited *another fourteen days*—until March 8—to file the Motion, just nine days before the deposition itself and only ten days before the close of fact discovery. Rubin Decl. ¶¶ 7-13. By unnecessarily dragging its feet, the MPAA ensured that the Motion could not be fully briefed (or decided) before the deposition. After the MPAA refused to produce Mr. Fabrizio on the noticed date, Google took Mr. Fabrizio's deposition off-calendar pending resolution of this Motion.

**2. Mr. Fabrizio and the MPAA Were at The Heart of a Multi-Year Lobbying Campaign Designed to Incite the Very Investigation that Attorney General Hood Launched**

By all accounts, Mr. Fabrizio played a leading role in the MPAA's efforts to lobby Attorney General Hood to take action against Google.[2] Although the MPAA has refused to produce any documents that were not directly shared with Attorney General Hood's office,[3] the limited public record and the testimony of former MPAA Director of External State Government Relations Brian Cohen reveal Mr. Fabrizio's involvement in organizing and motivating the MPAA's anti-Google efforts, code-named "Project Goliath." Brandom Article.[4]

_____

[2] Before Mr. Fabrizio formally joined the MPAA, he was a senior partner to Tom Perrelli at the law firm of Jenner & Block and served as outside counsel to the MPAA. Mr. Perrelli helped to draft the CID that Attorney General Hood served on Google. *Steven Fabrizio Appointed MPAA Senior EVP and Global General Counsel*, MPAA (Nov. 14, 2013), http://www.mpaa.org/wp-content/uploads/2014/02/11.14.pdf.; Mem. in Supp. of Google's Mot. to Compel ("Mot. to Compel") at 7, *Google Inc. v. Digital Citizens All.*, No. 3:15-mc-00560-HTW-LRA (S.D. Miss. June 1, 2015), Dkt. No. 4-1. This Court is already familiar with the MPAA's central role in inciting Attorney General Hood to investigate and then ultimately issue his unlawful subpoena to Google. Mot. to Compel at 5-7, 15; Google's Reply in Supp. of Mot. to Compel ("Reply ISO Mot. to Compel") at 2-3, 6-8, *Google Inc. v. Digital Citizens All.*, No. 1:15-mc-00707-JEB-DAR (D.D.C. June 22, 2015), Dkt. No. 24.

[3] Google served a limited document subpoena on the MPAA on March 12, 2015, just after discovery in this case opened. The MPAA claims to have been a model citizen in responding to that subpoena, but it resisted that subpoena too. It was only *after* Google filed a Motion to Compel that the MPAA produced even a single document. Reply ISO Mot. to Compel at 5-6. What the MPAA did ultimately produce was subject to the same "relevance" restriction it seeks to have imposed here: it refused to produce *any* internal communications, claiming that only communications directly with Attorney General Hood or his office could possibly be relevant to the case. *Id.* at 12. Google's Motion to Compel full compliance with that subpoena is under submission with this Court. *Google Inc. v. Digital Citizens All.*, No. 3:15-mc-00560-HTW-LRA (S.D. Miss. June 1, 2015), Dkt. No. 4.

[4] The MPAA has previously suggested that Google should not have even read any of the myriad press articles detailing the MPAA's secret lobbying campaign against it because the NY Times, the Verge, and other news outlets quote from supposedly privileged documents. *See* MPAA/Jenner Mem. Opposing Mot. to Compel at 22-23, *Google Inc. v. Digital Citizens All.*, No. 1:15-mc-00707-JEB-DAR (D.D.C. June 15, 2015), Dkt. No. 17. The MPAA has never provided any authority requiring a party to ignore widespread news reports, much less where those reports detail violations of that same party's constitutional rights. And this argument would be

These news reports appear to confirm that at least as early as January 2014, Mr. Fabrizio was organizing meetings with the MPAA's member studios—Paramount Pictures Corporation, Sony Pictures Entertainment, Universal City Studios LLC, Warner Bros, Twentieth Century Fox Film Corporation, and Walt Disney Studios Motion Pictures—in order "to present and discuss a detailed US Goliath strategy." Brandom Article. This group was familiar with organizing to attack Google: they had already been participating in a weekly "AG Working Group Call" where they, along with others including the MPAA, the DCA, and Mike Moore, strategized about ways to recruit Attorneys General—including Attorney General Hood—to pursue their anti-Google agenda. Rubin Decl. ¶ 14, Ex. A (Certified Transcript of the October 8, 2015 Deposition of Brian Cohen ("Cohen Depo.")) at 33:23-24, 34:2-6, 35:2-4, 37:22-23.

Planning for Project Goliath continued, and in March 2014, Mr. Fabrizio pushed the group of six studios to focus "on supporting and strengthening the ongoing State AG effort." Brandom Article. Just two months later, he informed the Goliath group that the Attorneys General would need greater levels of support, and he outlined two options, ranging from $585,000 to $1.175 million. Those proposals included support for the state Attorneys General from Mr. Fabrizio's former law firm Jenner & Block and investigation and analysis of "ammunition" and "evidence against" Google. Brandom Article. If this support was anything like what the Goliath group provided in the past—revealed by documents like the "Boston Attack Plan"[5]—it would have included drafting talking points and letters for Attorney General Hood, putting him in touch

particularly inappropriate (and self-serving) here, where the substance of those press reports refute the very position that the MPAA is taking in its Motion. Further, the MPAA's position generally proceeded from the mistaken premise that the materials quoted by the press are "obviously" privileged. As discussed below, these communications are clearly not privileged—they were sent to several different entities at once and with whom Mr. Fabrizio had no attorney-client relationship. Moreover, they were all created and circulated (widely) for unprivileged lobbying purposes—not to secure legal advice.

[5] Sent to the Court via letter of July 22, 2015, Dkt. No. 155-1.

with other sympathetic third parties, writing speeches for him, arranging favorable press coverage, and providing him with strategic guidance to put the MPAA's anti-Google agenda into practice. Mot. to Compel at 5-7, 15; Reply ISO Mot. to Compel at 2-3, 6-8. And of course the MPAA and its lawyers eventually helped draft the CID that Attorney General Hood actually issued to Google. *Id.*

Mr. Fabrizio was still leading Project Goliath in the fall of 2014, when Google released a report that showed progress in combatting online piracy. Mr. Fabrizio told the Goliath group that the MPAA had watered down its response to Google's announcement because the MPAA was "sensitive to the fact that that Mississippi [Attorney General] Hood is expected to issue a CID to Google sometime this week (that information is naturally very confidential)," and the MPAA "did not want an unduly favorable statement by us to discourage [Attorney General] Hood from moving forward." Mullin Article. Mr. Fabrizio also made clear that he was hoping for increased leverage over Google "following the issuance of the CID by [Attorney General] Hood," after which the MPAA might "be in a position for more serious discussions with Google." Brandom Article.

The portrait of Mr. Fabrizio that emerges from even this limited record stands in stark contrast to the picture that the MPAA's Motion to Quash paints. Mr. Fabrizio was integral to ensuring that Project Goliath stayed focused on motivating Attorney General Hood to pursue the MPAA's agenda against Google. Given his central role, it is no surprise that Mr. Cohen first heard the term "Project Goliath" from Mr. Fabrizio himself. Cohen Depo. at 79:16-80:2.

**ARGUMENT**

**I.    The MPAA's Motion is Untimely and Violates the Local Rules**

The MPAA's Motion violates this Court's rules. "A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline." L.U.Civ.R. 7(b)(2)(C).[6] The MPAA's motion clearly falls short—indeed, no discovery motion filed just 10 days before fact discovery ends could comply with the rule. The MPAA waited until just before Mr. Fabrizio's deposition—scheduled for the day before the discovery cutoff—to file its Motion, knowing that doing so would prevent it from being fully briefed or ruled upon before the deposition. *See* Factual Background § 1, *supra*. If this Court's local rule is to have any meaning, the Court should summarily deny the MPAA's motion and order Mr. Fabrizio to appear at the next date noticed by Google.[7]

**II.   Steven Fabrizio Has Relevant and Unprivileged Testimony and the MPAA Has Not Shown that any Undue Burden Would Flow from his Deposition**

It appears, at least from press accounts, that Steven Fabrizio was the leader of the MPAA's extensive and sustained efforts to lobby Attorney General Hood as part of "Project Goliath," ultimately leading to the issuance of the subpoena at the heart of this case. His carefully worded declaration fails utterly to address his actual role in the events giving rise to this case. Mr. Fabrizio details just three "direct" communications with Attorney General Hood, but that is

---

[6] *See also* L.U.Civ.R. 7(b)(8) ("Unless a party files a motion for a protective order to limit the scope or quash the taking of a deposition within seven days of the date of the notice of deposition, the motion will not be considered urgent or necessitous.")

[7] The MPAA attempts to excuse its untimely Motion and failure to appear at Mr. Fabrizio's deposition by claiming that it is simply doing what Google has previously done. Mot. at 3. The MPAA is wrong. Google has presented all deposition-related disputes to the Court in a timely manner.

misdirection—his efforts to influence Attorney General Hood to unlawfully target Google are relevant regardless of whether he communicated directly with the Attorney General or had others do so.[8] And the lobbying efforts he coordinated among disparate interests are plainly not privileged. Nothing in the MPAA's motion supports limiting—let alone quashing—a deposition of Mr. Fabrizio.

### A. *The MPAA Has Not Shown That Attending the Deposition Would be Burdensome*

As the moving party, the MPAA bears "the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812, 818 (5th Cir. 2004) (citations omitted) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 45(d)(3). The MPAA has failed to carry its burden,[9] instead simply asserting

---

[8] The small number of direct communications between Mr. Fabrizio and Attorney General Hood's office is no surprise, and it is a red herring. At the MPAA it was the role of others to talk to Attorney General Hood and his office. At his deposition, Brian Cohen revealed that he acted as "a contact, a messenger, a liaison for the MPAA" in its dealings with Attorney General Hood and other state attorneys general. Cohen Depo. at 124:23-24. But Mr. Cohen did not act on his own. His messages to Attorney General Hood were carefully crafted and came as a result of "group collaboration" between the MPAA, "some of the studios who were interested in this, [and] other stakeholders." *Id.* at 130:6-9. Mr. Cohen himself didn't "develop policy or strategy"—those efforts were left to those higher up, including "heads of departments" and the MPAA's CEO, Christopher Dodd. *Id.* at 184:4, 184:17-23. MPAA leadership told Mr. Cohen what to say, and he carried the message to Attorney General Hood. *Id.* at 180:19-20. It is inconceivable that Mr. Fabrizio, the MPAA's "Senior Executive Vice President and Global General Counsel," would not have been part of these lobbying efforts. Decl. of Steven Fabrizio in Supp. of Mot. to Quash Rule 45 Subpoena ("Fabrizio Decl.") ¶ 1, Dkt. No. 214-2.

[9] This is a pattern in how the MPAA responds discovery in the case. In response to Google's narrow March 12, 2015 document subpoena, the MPAA likewise invoked "burden" as a basis for avoiding relevant discovery. And there, too, it failed to substantiate the objection. *See* Reply ISO Mot. to Compel at 16. Indeed, because the MPAA failed to provide any evidence of burden in its Opposition to Google's Motion to Compel, this Court had to ask the MPAA about its claimed burden at oral argument. *See, e.g.*, Hr'g Tr. on Mot. to Compel at 49:17-50:2, *Google Inc. v. Digital Citizens All.*, No. 3:15-mc-00560-HTW-LRA (S.D. Miss. Oct. 16, 2015). But raising burden and then failing to substantiate it—or only doing so based on attorney argument—is tantamount to making no showing at all. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984) (rejecting claim of burden based on mere "assertion that many of the doc-

without support that "[i]t would be the rare question on which Mr. Fabrizio *does* have relevant, non-privileged testimony." Mot. at 12. Based on that bald assertion alone, the MPAA concludes that "the burden far outweighs the benefit." *Id*. Aside from being untrue (Mr. Fabrizio would have relevant, non-privileged testimony on a host of issues), this tautological argument shows no burden to the MPAA at all. It simply reveals that the MPAA's Motion depends entirely on its *ipse dixit* views of what is relevant and privileged.

### B. Steven Fabrizio Has Relevant Testimony About the MPAA's Effort to Influence Attorney General Hood to Undermine Google's First Amendment Rights

There is no credible argument that Mr. Fabrizio's testimony is not relevant to this case, much less that Google's inquiry is not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (2015). As a reported ringleader of the MPAA and its member studios on "Project Goliath," Mr. Fabrizio instructed the movie studios that they would use their meetings "to present and discuss a detailed US Goliath strategy." Brandom Article. That strategy was "based on supporting and strengthening the ongoing State AG effort" and involved support that ranged from $585,000 to $1.175 million. Brandom Article. Tellingly, Mr. Fabrizio engineered a lukewarm MPAA response to a promising Google piracy report in order to manipulate Attorney General Hood and make sure that the CID the MPAA wanted him to serve on Google stayed on track. Mr. Fabrizio himself acknowledged that the MPAA needed to avoid "an unduly favorable statement by us [that would] discourage AG Hood from moving forward [with the CID]." Mullin Article. He had the MPAA respond that way because he believed that once Attorney General Hood issued the CID to Google, the MPAA "may be in a position for more serious discussions with Google." Brandom Article. These actions all served the MPAA's

---

uments sought by the subpoena will be privileged" because the movant had not "adequately demonstrate[d] that applicable privileges would in fact protect these documents").

goal: using a state Attorney General as a means of covertly attacking Google in order to gain leverage for "more serious discussions with Google."

It is implausible that someone who explicitly adjusted the MPAA's messaging to manipulate Attorney General Hood would lack insight into what motivated the Attorney General. Mullin Article. Mr. Fabrizio apparently knew just how to pull Attorney General Hood's strings to achieve the ends that the MPAA and its cohorts were after. What other strategies did Mr. Fabrizio and MPAA use to influence Attorney General Hood? How did they know what worked and what didn't? Did Mr. Fabrizio discuss the development of the CID, including its scope and purpose? What did Mr. Fabrizio and others think was working to influence Attorney General Hood? How often did Mr. Fabrizio work with Mike Moore on efforts to influence Attorney General Hood, and was Mr. Moore working as a deputy of the Attorney General Hood or as a lobbyist for the DCA when they worked together? What did Mr. Fabrizio expect in return for funding for the DCA, and what did he receive? Did he discuss what assistance the MPAA would be offering Attorney General Hood and what they expected in return? Did the MPAA understand that the nearly $200,000 it arranged to provide the DCA was used by the DCA to pay a deputy of the Attorney General charged with investigating Google? All of this testimony is relevant regardless of whether Mr. Fabrizio communicated directly with Attorney General Hood—he knows how the MPAA worked to motivate Attorney General Hood to take exactly the action it wanted him to take against Google. *See* Mot. to Compel at 11-14; Reply ISO Mot. to Compel at 8-14.

And what motivated Attorney General Hood to go after Google is an important controversy in the litigation. The MPAA itself admits that Attorney General Hood's motivation is a live issue in the case. Hr'g Tr. on Mot. to Compel at 46:19-23. Attorney General Hood has stated publicly that "his views haven't been influenced by the movie industry" and that the MPAA

"ha[d] no major influence on [his] decision-making." Reply ISO Mot. to Compel at 11. But Google intends to show otherwise, and the Attorney General's true motivation goes to the heart of Google's First Amendment and Fourth Amendment challenges, the applicability of the *Younger* abstention doctrine, and Attorney General Hood's credibility. Mot. to Compel at 12-14; Reply ISO Mot. to Compel at 10-11. Mr. Fabrizio's testimony about the MPAA's lobbying of Attorney General Hood, including its communications with MPAA members and external allies like the DCA and Mike Moore, is directly relevant to Attorney General Hood's motivation in pressuring Google "to come to the table to change its behavior," (Cohen Depo. at 101:21), and in ultimately issuing the CID. Given the record, the assertion that Mr. Fabrizio does not have important testimony regarding what influenced Attorney General Hood to launch his unlawful investigation strains credulity.

To avoid Mr. Fabrizio's deposition, the MPAA relies on a handful of cases where courts quashed depositions of third parties, but those motions arose under completely different (and inapposite) circumstances having no bearing on the MPAA's Motion. The court in *Hall v. Louisiana*, for example, quashed a deposition notice to a third party who testified before a legislative body, but it did so because the lobbying efforts at issue there would have no effect on "the outcome of this case." No. 12-657-BAJ-RLB, 2014 U.S. Dist. LEXIS 56165, at *14 (M.D. La. Apr. 23, 2014). The lobbying efforts here, unlike in *Hall*, go directly to Attorney General Hood's motivation and lie at the very heart of Google's claims under the First and Fourth Amendments and whether the Younger abstention doctrine applies. And *Herrington v. Babcock Law Firm, L.L.C.* does not even concern a deposition. The court there merely limited the requests in a document subpoena which sought materials that were "part of the public record, or in Plaintiffs' or Defendants' possession" and "to the extent any of the responsive documents are protected as attorney-

client communications or attorney work product." No. 14-mc-31-JJB-RLB, 2014 U.S. Dist. LEXIS 142225, at *5-6 (M.D. La. Oct. 7, 2014). The *Herrington* plaintiff actually received relevant, non-privileged material that he could not obtain elsewhere. *See id.* at *6 (noting third-party attorney had produced other, non-privileged materials). In contrast, due to Mr. Fabrizio's unique position at the heart of Project Goliath (and the MPAA's refusal to produce *any* internal documents, including virtually all of those belonging to Mr. Fabrizio[10]), Google has none of the information he can provide. Regarding privilege, the MPAA is free to object to questioning into material that is actually privileged—Google has been clear that it does not seek that information. *See* § C(i), *infra*. But it cannot withhold *all* of Mr. Fabrizio's testimony on those grounds.[11]

*****

Google has shown why communications other than those directly with Attorney General Hood *are* relevant to assessing his motivations in pursuing Google.[12] Nothing in the MPAA's motion changes that.

---

[10] While the MPAA apparently included Mr. Fabrizio as a custodian for the document production, it has withheld all of those documents except for a handful that were directly forwarded to someone in Attorney General Hood's office.

[11] The MPAA's other arguments concerning relevance are no more compelling. The MPAA suggests that Google seeks to question Mr. Fabrizio about the MPAA's "content protection activities" (Mot. at 2), and "broader strategic efforts" (Mot. at 8) unrelated to Attorney General Hood's motivation in issuing the unlawful CID. That's only true to the extent that the MPAA's "content protection activities" include their years-long effort to induce a public official to pursue a private business vendetta in violation of the Constitution and Federal laws.

[12] It is no surprise that, at oral argument on Google's Motion to Compel and Motion to Transfer against three of the MPAA's members, Judge Schofield of the Southern District of New York said that even "knowing almost nothing about your case, it seems to me that there are all sorts of documents that Attorney General Hood never saw that are conceivably relevant." Rubin Decl. ¶ 15, Ex. B (Transcript from July 29, 2015 Hearing before Judge Schofield, S.D.N.Y.) at 15:6-11.

C.  *The Testimony Google Seeks is not Protected by Any Privilege*

The MPAA claims that "any conceivable testimony Google would seek to elicit from Mr. Fabrizio" would be protected by the attorney-client and the First Amendment privileges. Mot. at 9. That is wrong. No privilege, let alone the attorney-client and First Amendment privileges, serves to hide from disclosure the efforts of the MPAA and its allies to lobby Attorney General Hood.

   i.   *Discussions of Lobbying Strategies with Third Parties are Not Protected by the Attorney-Client Privilege*

The attorney-client privilege can only be invoked where there is an attorney-client relationship. *Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Confidential disclosures *by a client* to an attorney made in order to obtain legal assistance are privileged." (emphasis added)). And the privilege only protects confidential communications. *Id*. As a result, the sharing of otherwise privileged information outside the confines of the attorney-client relationship "forfeits the client's right to claim the privilege." *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). More fundamentally, even where there is an attorney-client relationship and confidentiality is maintained, the privilege only protects actual *legal* advice—the mere presence of an attorney does not make a conversation privileged. *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) (attorney-client privilege "extends only to legal advice given by a lawyer").

Mr. Fabrizio has a client: the MPAA. As a result, Mr. Fabrizio may well have had conversations purely internal to the MPAA that constitute actual legal advice. Google has made clear that it is not interested in legitimately privileged information. Rubin Decl. ¶ 8. But there is simply no attorney-client privilege in communications between the MPAA, its independent studio members, and other third parties like the DCA or Mike Moore. That the MPAA had ongoing communications with these parties—parties who are not Mr. Fabrizio's clients—is not in ques-

tion, nor is Mr. Fabrizio's role at the center of those efforts. *See* Factual Background, *supra*. Mr. Fabrizio's *own declaration* admits that his discussions involved "counsel to the member studios." Fabrizio Decl. ¶¶ 6-7. And while counsel-to-counsel discussions can be privileged, absent special circumstances that could not be present here (like a joint defense agreement), conversations between attorneys at one company and attorneys at another are not privileged communications. Simply because Mr. Fabrizio was dealing with other lawyers does not enable the MPAA to shroud what they discussed in the attorney-client privilege.

Moreover, strategizing about how to influence a public official to take action against a business rival is not legal advice—it's a classic business activity known as lobbying.[13] As the MPAA's own lawyers readily admit, the attorney-client privilege does not attach to lobbying activity. David M. Greenwald & Michele L. Slachetka, *Jenner & Block Practice Series: Protecting Confidential Legal Information, A Handbook for Analyzing Issues Under The Attorney-Client Privilege And The Work Product Doctrine* at 391 (2015) (with respect to lobbying, "[c]ommunications that relate solely to political advice or strategizing are not protected."); *Blair v. Prof'l Transp., Inc.*, No. 3:14-cv-18-RLY-WGH, 2015 U.S. Dist. LEXIS 29202, at *6-7 (S.D. Ind. Mar. 9, 2015) (communications among trade association, its members, and its attorney running lobbying efforts were not privileged; documents that "outline a lobbying strategy, solicit information to be used in lobbying, or relay the results of a lobbying effort" do not constitute the giving or receiving of legal advice); *see also* Mot. to Compel at 22-23; Reply ISO Mot. to Compel at 23 (discussing cases).

Even if a privilege did actually apply to some portion of Mr. Fabrizio's testimony, the appropriate remedy would be for Mr. Fabrizio's counsel to assert a privilege objection (or in-

---

[13] Indeed, Brian Cohen admitted at his deposition that the MPAA's conduct towards Attorney General Hood amounted to lobbying. Cohen Depo. at 52:25-55:2.

struction) at his deposition. The solution is not to quash the subpoena for his deposition entirely *ex ante*. The MPAA's "blanket assertion" that the privilege covers all possible testimony is as insufficient as it is outlandish—"[s]imple possession of a law license does not result in blanket immunity from a deposition." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 263 F.R.D. 395, 399 (W.D. Tex. 2009) (denying motion to quash the deposition of a third party attorney who had consulted with defendant on transactions related to patents in suit, but was not an attorney of record in the case); *see also Gatheright v. Clark*, No. 3:12-CV-111-SA-SAA, 2016 U.S. Dist. LEXIS 13506, at *6 (N.D. Miss. Feb. 4, 2016) (denying motion to quash deposition of third party district attorneys, noting that "[a]s to potential privilege or work product information that could arise during the course of the depositions, counsel for Creekmore and Stallings can address any objections at the time of the depositions, just as he would in any other case").

All of the authority cited by the MPAA is beside the point. Mot. at 5, 9-10. First, in those cases, there was a valid attorney-client relationship, and the subject matter at issue was clearly privileged. *See, e.g.*, *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co*., 276 F.R.D. 376, 384-85 (D.D.C. 2011) (deposition of Apple's outside counsel was "likely to implicate the [deponent attorney]'s communications with Apple, Apple's patent prosecution strategy, and discussions regarding the history and scope of the 074 patent"). But perhaps more importantly, those cases all involved attorneys who were opposing counsel in the underlying litigation or similarly situated. *See, e.g.*, *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) (noting that "federal courts have disfavored the practice of taking the deposition of a *party's* attorney" and upholding a magistrate judge's decision to quash a deposition that sought to investigate that role (emphasis added)); *Sterne*, 276 F.R.D. at 382, 384-85 (quashing a deposition seeking information on USPTO reexamination proceedings attorney had participated in and attorney's rela-

tionship with patent's inventors where the deposition sought was akin to deposing opposing litigation counsel because the attorney had been "involved in representing Apple while [the instant] litigation was pending, and on the patent matter at issue both before the USPTO and in that lawsuit"); *Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 U.S. Dist. LEXIS 122027, at *7-8 (N.D. Tex. Nov. 3, 2009) ("[T]he evidence shows that [deponent attorney] has been part of the trial team since pre-suit discovery began in early 2003. As a member of that team, [deponent attorney] has participated in strategy discussions, read and edited pleadings, met with witnesses, and assisted in the collection and review of documents." (citations omitted)).

That Mr. Fabrizio happens to be an MPAA attorney is incidental to his involvement with the efforts to influence Attorney General Hood. Google seeks his deposition to explore his critical role in the events leading up to this litigation between Google and Attorney General Hood, and those communications are simply not protected by the attorney-client privilege.

> ii. *The First Amendment Does Not Protect the MPAA's Multi-Year Campaign to Convince a Public Official to Suppress Google's Speech*

The MPAA's attempt to invoke the First Amendment privilege to hide its efforts to suborn a public official to attack Google is wholly disingenuous and misunderstands the nature of the privilege itself. The First Amendment privilege is a limited privilege that protects associational activity from government retaliation and subsequent chilling of speech, such as when the government seeks to uncover the membership records of a disfavored group, exposing the members to retaliation. *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462-66 (1958) (compelled disclosure of the names and addresses of all NAACP members in suit by state might induce members to withdraw and dissuade others from joining); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2009) (First Amendment privilege protects groups from "harassment, membership withdrawal, or discouragement of new members, or . . . other consequences which objec-

tively suggest an impact on, or 'chilling' of, the members' associational rights." (citation omitted)). The MPAA cannot meet this standard.

Mr. Fabrizio claims that if he were deposed, he and his associates would experience a "chill" or be "discouraged" from conducting discussions or petitioning the government. Fabrizio Decl. ¶¶ 8, 11. But neither he nor the MPAA support this claim by offering any insight into *why* or *how* their associational rights would be chilled. It cannot be because Mr. Fabrizio's testimony would reveal the MPAA's members—that information is public knowledge, and it is detailed in Mr. Fabrizio's declaration. *Id*. ¶ 1. Nor can it be because his testimony would reveal the MPAA's interest in protecting and expanding intellectual property rights—that is one of the MPAA's stated focuses. *See Why Copyright Matters*, MPAA, http://www.mpaa.org/why-copyright-matters/ (last visited Mar. 18, 2016). It cannot even be the MPAA's involvement in the events giving rise to this case—its efforts to influence Attorney General Hood to take action against Google are already well known through press reports. Brandom Article; Mullin Article.

It is simply not enough for the MPAA to claim that its associational rights would be "chilled" because the MPAA would prefer that its covert lobbying efforts remain secret so that it can avoid scrutiny or embarrassment. It must actually show "consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1160 (citation omitted). It has not made that showing because it cannot. To claim that this deposition—regarding a subject matter that is already publicly known and concerns part of the MPAA's general mission—could somehow chill the MPAA's members' associational rights is not credible. Simply put, the MPAA and its members today have nothing in common with the NAACP and its members in the 1950s South. They are powerful special interests that face no risk of government reprisal.

The MPAA's First Amendment privilege argument fails for another reason—the privilege does not protect lobbying. One of the MPAA's own cases proves that point. In *Beane v. Utility Trailer Manufacturing Co*., the court *granted* a motion to compel that sought "information regarding the lobbying efforts of defendants and defendants' employees." No. 10-0781, 2011 U.S. Dist. LEXIS 65582, at *2 (W.D. La. June 21, 2011). The court expressly noted that the First Amendment would not apply because "[l]obbying efforts are not privileged." *Id*. at *3 (citation omitted); *see also Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 9, 22 (D.C. Cir. 2009) (First Amendment provides no guarantee for special interests against having "their participation in controversial lobbying . . . revealed"; "disclosures by those endeavoring to influence the political system" are subject to less demanding scrutiny).[14] The testimony Google seeks concerning the MPAA's efforts to lobby Attorney General Hood into taking action against Google are not protected by the privilege.

There is something deeply troubling in the MPAA claiming the First Amendment privilege to shield its role in lobbying Attorney General Hood to threaten *Google's* First Amendment rights. Applying the privilege here would flip the First Amendment on its head, and the MPAA's reliance on the privilege's protections ignores their very nature. The MPAA should not be permitted to spend years lobbying a public official to suppress the speech of a business rival and then turn around and hide behind the very rights it was trying to squelch.

---

[14] The MPAA misleadingly quotes another case, *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981). Mot. at 10. The full quote is "since release of such information *to the government* carries with it a real potential for chilling the free exercise of political speech and association guarded by the first amendment." *FEC*, 655 F.2d at 388 (emphasis added). The MPAA faces no possible reprisal from the government here if it provides this information to Google.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court deny the MPAA's Motion to Quash and order Mr. Fabrizio to appear at a re-noticed deposition.

DATED this 22nd day of March, 2016.

Respectfully submitted,

  /s/ Fred Krutz

| | |
|---|---|
| OF COUNSEL: | Fred Krutz, MSB No. 4270 |
| Michael H. Rubin, *Pro Hac Vice* | Daniel J. Mulholland, MSB No. 3643 |
| WILSON SONSINI GOODRICH & ROSATI | FORMAN WATKINS & KRUTZ LLP |
|  Professional Corporation | 200 South Lamar Street, Suite 100 |
| 1 Market Street | Jackson, Mississippi 39201 |
| Spear Tower, Suite 3300 | Post Office Box 22608 |
| San Francisco, CA 94105 | Jackson, Mississippi 39225-2608 |
| Phone: (415) 947-2000 | Phone: (601) 960-8600 |
| Fascimile: (415) 947-2099 | Facsimile: (601) 960-8613 |
| mrubin@wsgr.com | fred.krutz@formanwatkins.com |
| | daniel.mulholland@formanwatkins.com |

*Attorneys for Plaintiff Google Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Mississippi by using the Court's CM/ECF system on March 22, 2016. I further certify that all parties are represented by attorneys who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 /s/ Fred Krutz
Fred Krutz, MSB No. 4270